Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

CAUSE NO. _____

| | | |
|---|---|---|
| **MICHELE LESHA XU AND** | § | IN THE _88th_ DISTRICT COURT |
| **XIAO FENG XU** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | IN AND FOR |
| | § | |
| **CM HOMES, INC. d/b/a** | § | |
| **CLAYTON HOMES PORTER, TX** | § | |
| | | |
| *Defendant.* | | HARDIN COUNTY, TEXAS |

## ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **MICHELE LESHA XU** and **XIAO FENG XU** ("Plaintiffs"), by and through their respective counsel of record and files this Original Petition against CMH Homes, Inc., d/b/a Clayton Homes Porter, TX ("Defendant" or "CMH"). And shows this Court as follows:

### DISCOVERY LEVEL

1. Plaintiffs intend that discovery be conducted under Level 2 or a Level 3 order as entered by this Court or agreed to by the parties, and affirmatively pleads that this suit is not governed by the expedited actions process in TRCP 169 because Contestant pleads that it seeks monetary relief aggregating over $100,000.00.

### PARTIES, VENUE, AND JURISDICTION

2. Plaintiffs are individuals that are Husband and Wife, residing in Saratoga, Texas, which may be served through her counsel Charles Moster of The Moster Law Firm, P.C., at 4920 S Loop 289 STE 101, Lubbock, TX 79414.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

3. Defendant is a corporation registered at PO Box 4098, Maryville, TN 37802, which conducts business in the state of Texas.

4. This Court has subject matter jurisdiction of this controversy because the damages in question exceed the minimum jurisdiction of this Court.

5. Venue is proper in Hardin County, Texas under Section 15.002 (a) (1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to the claim occurred in Hardin County.

## FACTUAL BACKGROUND

6. On June 2, 2022, Plaintiffs purchased a mobile home from CMH for $343,660.00 plus $25,000 downpayment located at 17500 Ghost Road, Saratoga, TX 77585, a raw piece of land surrounded by woods.

7. CMH assured Plaintiffs the land was buildable. CMH made multiple representations regarding the construction which turned out incorrect and required increased spending for the Xu family to get the home built, including the required size of the driveway and the distance between the home and the nearest gas easement.

8. Despite CMH's 20 years of experience, they made misleading representations which increased the Xu's spending. This includes certain expenses that do not make sense such as invoices for axles and tires which CMH kept after delivery, a similar practice for which Clayton Homes has already been sued via multiple class actions throughout the country.

9. On that day, CMH's sales representative (Holly) was not present. CMH's General Manager, Clayton, was present instead but left before signing the contract. Plaintiffs were told Clayton will sign his part when he comes back later on that day, so only Plaintiffs signed with the public notary. On September 10th CMH realized they had not properly signed the agreement and



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

asked Plaintiffs to re-sign certain documents via text message. Plaintiffs refused and the matter was never brought up again.

10. During the sale, CMH promised to clear out 2 acres of wood around the property, yet they have yet to complete the project by the time this petition was filed.

11. CMH employed subcontractors, yet failed to inform Plaintiffs of who those contractors were despite their requirement to do so under Texas Property Code 53.256 and the Agreement. Attached Exhibit A (closing agreement) p. 223.

12. The work was supposed to be completed within two months of the agreement, However a year later the project remains completely unfinished despite what CMH has claimed to the Plaintiffs.

13. During construction, CMH abandoned the work for over three months with no work being done whatsoever despite already missing the completion deadline.

14. On October 24, 2022, CMH claimed they were done with the construction and the home was move-in ready.

15. They repeated the claim of completion on November 3, 2022.

16. It quickly became apparent that the work on the home was nowhere near completed.

17. On April 14, 2023, CMH provided a Compliance Inspection Report. attached Exhibit B.

18. The report claims no noncompliance was observed, that the home has been completed per plans, that drainage is "OK", and that the utilities are functional.

19. When the Plaintiffs asked to inspect the inside of the home themselves, they were denied access and were told to finalize the sale and then report any default to their insurance.

20. At the time of this Petition, no inspection of the inside of the home was completed, and the Plaintiffs were denied any access to inspect it before the purchase is completed.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

21. An inspector came to the property and could not access the inside of the home, but it was apparent the inside was not finished even when only looking in through the windows.

22. Even days after CMH provided the Compliance Inspection Report and the Plaintiffs were told construction was complete and the home was move-in ready, workers could be seen working inside of the home for hours.

23. The Plaintiffs went to the land to see the mobile home only to find the premises entirely flooded and inaccessible.

24. The roads had not been paved, the ground had turned into mud and the home was infested with insects.

25. The septic tank was not installed at the location previously agreed and instead was left mere feet from the home. The tank was left without a compact dirt base, leading to massive sink holes around the tank.

26. Metal wires hazardously stick out of the driveway.

27. The power pole installed is already bending with a large crack on top and was installed at a different location than CMH originally promised.

28. The access door does not close.

29. The home's wooden panels on the skirting show signs of damage despite being just installed.

30. CMH buried over 40 pounds of shingles under the home's doorsteps without notice, buried large wooden logs under the foundation, and used sand and debris to backfill the sides of the foundation.

31. Such reckless and dangerous building practices will surely result in damage to the home and the occupants considering the heavy flooding on the premises at the slightest rainfall.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

32. The driveway to the home is unusable and gets constantly flooded because of CMH's poor workmanship.

33. In fact, CMH built a separate driveway nearby for them to access the premises because they knew how dangerous the main driveway is.

34. Almost the entire cleared acreage floods every time it rains.

35. CMH took out lots of tree roots during land clearing but never backfilled the holes, causing the property to have much lower elevation than the surrounding area, and leading the drainage along the road directly onto the undrainable property.

36. When it floods, the septic tank, drain field and water well sit in the same pool of water, causing the septic tank to not work properly and the water to become contaminated.

37. The dirt pads in the surrounding areas were left neither compacted nor graded, contrary to CMH's own instruction manual, which will inevitably cause the home to not settle evenly.

38. CMH used debris (black dirt with broken sticks and leaves mixed in) to fill the gaps between dirt pad and skirting. This poor workmanship can be seen throughout the entire construction site and will most likely be present within the home.

39. CMH dug a massive hole on Plaintiffs' property and took the soil for their own personal use. Video evidence shows a CMH worker asking a CMH manager if they should dig another hole to take more dirt.

40. The home's windows aren't properly sealed, the sidings are either too short or too loose. Despite CMH claiming the property was completed.

41. The air conditioning unit was not installed until Plaintiffs retained counsel. While the AC unit is now installed, it was placed on a non-compacted surface and is already sinking.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

42. Since CMH's claim that the property was completed on April 14, 2023, the company continued to contact the Xu family to get them to sign off on the home, while simultaneously continuing to send workers on site to fix some of the blatant defects along the premises.

43. The latest worker seen on the property was observed by Plaintiffs on June 2, 2023.

44. On multiple occasions, Plaintiffs informed CMH that the home was not in a livable condition and that changes needed to be made, yet CMH continued to claim the home is finished and ready to be moved into.

45. The Plaintiffs made multiple formal corporate complaints about the home, yet nothing was ever resolved by CMH.

46. The Plaintiffs were left with no other recourse than hiring attorneys and file suit.

47. Plaintiffs were also told by CMH that any issue in the matter must be resolved through arbitration based on the existing arbitration clause, yet Plaintiff could not recall ever signing such clause.

48. Upon review of the documents by a forgery expert, the results show multiple instances of extremely likely forgery from CMH, including the arbitration clause.

49. One such document is the Binding Dispute Resolution Agreement which contains "NMLS#1561" on the bottom right corner. This number refers to Vanderbilt Mortgage and Finances, Inc., a financing company which is not involved in this transaction as far as Plaintiffs know.

50. It has become clear that CMH built the home on a dangerous and unsuited piece of land, built an unfinished and uninhabitable home without laying proper foundations which resulted in massive flooding and impossibility to access the home during rain even with a vehicle.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

51. Following CMH's failure to procure properly notarized documentation, the company resorted to forgery and lies to get Plaintiffs to sign off on the home in an attempt to get rid of the disastrous home they had built.

52. Despite claiming the work is finished and that Defendant is only waiting on Plaintiffs to sign off on the sale, Plaintiffs have observed CMH workers on site repeatedly up until late June. CMH has made no contact with Plaintiffs or their counsel regarding the work being done, and still maintains the construction is completed.

53. In May 2023, the Plaintiffs went to visit the "finished" home to take pictures. Mr. Xu slipped and fell into a pothole which was left on the premises without any warning from the builders. The fall caused Mr. Xu to injure his leg, which got infected, and required surgery.

54. To this day, Mr. Xu is still recovering from the injury, and is constantly monitored because of the high risk of necrosis which could result in Mr. Xu losing his leg.

## ARGUMENTS AND AUTHORITY

## CLAIM I – FRAUD

55. The Texas Penal Code defines a forgery offense in several ways; Section 32.21 of the Texas Penal Code defined the offense of forgery as:

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) to be the act of another who did not authorize that act;

(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

(iii) to be a copy of an original when no such original existed;

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A); or

(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B). *Tex. Penal Code Ann. § 32.21(a) (Vernon Supp.2009)*.

56. *Section 32.21* defines forgery simply as an offense where a person forges a writing with intent to defraud or harm another. *V.T.C.A., Penal Code § 32.21(b)*.

57. It is a Class A misdemeanor unless the writing represents or affects a property interest, in which case it is a third-degree felony, or unless it evidences a governmental financial obligation, in which case it is a second-degree felony *V.T.C.A., Penal Code § 32.21(c), (d), (e)*. Under the 1993 Amendments, writings affecting property interests are state jail felonies, while those affecting governmental documents are third-degree felonies. *V.T.C.A., Penal Code § 32.21 (1993)*.

58. To prevail on a fraud claim, a plaintiff must show:

(1) the defendant made a material representation that was false - Here Defendants forged Ms. Xu's signature on multiple documents throughout the sale of the mobile home.

(2) Defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth - Here Defendants knew that Plaintiffs did not sign the documents and forged her signature, knowing full well that Ms. Xu wasn't the one agreeing to the terms represented;

(3) the Defendant intended to induce the Plaintiff to act upon the representation - Here Defendant knew that Plaintiff would rely on the documents showing her signature, despite her never having signed them. For example, Defendant forged



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Ms. Xu's signature on the Arbitration clause, and intended to force Ms. Xu into arbitration rather than a lawsuit should she complain of the incredibly poor workmanship provided by Defendant, and

(4) the Plaintiff had justifiably relied upon the representation and suffered injury as a result - Here Plaintiff was relying on the documents produced by Defendant, including the arbitration clause, assuming she had signed them despite having no memory of it, until an expert was able to confirm the forgery.

59. Plaintiffs suffered financial damages.

### CLAIM II – BREACH OF CONTRACT

60. Plaintiffs incorporates all of the facts set forth in the preceding and foregoing paragraphs.

61. Defendant and Plaintiffs entered into the contract under which Defendant supplied construction services in exchange for monetary remuneration from Plaintiffs.

62. Defendant duly performed under the contract.

63. Defendant breached its duties under the contract by failing to construct a home site which permits proper drainage and prevent accumulation of water underneath the home and by failing to comply with the manufacturer's installation manual.

64. Defendant has breached its duties by failing to adequately work on the property and complete it by the scheduled deadline.

65. Defendant has breached its duties by failing to build a home that meets the standards laid out in the contract, let alone does not even comply with minimum industry standards.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

66. Defendant's breach of contract has caused damages to Plaintiff in the form of direct damages for the amount paid by Plaintiffs, the delay in Plaintiffs' ability to move in, reliance damages, and attorneys' fees.

67. Defendant's breach has caused injury to Plaintiffs as to the unduly and unjustifiable delay in construction.

68. Defendant's breach has caused injury to Plaintiffs as their home is uninhabitable.

69. Defendant's breach has caused injury to Plaintiffs as the entire property is a health hazard and does not conform with the local regulations or the Texas Property Code.

70. Defendant's breach caused injury to Plaintiffs, which resulted in damages in the amount of at least $150,000.00, plus interest as allowed by law. Plaintiffs reserve the right to supplement this amount as discovery is conducted.

71. Due to Defendant's breach, Plaintiffs were forced to hire counsel to represent it in this lawsuit, who has incurred, and will continue to incur, substantial attorneys' fees. Plaintiffs seek reimbursement for its reasonable attorneys' fees as allowed by Tex. Civ. Prac. & Rem. Code, Section 38.001.

## CLAIM III – NEGLIGENCE

72. Plaintiffs incorporates all of the facts set forth in the preceding and foregoing paragraphs.

73. Defendant was engaged by Plaintiffs for the purpose of designing and constructing the new home. Defendant had a duty to perform in a good and workmanlike manner and in a manner up to the standards normally attributed to the task which they agree to perform.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

74. Defendant did not perform the work to the terms of the contract and fails to meet even the minimum standards of industry norm in their work surrounding the construction of the home and clearing of the land.

75. By failing to comply with these standards, Defendant breached their duty to Plaintiffs.

76. Defendant's breach proximately caused the damage to Plaintiffs.

77. But for Defendant's negligence concerning their representations regarding their ability to construct the home at that location, Plaintiffs would not have contracted with Defendant to do the construction.

78. Defendant's breach of its duty resulted in substantial injuries to the Plaintiffs' person and property.

79. Plaintiff, Mr. Xu, has had to undergo surgery due to injuries he sustained on the property from an improperly filled hole creating loose soil and hazards similar to a pit trap.

80. Plaintiffs' property is uninhabitable and has substantial biohazards on the property due to standing water and flooding.

81. Plaintiffs' property floods and reaches into the septic system, which creates bio hazards in the standing water around the house.

## CLAIM IV – BREACH OF WARRANTY

82. Plaintiffs incorporates all of the facts set forth in the preceding and foregoing paragraphs.

83. As stated above, Defendant failed to perform the work in a good and workman-like manner and failed to construct the house or do the work in accordance to approved standards. This conduct constitutes a breach of the express warranties as well as a breach of the implied warranty of implied of good workmanship.

84. This results from but is not limited to:



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

85. The failure to install house wrap;

86. The failure to properly install the septic system;

87. The failure to properly install the AC system;

88. The failure to properly mount the skirting on the house;

89. The failure to use the materials in the contract in home construction;

90. The failure to ensure proper drainage of the property;  and

91. The failure to backfill the holes from clearing the property.

92. These breaches of warranty are actionable under both common law and under DTPA § 17.50(a)(2).

## CLAIM V – FRAUD AS TO THE INHABITABILTIY OF THE HOME

93. Plaintiffs incorporates all the facts set forth in the preceding and foregoing paragraphs.

94. Defendant made material promises to Plaintiffs where Plaintiffs would receive an inhabitable home as provided under the inspection report.

95. Plaintiffs relied on the material promise when it performed under the contract, incurring costs to put a down payment and further cost while waiting for the work to be completed.

96. Defendant never intended to perform under the contract or provide a completed home to Plaintiffs. Defendant instead claimed the home was properly built and ready to be moved into and requested Defendant to sign off on the submerged home. Plaintiffs have sustained damages of $150,000.00, plus interest as allowed by law. Plaintiffs reserve the right to supplement this amount as discovery is conducted.

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## CLAIM VI – FRAUD AS TO THE PURCHASE OF CERTAIN ITEMS

97. Plaintiffs incorporate all the facts set forth in the preceding and foregoing paragraphs.

98. Defendant had a duty to disclose to Plaintiffs its knowledge of the charge for the wheels and axles. Rather than disclosing the charge to the Plaintiffs, CMH wrongfully profited from their failure to disclose those charges.

99. Plaintiffs, by virtue of the acts of fraud by CMH, were unaware that they were charged for the wheels and axles, actually paid money for the wheels and axles, and CMH profited from their unknowing purchase of the wheels and axles and the re-sale of the wheels and axles unknowingly to the customer to have been bought by them.

100.    Plaintiffs could not have, with the exercise of real caution, prudence, or diligence discovered the charges. In fact, in an effort to conceal the charge, this charge or the representation that the customer is being charged for the wheels and axles were delivered to the Plaintiffs' home but then discreetly kept by CMH's workers.

101.    These facts are intentionally not disclosed to purchaser in an effort to fraudulently induce them into purchasing the home, including the execution of numerous documents.

102.    CMH was previously sued in a class action for the exactly the same practice back in 2005. See Meredith v. Clayton Homes, Inc., No. CV-2005-72-2 (Ark. Cir. Ct. Feb. 17, 2005).

## CLAIM VII – DTPA

103.    Plaintiffs incorporates all of the facts set forth in the preceding and foregoing paragraphs.

104.    Defendant breached express and implied warranties of workmanship and fitness. Breach of these warranties violates § 17.50(a)(2) of Texas Deceptive Trade Practices Act.

*Plaintiff's Original Petition*                                        Page **13** of **21**



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Defendant's breach was a producing cause of Plaintiffs' economic damages. As a result, Plaintiffs have sustained damages as measured by the cost to cover the satisfactory completion of the construction of the home, the living expenses waiting for the home to be inhabitable, and legal expenses.

105.    Defendant's actions were unconscionable, in that they took advantage of the lack of knowledge, ability, experience and capacity of the Plaintiffs, to their detriment, to a grossly unfair degree. As such, Defendant's conduct violates Texas Deceptive Trade Practices Act § 17.50(a)(3).

106.    Defendants have committed the following deceptive acts as enumerated in § 17.46 Texas Deceptive Trade Practices Act and Plaintiffs relied on Defendants to Plaintiffs' detriment:

(1) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(2) advertising goods or services with intent not to sell them as advertised;

(3) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

(4) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

(5) representing that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

(6) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; and

(7) Breach of warranties for use and fitness for a particular purpose.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

107.     Defendant's acts were a producing cause of Plaintiffs' economic damages. As a result, Plaintiffs sustained damages as measured by the cost to cover the construction of a commercially acceptable residence, and the damages resulting therefrom.

108.     Defendant's conduct was committed knowingly and intentionally. As a result of the conduct, Plaintiffs suffered mental anguish. Accordingly, Defendants are liable to Plaintiff for mental anguish damages suffered by Plaintiffs and additional damages of up to three times the amount of economic damages as permitted by the Deceptive Trade Practices Act.

109.     Defendant was advised of Plaintiffs' specific complaints against them. Defendant's conduct as described in this petition, and the resulting damage and loss to Plaintiffs have necessitated Plaintiffs' retention of the attorneys whose names are subscribed to this petition. Plaintiffs are, therefore, entitled to recover from Defendant an additional sum to compensate Plaintiffs for a reasonable fee for such attorney's necessary services in the preparation and prosecution of this action, as well as any and all necessary appeals to this or other courts.

## CLAIM VIII – FALSE REPRESENTATIONS

110.     Plaintiffs incorporates all of the facts set forth in the preceding and foregoing paragraphs.

**111.**     Defendants represented to Plaintiffs that the work would be performed in a good and workman-like manner and in accordance with approve standards when in fact it was not. Defendant further represented to Plaintiffs that the work would be performed by skilled and experienced craftsmen, that the work would be guaranteed, all of which was untrue. This conduct is actionable under DTPA 17.46(b)(5) and(7).

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

112.    The Plaintiffs relied on these representations by CMH when they signed the contract.

113.    The Plaintiffs relied on CMH's representation as to the quality of the home that would be installed.

114. The Plaintiffs relied on CMH's representation as to the materials that would be used in construction.

115. The Plaintiffs relied on CMH's representation as to the clearing of the land surrounding the house.

116. The Plaintiffs are injured both in their person as seen by Mr. Xu falling into a pit trap type hole left behind by the builders, which resulting in him having to get surgery on his leg.

117. The Plaintiffs are injured in their property as to the substantial flooding, increase in standing water, contamination of the ground by the septic system, and the hazards created by not properly filling the land.

118. Defendant's misrepresentation directly and proximately caused injury to Plaintiffs.


## CLAIM IX - RESIDENTIAL CONSTRUCTION LIABILITY ACT

119. Plaintiffs incorporates all of the facts set forth in the preceding and foregoing paragraphs.

120. Defendant's negligence and/or failure to construct the home in a good and workmanlike manner has caused a substantial amount of property damage and bodily injury to Plaintiffs in an amount far in excess of the minimum jurisdictional limits of this Court. Village is liable to Plaintiffs for such damages pursuant to the Residential Construction Liability Act ("RCLA"), Tex. Prop. Code §27.001 *et seq. and the* Deceptive Trade Practice Act.



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

121. Because Defendants failed to make a reasonable offer of settlement pursuant to Tex. Prop. Code §27.004, the limitations on damages set forth in §21.004 do not apply, and Plaintiffs are entitled to recover all damages proximately caused by the construction defects.

122. Fraud claims and DTPA violations supercede the RCLA's mandated procedures.

123. Further, this time period is now elapsed and the Plaintiffs' can file suit.


## CLAIM X – FRAUDULENT MISREPRESENTATIONS

124. Plaintiffs incorporates all of the facts set forth in the preceding and foregoing paragraphs.

125. Defendant committed one or more of the following deceptive, misleading, and improper act or omissions in that they:

    a. Signed a knowingly forged signature on the sale of the home with the intent that the document be a legally binding contract;

    b. Forged Plaintiffs' signature; and

    c. Presented the forged signature to other parties, including the lending company.

126. One such forged document is the arbitration clause, which Plaintiffs had never seen yet her signature appears at the bottom. Defendant knew the signature on that clause was false, and Defendant intended that Plaintiffs and others act upon the misrepresentations.

127. Plaintiffs were clearly damaged as a direct and proximate result of Defendant's misrepresentations and was forced to hire attorneys and experts to demonstrate Defendant's fraud.

128. Defendant's conduct was intentional, willful, and outrageous because of their evil motive and reckless indifference to the rights of others and warrants the imposition of punitive damages in an amount which will punish them and deter others from like conduct.

*Plaintiff's Original Petition*



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

129. Similar claims have been made against Defendant in the past. See *Lemus v. CMH Homes, inc.*, 798 F.Supp.2d 853 (2011).

## CLAIM XI – FRAUDULENT INDUCEMENT

130. Plaintiffs adopts and incorporates herein by reference all prior paragraphs of this Petition as though fully set forth therein.

131. Defendant falsely claim they would build a livable home for the Plaintiffs, while never truly intending to.

132. The Plaintiffs were induced into the contract based upon Defendant's false promises, they relied on Defendant's promise, and were gravely damaged by Defendant's lies and deception.

133. Plaintiffs were damaged as a result of Defendant's fraudulent inducement.

134. This conduct is actionable under TRCP 27.01 as a fraudulent transaction.

## CLAIM XII – FRAUDULENT INDUCEMENT

135. Plaintiffs adopts and incorporates herein by reference all prior paragraphs of this Petition as though fully set forth therein.

136. To be liable for Fraudulent inducement, the Defendant made (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on, and (5) which caused injury.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

137. Defendant falsely claim in their website and their Youtube channel that their homes are built with house wrap, a fabric used on homes to stop dust, moisture, and mold from entering the house. Defendant did not use house wrap when building Plaintiffs' home.

138. Defendant even invited the Plaintiffs to view a model home before the purchase, but the model home was nothing like the home Plaintiffs ultimately received.

139. The model home had house wrap on it.

140. The model home had the proper skirting and all items were installed correctly.

141. Defendant's claims were meant to induce clients into contracts.

142. Plaintiffs relied on Defendant's promise to use house wrap when they entered into a contract.


## CLAIM XIII – NEGLIGENCE (PERSONAL INJURY)

143. Plaintiffs adopts and incorporates herein by reference all prior paragraphs of this Petition as though fully set forth therein.

144. Most personal injury claims in Texas are based on the legal theory of negligence. This cause of action requires that the plaintiff establish the following legal elements by proof by the preponderance of the evidence: (1) The defendant owed the victim a duty of care; (2) the defendant breached this duty it owed to the plaintiff; (3) the breach caused the victim to suffer an injury; and (4) the victim did suffer damages stemming from the injury.

145. Defendant, as the builder of the home, is the entity responsible for construction. Home builders are expected to adhere to certain standards and regulations to ensure that the homes they build are reasonably safe and free from defects. This duty of care is based on the principle that



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

home builders, as professionals in the construction industry, have a responsibility to exercise reasonable care and skill in their work.

146.  Home builders have a duty to identify and rectify any defects or hazards that may pose a risk to the occupants of the home. This includes addressing issues such as faulty wiring, inadequate insulation, plumbing leaks, or any other construction-related deficiencies that could cause harm.

147.  Defendant claimed the work was done and the premises were ready to be moved into, while leaving the property in disarray and susceptible to hazardous flooding.

148.  Plaintiff Xiao Feng Xu fell into a pothole on the premises sometime after the Defendant's claim that the home was "completed" and injured his leg in the process. The injury was infected and required surgery. Mr. Xu is still at risk of losing his leg due to the injury.

149.  The injuries sustained have caused Plaintiffs immense physical pain and suffering, emotional distress, and have significantly impacted the Plaintiffs' ability to carry out their daily activities, including their professional responsibilities. Furthermore, Plaintiffs have incurred substantial medical expenses and anticipate ongoing medical treatment and rehabilitation costs.

150.  Under Texas law, Defendant's negligence in maintaining a hazardous environment and failing to adequately warn or rectify the dangerous condition is a breach of their duty of care towards Plaintiffs. Consequently, Defendants must be held liable for the damages and losses Plaintiffs have suffered as a direct result of their actions.

## **JURY TRIAL**

Plaintiffs request a jury trial.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## PRAYERS

WHEREFORE, Plaintiffs pray for judgment in her favor and against Defendant as requested herein for (i) such sum as is fair and reasonable to be proven at trial, (ii) prejudgment interest thereon at the statutory rate plus post-judgment interest at the highest rate allowed by law, (iii) punitive damages, (iv) emotional damages, (v) attorneys' fees and costs, and (vi) such other and further relief at law, and in equity, as is just.

Respectfully submitted,

*/s/ Charles Moster*
Charles Moster
State Bar No. 00797782
cmoster@themosterlawfirm.com
Matthew Burr
State Bar No. 03458600
mburr@themosterlawfirm.com

**The Moster Law Firm, PC.**
4920 South Loop 289, Suite 101
Lubbock, TX 79414
Tel: (806) 778-6486
Fax: (866) 302-7046
*Counsel for Plaintiffs*

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# EXHIBIT "A"

Loan Number: 204546983

Lender:  AMCAP MORTGAGE, LTD.

## USA PATRIOT ACT
## CUSTOMER IDENTIFICATION VERIFICATION
### IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

### INSTRUCTIONS TO INDIVIDUAL COMPLETING THIS VERIFICATION
The named individual must present at least two (2) forms of identifying documents for review; at least one (1) of the identifying documents must be an unexpired government-issued document bearing a photograph of the named individual. Other identifying documents not specifically listed below must, at a minimum, bear the individual's name. Examples of other acceptable identifying documents include:

Current government-issued visa; Medicare card; student identification card; voter registration card; recent property tax or utility bill; most recent W-2 or signed federal or state tax returns; bank statements; and proof of car/house/renter's insurance coverage. Please contact the above-named Lender if you have any questions regarding the acceptability of any identifying document.

Borrower's Name:  MICHELE LESHA XU                     Date of Birth:  July 5, 1981
☐ Residential or  ☐ Business Address:* 17500 GHOST ROAD
                                        SARATOGA, TX 77565
Taxpayer Identification Number (SSN):** 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

| Identifying Documents | Place of Issuance | ID Number | Date of Birth | Issue/Expiration Date(s) | Photo? |
|---|---|---|---|---|---|
| ☐ State/Foreign Driver's License | | | | ----------- | ☐ Yes ☐ No |
| ☐ State/Foreign ID Card | | | | ----------- | ☐ Yes ☐ No |
| ☐ U.S./Foreign Passport | | | | ----------- | ☐ Yes ☐ No |
| ☐ Military ID | | | | ----------- | ☐ Yes ☐ No |
| ☐ Resident Alien Card | | | | ----------- | ☐ Yes ☐ No |
| ☐ Social Security Card | | | | ----------- | |
| ☐ Birth Certificate | | | | ----------- | |
| ☐ Other: | | | | ----------- | ☐ Yes ☐ No |
| ☐ Other: | | | | ----------- | ☐ Yes ☐ No |

*For an individual without a residential or business address, provide an APO or FPO box number, or the residential or business address of next of kin or another contact person.
**For non-U.S. persons without a tax identification number, provide a passport number and country of issuance; an alien identification card number, or the number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**ADDITIONAL COMMENTS**
(e.g., please note any discrepancies in the borrower's identifying documents): _____

_____

_____

**CERTIFICATION**
I, the undersigned, hereby certify that: (i) I have personally examined the identifying documents indicated above presented to me by the named individual, (ii) I have accurately recorded the information appearing in the identifying documents I examined, and (iii) except as may be indicated above, each of the indicated identifying documents appears to be genuine, the information contained in the identifying documents is consistent in all respects with the information provided by the named individual, and, where applicable, the photograph appears to be that of the named individual.

Michele Tesha XL     6-3-2022
Signature                             Date

Name and Title



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Closing Disclosure

This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| Date Issued | 6/2/2022 | Borrower | Michele Lesha Xu | Loan Term | 30 years |
| Closing Date | 6/2/2022 | | 17500 Ghost Road | Purpose | Refinance |
| Disbursement Date | 6/3/2022 | | Saratoga, TX 77585 | Product | Fixed Rate |
| Settlement Agent | INDEPENDENCE TITLE | Seller | LINDSEY B. WHISENHANT, AS INDEPENDENT | | |
| File # | 2213851-SHSA | | PO BOX 267 | Loan Type | ☐ Conventional ☒ FHA |
| Property | 17500 Ghost Road | | Kountze, TX 77625-0267 | | ☐ VA ☐ _____ |
| | Saratoga, TX 77585 | Lender | AmCap Mortgage, Ltd. | Loan ID # | 204546983 |
| Appraised Prop. Value | $365,000 | | | MIC # | 512-4867978-703 |

## Loan Terms

| Loan Terms | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $333,841 | **NO** |
| **Interest Rate** | 5.125 % | **NO** |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $1,817.72 | **NO** |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **NO** |

## Projected Payments

| Payment Calculation | | Years 1-30 |
|---|---|---|
| Principal & Interest | | $1,817.72 |
| Mortgage Insurance | + | 230.88 |
| Estimated Escrow *Amount can increase over time* | + | 102.98 |
| **Estimated Total Monthly Payment** | | **$2,151.58** |

| **Estimated Taxes, Insurance & Assessments** *Amount can increase over time* *See page 4 for details* | $102.98 Monthly | **This estimate includes** ☒ Property Taxes ☒ Homeowner's Insurance ☐ Other: *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | **In escrow?** YES YES |
|---|---|---|---|

## Costs at Closing

| **Closing Costs** | $39,301.24 | Includes $22,683.74 in Loan Costs + $16,634.42 in Other Costs - $16.92 in Lender Credits. *See page 2 for details.* |
|---|---|---|
| **Cash to Close** | $24,579.48 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Closing Cost Details

| Loan Costs | | Borrower-Paid | | Seller-Paid | | Paid by |
|---|---|---|---|---|---|---|
| | | At Closing | Before Closing | At Closing | Before Closing | Others |
| **A. Origination Charges** | | **$12,366.37** | | | | |
| 01 3.225 % of Loan Amount (Points) | | $10,766.37 | | | | |
| 02 Administration Fee | | $1,600.00 | | | | |
| 03 | | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$7,121.17** | | | | |
| 01 Appraisal Fee | to Property Interlink | | $900.00 | | | |
| 02 Credit Report | to MFI CREDIT SOLUTIONS | $116.92 | | | | |
| 03 Document Preparation Fee | to C&R Docs | $350.00 | | | | |
| 04 Flood Certification | to Altisource | $12.50 | | | | |
| 05 Mortgage Insurance Premium | to HUD | $5,741.75 | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| 09 | | | | | | |
| 10 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$3,196.20** | | | | |
| 01 Title - Lender's Title Insurance | to INDEPENDENCE TITLE | $2,064.00 | | | | |
| 02 Title - Messenger Fee | to INDEPENDENCE TITLE | $75.00 | | | | |
| 03 Title - Notary Fee | to INDEPENDENCE TITLE | $150.00 | | | | |
| 04 Title - Settlement Fee | to INDEPENDENCE TITLE | $550.00 | | | | |
| 05 Title - Title Endorsement Fee | to INDEPENDENCE TITLE | $353.20 | | | | |
| 06 Title - TX GARC Fee | to Texas Title Insurance Guaranty | $4.00 | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$22,683.74** | | | | |
| Loan Costs Subtotals (A + B + C) | | $21,783.74 | $900.00 | | | |

| Other Costs | | | | | | |
|---|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$478.00** | | | | |
| 01 Recording Fees | Deed: $34.00     Mortgage: $134.00 | $478.00 | | | | |
| 02 | | | | | | |
| **F. Prepaids** | | **$1,080.00** | | | | |
| 01 Homeowner's Insurance Premium (12 mo.) to FUNK INSURANCE GROUP | | $1,080.00 | | | | |
| 02 Mortgage Insurance Premium ( mo.) | | | | | | |
| 03 Prepaid Interest (     per day from     to     ) | | $0.00 | | | | |
| 04 Property Taxes ( mo.) | | | | | | |
| 05 | | | | | | |
| **G. Initial Escrow Payment at Closing** | | **$308.94** | | | | |
| 01 Homeowner's Insurance     $90.00 per month for 3 mo. | | $270.00 | | | | |
| 02 Mortgage Insurance     per month for mo. | | | | | | |
| 03 Property Taxes     $12.98 per month for 13 mo. | | $168.74 | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 Aggregate Adjustment | | -$129.80 | | | | |
| **H. Other** | | **$14,767.48** | | | | |
| 01 Payoff (Existing Liens & Unsecured Debt) to Capital One | | $14,579.48 | | | | |
| 02 Real Estate Commission | to eXp Realty | | | $4,009.50 | | |
| 03 Real Estate Commission | to Exit Realty | | | $4,009.50 | | |
| 04 SOI Issuance Fee | to TDHCA | $55.00 | | | | |
| 05 Title - Owner's Title Insurance (optional) to INDEPENDENCE TITLE | | $133.00 | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$16,634.42** | | | | |
| Other Costs Subtotals (E + F + G + H) | | $16,634.42 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$39,301.24** | | | | |
| Closing Costs Subtotals (D + I) | | $38,418.16 | $900.00 | $8,019.00 | | |
| Lender Credits (Includes $16.92 credit for increase in Closing Costs above legal limit) | | -$16.92 | | | | |

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? | |
|---|---|---|---|---|
| Total Closing Costs (J) | $26,165.00 | $39,301.24 | YES | See Total Loan Costs (D) and Total Other Costs (I). Increase exceeds legal limits by $16.92. See Lender Credits on page 2 for credit of excess amount. |
| Closing Costs Paid Before Closing | $0 | -$900.00 | YES | You paid these Closing Costs before closing. |
| Closing Costs Financed (Paid from your Loan Amount) | -$5,910.00 | -$5,741.00 | YES | You included these closing costs in the loan amount, which increased the loan amount. |
| Down Payment/Funds from Borrower | $12,250.00 | $11,900.00 | YES | You decreased this payment. |
| Deposit | $0 | -$1,000.00 | YES | You increased this payment. See Deposit in Section L. |
| Funds for Borrower | $0 | $0 | NO | |
| Seller Credits | -$20,216.00 | $0 | YES | See Seller-Paid column on page 2 and Seller Credits in Section L. |
| Adjustments and Other Credits | $0 | -$18,980.76 | YES | See details in Section K and Section L. |
| Cash to Close | $12,287.00 | $24,579.48 | | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| K. Due from Borrower at Closing | $378,401.24 |
|---|---|
| 01 Sale Price of Property | $340,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $38,401.24 |
| 04 | |
| Adjustments | |
| 05 | |
| 06 | |
| 07 | |
| Adjustments for Items Paid by Seller in Advance | |
| 08 City/Town Taxes    to | |
| 09 County Taxes    to | |
| 10 Assessments    to | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $353,821.76 |
|---|---|
| 01 Deposit | $1,000.00 |
| 02 Loan Amount | $333,841.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | |
| 05 Seller Credit | |
| Other Credits | |
| 06 Builder credit | $16,728.29 |
| 07 | |
| Adjustments | |
| 08 Title policy adjustment (builder) | $2,099.00 |
| 09 | |
| 10 Option fee | $100.00 |
| 11 | |
| Adjustments for Items Unpaid by Seller | |
| 12 City/Town Taxes    to | |
| 13 County Taxes    01/01/22 to 05/27/22 | $53.47 |
| 14 Assessments    to | |
| 15 | |
| 16 | |
| 17 | |

### CALCULATION

| Total Due from Borrower at Closing (K) | $378,401.24 |
|---|---|
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$353,821.76 |
| Cash to Close [X] From [ ] To Borrower | $24,579.48 |

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | |
|---|---|
| 01 Sale Price of Property | |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| Adjustments for Items Paid by Seller in Advance | |
| 09 City/Town Taxes    to | |
| 10 County Taxes    to | |
| 11 Assessments    to | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | |
|---|---|
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| Adjustments for Items Unpaid by Seller | |
| 14 City/Town Taxes    to | |
| 15 County Taxes    to | |
| 16 Assessments    to | |
| 17 | |
| 18 | |
| 19 | |

### CALCULATION

| Total Due to Seller at Closing (M) | |
|---|---|
| Total Due from Seller at Closing (N) | |
| Cash [ ] From [ ] To Seller | |

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Additional Information About This Loan

## Loan Disclosures

### Assumption

If you sell or transfer this property to another person, your lender

☒ will allow, under certain conditions, this person to assume this loan on the original terms.

☐ will not allow assumption of this loan on the original terms.

### Demand Feature

Your loan

☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment

If your payment is more than *15* days late, your lender will charge a late fee of *4% of the principal and interest overdue.*

### Negative Amortization (Increase in Loan Amount)

Under your loan terms, you

☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments

Your lender

☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☒ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in
*17500 Ghost Road, Saratoga, TX 77585*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

*For now,* your loan

☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $2,337.02 | Estimated total amount over year 1 for your escrowed property costs: *See attached page for additional information* |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs: You may have other property costs. |
| Initial Escrow Payment | $308.94 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $333.86 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

*In the future,*

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $729,311.74 |
| **Finance Charge.** The dollar amount the loan will cost you. | $392,032.62 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $314,595.38 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 6.534 % |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 96.015 % |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | AmCap Mortgage, Ltd. | | eXp Realty, LLC | Exit Realty Property Pros | INDEPENDENCE TITLE |
| **Address** | 1130 Hillcrest Drive New Braunfels, TX 78130 | | Addison, TX 75001 | Lumberton, TX 77657 | 4917 FM 3009 BLDG 2 Schertz, TX 78154 |
| **NMLS ID** | 129122 | | | | |
| **TX License ID** | 129122 | | 603392 | 9006708 | 2329885 |
| **Contact** | Chad Stephan | | Jenni Shipman | Jacey Kay Carter | TAMI PICKENS |
| **Contact NMLS ID** | 1670704 | | | | |
| **Contact TX License ID** | | | 622946 | 0588021 | 1885910 |
| **Email** | cstephan@myamcap.com | | jennifer.shipman@exprealty.com | propertyprojck@gmail.com | tpickens@independencetitle.com |
| **Phone** | 512-608-0205 | | 806-632-8619 | 409-454-0500 | 210-651-4171 |



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Addendum to Closing Disclosure

*This form is a continued statement of final loan terms and closing costs.*

**Seller**

LINDSEY B. WHISENHANT, AS INDEPENDENT EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED
PO BOX 267
Kountze, TX 77625-0267

JO ANN WHISENHANT

## Additional Information About This Loan

### Loan Disclosures

**Escrow Account**

| Escrow | | | |
|---|---|---|---|
| Escrowed Property Costs over Year 1 | | $2,337.02 | Estimated total amount over year 1 for your escrowed property costs: *Property Taxes, Homeowner's Insurance, Mortgage Insurance* |

### Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_____  6-2-2022
Michele Lesha Xu                   DATE

_____  6-2-2022
Xiaofeng Xu                        DATE

CLOSING DISCLOSURE • GTRIDCDWS_S 0617

LOAN ID # 204546983

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| Date Issued | 6/2/2022 | Borrower | Michele Lesha Xu | Loan Term | 4 mo. |
| Closing Date | 6/2/2022 | | 4855 Lazy Timbers Dr | Purpose | Purchase |
| Disbursement Date | 6/2/2022 | | Humble, TX 77346 | Product | Fixed Rate |
| Settlement Agent | | Seller | | | |
| File # | | | | Loan Type | ☒ Conventional ☐ FHA |
| Property | 17500 Ghost Road | | | | ☐ VA ☐ ___ |
| | Saratoga, TX 77585 | Lender | AmCap Mortgage, Ltd. | Loan ID # | 204547243 |
| Estimated Prop. Value | | | | MIC # | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $328,100 | **NO** |
| **Interest Rate** | 6.5 % | **NO** |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $888.61 | **YES** · Adjusts every month starting in month 1 · Can go as high as $1,777 in month 1 · Includes only interest and no principal until · See AP Table on page 4 for details |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | **NO** |
| **Balloon Payment** | | **YES** · You will have to pay $328,989 at the end of |

## Projected Payments

| Payment Calculation | | Year 1 | Final Payment |
|---|---|---|---|
| Principal & Interest | | $888.61 *only interest* | $328,988.61 |
| Mortgage Insurance | + | 0 | + 0 |
| Estimated Escrow *Amount can increase over time* | + | 0 | + 0 |
| **Estimated Total Monthly Payment** | | **$888.61** | **$328,988.61** |

| Estimated Taxes, Insurance & Assessments *Amount can increase over time* *See page 4 for details* | $0.00 Monthly | **This estimate includes** **In escrow?** ☐ Property Taxes ☐ Homeowner's Insurance ☐ Other: *See Escrow Account on page 4 for details. You must pay for other property costs separately.* |
|---|---|---|

## Costs at Closing

| **Closing Costs** | $0.00 | Includes $0 in Loan Costs + $0.00 in Other Costs - $0 in Lender Credits. See page 2 for details. |
|---|---|---|
| **Cash to Close** | $0 | Includes Closing Costs. See Calculating Cash to Close on page 3 for details. |

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Closing Cost Details

| Loan Costs | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|
| | At Closing | Before Closing | At Closing | Before Closing | |
| **A. Origination Charges** | | | | | |
| 01 % of Loan Amount (Points) | | | | | |
| 02 Construction Loan Fee | | | | $5,172.71 | |
| 03 | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **B. Services Borrower Did Not Shop For** | | | | | |
| 01 | | | | | |
| 02 | | | | | |
| 03 | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| 09 | | | | | |
| 10 | | | | | |
| **C. Services Borrower Did Shop For** | | | | | |
| 01 | | | | | |
| 02 | | | | | |
| 03 | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | | | | |
| Loan Costs Subtotals (A + B + C) | | | | | |

| Other Costs | | | | | |
|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | | | | |
| 01 Recording Fees          Deed:        Mortgage: | | | | | |
| 02 | | | | | |
| **F. Prepaids** | | | | | |
| 01 Homeowner's Insurance Premium ( mo.) | | | | | |
| 02 Mortgage Insurance Premium ( mo.) | | | | | |
| 03 Prepaid Interest ( per day from   to   ) | $0.00 | | | | |
| 04 Property Taxes ( mo.) | | | | | |
| 05 | | | | | |
| **G. Initial Escrow Payment at Closing** | | | | | |
| 01 Homeowner's Insurance   per month for  mo. | | | | | |
| 02 Mortgage Insurance   per month for  mo. | | | | | |
| 03 Property Taxes   per month for  mo. | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 Aggregate Adjustment | $0.00 | | | | |
| **H. Other** | | | | | |
| 01 | | | | | |
| 02 | | | | | |
| 03 | | | | | |
| 04 | | | | | |
| 05 | | | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | | | | |
| Other Costs Subtotals (E + F + G + H) | | | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | | | | |
| Closing Costs Subtotals (D + I) | | | | $5,172.71 | |
| Lender Credits | | | | | |

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $6,540.00 | $0 | YES · See Total Loan Costs (D). |
| Closing Costs Paid Before Closing | $0 | $0 | NO |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO |
| Down Payment/Funds from Borrower | $0 | -$328,100.00 | YES · You decreased this payment. |
| Deposit | $0 | $0 | NO |
| Funds for Borrower | $0 | $0 | NO |
| Seller Credits | -$6,540.00 | $0 | YES · See Seller-Paid column on page 2 and Seller Credits in Section L. |
| Adjustments and Other Credits | $0 | $328,100.00 | YES · See details in Section K and Section L. |
| Cash to Close | $0 | $0 | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| K. Due from Borrower at Closing | $328,100.00 |
|---|---|
| 01 Sale Price of Property | |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | |
| 04 | |

**Adjustments**
| 05 loan # 204546983 | $328,100.00 |
| 06 | |
| 07 | |

**Adjustments for Items Paid by Seller in Advance**
| 08 City/Town Taxes to | |
| 09 County Taxes to | |
| 10 Assessments to | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |

| L. Paid Already by or on Behalf of Borrower at Closing | $328,100.00 |
|---|---|
| 01 Deposit | |
| 02 Loan Amount | $328,100.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | |
| 05 Seller Credit | |

**Other Credits**
| 06 | |
| 07 | |

**Adjustments**
| 08 | |
| 09 | |
| 10 | |
| 11 | |

**Adjustments for Items Unpaid by Seller**
| 12 City/Town Taxes to | |
| 13 County Taxes to | |
| 14 Assessments to | |
| 15 | |
| 16 | |
| 17 | |

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | |
|---|---|
| 01 Sale Price of Property | |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |

**Adjustments for Items Paid by Seller in Advance**
| 09 City/Town Taxes to | |
| 10 County Taxes to | |
| 11 Assessments to | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| N. Due from Seller at Closing | |
|---|---|
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |

**Adjustments for Items Unpaid by Seller**
| 14 City/Town Taxes to | |
| 15 County Taxes to | |
| 16 Assessments to | |
| 17 | |
| 18 | |
| 19 | |

### CALCULATION (Borrower)

| Total Due from Borrower at Closing (K) | $328,100.00 |
|---|---|
| Total Paid Already by or on Behalf of Borrower at Closing (L) | -$328,100.00 |
| Cash to Close ☒ From ☐ To Borrower | $0 |

### CALCULATION (Seller)

| Total Due to Seller at Closing (M) | |
|---|---|
| Total Due from Seller at Closing (N) | |
| Cash ☐ From ☐ To Seller | |

# Additional Information About This Loan

## Loan Disclosures

### Assumption
If you sell or transfer this property to another person, your lender
☐ will allow, under certain conditions, this person to assume this loan on the original terms.
☒ will not allow assumption of this loan on the original terms.

### Demand Feature
Your loan
☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.
☒ does not have a demand feature.

### Late Payment
If your payment is more than *15* days late, your lender will charge a late fee of *5% of the interest payment due.*

### Negative Amortization (Increase in Loan Amount)
Under your loan terms, you
☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.
☒ do not have a negative amortization feature.

### Partial Payments
Your lender
☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.
☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.
☒ does not accept any partial payments.
If this loan is sold, your new lender may have a different policy.

### Security Interest
You are granting a security interest in
*17500 Ghost Road, Saratoga, TX 77585*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

## Adjustable Payment (AP) Table

| Interest Only Payments? | YES |
|---|---|
| Optional Payments? | NO |
| Stop Payments? | NO |
| Seasonal Payments? | NO |

### Monthly Principal and Interest Payments

| | |
|---|---|
| First Change/Amount | 1st Payment |
| Subsequent Changes | Every Payment |
| Maximum Payment | $1,777 as early as the 1st Payment |

### Escrow Account
*For now,* your loan
☐ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | |
|---|---|
| Escrowed Property Costs over Year 1 | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs over Year 1 | Estimated total amount over year 1 for your non-escrowed property costs: |
| | You may have other property costs. |
| Initial Escrow Payment | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | The amount included in your total monthly payment. |

☒ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | |
|---|---|
| Estimated Property Costs over Year 1 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | |

### In the future,
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $331,654.42 |
| **Finance Charge.** The dollar amount the loan will cost you. | $3,554.42 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $328,100.00 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 6.5 % |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 1.083 % |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | AmCap Mortgage, Ltd. | | | | |
| **Address** | 1130 Hillcrest Drive New Braunfels, TX 78130 | | | | |
| **NMLS ID** | 129122 | | | | |
| **TX License ID** | | | | | |
| **Contact** | Chad Stephan | | | | |
| **Contact NMLS ID** | 1670704 | | | | |
| **Contact TX License ID** | | | | | |
| **Email** | cstephan@myamcap.com | | | | |
| **Phone** | 512-608-0205 | | | | |

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Addendum to Closing Disclosure

*This form is a continued statement of final loan terms and closing costs.*

---

### Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

Michele Lesha Xu                          6-2-2022
_____          _____
Michele Lesha Xu                          DATE

                                          6-2-2022
_____          _____
Xiaofeng Xu                               DATE

LOAN ID # 204547243

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Closing Disclosure

## Closing Information

| | |
|---|---|
| Date Issued | 6/1/2022 |
| Closing Date | 6/2/2022 |
| Disbursement Date | 6/2/2022 |
| Settlement Agent | Independence Title |
| File # | 2213851-SHSA |
| Property | AB 340 W JOHNSON P# 340-2 I# 877/273, Hardin County, TX |
| | TBD Ghost Road |
| | Saratoga, TX 77585 |
| Sale Price | $133,650.00 |

## Transaction Information

| | |
|---|---|
| Borrower | Michele Lesha Xu |
| Seller | The Estate of Gene Whisenhant |

## Summaries of Transactions

### SELLER'S TRANSACTION

| | | |
|---|---|---|
| **Due to Seller at Closing** | | **$133,650.00** |
| 01 | Sale Price of Property | $133,650.00 |
| 02 | Sale Price of Any Personal Property Included in Sale | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 09 | City Property Taxes | |
| 10 | City property taxes | |
| 11 | County property taxes | |
| 12 | School property taxes | |
| 13 | MUD Taxes | |
| 14 | HOA Dues | |
| 15 | | |
| 16 | | |
| **Due from Seller at Closing** | | **$14,650.49** |
| 01 | Excess Deposit | |
| 02 | Closing Costs Paid at Closing (J) | $14,597.02 |
| 03 | Existing Loan(s) Assumed or Taken Subject to | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| 09 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| **Adjustments for Items Unpaid by Seller** | | |
| 14 | City Property Taxes | |
| 15 | City property taxes    1/1/2022    thru 6/2/2022 | $53.47 |
| 16 | County property taxes | |
| 17 | School property taxes | |
| 18 | MUD Taxes | |
| 19 | HOA Dues | |

### CALCULATION

| | |
|---|---|
| Total Due to Seller at Closing | $133,650.00 |
| Total Due from Seller at Closing | -$14,650.49 |
| Cash ☐ From ☒ To Seller | $118,999.51 |

## Contact Information

### REAL ESTATE BROKER (B)

| | |
|---|---|
| Name | eXp Realty LLC |
| Address | 15305 Dallas Pkwy Ste 300 Addison, TX 75001 |
| TX License ID | |
| Contact | Jenni Shipman |
| Contact TX License ID | |
| Email | jennifer.shipman@exprealty.com |
| Phone | 214-378-3667 |

### REAL ESTATE BROKER (S)

| | |
|---|---|
| Name | Exit Realty Property Pros |
| Address | 122 Country Lane Drive Lumberton, TX 77657 |
| TX License ID | |
| Contact | Jacey Carter |
| Contact TX License ID | |
| Email | PropertyProjck@gmail.com |
| Phone | |

### SETTLEMENT AGENT

| | |
|---|---|
| Name | Independence Title |
| Address | 4917 FM 3009, Bldg. 2 Schertz, TX 78154 |
| TX License ID | 2329885 |
| Contact | Tami Pickens Becky Hillyer |
| Contact TX License ID | 1885910, 1885794 |
| Email | tpickens@independencetitle.com; bhillyer@independencetitle.com |
| Phone | 210-651-4171 |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information above. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at www.consumerfinance.gov/mortgage-closing



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Closing Cost Details

| Loan Costs | | | Seller-Paid | |
|---|---|---|---|---|
| | | | At Closing | Before Closing |
| **A. Origination Charges** | | | | |
| 01  3.225% of Loan Amount (Points) | to | AmCap Mortgage, Ltd | | |
| 02  Admin Fee | to | Amcap Mortgage,LTD | | |
| 03  Origination Fee | to | AMCAP MORTGAGE LTD DBA FISHER HOME LENDING GROUP | | |
| **B. Services Borrower Did Not Shop For** | | | $75.00 | |
| 01  Appraisal Fee | to | Amcap Mortgage,LTD | | |
| 02  Credit Report | to | Amcap Mortgage,LTD | | |
| 03  Document Preparation | to | C&R Docs | $75.00 | |
| 04  Flood Certificate | to | Amcap Mortgage,LTD | | |
| 05  UFMIP | to | Dept of HUD | | |
| **C. Services Borrower Did Shop For** | | | $425.00 | |
| 01  Accommodation Signing | to | Notarize 247 | $125.00 | |
| 02  Accomodation Signing | to | Notary | | |
| 03  TX Guaranty Fee | to | Texas Title Insurance Guaranty Association | | |
| 04  Title - End T-19 REM LP RES | to | Independence Title Co. | | |
| 05  Title - End T-19.2 MSD LP RES | to | Independence Title Co. | | |
| 06  Title - End T-3 Compltn of Improvmnts | to | Independence Title Co. | | |
| 07  Title - End T-3 Down Date LP | to | Independence Title Co. | | |
| 08  Title - End T-31 MHU | to | Independence Title Co. | | |
| 09  Title - End T-31.1 LP MHU Supplement | to | Independence Title Co. | | |
| 10  Title - End T-36 EPL | to | Independence Title Co. | | |
| 11  Title - End T-38 Modification, Etc | to | Independence Title Co. | | |
| 12  Title - Lender's Title Insurance | to | Independence Title Co. | | |
| 13  Title - Tax Amendment - NYD&P | to | Independence Title Co. | | |
| 14  Title-Courier Fee | to | Independence Title Co. | $25.00 | |
| 15  Title-Escrow Fee | to | Independence Title Co. | $275.00 | |
| 16  Title-eRecording | to | Independence Title Co. | | |

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Other Costs

**E. Taxes and Other Government Fees**

| | | |
|---|---|---|
| 01 Recording Fees | Deed: $34.00    Mortgage: $134.00 to Independence Title Co. | |
| 02 Transfer Tax | to | |
| 03 Aff of Commencement 34/38 | to Independence Title Co. | |
| 04 Affidavit of Completion 42/46 | to Independence Title Co. | |
| 05 Affixation Affidavit 46 | to Independence Title Co. | |
| 06 Mechanic's Lien Contract (7 + L) | to Independence Title Co. | |
| 07 Modification 54/58 | to Independence Title Co. | |
| 08 SOL (2 + L) | to Independence Title Co. | |
| 09 TX Bills Pd Affidavit 38 | to Independence Title Co. | |
| 10 Title Surrender | to TDHCA | |

**F. Prepaids**

| | | |
|---|---|---|
| 01 Homeowner's Insurance Premium (12 mo.) | to Funk Insurance Group | |
| 02 Mortgage Insurance Premium ( mo.) | to | |
| 03 Prepaid Interest ( per day from 06/02/2022 to 07/01/2022) | to Amcap Mortgage,LTD | |
| 04 Property Taxes ( mo.) | to | |

**G. Initial Escrow Payment at Closing to Amcap Mortgage,LTD**

| | | |
|---|---|---|
| 01 Homeowner's Insurance | $90.00 per month for 3 mo. | |
| 02 Mortgage Insurance | per month for mo. | |
| 03 Property Taxes | $12.98 per month for 13 mo. | |
| 04 Property Taxes | per month for mo. | |
| 05 City Property Taxes | per month for mo. | |
| 06 County Property Taxes | per month for mo. | |
| 07 School Taxes | per month for mo. | |
| 08 MUD Taxes | per month for mo. | |
| 09 HOA Taxes | per month for mo. | |
| 10 Aggregate Adjustment | | |

**H. Other** | | $14,097.02 |

| | | |
|---|---|---|
| 01 Document Preparation for Release | to | |
| 02 HOA Dues | to | |
| 03 Payoff | to Capital One | |
| 04 Real Estate Commission – Buyer's Realtor | to eXp Realty LLC | $4,009.50 |
| 05 Real Estate Commission – Seller's Realtor | to Exit Realty Property Pros | $4,009.50 |
| 06 Survey Final | to Amcap Mortgage,LTD | |
| 07 Survey Initial | to JAMA Group LLC | $6,034.72 |
| 08 TX Guaranty Fee | to Texas Title Insurance Guaranty Association | |
| 09 Tax Certificate | to Texas Real Tax Services, Ltd. | $43.30 |
| 10 Title – 40% of Title Premium | to Stewart Title Company | |
| 11 Title – Owner's Title Insurance (optional) | to Independence Title Co. | |

**J. TOTAL CLOSING COSTS** | | $14,597.02 |

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

The Estate of Gene Whisenhant

Lindsey B Whisenhant, Independent
Executor of the Estate of Gene A
Whisenhant

Jo Ann Whisenhant



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

| American Land Title Association | ALTA Settlement Statement - Combined |
| --- | --- |
| | Adopted 05-01-2015 |

| | |
| --- | --- |
| **File No./Escrow No.:** 2213851-SHSA | **Independence Title** |
| **Print Date & Time:** 06/02/22 11:01 AM | **ALTA Universal ID:** 1018902 |
| **Officer/Escrow Officer:** | 5900 Shepherd Mountain Cove, Bldg 2, |
| **Settlement Location:** | Ste. 200 |
| Independence Title | Austin, TX 78730 |
| 4917 FM 3009, Bldg. 2 | |
| Schertz, TX 78154 | |

| | |
| --- | --- |
| **Property Address:** | AB 340 W JOHNSON P# 340-2 I# 877/273, Hardin County, TX |
| | TBD Ghost Road |
| | Saratoga, TX 77585 |
| **Borrower:** | Michele Lesha Xu |
| **Seller:** | The Estate of Gene Whisenhant |
| **Lender:** | AmCap Mortgage, Ltd, 9999 Bellaire Blvd Suite 700, Houston, TX, 77036 |
| **Loan Number:** | 204546983 |
| **Settlement Date:** | 06/02/2022 |
| **Disbursement Date:** | 06/02/2022 |
| **Additional dates per state requirements:** | |

| Seller | | Description | Borrower/Buyer | |
| --- | --- | --- | --- | --- |
| Debit | Credit | | Debit | Credit |
| | | **Financial** | | |
| | $133,650.00 | Sale Price of Property | $133,650.00 | |
| | | Deposit | | $1,000.00 |
| | | Loan Amount | | $333,841.00 |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | | Unit Contract to CMH Homes Inc | $206,350.00 | |
| | | Builder Concessions | | $16,728.29 |
| | | Option Fee | | $100.00 |
| | | OTP Credit from Builder | | $2,099.00 |
| $53.47 | | City property taxes from 01/01/2022 thru 06/02/2022 | | $53.47 |
| | | | | |
| | | **Loan Charges to AmCap Mortgage, Ltd** | | |
| | | 3.225% of Loan Amount (Points) | $10,766.37 | |
| | | Admin Fee | $1,600.00 | |
| | | | | |
| | | **Other Loan Charges** | | |
| | | Appraisal Fee $900.00 Borrower-Paid Before Closing | | |
| | | Credit Report to Amcap Mortgage,LTD | $116.92 | |
| $75.00 | | Document Preparation to C&R Docs | $350.00 | |
| | | Flood Certificate to Amcap Mortgage,LTD | $12.50 | |
| | | UFMIP to Dept of HUD | $5,741.75 | |

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2213851-SHSA
Printed on: 06/02/22 11:01 AM



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

| Seller Debit | Seller Credit | Description | Borrower/Buyer Debit | Borrower/Buyer Credit |
|---|---|---|---|---|
| | | **Impounds** | | |
| | | Homeowner's insurance $90.00 per month for 3 mo. | $270.00 | |
| | | Property Taxes $12.98 per month for 13 mo. | $168.74 | |
| | | Aggregate Adjustment | -$129.80 | |
| | | | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| | | Title - End T-19 REM LP RES to Independence Title Co. | $103.20 | |
| | | Title - End T-3 Down Date LP to Independence Title Co. | $50.00 | |
| | | Title - End T-31 MHU to Independence Title Co. | $20.00 | |
| | | Title - End T-31.1 LP MHU Supplement to Independence Title Co. | $50.00 | |
| | | Title - End T-36 EPL to Independence Title Co. | $25.00 | |
| | | Title - End T-38 Modification, Etc to Independence Title Co. | $100.00 | |
| | | Title - Lender's Title Insurance($2,064.00) to Independence Title Co. | $100.00 | |
| | | Title - Tax Amendment - NYD&P to Independence Title Co. | $5.00 | |
| $25.00 | | Title-Courier Fee to Independence Title Co. | $75.00 | |
| $275.00 | | Title-Escrow Fee to Independence Title Co. | $550.00 | |
| | | Title-eRecording to Independence Title Co. | | |
| | | Title Surrender to TDHCA | $55.00 | |
| | | Title - Owner's Title Insurance($133.00) to Independence Title Co. | $2,097.00 | |
| | | | | |
| | | **Commission** | | |
| $4,009.50 | | Real Estate Commission - Buyer's Realtor to eXp Realty LLC | | |
| $4,009.50 | | Real Estate Commission - Seller's Realtor to Exit Realty Property Pros | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Recording Fee (Deed) to Independence Title Co. | $34.00 | |
| | | Recording Fee (Mortgage) to Independence Title Co. | $134.00 | |
| | | Aff of Commencement 34/38 to Independence Title Co. | $38.00 | |
| | | Affidavit of Completion 42/46 to Independence Title Co. | $46.00 | |
| | | Affixation Affidavit 46 to Independence Title Co. | $46.00 | |
| | | Mechanic's Lien Contract (7 + L) to Independence Title Co. | $54.00 | |
| | | Modification 54/58 to Independence Title Co. | $54.00 | |
| | | SOL (2 + L) to Independence Title Co. | $34.00 | |
| | | TX Bills Pd Affidavit 38 to Independence Title Co. | $38.00 | |
| | | | | |
| | | **Miscellaneous** | | |
| | | Lender Credits | | $16.92 |
| $125.00 | | Accommodation Signing to Notarize 247 | | |
| | | Accomodation Signing to Notary | $150.00 | |
| | | TX Guaranty Fee to Texas Title Insurance Guaranty Association | $2.00 | |
| | | Homeowner's Insurance Premium to Funk Insurance Group | $1,080.00 | |
| | | Document Preparation for Release | | |
| | | HOA Dues | | |
| | | Payoff to Capital One | $14,579.48 | |

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2213851-SHSA
Printed on: 06/02/22 11:01 AM

Filed  7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | Survey  Final to Amcap Mortgage,LTD | | |
| $6,034.72 | | Survey  Initial to JAMA Group LLC | | |
| | | TX Guaranty Fee to Texas Title Insurance Guaranty Association | $2.00 | |
| $43.30 | | Tax Certificate to Texas Real Tax Services, Ltd. | | |

| Seller | | | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| $14,650.49 | $133,650.00 | **Subtotals** | $378,418.16 | $353,838.68 |
| | | Due From Borrower | | $24,579.48 |
| $118,999.51 | | Due To Seller | | |
| $133,650.00 | $133,650.00 | **Totals** | $378,418.16 | $378,418.16 |



Copyright 2015 American Land Title Association.
All rights reserved.

File # 2213851-SHSA
Printed on: 06/02/22 11:01 AM

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize Independence Title to cause the funds to be disbursed in accordance with this statement.

The Estate of Gene Whisenhant

_Michele Lesha Xu_                6-2-2022
Michele Lesha Xu                  Date

_____
Lindsey B Whisenhant, Independent
Executor of the Estate of Gene A
Whisenhant

_____
Jo Ann Whisenhant

_____        _____
Escrow Officer                          Date

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2213851-SHSA
Printed on: 06/02/22 11:01 AM

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement. We/I authorize <u>Independence Title</u> to cause the funds to be disbursed in accordance with this statement.

The Estate of Gene Whisenhant

_____        _____        Lindsey B Whisenhant, Independent
Michele Lesha Xu                        Date                        Executor of the Estate of Gene A
                                                                        Whisenhant

                                                        Jo-Ann Whisenhant

_____        _____
Escrow Officer                          Date

Copyright 2015 American Land Title Association.
All rights reserved.

File # 2213851-SHSA
Printed on: 06/02/22 11:01 AM

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Texas Disclosure

Form T-64

*This form provides additional disclosures and acknowledgements required in Texas. It is used with the federal Closing Disclosure form.*

---

## Closing Information

| | |
|---|---|
| **Closing Disclosure** | |
| **Issued Date:** | June 01, 2022 |
| **Closing Date:** | June 02, 2022 |
| **GF #:** | 2213851-SHSA |
| **Sales Price:** | $133,650.00 |
| **Loan Amount:** | $333,841.00 |

## Transaction Information

| | |
|---|---|
| **Property:** | TBD Ghost Road |
| | Saratoga, TX 77585 |
| **Borrower(s):** | Michele Lesha Xu |
| **Address(es):** | |
| **Seller(s):** | The Estate of Gene Whisenhant |
| **Address(es):** | |

---

## Lender and Settlement Agent

| | | | |
|---|---|---|---|
| **Lender:** | AmCap Mortgage, Ltd | **Settlement Agent:** | Independence Title |
| **Address:** | 9999 Bellaire Blvd Suite 700 | **Address:** | 4917 FM 3009, Bldg. 2 |
| | Houston, TX 77036 | | Schertz, TX 78154 |

---

## Title Insurance Premiums

*If you are buying both an owner's policy and a loan policy, the title insurance premiums on this form might be different than the premiums on the Closing Disclosure. The owner's policy premium listed on the Closing Disclosure will probably be lower than on this form, and the loan policy premium will probably be higher. If you add the two policies' premiums on the Closing Disclosure together, however, the total should be the same as the total of the two premiums on this form.*

*The premiums are different on the two forms because the Closing Disclosure is governed by federal law, while this form is governed by Texas law. The owner's policy and loan policy premiums are set by the Texas commissioner of insurance. When you buy both an owner's policy and a loan policy in the same transaction, you are charged the full premium for the owner's policy but receive a discount on the loan policy premium. Federal and Texas law differ on where the discount is shown. Texas law requires the discount to be reflected in the loan policy premium, while federal law requires the discount to be reflected in the owner's policy premium.*

| | | | |
|---|---|---|---|
| **Title Agent:** | **Independence Title** | **Owner's Policy Premium** | $2,097.00 |
| | | **Loan Policy Premium** | $100.00 |
| **Underwriter:** | **Stewart Title Guaranty Company** | **Endorsements** | $353.20 |
| | | **Other** | |
| | | **TOTAL** | **$2,550.20** |

Of this total amount: $382.53 (or 15%) will be paid to the Underwriter; the Title Agent will retain $2,167.67 (or 85%); and the remainder of the premium will be paid to other parties as follows:

| Amount ($ or %) | To Whom | For Services |
|---|---|---|
| 40% | Stewart Title Company | TITLE EVIDENCE |

---

## Fees Paid to Settlement Agent

*Fees Paid to Settlement Agent on the Closing Disclosure include:*

---

# Texas Disclosure

**Form T-64**

*This form provides additional disclosures and acknowledgements required in Texas. It is used with the federal Closing Disclosure form.*

---

### Real Estate Commission Disbursement

*Portions of the Real Estate Commissions disclosed on the Closing Disclosure will be disbursed to:*

### Other Disclosures

*Although not required, this section may be used to disclose individual recording charges included on Line 01 of Section E of the Closing Disclosure, or to disclose a breakdown of other charges that were combined on the Closing Disclosure:*

| Document Name | Recording Fee | Document Name | Recording Fee |
|---|---|---|---|
| Deed | $34.00 | Mortgage | $134.00 |
| Release | $0.00 | | |
| **Closing Disclosure Charge Name** | **Included in Closing Disclosure Charge** | | |
| Title - Endorsements to Loan Policy | | | |
| Title - Endorsements to Owner's Policy | | | |

The Closing Disclosure was assembled from the best information available from other sources. The Settlement Agent cannot guarantee the accuracy of that information.

Tax and insurance prorations and reserves were based on figures for the preceding year or supplied by others, or are estimates for current year. If there is any change for the current year, all necessary adjustments must be made directly between Seller and Borrower, if applicable.

I (We) acknowledge receiving this Texas Disclosure and the Closing Disclosure. I (We) authorize the Settlement Agent to make the expenditures and disbursements on the Closing Disclosure and I (we) approve those payments. If I am (we are) the Borrower(s), I (we) acknowledge receiving the Loan Funds, if applicable, in the amount on the Closing Disclosure.

_Michele Lesha Xu_
Michele Lesha Xu

The Estate of Gene Whisenhant

_____
Lindsey B Whisenhant, Independent
Executor of the Estate of Gene A
Whisenhant

_____
Jo Ann Whisenhant

**Settlement Agent:**
Independence Title

**By:** _____

**Escrow Officer**

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Texas Disclosure

Form T-64

*This form provides additional disclosures and acknowledgements required in Texas. It is used with the federal Closing Disclosure form.*

---

**Real Estate Commission Disbursement**

*Portions of the Real Estate Commissions disclosed on the Closing Disclosure will be disbursed to:*

---

**Other Disclosures**

*Although not required, this section may be used to disclose individual recording charges included on Line 01 of Section E of the Closing Disclosure, or to disclose a breakdown of other charges that were combined on the Closing Disclosure:*

| Document Name | Recording Fee | Document Name | Recording Fee |
|---|---|---|---|
| Deed | $34.00 | Mortgage | $134.00 |
| Release | $0.00 | | |
| **Closing Disclosure Charge Name** | **Included in Closing Disclosure Charge** | | |
| Title - Endorsements to Loan Policy | | | |
| Title - Endorsements to Owner's Policy | | | |

The Closing Disclosure was assembled from the best information available from other sources. The Settlement Agent cannot guarantee the accuracy of that information.

Tax and insurance prorations and reserves were based on figures for the preceding year or supplied by others, or are estimates for current year. If there is any change for the current year, all necessary adjustments must be made directly between Seller and Borrower, if applicable.

I (We) acknowledge receiving this Texas Disclosure and the Closing Disclosure. I (We) authorize the Settlement Agent to make the expenditures and disbursements on the Closing Disclosure and I (we) approve those payments. If I am (we are) the Borrower(s), I (we) acknowledge receiving the Loan Funds, if applicable, in the amount on the Closing Disclosure.

Michele Lesha Xu

The Estate of Gene Whisenhant

Lindsey B Whisenhant, Independent Executor of the Estate of Gene A Whisenhant

Jo Ann Whisenhant

**Settlement Agent:**
Independence Title

By: _____
**Escrow Officer**

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# SETTLEMENT CERTIFICATION

Loan Number:  204546983

Date:  June 2, 2022

Seller:  LINDSEY B. WHISENHANT, AS INDEPENDENT EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED, JO ANN WHISENHANT

Borrower(s):  MICHELE LESHA XU

Property Address:  17500 GHOST ROAD
SARATOGA, TEXAS 77585

**NOTICE TO ALL PARTIES:** If information is obtained which indicates that the source of the borrower's financial contribution is other than from the borrower or other than stated by the lender in its closing instructions, the settlement agent is to obtain written instructions from the lender before proceeding with settlement.

### CERTIFICATION OF BUYER IN AN FHA-INSURED LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to me (us) or loans that have been or will be assumed by me (us) for purposes of financing this transaction, other than those described in the sales contract dated      March 18, 2022      (including addenda). I certify that I (we) have not been paid or reimbursed for any of the cash downpayment. I certify that I (we) have not and will not receive any payment or reimbursement for any of my (our) closing costs which have not been previously disclosed in the sales contract (including addenda) and/or my application for mortgage insurance submitted to my (our) mortgage lender.



_____          6-2-2022
Borrower MICHELE LESHA XU                     Date

☆ DocMagic

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## CERTIFICATION OF SELLER IN AN FHA-INSURED LOAN TRANSACTION

I certify that I have no knowledge of any loans that have been or will be made to the borrower(s), or loans that have been or will be assumed by the borrower(s), for purposes of financing this transaction, other than those described in the sales contract dated     March 18, 2022     (including addenda). I certify that I have not and will not pay or reimburse the borrower(s) for any part of the cash downpayment. I certify that I have not and will not pay or reimburse the borrower(s) for any part of the borrower's closing costs which have not been previously disclosed in the sales contract (including any addenda).

_____  6-2-2022     _____ 6-2-22
Seller  LINDSEY B. WHISENHANT, AS     Date          Seller  JO ANN WHISENHANT          Date
INDEPENDENT EXECUTOR OF THE ESTATE
OF GENE A. WHISENHANT, DECEASED

_____  _____     _____  _____
Seller                    Date          Seller                    Date

_____  _____     _____  _____
Seller                    Date          Seller                    Date

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

## CERTIFICATION OF SETTLEMENT AGENT IN AN FHA-INSURED LOAN TRANSACTION

To the best of my knowledge, the Closing Disclosure is a true and accurate account of the funds which were (i) received, or (ii) paid outside closing, and the funds received have been or will be disbursed by the undersigned as part of the settlement of this transaction. I further certify that I have obtained the above certifications which were executed by the borrower(s) and seller(s) as indicated.

_____  6/2/22
Settlement Agent  TAMI PICKENS          Date

The certifications contained herein may be obtained from the respective parties at different times or may be obtained on separate addenda.

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details, see: Title 18 U.S. Code Sections 1001 and 1010.

Publication March 2015

SETTLEMENT CERTIFICATION
4000.1: II.A.6.a.
SC2.MSC   12/23/20                              Page 2 of 2                              ☆ DocMagic



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FHA AMENDATORY CLAUSE

**Loan Number:**    204546983

**Borrower:**    MICHELE LESHA XU


**Property Address:**    17500 GHOST ROAD
SARATOGA, TEXAS 77585


I, the undersigned, hereby certify that I did not receive a copy of Form HUD-92800.5B, Conditional Commitment/DE Statement of Appraised Value, prior to my signing the sales contract to purchase the property. The sales contract is hereby amended to contain the following provisions:

It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise, unless the purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting forth the appraised value of the property of not less than $ 340,000.00 . The purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.


_Michele Lesha Xu_    6-2-2022

Borrower MICHELE LESHA XU    Date


| | | | |
|---|---|---|---|
| Seller LINDSEY D. WHISENHANT, AS INDEPENDENT EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED | Date | Seller JO ANN WHISENHANT | Date |
| Seller | Date | Seller | Date |
| Seller | Date | Seller | Date |
| Listing Agent EXIT REALTY PROPERTY PROS | Date | Selling Agent EXP REALTY, LLC | Date |

WARNING: Section 1010 of title 18, U.S.C. provides: "Whoever for purpose of...influencing such Administration...makes, passes, utters, or publishes any statement, knowing the same to be false...shall be fined not more than $5,000.00 or imprisoned not more than two years or both."

FHA AMENDATORY CLAUSE
HUD Handbook 4000.1, II.A.1.a
ACFHA 02/20/20

*DocMagic eForms*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FHA AMENDATORY CLAUSE

**Loan Number:**   204546983

**Borrower:**   MICHELE LESHA XU

**Property Address:**   17500 GHOST ROAD
SARATOGA, TEXAS 77585

I, the undersigned, hereby certify that I did not receive a copy of Form HUD-92800.5B, Conditional Commitment/DE Statement of Appraised Value, prior to my signing the sales contract to purchase the property. The sales contract is hereby amended to contain the following provisions:

It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise, unless the purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting forth the appraised value of the property of not less than $ _340,000.00_ . The purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

Borrower **MICHELE LESHA XU**                   Date

_6-22-2022_

Seller   LINDSEY B. WHISENHANT, AS INDEPENDENT   Date
EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED

Seller **JO ANN WHISENHANT**   Date   _6-222_

Seller                   Date                   Seller                   Date

Seller                   Date                   Seller                   Date

Listing Agent   EXIT REALTY PROPERTY   Date       Selling Agent   EXP REALTY, LLC   Date
PROS

**WARNING:** Section 1010 of title 18, U.S.C. provides: "Whoever for purpose of...influencing such Administration...makes, passes, utters, or publishes any statement, knowing the same to be false...shall be fined not more than $5,000.00 or imprisoned not more than two years or both."

FHA AMENDATORY CLAUSE
HUD Handbook 4000.1, II.A.1.a
AC.FHA  02/20/20

DocMagic eForms

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan No. 204546983

# REAL ESTATE CERTIFICATION

We, the undersigned, hereby certify that the terms of the Contract for Purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of the undersigned parties in connection with this transaction is attached to and made a part of the Sales Agreement.

*Michele Lesha Xu*  6-2-2022

| | |
|---|---|
| Buyer MICHELE LESHA XU          Date | Buyer          Date |
| Buyer          Date | Buyer          Date |
| Buyer          Date | Buyer          Date |
| Seller LINDSEY B. WHISENHANT, AS INDEPENDENT          Date<br>EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED | Seller  JO ANN WHISENHANT          Date |
| Seller          Date | Seller          Date |
| Seller          Date | Seller          Date |

Selling Agent          Date

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

REAL ESTATE CERTIFICATION
REC.MSC  02/26/09

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan No. 204546983

# REAL ESTATE CERTIFICATION

We, the undersigned, hereby certify that the terms of the Contract for Purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of the undersigned parties in connection with this transaction is attached to and made a part of the Sales Agreement.

| | |
|---|---|
| Buyer MICHELE LESHA XU ⎯⎯⎯ Date | Buyer ⎯⎯⎯ Date |
| Buyer ⎯⎯⎯ Date | Buyer ⎯⎯⎯ Date |
| Buyer ⎯⎯⎯ Date | Buyer ⎯⎯⎯ Date |
| Seller LINDSEY B. WHISENHANT, AS INDEPENDENT EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED   6-2-2022   Date | Seller JO ANN WHISENHANT   6-2-22   Date |
| Seller ⎯⎯⎯ Date | Seller ⎯⎯⎯ Date |
| Seller ⎯⎯⎯ Date | Seller ⎯⎯⎯ Date |
| Selling Agent ⎯⎯⎯ Date | |

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

REAL ESTATE CERTIFICATION
REC.MSC 02/26/09

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

## BROKER/AGENT CERTIFICATION
## IN AN FHA-INSURED LOAN TRANSACTION

I certify that the terms and conditions of the sales contract dated     March 18, 2022     , are true to my best knowledge and belief and that any other agreement entered into between me and the (buyer) and (seller) and (seller's agent/broker), in connection with the real estate transaction is part of, or attached to, the sales agreement.

Buyer MICHELE LESHA XU

Seller LINDSEY B. WHISENHANT,
AS INDEPENDENT EXECUTOR OF THE
ESTATE OF GENE A. WHISENHANT,
DECEASED

Seller JO ANN WHISENHANT

Seller

Seller

Seller

Seller

Listing Agent EXIT REALTY
PROPERTY PROS

Selling Agent EXP REALTY, LLC

BROKER/AGENT CERTIFICATION
IN AN FHA-INSURED LOAN TRANSACTION
FHAREC.LSR 01/30/20

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# BROKER/AGENT CERTIFICATION
# IN AN FHA-INSURED LOAN TRANSACTION

I certify that the terms and conditions of the sales contract dated     March 18, 2022     , are true to my best knowledge and belief and that any other agreement entered into between me and the (buyer) and (seller) and (seller's agent/broker), in connection with the real estate transaction is part of, or attached to, the sales agreement.

_____
Buyer MICHELE LESHA XU

_____
Seller LINDSEY B. WHISENHANT,
AS INDEPENDENT EXECUTOR OF THE
ESTATE OF GENE A. WHISENHANT,
DECEASED

_____
Seller JO ANN WHISENHANT

_____
Seller

_____
Seller

_____
Seller

_____
Seller

_____
Listing Agent EXIT REALTY
PROPERTY PROS

_____
Selling Agent EXP REALTY, LLC

BROKER/AGENT CERTIFICATION
IN AN FHA-INSURED LOAN TRANSACTION
FHAREC.LSR  01/30/20

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

FROM: CLAYTON & RAMIREZ LAW
4807 SPICEWOOD SPRINGS ROAD, BLDG 3, STE 250
AUSTIN, TEXAS 78759
Phone: (512) 687-0744

TO: INDEPENDENCE TITLE
4917 FM 3009 BLDG 2
SCHERTZ, TEXAS 78154
(210) 651-4171

ATTN: TAMI PICKENS

RE: Borrower(s): MICHELE LESHA XU

Property Address: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

Document Date: June 2, 2022

Closing Date: June 2, 2022

Disbursement: June 2, 2022

Case No.: 512-4867978-703

Loan No.: 204546983

App. No.:

Order No.: 2213851-SHSA

Escrow No.: 2213851-SHSA

## SPECIFIC CLOSING INSTRUCTIONS

**LOAN DOCUMENTS:**
We enclose the following documents necessary to complete the above referenced loan transaction:

| | | |
|---|---|---|
| (X) Note | Stmt. | (X) Notices |
| (X) Deed of Trust | (X) Impound Auth. | (X) Hazard Ins. Req. |
| (X) Construction Rider | (X) CERTIF | (X) Addendum/Loan Agrmnt. |
| (X) Manufactured Home Rider | (X) Renewal/Extension Exhibit | (X) Worksheets |
| (X) Construction Addendum To Note | (X) AD | (X) Patriot Act |
| | (X) Affidavit and Agrmnt. | (X) Compliance Agreement |
| (X) Payment Letter | (X) Cons. Loan Agreement | (X) Affixation Affidvit |
| (X) Initial Escrow Acct. Disc. | (X) 4506C | (X) Settlement Statement |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement or Closing Disclosure (as applicable) to each Borrower.

**LOAN TERMS:**

| | |
|---|---|
| Loan Amount: 333,841.00 | ARM Loan: ( ) Yes (X) No |
| Initial Advance: | Index: |
| Sales Price: 340,000.00 | Margin: |
| Term (Months): 360 | Periodic Rate Cap: |
| Interest Rate: 5.125 | Lifetime Rate Cap: |
| Initial Payment: 1,817.72 | Lifetime Rate Floor: |
| First Payment Date: 12/01/22 | Interest Change Date: |
| Last Payment Date: 11/01/52 | Payment Change Date: |
| | Loan Purpose: CONSTRUCTION TO PERMANENT |

**PAYOFF REQUIREMENTS:**
It is a condition to the funding of this loan that the following payoffs be made through this closing. Indicate payoffs on the HUD-1 Settlement Statement or Closing Disclosure (as applicable) or provide other satisfactory evidence of payoff:
PAYOFF to CAPITAL ONE NP SPO  $14,580.00

**CONDITIONS TO BE SATISFIED PRIOR TO DISBURSEMENT OF LOAN PROCEEDS:**
Tax shock letter required.

The Affidavit of Affixation must be recorded, however, separately from the Deed of Trust/Mortgage.

** SEE ATTACHED ADDENDUM TO CLOSING INSTRUCTIONS **

**TITLE INSURANCE REQUIREMENTS:**
You are authorized to use funds for the account of the Borrowers and to record all instruments when you comply with the following:

1. THIS LOAN MUST RECORD IN 1ST LIEN POSITION ON OR PRIOR TO THE DISBURSEMENT DATE NOTED ABOVE. PROVIDE DUPLICATE ORIGINALS OF THE ALTA TITLE POLICY.

2. Vesting to read: MICHELE LESHA XU AND XIAOFENG XU, A MARRIED COUPLE

3. Title Policy must contain the following endorsements (or their equivalents): T36, T19, T30, T31, T31.1, T38

4. TLTA, ALTA or CLTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount of our loan on the property described herein showing the Instrument or Document Number and the date of recording of the Security Instrument, (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable: MUST PAY/GUARANTEE ALL TAXES DUE                      ;
(iii) other items as permitted by us; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated March 21, 2022: ANY AND ALL ENCROACHMENTS OR ENCUMBRANCES AS SHOWN ON THE SURVEY

**SECONDARY FINANCING:**
Secondary financing in the amount of $ NONE                     has been approved.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**ESTIMATE OF FEES AND COSTS:**

| ITEM | AMOUNT | POC | PAID BY |
|---|---|---|---|
| Loan Discount Points to: AMCAP MORTGAGE, LTD. | 10,766.37 | | Borrower |
| Real Estate Commission to: eXp Realty | 4,009.50 | | Seller |
| Real Estate Commission to: Exit Realty | 4,009.50 | | Seller |
| Administration Fee to: AmCap Mortgage, Ltd. | 1,600.00 | | Borrower |
| Appraisal Fee to: Property Interlink | 900.00 | 900.00 | Borrower |
| Credit Report to: MFI CREDIT SOLUTIONS | 116.92 | | Borrower |
| Flood Certification to: Alisource | 12.50 | | Borrower |
| Document Preparation Fee to: C&R Docs | 350.00 | | Borrower |
| Mortgage Insurance Premium to: HUD | 5,741.00 | | Borrower |
| Mortgage Insurance Premium to: HUD | 0.75 | | Borrower |
| Title - Title Endorsement Fee to: INDEPENDENCE TITLE | 353.20 | | Borrower |
| Title - Messenger Fee to: INDEPENDENCE | 75.00 | | Borrower |

Subtotal of Estimated Fees and Costs:  $   44,898.22

**PER DIEM INTEREST:**
From: 06/02/22      To:06/02/22
(Anticipated Closing Date)

0   days at $ ___46.8749___ per day     Subtotal of Per Diem Interest:     $         .00

**IMPOUNDS/ESCROWS:**
Impound/escrow checks should be made payable and sent to us together with the original final HUD-1 Settlement Statement or Closing Disclosure (as applicable).

| | | | | | |
|---|---|---|---|---|---|
| Mortgage Insurance | 0 month(s) | at $ 230.88 per Month | = $ | 0.00 |
| HAZARD INSURANCE | 3 month(s) | at $ 90.00 per Month | = $ | 270.00 |
| COUNTY PROPERTY TAX | 13 month(s) | at $ 12.98 per Month | = $ | 168.74 |
| | month(s) | at $ per Month | = $ | |
| | month(s) | at $ per Month | = $ | |
| | month(s) | at $ per Month | = $ | |

Aggregate Escrow Adjustment   $   -129.80

* Interest paid by: Seller

Impound Subtotal:   $      308.94
Mortgage Ins. Premium:   $
**TOTAL OF FEES AND COSTS:**   $   45,207.16

**HUD-1 SETTLEMENT STATEMENT OR CLOSING DISCLOSURE:**
The final HUD-1 Settlement Statement or Closing Disclosure (as applicable) must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Fax a certified copy of the final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to  AMCAP MORTGAGE, LTD.
                                                   Attention:  Quality Assurance
Send the original final HUD-1 Settlement Statement or Closing Disclosure (as applicable) to us at the following address within 24 hours of settlement:   9999 BELLAIRE BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036

**ADDITIONAL INFORMATION:** BORROWER MUST SIGN AND DATE THESE CLOSING INSTRUCTIONS.
If for any reason this loan does not close within 48 hours of your receipt of funds, immediately return all documents to Lender and wire all funds only to:  AMCAP MORTGAGE, LTD.
9999 BELLAIRE BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036

If you have any questions regarding any of these instructions, please contact  AMCAP MORTGAGE, LTD.
                                                   at   (844) 692-6227

**BORROWER ACKNOWLEDGMENT:** I/We have read and acknowledged receipt of these Closing Instructions.

Borrower MICHELE LESHA XU        Date

**ACKNOWLEDGED AND AGREED:**     The title company and the persons and entities named in Procedural Rule P-35 of the Basic Manual of Rates, Rules and Forms for the Writing of Title Insurance in the State of Texas. Settlement Agents are prohibited from making any statements other than that this file has closed and funded.

Date

SPECIFIC CLOSING INSTRUCTIONS
SCI16.CST  04/05/21          Page 2 of 2          ☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

MIN: 100110900010451744                              Loan Number: 204546983

# NOTE

Case Number: 512-4867978-703

June 2, 2022                    SARATOGA                    TEXAS
[Date]                           [City]                    [State]

17500 GHOST ROAD, SARATOGA, TEXAS 77585
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 333,841.00              (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is  AMCAP MORTGAGE, LTD., A TEXAS LIMITED PARTNERSHIP
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          5.125 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the     1st     day of each month beginning on          December 1     , 2022     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on  November 1, 2052              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  9999 BELLAIRE BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036
                                        or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments **See attached CONSTRUCTION LOAN ADDENDUM AMENDING NOTE
My monthly payment will be in the amount of U.S. $  1,817.72                          .

## 4.  BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my

---



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     4.000   % of the overdue payment of Principal and Interest (P&I). I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

---



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**




Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)
MICHELE LESHA XU                        -Borrower

*[Sign Original Only]*

Loan Originator: CHAD STEPHAN, NMLSR ID 1670704
Loan Originator Organization: AMCAP MORTGAGE, LTD., NMLSR ID 129122

---

TEXAS FHA FIXED RATE NOTE
TXFHANTE  06/14/16                        Page 4 of 4                        ☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# CONSTRUCTION LOAN ADDENDUM AMENDING NOTE

Loan Number: 204546983

Date: June 2, 2022

THIS CONSTRUCTION LOAN ADDENDUM (the "Addendum") is made this __2nd__ day of __June, 2022__ , and is incorporated into and shall be deemed to amend and supplement the note made by the undersigned Borrower, ("I", "me", "my") to evidence my indebtedness (the "Loan") to  AMCAP MORTGAGE, LTD.

and its successors and assigns (the "Note Holder") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument, as modified or amended, in favor of the Lender dated the same date as this Addendum (the "Security Instrument"). All terms defined in the Note shall have the same meaning in this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Note Holder and I further covenant and agree as follows:

1. **CONSTRUCTION/PERMANENT LOAN.** The Note, as amended by this Addendum, is for a construction loan and a permanent mortgage loan. During the Construction Phase of the Loan, Note Holder will advance funds in accordance with the Construction Loan Agreement dated the same date as this Addendum (the "Construction Loan Agreement"). The "Construction Phase" is the period beginning on the date the Loan consummates (the "Closing Date") until the first day of the month following the Completion Date specified in the Construction Loan Agreement. The Completion Date is __December 1, 2022__ . The "Permanent Phase" is the period beginning on the first day of the month following the Completion Date specified in the Construction Loan Agreement. On the first day of the month following the Completion Date ("Permanent Mortgage Date"), the Loan will be a permanent mortgage loan. The Permanent Mortgage Date for my Loan is __January 1, 2023__ . My first payment of principal and interest during the Permanent Phase will be due on the first day of the second month following the Completion Date which is __February 1, 2023__ , as stated in Section 3(A) of the Note.

2. **INTEREST AND PAYMENTS.**

   (A) **Construction Phase Interest Rate.**
   During the Construction Phase of the Loan, I will pay interest only on the amount of the Loan proceeds Lender disburses under the Construction Loan Agreement (each, an "Advance"). I will pay interest at the rate:

   *Check applicable box:*
   [X] stated in Section 2 of the Note ("Note Rate")
   [ ] at            N/A  % per annum

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**(B) Permanent Phase Rate**

During the Permanent Phase, I will pay interest ("Permanent Phase Rate") at the rate stated in Section 2 of the Note ("Note Rate").

**(C) Interest Only Payments**

Interest on Advances shall be calculated from the date each Advance is made. My Construction Phase interest payments will be:

*Check applicable box:*

☒ due and payable FIFTEEN         ( 15   ) days after being billed by Note Holder, or

☐ paid directly from the "Interest Reserve Account" established at the time of closing in the amount reflected in Schedule of Advances, attached as Exhibit "B" to the Construction Loan Agreement.

**(D) Interest Reserve Payments**

If I choose to establish an Interest Reserve Account, (1) Construction Phase interest will be advanced by Note Holder from the Interest Reserve Account on the first day of the month following the month in which the interest is billed, (2) Construction Phase interest advanced will be added to Principal and (3) I:

*Check applicable box:*

☐ will pay interest on all Principal, including Advances from the Interest Reserve Account.

☐ will pay interest on all Principal, other than Advances from the Interest Reserve Account.

In the event that the Interest Reserve Account is depleted prior to the Completion Date, I agree to pay directly to Note Holder from my own funds any and all interest, which accrues prior to the Completion Date.

Note Holder shall pay no interest on the Interest Reserve Account.

**(E) Principal Prepayments; Permanent Phase Interest and Principal Payments**

Any portion of a payment Note Holder receives in excess of the interest due during the Construction Phase or any funds Note Holder does not advance under the Construction Loan Agreement may, at Note Holder's option, be used to pay costs associated with the Construction Phase or may be credited as a partial prepayment of the Principal amount of the Loan. The partial prepayment will reduce the ☐ amount of ☒ number of my monthly payments.

Beginning on the Permanent Mortgage Date, principal and interest will be due and payable as set forth in the Note.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

3. **NOTICE OF NO ORAL AGREEMENT.** THE NOTE, THIS ADDENDUM, THE CONSTRUCTION LOAN AGREEMENT, AND THE SECURITY INSTRUMENT, AS AMENDED, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND TO THE EXTENT PERMITTED BY LAW, MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENT OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.

BY SIGNING BELOW, I accept and agree to the terms and covenants contained in this Addendum.

DATED this    2nd    day of    June, 2022

_____(Seal)
MICHELE LESHA XU                    -Borrower



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# MECHANIC'S LIEN NOTE

Date:  June 2, 2022

Maker:  MICHELE LESHA XU

Maker's Mailing Address:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

Payee:  CMH HOMES, INC.

Payee's Mailing Address:  23557 HWY 59 N, PORTER, TEXAS 77365

Place for Payment:  23557 HWY 59 N, PORTER, TEXAS 77365

Principal Amount:  $206,350.00

Annual Interest Rate on Unpaid Principal from Date of Funding:  NONE

Annual Interest Rate on Matured, Unpaid Amounts:  Highest Lawful Rate

Terms of Payment (principal and interest):  120

I will pay this loan in one payment of all outstanding principal plus all accrued interest on   November 1 , 2052 . In addition, I will pay regular monthly payment of all accrued unpaid interest due as of each payment date, beginning   December 1, 2022   with all subsequent interest payment to be due on the same day of each monthly after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. I will pay Lender at Lender's address shown in section 3(A) of the NOTE dated of even date herewith or at such other place as Lender may designate in writing.

Security for Payment:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

Liens created in mechanic's lien contract between Maker, as Owner and Payee, as Contractor:

Date: June 2, 2022

Trustee: RICHARD A. RAMIREZ

Owner: MICHELE LESHA XU

Contractor: CMH HOMES, INC.

Property:  SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 000340-000100



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

This note incorporates and is subject to the mechanic's lien contract.

Maker promises to pay to the order of Payee at the Place for Payment and according to the Terms of Payment the Principal Amount plus interest at the rates stated above. All unpaid amounts are due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to this note, Payee may declare the unpaid principal balance and earned interest on the note immediately due. Maker and each surety, endorser, and guarantor waive all demand for payment, presentation for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

Maker may at any time make full or partial prepayments on the principal without paying any penalty, in addition to making regularly scheduled payments. Unless Payee agrees otherwise in writing, the making of partial prepayments will not alter the dates or amounts of regularly scheduled payments. Payee may require that any partial prepayments be in the same amount as regularly scheduled payments.

If any party retains an attorney to enforce this note, the party prevailing in litigation is entitled to recover reasonable attorney's fees and court and other costs.

Interest on the debt evidenced by this note will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited to the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

Each Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

## NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**



MICHELE LESHA XU



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## ALLONGE FOR ENDORSEMENT OF
## MECHANIC'S LIEN NOTE

Borrower Name:  MICHELE LESHA XU

Property Address:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

Note Date:  June 2, 2022

Loan Amount:  333,841.00

PAY TO THE ORDER OF
AMCAP MORTGAGE, LTD.

WITHOUT RECOURSE

Dated this            of

Payee:  CMH HOMES, INC.

By: _____

Print Name: _____ Chad May _____

Its: _____ General Manager _____





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Independence Title/GF# 241351-SHSA/ MRM

Loan Number: 204546983

# GENERAL WARRANTY DEED
# WITH VENDOR'S LIEN IN FAVOR OF THIRD PARTY

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | |
| | ) | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF HARDIN | ) | |

THAT LINDSEY B. WHISENHANT, AS INDEPENDENT EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED, JO ANN WHISENHANT

(hereinafter called "GRANTORS" whether one or more), for and in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations cash in hand paid by MICHELE LESHA XU AND XIAOFENG XU, A MARRIED COUPLE

whose address is 17500 GHOST ROAD, SARATOGA, TEXAS 77585

(hereinafter called "GRANTEES" whether one or more), the receipt and sufficiency of which are hereby acknowledged and confessed, and the further consideration of the note in the principal sum of THREE HUNDRED THIRTY-THREE THOUSAND EIGHT HUNDRED FORTY-ONE AND 00/100 DOLLARS ($ 333,841.00          ) payable to the order of AMCAP MORTGAGE, LTD.

(hereinafter referred to as "BENEFICIARY") at the special instance and request of the Grantees herein, the receipt of which is hereby acknowledged and confessed, and, as evidence of such advancement, the said Grantees herein have executed their note of even date herewith for said amount payable to the order of said Beneficiary, bearing interest at the rate therein provided, principal and interest being due and payable in monthly installments as therein set out, and providing for attorney's fees and acceleration of maturity at the rate and in the events therein set forth, which note is secured by the Vendor's Lien herein reserved and is additionally secured by a Deed of Trust of even date herewith, executed by the Grantees herein to RICHARD A. RAMIREZ.

Trustee, reference to which is here made for all purposes; and in consideration of the payment of the sum above mentioned by the Beneficiary above mentioned, Grantors hereby transfer, set over, assign and convey unto said Beneficiary and assigns, the Vendor's Lien and Superior Title herein retained and reserved against the property and

---

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

premises herein conveyed, in the same manner and to the same extent as if said note had been executed in Grantor's favor and by said Grantors assigned to the Beneficiary without recourse; have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY unto the said Grantees herein, the following described property, together with all improvements thereon, to-wit:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 000340-000100

TO HAVE AND TO HOLD the above described premises, together with, all and singular, the rights and appurtenances thereto in any wise belonging, unto the said Grantees, their heirs and assigns forever. And Grantors do hereby bind themselves, their heirs, executors and administrators, to warrant and forever defend all and singular, the said premises unto the said Grantees, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. Taxes for the current year have been prorated and are assumed by Grantee. This conveyance is made and accepted subject to any and all validly existing restrictions, mineral reservations and interests, conditions, covenants, easements, and rights of way, if any, applicable to and enforceable against the above described property as now reflected by the records of the County Clerk in said County and State and to any applicable zoning laws or ordinances.

But it is expressly agreed and stipulated that the Vendor's Lien and the Superior Title are retained and reserved in favor of the payee in said note against the above described property, premises and improvements, until said note, and all interest thereon is fully paid according to the face and tenor, effect and reading thereof, when this deed shall become absolute.

The contract between GRANTOR, as seller, and GRANTEE, as buyer, may contain limitations as to warranties; to the extent said contract provides for such limitations to survive this conveyance they shall be deemed incorporated herein by reference. The warranty of title contained in this deed is hereby expressly excluded from the limitations referenced in this paragraph.

When this deed is executed by one person, or when the Grantee is one person, the instrument shall read as though pertinent verbs and pronouns were changed to correspond, and when executed by or to a corporation the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "Successors and assigns."



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Executed on this the  2nd     day of June, 2022

_____ (Grantor)
LINDSEY B. WHISENHANT, AS
INDEPENDENT EXECUTOR OF THE ESTATE
OF GENE A. WHISENHANT, DECEASED

_____ (Grantor)
JO ANN WHISENHANT

_____ (Grantor)

_____ (Grantor)

_____ (Grantor)

_____ (Grantor)

GENERAL WARRANTY DEED WITH VENDOR'S LIEN IN FAVOR OF THIRD PARTY
GWDWVL3.LSR  02/28/16                    Page 3 of 4                    ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

———————————— [Space Below This Line For Acknowledgment] ————————————

The State of __TEXAS__ ,

County of __HARDIN__ ,

Before me, _Brandy Alley, Notary Public_
(here insert the name and character of the notarizing officer)

on this day personally appeared _Lindsey B. Whisenhant  and  Jo Ann_
_Whisenhant_

known to me (or proved to me on the oath of _____

or through _Texas  State  Drivers  License_ )
(description of identity card or other document)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _2nd_ day of _June_ _2022_ .

BRANDY ALLEY
My Notary ID # 131778994
Expires October 31, 2022

(SEAL)

_Brandy Alley_
(Notary Public Signature)

———————————————————————————————————————

GENERAL WARRANTY DEED WITH VENDOR'S LIEN IN FAVOR OF THIRD PARTY
GWDWVL3.LSR  02/28/16                          Page 4 of 4                          ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**BEING** a 38.918 acre tract of land as situated in the Willis Johnson Survey, Abstract No. 340, Hardin County, Texas and being out of and a part of a called 53-1/3 acre tract as conveyed to Gene A. Whisenhant by a General Warranty Deed dated June 18, 1990 and filed for record under Volume 897, Page 705 of the Hardin County Official Public Records. Said 38.918 acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at an iron hex bolt found for the northeast corner of said Gene Whisenhant called 55-1/3 acre tract, the northeast corner of the herein described tract, and the northwest corner of a called 200 acre tract as conveyed to Crown Pine Timber 1, LP by a General Warranty Deed dated November 29, 2010 and filed for record under Instrument No. 2010-16813 of said Hardin County Official Public Records, same being located in the north line of said Willis Johnson Survey, Abstract No. 340, the south line of the Willis Johnson Survey, Abstract No. 339, and the south line of a called 597.884 acre tract designated as "Ghost Road – Tract VII" as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records. Said place of beginning has a Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), South Central Zone (U.S. Survey Foot) value of North: 10,140,995.69 and East: 4,120,155.48;

**THENCE**, South 04°16'09" East, a distance of 5382.46 feet, along the east line of said Gene A. Whisenhant called 55-1/3 acre tract and the west line of said Crown Pine Timber 1, LP called 200 acre tract, to an iron hex bolt found for the southwest corner of same, the southeast corner of said Gene A. Whisenhant called 53-1/3 acre tract, and the southeast corner of the herein described tract, same being located in the south line of said Willis Johnson Survey, Abstract No. 340, the north line of the Hardin County School Land Survey, Abstract No. 253, and the north line of a called 2454.353 acre tract as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records, said iron hex bolt being also located in the east right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of a called 5.81 acre tract designated as "Second" as conveyed to the County of Hardin by a Deed dated June 22, 1937 and filed for record under Volume 141, Page 481 of said Hardin County Official Public Records, and the current east right-of-way of a County Road known locally as "Ghost Road";

**THENCE**, North 13°03'18" West, a distance of 2640.73 feet, along the east right right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of said County of Hardin called 5.81 acre tract, and the current east right-of-way of said "Ghost Road", to a 5/8-inch iron rod set for the southwest corner of the herein described tract and the south corner of a called 9.502 acre tract as conveyed to Richard W. Gamble by a Warranty Deed dated April 11, 1995 and filed for record under Volume 1044, Page 411 of said Hardin County Official Public Records, same being located in the west line of said Gene A. Whisenhant called 55-1/3 acre tract, from which a 3/8-inch iron rod found at the intersection of the east right-of-way of said "Ghost Road" and the north line of the Willis Johnson Survey, Abstract No. 340 bears North 13°03'18" West a distance of 2813.59 feet;

**THENCE**, North 05°00'33" West, a distance of 2777.18 feet, along the east line of said Richard W. Gamble called 9.502 acre tract, the east line of a called 2.00 acre tract as conveyed to Bernice Williams by a Special Warranty Deed dated October 27, 1989 and filed for record under Volume 1058, Page 688 of said Hardin County Official Public Records, and the west line of said Gene A. Whisenhant called 55-1/3 acre tract, to a 3/8-inch iron rod found for the northwest corner of same, the northwest corner of the herein described tract, and the northeast corner of said Bernice Williams called 2.00 acre tract, same being located in the south line of said LRT I LLC called 597.884 acre tract, the south line of said Willis Johnson Survey, Abstract No. 339, and the north line of said Willis Johnson Survey, Abstract No. 340, from which a 3/8-inch iron rod found in the east right-of-way of said "Ghost Road" for the northwest corner of said Bernice Williams called 2.00 acre tract bears South 86°15'33" West a distance of 393.90 feet, and a concrete monument found for the northwest

corner of said Willis Johnson Survey, Abstract No. 340 bears South 86°15'33" West a distance of 877.11 feet;

**THENCE**, North 86°16'59" East, a distance of 439.24 feet, along the north line of said Gene A. Whisenhant called 55-1/3 acre tract, the north line of said Willis Johnson Survey, Abstract No. 340, the south line of said LRT I LLC called 597.884 acre tract, and the south line of said Willis Johnson Survey, Abstract No. 339, to the **PLACE OF BEGINNING, CONTAINING** 38.918 acres of land in Hardin County, Texas.

*The bearings and distances recited herein are based on the Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), Central Zone (U.S. Survey Foot).*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

After Recording Return To:
AMCAP MORTGAGE, LTD.
9999 BELLAIRE BOULEVARD, SUITE 700
HOUSTON, TEXAS 77036

Independence Title/GF#_____ -SHSA/_____

———————————————— [Space Above This Line For Recording Data] ————————————————

# MECHANIC'S LIEN CONTRACT
## (WITH TRANSFER OF LIEN TO LENDER)

Loan Number: 204546983
MIN: 100110900010451744

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

Date:     June 2, 2022

Owner:   MICHELE LESHA XU, XIAOFENG XU

Owner's Mailing Address:     17500 GHOST ROAD, SARATOGA, TEXAS 77585

Lender: AmCap Mortgage, Ltd.

Contractor:   CMH HOMES, INC.

Contractor's Mailing Address:     23557 HWY 59 N
PORTER, TEXAS 77365

Trustee:   RICHARD A. RAMIREZ

Trustee's Mailing Address:     4807 SPICEWOOD SPRINGS RD, BLDG 3, SUITE 250
AUSTIN, TEXAS 78759

Property:
     Address:     17500 GHOST ROAD, SARATOGA, TEXAS 77585

———————————————————————————————————————————————————————————

TEXAS MECHANIC'S LIEN CONTRACT
TXMLC.CST  08/06/20                          Page 1 of 7                          ☆DocMagic



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Legal Description:   SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 000340-000100

Prior Lien:

Other Exceptions to Conveyance and Warranty: **ZONING ORDINANCES AND UTILITY DISTRICT ASSESSMENTS, IF ANY, APPLICABLE TO AND ENFORCEABLE AGAINST THE ABOVE-DESCRIBED PROPERTY; AD VALOREM TAXES FOR THE CURRENT AND ALL SUBSEQUENT YEARS; AND ALL VALID EASEMENTS, RESTRICTIONS, MINERAL RESERVATIONS, AND MAINTENANCE FUND LIENS, IF ANY, APPLICABLE TO AND ENFORCEABLE AGAINST THE ABOVE-DESCRIBED PROPERTY AS SHOWN BY THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF THE COUNTY IN WHICH SAID REAL PROPERTY IS LOCATED.**

Construction:        **ALL MATERIALS AND LABOR DESCRIBED IN THE SPECIFICATIONS FOR PROJECT     XU**
                     **RESIDENCE -   MICHELE LESHA**
                     **ON   17500 GHOST ROAD, SARATOGA, TEXAS 77585**

Consideration:       $206,350.00          **AS EVIDENCED BY AFOREMENTIONED AGREEMENT BETWEEN PARTIES.**

Note:
    Date:            June 2, 2022

    Amount:          $206,350.00

    Maker:           MICHELE LESHA XU

    Payee:           CMH HOMES, INC.

    Maturity date:   November 1, 2052

    Completion of Construction: Prior to Maturity Date.    360 Mos

    For the Consideration, Contractor agrees to furnish the materials and labor and to complete the construction on the Property in a good and workmanlike manner according to the plans and specifications agreed on by Owner and Contractor.

    To secure payment of the Note, owner grants to contractor a mechanic's, artisan's, and materialman's lien on the Property and on all improvements and fixtures on the Property at any time.

    To enforce the lien and to further secure payment of the Note, Owner conveys the property to Trustee in trust. Owner warrants and agrees to defend the title to the Property subject to the Other Exceptions to Conveyance and Warranty. If Owner performs all the covenants and pays the Note according to its terms, this conveyance will have no further effect, and at Owner's expense Contractor will execute a release of the liens created by this contract.



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**Assignment of Residential Construction Note and Mechanic's Lien Contract.** In consideration of Lender's advance of all or a portion of the Contract Price, Contractor has endorsed Contractor's Residential Construction Note to Lender and hereby transfers and assigns to Lender all of Contractor's rights and liens in this Contract, and Lender is subrogated to all the rights and equities of Contractor. To the extent Lender's advances do not fully pay so much of the Contract Price that Contractor has earned, Contractor retains a second, subordinate and inferior lien until payment in full is received. Any and all assignment from Contractor to the Lender are hereby accepted and agreed by Contractor and Owner to be superior to the Mechanic's lien and hold priority place in the chain of title.

**Completion by Contractor, But Not Lender.** Contractor shall be obligated to complete all Improvements in accordance with this Contract and any work agreement and construction contract with Owner. Lender is and shall not be responsible for the completion of the Improvements, and shall not in any manner be considered as a guarantor or surety of performance by Contractor. Contractor hereby indemnifies, defends and holds Lender harmless against all claims for completion of the Improvements, or work or materials or any part of the Improvements.

A.  **Owner's Warranties and Rights**
1.  Owner owns the Property in fee simple, subject only to the Prior Lien and the Other Exceptions to Conveyance and Warranty.
2.  If Owner and Contractor agree in writing to alter plans for the Construction, on completion of the construction Owner will pay for all extra work done and material furnished as a result of the alterations, and that sum shall be a part of the consideration and the debt secured by this contract.
3.  If Owner receives notice of or may become liable for a lien or claim for labor or materials furnished to Contractor and primarily chargeable to Contractor, Owner may retain from payments on the Note an amount sufficient to completely indemnify Owner against the lien or claim.
4.  Notwithstanding anything to the contrary in this contract, during progress of the construction and for thirty days after it is completed, Owner may retain the amounts required by sections 53.101 and 53.081 of the Texas Property Code.
5.  If a loss occurs before the Construction is completed and delivered to Owner, Owner may use any insurance proceeds to restore the destroyed or damaged property without affecting the lien created in this contract.
6.  OWNER MAY FURNISH THE INSURANCE REQUIRED OF OWNER BY THIS CONTRACT EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY OWNER OR THROUGH EQUIVALENT COVERAGE FROM AN INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.

B.  **Owner's Obligations**
Owner agrees to:
1.  pay all taxes and assessments on the Property when due;
2.  preserve the lien's priority as it is established in this contract;
3.  if this is not a first lien, pay all prior lien notes that Owner is liable to pay and abide by all prior lien instruments;
4.  if this contract is for improvements to the Property, keep the Property other than those improvements in good repair and condition during the Construction and keep all of the Property in good repair and condition after the Construction is completed;
5.  if this contract is for new construction, keep the Property in good repair and condition after the Construction is completed;
6.  except to the extent that Contractor is required to insure the Construction during its progress, maintain an insurance policy that:
    a.  covers the Property with all its improvements for its full insurable value as determined when the policy is issued and renewed, unless Contractor approves a smaller amount in writing;
    b.  contains an 80% coinsurance clause;
    c.  provides fire and extended coverage, including windstorm coverage;
    d.  protects Contractor with a standard mortgage clause;
    e.  provides flood insurance at any time the Property is in a flood hazard area; and
    f.  contains such other coverage as Contractor may reasonably require;
7.  comply at all times with the requirements of the 80% coinsurance clause;
8.  deliver the insurance policy to Contractor within ten days of the date of the contract and deliver renewals to Contractor at least fifteen days before expiration;





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

9. obey all laws, ordinances, and restrictive covenants applicable to the Property; and

10. keep any buildings occupied as required by the insurance policy.

**C.    Contractor's Obligations**

1. Until the Construction is completed and delivered to Owner, Contractor will insure the Construction and all related materials against loss or damage by fire and the perils included in extended coverage in an amount equal to the Consideration. The policy will be payable to the parties to this contract according to their respective interests. If Contractor does not provide this insurance, Contractor will bear any loss to the Construction and materials.

2. Contractor will neither make nor charge for any alterations in the Construction described in the plans and specifications unless Contractor and Owner agree otherwise in writing. Any alterations made without a written agreement will be considered performed under the original contract at no additional charge.

3. Contractor will pay all costs of the Construction, including labor, materials, and subcontractors, and will furnish Owner receipts for and releases from these costs.

4. If any other lien claims are filed, Contractor will pay for their removal or else provide a statutory bond.

**D.    Contractor's Rights**

1. Contractor may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2. After completion of the Construction, Contractor may apply any proceeds received under the insurance policy either to reduce the Note or to repair or replace damaged or destroyed improvements covered by the policy.

3. If Owner fails to perform any of Owner's obligations other than providing insurance, Contractor may perform those obligations and be reimbursed by Owner on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. Any amounts to be reimbursed will be secured by this contract.

4. If Owner is required to furnish insurance and fails to do so, Contractor may procure it and add the premium advanced by Contractor to the amount due under the Note and may charge interest on the amount added from the time of its addition until it is paid, at a rate not exceeding the rate that the Note would produce over its full term if each scheduled payment were paid on the date due.

5. If Owner defaults in any payment on the Note or if this lien is foreclosed, Owner will reimburse Contractor for reasonable fees paid to an attorney who is not an employee of Contractor and court and other costs for collection of payments or foreclosure of the lien. The amount to be reimbursed will be secured by this contract.

6. If Owner defaults on the Note or fails to perform any of Owner's obligations and the default continues after Contractor gives Owner written notice of the default and a twenty-day period in which to cure the default (or longer if required by law or by written agreement), Contractor may:

    a.  declare the unpaid principal balance and earned interest on the Note immediately due;

    b.  request Trustee to foreclose this lien, in which case Contractor or Contractor's agent will give notice of the foreclosure sale as provided by the Texas Property Code as then in effect; and

    c.  purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Note.

**E.    Trustee's Duties**

If requested by Contractor to foreclose this lien, Trustee will:

1. either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2. sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Owner, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3. from proceeds of the sale, pay, in this order:

    a.  expenses of foreclosure, including a reasonable commission to Trustee;

    b.  to Contractor, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

    c.  any amounts required by law to be paid before payment to Owner; and

    d.  to Owner, any balance; and





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

    4.   be indemnified by Contractor against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this contract, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

**F.**   **General Provisions**

    1.   If the Construction is not completed as agreed between Owner and Contractor, the amount of the Consideration subject to Contractor's lien will be reduced by the amount reasonably necessary to complete the Construction as agreed. If Contractor is not the holder of the Note, the holder may complete the Construction, and the lien created in this contract will inure to the benefit of the holder.

    2.   This contract is executed, acknowledged, and delivered before any labor has been performed or any material has been delivered to the Property for the construction.

    3.   If any of the Property is sold under this contract, Owner will immediately surrender possession to the purchaser. If Owner fails to do so, Owner will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

    4.   Recitals in any trustee's deed conveying the Property will be presumed to be true.

    5.   The lien created in this contract will remain superior to liens later created even if the time of payment of all or part of the Note is extended or part of the Property is released.

    6.   If any portion of the Note cannot be lawfully secured by this contract, payments will be applied first to discharge that portion.

    7.   Owner assigns to Contractor all amounts payable to or received by Owner from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Contractor will either release any remaining amounts to Owner or apply them to reduce the Note. Owner will immediately give Contractor notice of any actual or threatened proceedings for condemnation of all or part of the Property.

    8.   Proceeding under this contract, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

    9.   Owner assigns to Contractor absolutely, not only as collateral, all present and future rent and other income and receipts from the Property. Owner warrants the validity and enforceability of the assignment. Owner may as Contractor's licensee collect rent and other income and receipts as long as Owner is not in default under the Note or this contract. Owner will apply all rent and other income and receipts to payment of the Note and performance of this contract, but if the rent and other income and receipts exceed the amount due under the Note and contract, Owner may retain the excess. If Owner defaults in payment of the Note or performance of this contract, Contractor may terminate Owner's license to collect rent and other income and receipts and then as Owner's agent may rent the Property and collect all rent and other income and receipts. Contractor neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Contractor may exercise Contractor's rights and remedies under this paragraph without taking possession of the Property. Contractor will apply all rent and other income and receipts first to expenses incurred in exercising Contractor's rights and remedies and then to Owner's obligations under the Note and this contract in the order determined by Contractor. Contractor is not required to act under this paragraph, and acting under this paragraph does not waive any of Contractor's other rights or remedies. If Owner becomes a voluntary or involuntary debtor in bankruptcy, Contractor's filing a proof of claim in bankruptcy will be deemed equivalent to the appointment of a receiver under Texas law.

    10.  Interest on the debt secured by this contract will not exceed the maximum rate or amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be automatically credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

    11.  When the context requires, singular nouns and pronouns include the plural.

    12.  The term *Note* includes all amounts secured by this contract.

    13.  Contractor includes Contractor's assignees or transferees. This contract binds, benefits, and may be enforced by the successors in interest of all parties.

    14.  If Owner and Maker are not the same person, the term *Owner* includes Maker.





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

This contract is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from a construction defect. If you have a complaint concerning a construction defect and that defect has not been corrected as may be required by law or by contract, you must provide the notice required by Chapter 27 of the Texas Property Code to the contractor by certified mail, return receipt requested, not later than the 60th day before the date you file suit to recover damages in a court of law or initiate arbitration. The notice must refer to Chapter 27 of the Texas Property Code and must describe the construction defect. If requested by the contractor, you must provide the contractor an opportunity to inspect and cure the defect as provided by Section 27.004 of the Texas Property Code.

IMPORTANT NOTICE: You and your contractor are responsible for meeting the terms and conditions of this contract. If you sign this contract and you fail to meet the terms and conditions of this contract, you may lose your legal ownership rights in your home. KNOW YOUR RIGHTS AND DUTIES UNDER THE LAW.

OWNER:

_____
MICHELE LESHA XU

_____
XIAOFENG XU

---

[Space Below This Line For Acknowledgments]

STATE OF TEXAS

COUNTY OF  HARDIN

This instrument was acknowledged before me this  June 2, 2022  by  MICHELE LESHA XU AND XIAOFENG XU

_____
(Signature of officer)

Notary Public
(Title of officer)

My Commission Expires:  3-11-2024

NOEL CASARES
NOTARY PUBLIC
STATE OF TEXAS
ID. 3633786
EXP. 03-11-2024

TEXAS MECHANIC'S LIEN CONTRACT
TXMLC.CST  08/06/20                    Page 6 of 7                    ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

CONTRACTOR:  CMH HOMES, INC.

By: _____

Name: _____

Title: _____


STATE OF TEXAS

COUNTY OF  HARDIN _____

This instrument was acknowledged before me this _____June 2, 2022_____ by  CMH HOMES, INC.

_____,

of _____

COMPANY, a(n) CORPORATION, on behalf of the CORPORATION.

_____
(Signature of officer)

_____
(Title of officer)

My Commission Expires: _3-11-2024_



TEXAS MECHANIC'S LIEN CONTRACT
TXMLC.CST  08/06/20                    Page 7 of 7                    DocMagic eForms



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

BEING a 38.918 acre tract of land as situated in the Willis Johnson Survey, Abstract No. 340, Hardin County, Texas and being out of and a part of a called 53-1/3 acre tract as conveyed to Gene A. Whisenhant by a General Warranty Deed dated June 18, 1990 and filed for record under Volume 897, Page 705 of the Hardin County Official Public Records. Said 38.918 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at an iron hex bolt found for the northeast corner of said Gene Whisenhant called 55-1/3 acre tract, the northeast corner of the herein described tract, and the northwest corner of a called 200 acre tract as conveyed to Crown Pine Timber 1, LP by a General Warranty Deed dated November 29, 2010 and filed for record under Instrument No. 2010-16813 of said Hardin County Official Public Records, same being located in the north line of said Willis Johnson Survey, Abstract No. 340, the south line of the Willis Johnson Survey, Abstract No. 339, and the south line of a called 597.884 acre tract designated as "Ghost Road – Tract VII" as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records. Said place of beginning has a Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), South Central Zone (U.S. Survey Foot) value of North: 10,140,995.69 and East: 4,120,155.48;

THENCE, South 04°16'09" East, a distance of 5382.46 feet, along the east line of said Gene A. Whisenhant called 55-1/3 acre tract and the west line of said Crown Pine Timber 1, LP called 200 acre tract, to an iron hex bolt found for the southwest corner of same, the southeast corner of said Gene A. Whisenhant called 53-1/3 acre tract, and the southeast corner of the herein described tract, same being located in the south line of said Willis Johnson Survey, Abstract No. 340, the north line of the Hardin County School Land Survey, Abstract No. 253, and the north line of a called 2454.353 acre tract as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records, said iron hex bolt being also located in the east right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of a called 5.81 acre tract designated as "Second" as conveyed to the County of Hardin by a Deed dated June 22, 1937 and filed for record under Volume 141, Page 481 of said Hardin County Official Public Records, and the current east right-of-way of a County Road known locally as "Ghost Road";

THENCE, North 13°03'18" West, a distance of 2640.73 feet, along the east right right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of said County of Hardin called 5.81 acre tract, and the current east right-of-way of said "Ghost Road", to a 5/8-inch iron rod set for the southwest corner of the herein described tract and the south corner of a called 9.502 acre tract as conveyed to Richard W. Gamble by a Warranty Deed dated April 11, 1995 and filed for record under Volume 1044, Page 411 of said Hardin County Official Public Records, same being located in the west line of said Gene A. Whisenhant called 55-1/3 acre tract, from which a 3/8-inch iron rod found at the intersection of the east right-of-way of said "Ghost Road" and the north line of the Willis Johnson Survey, Abstract No. 340 bears North 13°03'18" West a distance of 2813.59 feet;

THENCE, North 05°00'33" West, a distance of 2777.18 feet, along the east line of said Richard W. Gamble called 9.502 acre tract, the east line of a called 2.00 acre tract as conveyed to Bernice Williams by a Special Warranty Deed dated October 27, 1989 and filed for record under Volume 1058, Page 688 of said Hardin County Official Public Records, and the west line of said Gene A. Whisenhant called 55-1/3 acre tract, to a 3/8-inch iron rod found for the northwest corner of same, the northwest corner of the herein described tract, and the northeast corner of said Bernice Williams called 2.00 acre tract, same being located in the south line of said LRT I LLC called 597.884 acre tract, the south line of said Willis Johnson Survey, Abstract No. 339, and the north line of said Willis Johnson Survey, Abstract No. 340, from which a 3/8-inch iron rod found in the east right-of-way of said "Ghost Road" for the northwest corner of said Bernice Williams called 2.00 acre tract bears South 86°15'33" West a distance of 393.90 feet, and a concrete monument found for the northwest

corner of said Willis Johnson Survey, Abstract No. 340 bears South 86°15'33" West a distance of 877.11 feet;

THENCE, North 86°16'59" East, a distance of 439.24 feet, along the north line of said Gene A. Whisenhant called 55-1/3 acre tract, the north line of said Willis Johnson Survey, Abstract No. 340, the south line of said LRT I LLC called 597.884 acre tract, and the south line of said Willis Johnson Survey, Abstract No. 339, to the PLACE OF BEGINNING, CONTAINING 38.918 acres of land in Hardin County, Texas.

*The bearings and distances recited herein are based on the Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), Central Zone (U.S. Survey Foot).*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

After Recording Return To:
AMCAP MORTGAGE, LTD.
9999 BELLAIRE BOULEVARD, SUITE 700
HOUSTON, TEXAS 77036
Loan Number: 204546983

Independence Title/GF# 2213651-SH5A/ NHM

———————————— [Space Above This Line For Recording Data] ————————————

FHA Case No: 512-4867978-703 **DEED OF TRUST**

**MIN:** 100110900010451744                                    **MERS Phone:** 888-679-6377

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated        June 2, 2022        , together with all Riders to this document.

(B) "Borrower" is MICHELE LESHA XU AND XIAOFENG XU, A MARRIED COUPLE

Borrower is the grantor under this Security Instrument.

(C) "Lender" is AMCAP MORTGAGE, LTD.

Lender is a                                                                organized and existing under the laws of        TEXAS

Lender's address is    9999 BELLAIRE BOULEVARD, HOUSTON, TEXAS 77036

Lender includes any holder of the Note who is entitled to receive payments under the Note.

(D) "Trustee" is RICHARD A. RAMIREZ

———————————————————————————————————————————————

TEXAS FHA DEED OF TRUST - MERS
TXDOTZ2.FHA 01/23/19                              ☆ DocMagic




Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Trustee's address is    4807 SPICEWOOD SPRINGS RD, BLDG 3, SUITE 250, AUSTIN, TEXAS 78759

(E)  "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated    June 2, 2022    .
The Note states that Borrower owes Lender    THREE HUNDRED THIRTY-THREE THOUSAND EIGHT HUNDRED FORTY-ONE AND 00/100    Dollars (U.S. $333,841.00    )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    November 1, 2052    .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐  Adjustable Rate Rider        ☐  Planned Unit Development Rider
☐  Condominium Rider            ☒  Other(s) [specify] Construction Rider, Manufactured Home Rider

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

(R) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                                    of                         HARDIN                    :
[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 000340-000100

which currently has the address of  17500 GHOST ROAD
                                                                                          [Street]

SARATOGA              , Texas                 77585                      ("Property Address"):
[City]                                                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and, Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur

---



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable

TEXAS FHA DEED OF TRUST - MERS
TXDOTZ2.FHA 01/23/19
☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other

TEXAS FHA DEED OF TRUST - MERS
TXDOTZ2.FHA  01/23/19

☆DocMagic

Page 8 of 15



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co- signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, and property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

---

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender, its designee, or Trustee shall give notice of the date, time, place and terms of sale by posting and filing the notice as provided by Applicable Law. Lender or its designee shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be public, occurring between the hours of 10 a.m. and 4 p.m. on a date and at a location permitted by Applicable Law. The time of sale must begin at the time stated in the notice of sale or not later than three hours after the stated time. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and






Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.

Check box as applicable:

[X] Purchase Money.
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] Owelty of Partition.
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[X] Renewal and Extension of Liens Against Homestead Property.
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

TEXAS FHA DEED OF TRUST - MERS
TXDOTZ2.FHA  01/23/19                                                              ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
MICHELE LESHA XU                     -Borrower

_____ (Seal)
XIAOFENG XU                          -Borrower

_____
Witness

_____
Witness

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

————————————————— [Space Below This Line For Acknowledgment] —————————————————

The State of  TEXAS ,

County of  HARDIN ,

Before me,  Noel Casares
(here insert the name and character of the notarizing officer)

on this day personally appeared  MICHELE LESHA XU AND XIAOFENG XU

_____

_____

known to me (or proved to me on the oath of _____

or through  Texas Drivers License # 28294330 +     )
(description of identity card or other document)  TX Driver's Lic #13775095

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this  2nd  day of  June   2022 .

(SEAL)

Noel Casares
NOTARY PUBLIC
STATE OF TEXAS
ID 3633798
EXP. 03-11-2024

_____
Noel Casares
(Notary Public Signature)

Loan Originator: CHAD STEPHAN  NMLSR ID 1670704
Loan Originator Organization: AMCAP MORTGAGE, LTD., NMLSR ID 129122

TEXAS FHA DEED OF TRUST - MERS
TXDOTZ2.FHA  01/23/19                                           ☆DocMagic

Page 15 of 15



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

MIN: 100110900010451744                    Loan Number: 204546983

# MANUFACTURED HOME RIDER
# TO MORTGAGE, DEED OF TRUST
# OR OTHER SECURITY INSTRUMENT

THIS MANUFACTURED HOME RIDER is made this    2nd    day of       June, 2022        ,
and is incorporated into and shall be deemed to amend and supplement that certain Mortgage, Deed of Trust
or Other Security Instrument (the "Security Instrument") of the same date hereof given by the undersigned
(the "Borrower(s)") to secure Borrower's Promissory Note (or Manufactured Home Retail Installment
Contract) to  AMCAP MORTGAGE, LTD., A TEXAS LIMITED PARTNERSHIP

(the "Note Holder")
of the same date hereof (the "Note"), and relating to the property described in the Security Instrument and
located at:

17500 GHOST ROAD, SARATOGA, TEXAS 77585

The following provisions are applicable to the Security Instrument, including those marked and completed
(where applicable):

**1. [X] DESCRIPTION OF REAL PROPERTY.** The description of the real property set forth in the
Security Instrument is amended by the addition of the following:

"Together with all improvements constructed upon, affixed to or located upon the above described real
property, including without limitation any residential dwelling located upon or to be located thereon,
which dwelling is or may be a manufactured home, as hereinbelow described, which manufactured
home is or upon placement and affixation shall be conclusively deemed to be real estate (the
"Manufactured Home"):

| Make:<br>CMH MANUFACTURING INC | Model:<br>98TU28765AH22 | Serial Number:<br>BL2007797TXAB |
|---|---|---|

Year Built: 2022                          Length and Width: '76'FT X '28'FT (L X W)

[ ] No Certificate of Title has been issued   [X] Certificate of Title No. **TB PERFECTED**

**2. [ ] MANUFACTURED HOME AS PERSONAL PROPERTY SECURITY.** The Note is also secured
by a security interest in favor of Note Holder in the following described manufactured home ("Manufactured
Home"), which is located on the real property described in the Security Instrument:

| Make: | Model: | Serial Number: |
|---|---|---|

Year Built:                               Length and Width:

[ ] No Certificate of Title has been issued   [ ] Certificate of Title No.

---

MANUFACTURED HOME RIDER TO MORTGAGE, DEED OF TRUST
OR OTHER SECURITY INSTRUMENT
MH.RDR 10/24/19                          Page 1 of 3                          ☆DocMagic





Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**3. ADDITIONAL COVENANTS OF BORROWER(S) RELATING TO MANUFACTURED HOME.** If Paragraph 1 has been marked and completed, Borrower(s) agree(s) to comply with all State and local laws and regulations relating to the affixation of the Manufactured Home to the real property described herein including, but not limited to, surrendering the Certificate of Title (if required), obtaining any governmental approval and executing any documentation necessary to classify the Manufactured Home as real property under State and local law.

The Manufactured Home shall be at all times and for all purposes permanently affixed to and part of the real property described herein and shall not be removed from said real property. Borrower(s) covenant(s) that affixing the Manufactured Home to the real property described herein does not violate any zoning laws or other local requirements applicable to manufactured homes.

If Paragraph 2 has been marked and completed, Borrower(s) agree(s) and covenant(s) that the Manufactured Home is and shall remain personal property, severable and separate from the real property described in the Security Instrument, and agree(s) and covenant(s) not to take any action, or fail to take any action, which would result in a change in such status.

**4. SECURITY AGREEMENT AND FINANCING STATEMENT.** This Security Instrument shall be a security agreement granting Lender a first and prior security interest in all of Borrower's right, title and interest in, to and under any personal property ("Personal Property") which under and within the meaning of the applicable State laws is and cannot be classified and considered real property, if any. Personal Property shall also include the Manufactured Home described in Paragraph 2 hereof, if applicable. In the event of any foreclosure sale, whether made by Trustee or a substitute trustee, or under judgment of the court or pursuant to a power of sale, all of the Property and Personal Property may, at the option of Lender, be sold as a whole or any part thereof. It shall not be necessary to have present at the place of such sale the Personal Property or any part thereof. Lender, as well as Trustee or any substitute trustee on Lender's behalf, shall have all the rights, remedies and recourses with respect to the Personal Property afforded to a "Secured Party" by the applicable state laws in addition to and not in limitation of the other rights and recourse afforded Lender and/or Trustee or any substitute trustee under this Security Instrument. Borrower(s) shall, upon demand, pay to Lender the amount of any and all expenses, including the fees and disbursements of Lender's legal counsel and of any experts and agents which Lender may incur in connection with: (i) the making and/or administration of this Security Instrument; (ii) the custody, preservation, use or operation of, or the sale or collection from, or other realization upon any property, real and/or personal, described in this Security Instrument; (iii) the exercise or enforcement of any of the rights of Lender under this Security Instrument; or (iv) the failure by Borrower(s) to perform or observe any of the provisions or covenants in this Security Instrument.

Lender may, at its election, at any time after the delivery of this Security Instrument, sign one or more copies of this Security Instrument in order that such copies may be used as a financing statement under the applicable State laws. Lender's signature need not be acknowledged, and is not necessary to the effectiveness hereof as a deed of trust, a security agreement, or (unless otherwise required by applicable law) a financing statement.

**5. RESPONSIBILITY FOR IMPROVEMENTS.** Lender shall not be responsible for any improvements made or to be made, or for their completion relating to the real property, and shall not in any way be considered a guarantor of performance by any person or party providing or effecting such improvements.

---

MANUFACTURED HOME RIDER TO MORTGAGE, DEED OF TRUST
OR OTHER SECURITY INSTRUMENT
MH.RDR 10/24/19                    Page 2 of 3

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**6. INVALID PROVISIONS.** If any provision of this Security Instrument is declared invalid, illegal or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provisions shall be severed from this Security Instrument and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this Security Instrument.

Executed this 7ᴴᴱ day of June 2022

_____ (Seal)
MICHELE LESHA XU          -Borrower

_____ (Seal)
XIAOFENG XU               -Borrower

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

## CONSTRUCTION LOAN RIDER TO SECURITY INSTRUMENT
### (To Be Recorded With The Security Instrument)

**LENDER:** AMCAP MORTGAGE, LTD.

**BORROWER:** MICHELE LESHA XU, XIAOFENG XU

**PROPERTY:** 17500 GHOST ROAD, SARATOGA, TEXAS 77585

**THIS CONSTRUCTION LOAN RIDER TO SECURITY INSTRUMENT** (the "Rider") will be deemed to amend and supplement the Mortgage or Deed of Trust, and any and all riders or amendments thereto (the "Security Instrument") of the same date, to which this Rider is attached, given by the undersigned (the "Borrower") to secure Borrower's Promissory Note to Lender of the same date (the "Note") and covering the property (the "Property") described in this Security Instrument. All terms defined in the Note and elsewhere in this Security Instrument will have the same meaning in this Rider.

**AMENDED AND ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in this Security Instrument, Borrower and Lender further covenant and agree as follows:

1. **Construction Loan Agreement.** Borrower's Note evidences Borrower's promise to pay Lender the aggregate amount of all disbursements made and distributed by Lender under the terms and conditions of a Construction Loan Agreement between Lender and Borrower dated the same date as the Note (the "Loan Agreement"). The Loan Agreement provides for certain improvements (the "Improvements") on the Property. Borrower agrees to comply with the covenants and conditions of the Loan Agreement. This Security Instrument secures to Lender (a) the repayment of the debt evidenced by the Note, including the aggregate amount of all disbursements made by Lender from time to time under the terms of the Loan Agreement, with interest at the Construction Phase Note Rate, and all renewals, extensions, and modifications of the Note, (b) the performance of all of Borrower's covenants and agreements under the Note, this Security Instrument, and the Loan Agreement (the "Loan Documents"), and (c) the payment of all other sums, with interest at the rate set forth in the Note, advanced by Lender to protect the security of this Security Instrument, or to perform any of Borrower's obligations under the Loan Documents. Upon the failure of Borrower to keep and perform all the covenants, conditions and agreements of the Loan Agreement, the Principal and all interest and other charges provided for in the Loan Documents and secured hereby will, at the option of the Lender, become immediately due and payable in full.

2. **Future Advances.** During the construction of the Improvements (the "Construction Phase"), interest will accrue on the outstanding Principal according to the terms set forth in the Note and the Construction Loan Addendum To Note. Provided there has been no default as defined in the Note, the Loan Agreement, or this Security Instrument, Lender is legally obligated to make disbursements of principal


DocMagic eForms
☆ DocMagic

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

upon application therefor by the Borrower in accordance with the provisions of the Note and Loan Agreement up to a maximum Principal amount (including present and future obligations), which is equal to the amount of the Note as set forth in the Security Instrument. Such disbursements will be evidenced by the Note, made under the terms of the Loan Agreement and secured by this Security Instrument and may occur for a period up to the end of the Construction Phase, but in no event after 120 months from the date of this Rider.

3. **Assignment of Rights or Claims.** From time to time as Lender deems necessary to protect Lender's interest, Borrower will, upon request of Lender, execute, acknowledge before a notary, and deliver to Lender, assignments of any and all rights or claims which relate to the Improvements on the Property.

4. **Breach by Borrower.** In case of breach by Borrower of the covenants and conditions of the Loan Agreement, subject to any right of Borrower to cure Borrower's default, Lender, at Lender's option, with or without entry upon the Property (a) may invoke any of the rights or remedies provided in the Loan Agreement, (b) may accelerate the sums secured by this Security Instrument and invoke any of the remedies provided in this Security Instrument, or (c) may do both. Lender's failure to exercise any of its rights and remedies at any one time will not constitute a waiver by Lender of its right to exercise that right or remedy, or any other right or remedy, in the future.

5. **Security Agreement and Financing Statement.** The property covered by this Security Instrument includes the Property previously described or referred to in this Security Instrument, together with the following, all of which are referred to as the "Property." The portion of the Property that constitutes real property is sometimes referred to as the "Real Property." The portion of the Property which constitutes personal property is sometimes referred to as the "Personal Property," and is described as follows: (i) Borrower's right to possession of the Property; (ii) any and all fixtures, machinery, equipment, building materials, appliances, and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the Property or the Improvements, and all replacements of and accessions to those goods; and (iii) proceeds and products of the Personal Property. Despite any other provision of this Rider or any other Loan Document, however, Lender is not granted, and will not have, a non-purchase money security interest in household goods, to the extent that such a security interest would be prohibited by applicable law.

This Security Instrument is and will be a security agreement granting Lender a first and prior security interest in all of Borrower's right, title and interest in and to the Personal Property, under and within the meaning of applicable state laws, as well as a document granting a lien upon and against the Real Property. In the event of any foreclosure sale, whether made by Trustee, or under judgment of a court, all of the Real Property and Personal Property may, at the option of Lender, be sold as a whole or in parcels. It will not be necessary to have present at the place of such sale the Personal Property or any part thereof. Lender, as well as Trustee on Lender's behalf, will have all the rights, remedies and recourse with respect to the Personal Property afforded to a "Secured Party" by applicable state laws in addition to and not in limitation of the other rights and remedies afforded Lender and/or Trustee under this Security Instrument. Borrower will, upon demand, pay to Lender the amount of any and all expenses, including the fees and disbursements of Lender's legal counsel and of any experts and agents, which Lender may incur in connection with: (i) the making and/or administration of this Security Instrument; (ii) the custody, preservation, use or operation of, or the sale of, collection from, or other

MULTISTATE CONSTRUCTION LOAN RIDER TO SECURITY INSTRUMENT
Single Family - Fannie Mae HOMESTYLE - Form 3737  11/01 (rev. 06/16)
MODIFIED BY DOCMAGIC, INC. FOR CONSTRUCTION LOANS
TX3737CO.RID  03/12/19                                    Page 2 of 4

DocMagic eSignature
✰ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

realization upon any Property, real and/or personal, described in this Security Instrument; (iii) the exercise or enforcement of any of the rights of Lender under this Security Instrument; or (iv) the failure by Borrower to perform or observe any of the provisions or covenants in this Security Instrument.

Borrower also authorizes Lender to sign and file, without Borrower's signature, such financing and continuation statements, amendments, and supplements thereto, and other documents that Lender may from time to time deem necessary to perfect, preserve and protect Lender's security interest in the Property. Borrower acknowledges that Lender may require Borrower to sign other documents necessary to protect Lender's interest in the Property. Borrower gives Lender permission and grants it authority to sign these documents for Borrower.

6. **Invalid Provisions.** If any provision of this Security Instrument is declared invalid, illegal, or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provision will be severed from this Security Instrument and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this Security Instrument.

7. **Addresses.**

   The name and address of the Borrower is:
   MICHELE LESHA XU
   17500 GHOST ROAD, SARATOGA, TEXAS 77585

   The name and address of the Lender/Secured Party is:
   AMCAP MORTGAGE, LTD.
   9999 BELLAIRE BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036

8. **Relation to Loan Agreement.** This Security Instrument is subject to all of the applicable terms and conditions contained in the Loan Agreement. The Loan Agreement is to be filed in the County Clerk's Office in the County where the Property is located at the same time this Security Instrument is recorded. If Borrower fails to keep any of the promises Borrower makes in the Loan Agreement, Lender may require that the entire balance of Borrower's debt to Lender be paid immediately. The terms and conditions of this Rider will survive the termination of the Loan Agreement and the repayment of the Loan.

9. **Paragraph 6 of the Security Instrument.** Paragraph 6 of the Security Instrument is hereby modified to read as follows:

   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the last disbursement is made and distributed by Lender under the terms and conditions of the Loan Agreement and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

DocMagic eFComm
✦DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider.

DATED this    2nd  day of    June, 2022

_____ (Seal)
MICHELE LESHA XU                -Borrower

_____ (Seal)
XIAOFENG XU                          -Borrower

MULTISTATE CONSTRUCTION LOAN RIDER TO SECURITY INSTRUMENT
Single Family - Fannie Mae HOMESTYLE - Form 3737  11/01 (rev. 09/18)
MODIFIED BY DOCMAGIC, INC. FOR CONSTRUCTION LOANS
TX3737CO.RID  03/12/19                              Page 4 of 4

DocMagic eForms



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# RENEWAL AND EXTENSION EXHIBIT
## TO BE ATTACHED TO THE DEED OF TRUST

Loan No.: 204546983

This Renewal and Extension Exhibit is incorporated into and shall amend and supplement the Security Instrument of even date herewith. The Note is in renewal and extension, but not in extinguishment, of the indebtedness, whether one or more, described as follows:

Residential Construction Note and Mechanic's Lien Contract in the amount of $ 206,350.00 executed by MICHELE LESHA XU payable to the order of CMH HOMES, INC. securing the property described thereon and is or will be filed of record in the Real Property Records of HARDIN County, Texas.

MECHANIC'S LIEN RETAINED IN CONTRACT DATED JUNE 2, 2022 EXECUTED BY AND BETWEEN MICHELE LESHA XU AND XIAOFENG XU AS OWNER(S) AND CMH HOMES, INC. AS CONTRACTOR, RECORDED SIMULTANEOUSLY HEREWITH IN THE REAL PROPERTY RECORDS OF HARDIN COUNTY, TEXAS SECURING MECHANIC'S LIEN NOTE OF EVEN DATE THEREWITH IN THE ORIGINAL PRINCIPAL SUM OF $ 206,350.00 PAYABLE TO THE ORDER OF CMH HOMES, INC.

Lender is expressly subrogated to all rights, liens, equities and remedies securing the original holder(s) of the above debt(s) and the original liens(s) securing the same are renewed and extended to the date of maturity of the Note secured by the Security Instrument in renewal and extension of the indebtedness. Borrower acknowledges that the liens(s) securing the prior debt(s) is valid, that the lien(s) subsists against the Property, and that by this instrument it is renewed and extended in full force until the Note is paid, even though the original lien(s) is released and not assigned to Lender.

This renewal and extension is not a refinance of a debt any portion of which is an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution.

In addition to the refinance of principal and any interest, if Lender is advancing all or a portion of the costs necessary to refinance debt on the Property, Borrower acknowledges that these costs are reasonable and necessary costs to refinance such debt. Borrower has received no funds from this Loan, but only the benefit of those sums advanced for payment of 1) principal and any interest on loans being refinanced, 2) any reasonable and necessary closing costs; and 3) any refund to Borrower of closing costs escrowed in connection with the Loan advanced by Borrower. If any portion of the Loan secured a debt for work or material used in construction improvements on the Property, Borrower understands that funds not used in such construction, if any, must first be used to reduce the unpaid principal of the Loan or, at Lender's option, the Note must be modified to evidence the actual funds advanced.

TEXAS RENEWAL AND EXTENSION EXHIBIT
TXREE.MSC 02/04/14

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**BEING** a 38.918 acre tract of land as situated in the Willis Johnson Survey, Abstract No. 340, Hardin County, Texas and being out of and a part of a called 53-1/3 acre tract as conveyed to Gene A. Whisenhant by a General Warranty Deed dated June 18, 1990 and filed for record under Volume 897, Page 705 of the Hardin County Official Public Records. Said 38.918 acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at an iron hex bolt found for the northeast corner of said Gene Whisenhant called 55-1/3 acre tract, the northeast corner of the herein described tract, and the northwest corner of a called 200 acre tract as conveyed to Crown Pine Timber 1, LP by a General Warranty Deed dated November 29, 2010 and filed for record under Instrument No. 2010-16813 of said Hardin County Official Public Records, same being located in the north line of said Willis Johnson Survey, Abstract No. 340, the south line of the Willis Johnson Survey, Abstract No. 339, and the south line of a called 597.884 acre tract designated as "Ghost Road – Tract VII" as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records. Said place of beginning has a Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), South Central Zone (U.S. Survey Foot) value of North: 10,140,995.69 and East: 4,120,155.48;

THENCE, South 04°16'09" East, a distance of 5382.46 feet, along the east line of said Gene A. Whisenhant called 55-1/3 acre tract and the west line of said Crown Pine Timber 1, LP called 200 acre tract, to an iron hex bolt found for the southwest corner of same, the southeast corner of said Gene A. Whisenhant called 53-1/3 acre tract, and the southeast corner of the herein described tract, same being located in the south line of said Willis Johnson Survey, Abstract No. 340, the north line of the Hardin County School Land Survey, Abstract No. 253, and the north line of a called 2454.353 acre tract as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records, said iron hex bolt being also located in the east right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of a called 5.81 acre tract designated as "Second" as conveyed to the County of Hardin by a Deed dated June 22, 1937 and filed for record under Volume 141, Page 481 of said Hardin County Official Public Records, and the current east right-of-way of a County Road known locally as "Ghost Road";

THENCE, North 13°03'18" West, a distance of 2640.73 feet, along the east right right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of said County of Hardin called 5.81 acre tract, and the current east right-of-way of said "Ghost Road", to a 5/8-inch iron rod set for the southwest corner of the herein described tract and the south corner of a called 9.502 acre tract as conveyed to Richard W. Gamble by a Warranty Deed dated April 11, 1995 and filed for record under Volume 1044, Page 411 of said Hardin County Official Public Records, same being located in the west line of said Gene A. Whisenhant called 55-1/3 acre tract, from which a 3/8-inch iron rod found at the intersection of the east right-of-way of said "Ghost Road" and the north line of the Willis Johnson Survey, Abstract No. 340 bears North 13°03'18" West a distance of 2813.59 feet;

THENCE, North 05°00'33" West, a distance of 2777.18 feet, along the east line of said Richard W. Gamble called 9.502 acre tract, the east line of a called 2.00 acre tract as conveyed to Bernice Williams by a Special Warranty Deed dated October 27, 1989 and filed for record under Volume 1058, Page 688 of said Hardin County Official Public Records, and the west line of said Gene A. Whisenhant called 55-1/3 acre tract, to a 3/8-inch iron rod found for the northwest corner of same, the northwest corner of the herein described tract, and the northeast corner of said Bernice Williams called 2.00 acre tract, same being located in the south line of said LRT I LLC called 597.884 acre tract, the south line of said Willis Johnson Survey, Abstract No. 339, and the north line of said Willis Johnson Survey, Abstract No. 340, from which a 3/8-inch iron rod found in the east right-of-way of said "Ghost Road" for the northwest corner of said Bernice Williams called 2.00 acre tract bears South 86°15'33" West a distance of 393.90 feet, and a concrete monument found for the northwest

corner of said Willis Johnson Survey, Abstract No. 340 bears South 86°15'33" West a distance of 877.11 feet;

THENCE, North 86°16'59" East, a distance of 439.24 feet, along the north line of said Gene A. Whisenhant called 55-1/3 acre tract, the north line of said Willis Johnson Survey, Abstract No. 340, the south line of said LRT I LLC called 597.884 acre tract, and the south line of said Willis Johnson Survey, Abstract No. 339, to the PLACE OF BEGINNING, CONTAINING 38.918 acres of land in Hardin County, Texas.

*The bearings and distances recited herein are based on the Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), Central Zone (U.S. Survey Foot).*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

After Recording Return To:
AMCAP MORTGAGE, LTD.
9999 BELLAIRE BOULEVARD, SUITE 700
HOUSTON, TEXAS 77036
Loan Number: 204546983

Independence Title/GF# 7U985LSHSA/MHU

———————— {Space Above This Line For Recording Data} ————————

## (TO BE GIVEN TO CONTRACTOR AT CLOSING)

# TEXAS AFFIDAVIT OF COMMENCEMENT

Words used in this Affidavit are defined below. Words in the singular mean and include the plural and vice versa.

**"Original Contractor"** is    CMH HOMES, INC.

**"Owner"** is    MICHELE LESHA XU AND XIAOFENG XU, A MARRIED COUPLE

**"Property"** means the property commonly known as    17500 GHOST ROAD, SARATOGA, TEXAS 77585

BEFORE ME, the undersigned authority, on this day personally appeared Owner and Original Contractor known to me to be the persons whose names are subscribed below, and after being duly sworn by me, did each on his or her oath state the following:

1. Owner is the owner of the Property more particularly described as follows:
   SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
   A.P.N.: 000340-000100

on which improvements, generally described as follows, are being constructed or will be constructed:
ALL MATERIALS AND LABOR DESCRIBED IN THE SPECIFICATIONS FOR PROJECT XU
RESIDENCE - MICHELE LESHA XU AND XIAOFENG XU ON 17500 GHOST ROAD,
SARATOGA, TX  77585

TEXAS AFFIDAVIT OF COMMENCEMENT
Texas Property Code Section 53.124(c)
TXAC.MSC  12/28/16                          Page 1 of 3                          ☆ DocMagic





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

2.   The address of Owner is:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

3.   The address of Original Contractor who is furnishing labor, service or materials for the construction of the improvements, is:  23557 HWY 59 N, PORTER, TEXAS 77365

4.   The name and address of any other original contractor presently known to Owner that is furnishing, or will furnish, labor, service, or materials for the construction of the improvements.

5.   Work on the improvements actually commenced on                                        , at

6.   This affidavit has been jointly made by Owner and Original Contractor personally or by and through an authorized representative of each, the same being the undersigned affiants, and may be recorded by any person with the county clerk of the county in which the Property is located, whereupon it shall be deemed to have been jointly filed by Owner and Original Contractor.

7.   This affidavit is made pursuant to Section 53.124(c) of the Texas Property Code to induce Lender to fund all or part of a loan to Owner to pay Contractor all or part of the consideration represented by the Residential Construction Contract.

_____  6-2-2022      _____  6-2-2022
Owner  MICHELE LESHA XU        Date         Owner  XIAOFENG XU              Date

_____  _____      _____  _____
Owner                          Date         Owner                          Date

_____  _____      _____  _____
Owner                          Date         Owner                          Date

CONTRACTOR:   CMH HOMES, INC.

By: _____

Name:  CHIP MAY

Title:  General Manager

TEXAS AFFIDAVIT OF COMMENCEMENT                                    ☆ DocMagic
Texas Property Code Section 53.124(c)
TXAC.MSC  12/28/16                    Page 2 of 3



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**JURAT**

State of __TEXAS__

County of __HARDIN__

Sworn to and subscribed before me on the ___2ND___ day of ___June___ ___2022___ , by

__MICHELE LESHA XU AND XIAOFENG XU__ _____ (name of principal signer).

_Noel Casares_
Notary Public Signature

NOEL CASARES
NOTARY PUBLIC
STATE OF TEXAS
ID. 3633788
EXP. 03-11-2024

(SEAL)

**JURAT**

State of ___Texas___

County of ___Hardin___

Sworn to and subscribed before me on the ___2nd___ day of ___June___ ___2022___ , by

__Chip May as GM of CMH Homes Inc__ _____ (name of principal signer).

Notary Public Signature

TAMMRA S. PICKENS
My Notary ID # 124691127
Expires June 24, 2023

(SEAL)

TEXAS AFFIDAVIT OF COMMENCEMENT
Texas Property Code Section 53.124(c)
TXAC.MSC  12/28/16

Page 3 of 3

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**BEING** a 38.918 acre tract of land as situated in the Willis Johnson Survey, Abstract No. 340, Hardin County, Texas and being out of and a part of a called 53-1/3 acre tract as conveyed to Gene A. Whisenhant by a General Warranty Deed dated June 18, 1990 and filed for record under Volume 897, Page 705 of the Hardin County Official Public Records. Said 38.918 acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at an iron hex bolt found for the northeast corner of said Gene Whisenhant called 55-1/3 acre tract, the northeast corner of the herein described tract, and the northwest corner of a called 200 acre tract as conveyed to Crown Pine Timber 1, LP by a General Warranty Deed dated November 29, 2010 and filed for record under Instrument No. 2010-16813 of said Hardin County Official Public Records, same being located in the north line of said Willis Johnson Survey, Abstract No. 340, the south line of the Willis Johnson Survey, Abstract No. 339, and the south line of a called 597.884 acre tract designated as "Ghost Road – Tract VII" as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records. Said place of beginning has a Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), South Central Zone (U.S. Survey Foot) value of North: 10,140,995.69 and East: 4,120,155.48;

THENCE, South 04°16'09" East, a distance of 5382.46 feet, along the east line of said Gene A. Whisenhant called 55-1/3 acre tract and the west line of said Crown Pine Timber 1, LP called 200 acre tract, to an iron hex bolt found for the southwest corner of same, the southeast corner of said Gene A. Whisenhant called 53-1/3 acre tract, and the southeast corner of the herein described tract, same being located in the south line of said Willis Johnson Survey, Abstract No. 340, the north line of the Hardin County School Land Survey, Abstract No. 253, and the north line of a called 2454.353 acre tract as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records, said iron hex bolt being also located in the east right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of a called 5.81 acre tract designated as "Second" as conveyed to the County of Hardin by a Deed dated June 22, 1937 and filed for record under Volume 141, Page 481 of said Hardin County Official Public Records, and the current east right-of-way of a County Road known locally as "Ghost Road";

THENCE, North 13°03'18" West, a distance of 2640.73 feet, along the east right right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of said County of Hardin called 5.81 acre tract, and the current east right-of-way of said "Ghost Road", to a 5/8-inch iron rod set for the southwest corner of the herein described tract and the south corner of a called 9.502 acre tract as conveyed to Richard W. Gamble by a Warranty Deed dated April 11, 1995 and filed for record under Volume 1044, Page 411 of said Hardin County Official Public Records, same being located in the west line of said Gene A. Whisenhant called 55-1/3 acre tract, from which a 3/8-inch iron rod found at the intersection of the east right-of-way of said "Ghost Road" and the north line of the Willis Johnson Survey, Abstract No. 340 bears North 13°03'18" West a distance of 2813.59 feet;

THENCE, North 05°00'33" West, a distance of 2777.18 feet, along the east line of said Richard W. Gamble called 9.502 acre tract, the east line of a called 2.00 acre tract as conveyed to Bernice Williams by a Special Warranty Deed dated October 27, 1989 and filed for record under Volume 1058, Page 688 of said Hardin County Official Public Records, and the west line of said Gene A. Whisenhant called 55-1/3 acre tract, to a 3/8-inch iron rod found for the northwest corner of same, the northwest corner of the herein described tract, and the northeast corner of said Bernice Williams called 2.00 acre tract, same being located in the south line of said LRT I LLC called 597.884 acre tract, the south line of said Willis Johnson Survey, Abstract No. 339, and the north line of said Willis Johnson Survey, Abstract No. 340, from which a 3/8-inch iron rod found in the east right-of-way of said "Ghost Road" for the northwest corner of said Bernice Williams called 2.00 acre tract bears South 86°15'33" West a distance of 393.90 feet, and a concrete monument found for the northwest

corner of said Willis Johnson Survey, Abstract No. 340 bears South 86°15'33" West a distance of 877.11 feet;

THENCE, North 86°16'59" East, a distance of 439.24 feet, along the north line of said Gene A. Whisenhant called 55-1/3 acre tract, the north line of said Willis Johnson Survey, Abstract No. 340, the south line of said LRT I LLC called 597.884 acre tract, and the south line of said Willis Johnson Survey, Abstract No. 339, to the **PLACE OF BEGINNING, CONTAINING** 38.918 acres of land in Hardin County, Texas.

*The bearings and distances recited herein are based on the Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), Central Zone (U.S. Survey Foot).*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

AMCAP MORTGAGE, LTD., 9999 BELLAIRE
BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036

Loan Number: 204546983

# AFFIXATION AFFIDAVIT REGARDING MANUFACTURED (AND FACTORY BUILT) HOME

The State of      **TEXAS**      )

County of      **HARDIN**      )

Before me, the undersigned authority, on this day personally appeared   MICHELE LESHA XU, XIAOFENG XU

(Borrower(s)) and  AMCAP MORTGAGE, LTD.

known to me to be the person(s) whose name(s) is/are subscribed below, and who, being by me first duly sworn, did each on his/or her oath state as follows:

## DESCRIPTION OF MANUFACTURED HOME

| NEW | 2022 | CMH MANUFACTURING INC | |
|---|---|---|---|
| New/Used | Year | Manufacturer's Name | |
| 98TU28765AH22 | | BL2007797TXAB | '76'FT X '28'FT (L X W) |
| Model Name or Model No. | | Manufacturer's Serial No. | Length x Width |
| NTA2063876, NTA2063877 | | TB PERFECTED | |
| HUD Label Number(s): | | Certificate of Title Number: | |

## MANUFACTURED HOME LOCATION

| 17500 GHOST ROAD | HARDIN |
|---|---|
| Street | County |
| SARATOGA | TEXAS | 77585 |
| City | State | Zip Code |



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

In addition to the covenants and agreements made in the Security Instrument, Borrower covenants and agrees as follows:

1.  The manufactured home described above located at the address above is permanently affixed to a foundation and will assume the characteristic of site-built housing.
2.  The wheels, axles, tow bar, or hitch were removed when said manufactured home was placed on the permanent site.
3.  All foundations, both perimeter and piers for said manufactured home have footings that are located below the frost line or in compliance with local building codes or requirements.
4.  If piers are used for said manufactured home, they will be placed where said home manufacturer recommends.
5.  If state law so requires, anchors for said manufactured home have been provided.
6.  The manufactured home is permanently connected to a septic or sewage system and other utilities such as electricity, water and natural gas.
7.  No other lien or financing affects said manufactured home or real estate, other than those disclosed in writing to Lender.
8.  The foundation system of the manufactured home has been designed by an engineer, if required by state or local building codes, to meet the soil conditions of the site.
9.  Borrower(s) acknowledges his or her intent that said manufactured home will become immovable property and part of the real property securing the security instrument.
10. The Manufactured home will be assessed and taxed as an improvement the real property.  I/We understand that if Lender does not escrow for these taxes, that I/we will be responsible for payment of such taxes.
11. If the land is being purchased, such purchase and said manufactured home represent a single real estate transaction under applicable state law.
12. Said manufactured home has been built under the Federal Manufactured Home Construction and Safety Standards that were established June 15, 1976.
13. This Affidavit is executed by Borrower(s) pursuant to applicable state law.
14. All permits required by governmental authorities have been obtained.  Borrower(s) certifies that Borrower(s) is in receipt of manufacturer's recommended maintenance program regarding the carpets and manufactures warranties covering the heating/cooling system, hot water heater, range, etc. and the formaldehyde health notice.





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Borrower MICHELE LESHA XU    Date

Borrower XIAOFENG XU    Date

In Witness Whereof, Borrower(s) and Lender has executed this Affidavit in my presence and in the presence of undersigned witnesses on this ____ day of _____ 2012.

Witness

Witness

NOEL CASARES
NOTARY PUBLIC
STATE OF TEXAS
ID 3633786
EXP. 03-11-2024

AFFIXATION AFFIDAVIT REGARDING MANUFACTURED
(AND FACTORY BUILT) HOME    Page 3 of 5
AARMFBH.MSC  07/19/21

☆ DocMagic

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF ___TEXAS___

COUNTY OF ___HARDIN___

The foregoing instrument was acknowledged before me this __2ⁿᵈ__ day of __June__ __2022__,

by __MICHELE LESHA XU AND XIAOFENG XU__

_____

_____

who is personally known to me or who provided __Tx Driver's License__ as identification.

_____
Notary Public

Noel Casares
Print Name

My Commission Expires: __3-11-2024__





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## LENDER'S STATEMENT OF INTENT

The undersigned ("Lender") intends that the Home be an immovable fixture and a permanent improvement to the Land.

AMCAP MORTGAGE, LTD.
Lender

By: _____
      Authorized Signature

STATE OF            TEXAS            )
                                                    ) ss.:
COUNTY OF                               )

On the _____ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____
_____

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Signature

_____
Notary Printed Name

Notary Public; State of _____

Qualified in the County of _____

(Official Seal)          My Commission Expires: _____

Drafted By: _____

AFFIXATION AFFIDAVIT REGARDING MANUFACTURED
(AND FACTORY BUILT) HOME                        Page 5 of 5          ☆ DocMagic
AARMFBH.MSC  07/19/21



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

This Affidavit may not be modified orally or in any manner other than by an agreement in writing signed by the Lender and Borrower. This Affidavit shall be construed in accordance with the laws of the State of Texas and the Laws of the United States applicable to transactions in Texas.

CONTRACTOR: CMH HOMES, INC.

By: _____      Date: 6-2-2022

Name: CHIP MAY

Title: General Manager

## NOTARY

State of TEXAS

County of HARDIN

Sworn to and subscribed before me on the 2ND day of June 2022, by, Chip MAY (name), General Manager (title), of ClayTon Homes Inc , on behalf of said entity.

_____
Notary Public Signature

(SEAL)

NOEL CASARES
NOTARY PUBLIC
STATE OF TEXAS
ID. 3633786
EXP. 02-11-2024



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

corner of said Willis Johnson Survey, Abstract No. 340 bears South 86°15'33" West a distance of 877.11 feet;

THENCE, North 86°16'59" East, a distance of 439.24 feet, along the north line of said Gene A. Whisenhant called 55-1/3 acre tract, the north line of said Willis Johnson Survey, Abstract No. 340, the south line of said LRT I LLC called 597.884 acre tract, and the south line of said Willis Johnson Survey, Abstract No. 339, to the PLACE OF BEGINNING, CONTAINING 38.918 acres of land in Hardin County, Texas.

*The bearings and distances recited herein are based on the Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), Central Zone (U.S. Survey Foot).*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# PAYMENT LETTER TO BORROWER

**FROM:**     AMCAP MORTGAGE, LTD.
              9999 BELLAIRE BOULEVARD, SUITE 700
              HOUSTON, TEXAS 77036

**RE:**       Loan Number: 204546983
              Property Address:   17500 GHOST ROAD, SARATOGA, TEXAS 77585

**TO:**       MICHELE LESHA XU
              17500 GHOST ROAD
              SARATOGA, TEXAS 77585

Dear Borrower:

The monthly payments on the above referred to loan are to begin on   December 1, 2022   , and will continue monthly until     November 1, 2052       .

Your monthly payment will consist of the following:

| | |
|---|---:|
| **PRINCIPAL AND INTEREST** | $ 1,817.72 |
| **MMI/PMI INSURANCE** | 230.88 |
| **ESCROW FOR TAXES** | 12.98 |
| **ESCROW FOR INSURANCE** | 90.00 |
| **ESCROW FOR FLOOD INSURANCE** | 0.00 |
| | |
| | |
| **TOTAL MONTHLY PAYMENTS** | $ 2,151.58 |

You are to make your payments to:
              AMCAP MORTGAGE, LTD.
              9999 BELLAIRE BOULEVARD, SUITE 700
              HOUSTON, TEXAS 77036

Any correspondence, or calls, in reference to your loan, please refer to the above loan number.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Copy received and acknowledged.

_____    6-3-2022
MICHELE LESHA XU                    Date



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# TEMPORARY PAYMENT COUPONS

### TEMPORARY PAYMENT COUPON

Loan Number: 204546983    Due Date: 02/01/2023    Payment Amount: $ 2,151.58
Late Payment Date: 02/17/2023
Late Payment Amount: $ 2,224.29

Name: MICHELE LESHA XU

Address: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

Remit to:

---

### TEMPORARY PAYMENT COUPON

Loan Number: 204546983    Due Date: 01/01/2023    Payment Amount: $ 2,151.58
Late Payment Date: 01/17/2023
Late Payment Amount: $ 2,224.29

Name: MICHELE LESHA XU

Address: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

Remit to:

---

### TEMPORARY PAYMENT COUPON

Loan Number: 204546983    Due Date: 12/01/2022    Payment Amount: $ 2,151.58
Late Payment Date: 12/17/2022
Late Payment Amount: $ 2,224.29

Name: MICHELE LESHA XU

Address: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

Remit to:

---

☆DocMagic



Filed  7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# PAYMENT SHOCK
## NOTICE REGARDING PROPERTY TAXES AND HOLD HARMLESS AGREEMENT

Loan Number: 204546983

MIN: 100110900010451744

Case Number: 512-4867978-703

Date:  June 2, 2022

Borrower(s):  MICHELE LESHA XU

Property:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

The undersigned understand that the property being purchased is subject to an unimproved property tax assessment and that the amount of property taxes being collected at closing and used to establish an escrow account are based on the property tax rates being applied to this lower assessed value. The undersigned understand that in future years the property will be taxed based on a higher improved assessed value.

The undersigned further understand that the amount of any monthly tax escrows being collected may be insufficient to pay future taxes at the higher improved assessed value. Lender will analyze the escrow account at least annually for property taxes. The undersigned understand that they may have to pay additional amounts to Lender to eliminate any shortages in the escrow account due to any increased annual assessment for property taxes. The undersigned hereby agree to promptly pay such additional amounts to eliminate any shortages in the escrow account upon Lender's request.

The undersigned hereby agree to indemnify and hold harmless Lender, its successors and assigns, from any claim in connection with the escrow amounts collected.


Borrower MICHELE LESHA XU                    Date

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# IMPOUND AUTHORIZATION

**Loan Number:** 204546983

**Date:** June 2, 2022

**Borrower(s):** MICHELE LESHA XU

**Property Address:** 17500 GHOST ROAD, SARATOGA, TEXAS 77585

We understood that according to the provisions of the Security Instrument,  AMCAP MORTGAGE, LTD.

may require us to make monthly payments in addition to our principal and interest payment so that a fund can be created and maintained to pay taxes, insurance premiums and other expenses relating to the security property.  Impounds will be required in the following circumstances:

- where required by state or federal regulatory authority; or

- where a loan is made, guaranteed or insured by a state or federal governmental lending agency; or

- where the original principal amount of such a loan exceeds 80% of the sales price or appraised value whichever is lower; or

- as required by lender as a condition of the loan.

The lender will pay interest on the impound account as required by law.  The obligations of the borrower and lender regarding impound accounts will be set forth in the Security Instrument.  We also understand that the payment for taxes and insurance may vary from year to year.

PLEASE NOTE THAT ANY BORROWER WHO IS DELINQUENT IN THE PAYMENT OF THEIR REAL ESTATE TAXES, HAZARD AND/OR FLOOD INSURANCE PREMIUMS, MAY BE REQUIRED BY THE LENDER TO PAY IMPOUNDS.

| IMPOUNDS REQUIRED BY LENDER |
|---|
| ☐ The undersigned understand that the establishment of an impound account for payments of real property taxes, hazard and/or flood insurance and other related expenses is REQUIRED. |
| ☒ The undersigned understand that the establishment of an impound account for payments of real property taxes, hazard and/or flood insurance and other related expenses is NOT REQUIRED. |



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## IMPOUNDS REQUESTED BY BORROWER

[X] The undersigned understand that the establishment of an impound account for the payment of real property taxes, hazard and/or flood insurance and other related expenses is NOT REQUIRED; however, Borrower requests that such an account be established.

[ ] The undersigned understand that the establishment of an impound account for the payment of real property taxes, hazard and/or flood insurance and other related expenses is NOT REQUIRED.  Borrower is not requesting that such an account be established.

_____    6-2-2022
Borrower MICHELE LESHA XU                  Date



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**BEING** a 38.918 acre tract of land as situated in the Willis Johnson Survey, Abstract No. 340, Hardin County, Texas and being out of and a part of a called 53-1/3 acre tract as conveyed to Gene A. Whisenhant by a General Warranty Deed dated June 18, 1990 and filed for record under Volume 897, Page 705 of the Hardin County Official Public Records. Said 38.918 acre tract being more particularly described by metes and bounds as follows:

**BEGINNING** at an iron hex bolt found for the northeast corner of said Gene Whisenhant called 55-1/3 acre tract, the northeast corner of the herein described tract, and the northwest corner of a called 200 acre tract as conveyed to Crown Pine Timber 1, LP by a General Warranty Deed dated November 29, 2010 and filed for record under Instrument No. 2010-16813 of said Hardin County Official Public Records, same being located in the north line of said Willis Johnson Survey, Abstract No. 340, the south line of the Willis Johnson Survey, Abstract No. 339, and the south line of a called 597.884 acre tract designated as "Ghost Road – Tract VII" as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records. Said place of beginning has a Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), South Central Zone (U.S. Survey Foot) value of North: 10,140,995.69 and East: 4,120,155.48;

**THENCE**, South 04°16'09" East, a distance of 5382.46 feet, along the east line of said Gene A. Whisenhant called 55-1/3 acre tract and the west line of said Crown Pine Timber 1, LP called 200 acre tract, to an iron hex bolt found for the southwest corner of same, the southeast corner of said Gene A. Whisenhant called 53-1/3 acre tract and the southeast corner of the herein described tract, same being located in the south line of said Willis Johnson Survey, Abstract No. 340, the north line of the Hardin County School Land Survey, Abstract No. 253, and the north line of a called 2454.353 acre tract as conveyed to LRT I, LLC by a Quitclaim Deed dated August 1, 2012 and filed for record under Instrument No. 2012-30460 of said Hardin County Official Public Records, said iron hex bolt being also located in the east right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of a called 5.81 acre tract designated as "Second" as conveyed to the County of Hardin by a Deed dated June 22, 1937 and filed for record under Volume 141, Page 481 of said Hardin County Official Public Records, and the current east right-of-way of a County Road known locally as "Ghost Road";

**THENCE**, North 13°03'18" West, a distance of 2640.73 feet, along the east right right-of-way of the now abandoned G.C. & S.F. Railroad, the east line of said County of Hardin called 5.81 acre tract, and the current east right-of-way of said "Ghost Road", to a 5/8-inch iron rod set for the southwest corner of the herein described tract and the south corner of a called 9.502 acre tract as conveyed to Richard W. Gamble by a Warranty Deed dated April 11, 1995 and filed for record under Volume 1044, Page 411 of said Hardin County Official Public Records, same being located in the west line of said Gene A. Whisenhant called 55-1/3 acre tract, from which a 3/8-inch iron rod found at the intersection of the east right-of-way of said "Ghost Road" and the north line of the Willis Johnson Survey, Abstract No. 340 bears North 13°03'18" West a distance of 2813.59 feet;

**THENCE**, North 05°00'33" West, a distance of 2777.18 feet, along the east line of said Richard W. Gamble called 9.502 acre tract, the east line of a called 2.00 acre tract as conveyed to Bernice Williams by a Special Warranty Deed dated October 27, 1989 and filed for record under Volume 1058, Page 688 of said Hardin County Official Public Records, and the west line of said Gene A. Whisenhant called 55-1/3 acre tract, to a 3/8-inch iron rod found for the northwest corner of same, the northwest corner of the herein described tract, and the northeast corner of said Bernice Williams called 2.00 acre tract, same being located in the south line of said LRT I LLC called 597.884 acre tract, the south line of said Willis Johnson Survey, Abstract No. 339, and the north line of said Willis Johnson Survey, Abstract No. 340, from which a 3/8-inch iron rod found in the east right-of-way of said "Ghost Road" for the northwest corner of said Bernice Williams called 2.00 acre tract bears South 86°15'33" West a distance of 393.90 feet, and a concrete monument found for the northwest



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

corner of said Willis Johnson Survey, Abstract No. 340 bears South 86°15'33" West a distance of 877.11 feet;

THENCE, North 86°16'59" East, a distance of 439.24 feet, along the north line of said Gene A. Whisenhant called 55-1/3 acre tract, the north line of said Willis Johnson Survey, Abstract No. 340, the south line of said LRT I LLC called 597.884 acre tract, and the south line of said Willis Johnson Survey, Abstract No. 339, to the **PLACE OF BEGINNING, CONTAINING** 38.918 acres of land in Hardin County, Texas.

*The bearings and distances recited herein are based on the Texas State Plane Coordinate System, Lambert Projection, North American datum of 1983 (NAD 83), Central Zone (U.S. Survey Foot).*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# HUD Addendum to Uniform Residential Loan Application

OMB Approval No: HUD: 2502-0059 (exp. 12/31/2023)

| Part I – Identifying Information<br>HUD/FHA Application for Insurance under the National Housing Act and Borrower Certification | FHA Case No. (include any suffix)<br>512-4867978-703 | Mortgagee Case No.<br>204546983 |
|---|---|---|
| Mortgagee ID<br>1910201172 | Sponsor ID | Agent ID |
| Mortgagee Name, Address (include ZIP Code) and Telephone Number<br>AmCap Mortgage, Ltd.<br>1130 Hillcrest Drive<br>New Braunfels, TX 78130<br>NMLS ID: 129122<br>512-608-0205<br>Type or print all entries clearly | Name and Address of Sponsor | Name and Address of Agent |
| Borrower's Name & Present Address (include ZIP Code)<br>Michele Lesha Xu<br><br>4855 Lazy Timbers Dr<br>Humble, TX 77346 | Property Address (include name of subdivision, lot & block no., & ZIP Code)<br>17500 Ghost Road<br>Saratoga, TX 77585 | |
| Sponsored Originations | Name of Third-Party Originator | NMLS ID of Third-Party Originator |

## Part II – Borrower Consent for Social Security Administration to Verify Social Security Number

I authorize the Social Security Administration (SSA) to verify my Social Security Number (SSN) to the Mortgagee and HUD/FHA. I authorize SSA to provide explanatory information to HUD/FHA in the event of a discrepancy. This consent is valid for 180 days from the date signed, unless indicated otherwise by the individual(s) named in this loan application.

Signature(s) of Borrower(s) - Read consent carefully. Review accuracy of Social Security Number(s) provided on this application.

| | | | |
|---|---|---|---|
| Borrower's Name: | Michele Lesha Xu | Co-Borrower's Name: | |
| Date of Birth: | July 5, 1981 | Date of Birth: | |
| Social Security Number: | 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 | Social Security Number: | |
| Signature(s) of Borrower(s) | Date Signed | Signature(s) of Co-Borrower(s) | Date Signed |



MICHELE LESHA XU          DATE

## Part III – Borrower Notices, Information, and Acknowledgment

### Public Reporting Burden
Public reporting burden for this collection of information is estimated to average 10 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless that collection displays a valid OMB control number, which can be located on the HUD Internet page at http://www.reginfo.gov/public/do/PRAMain.

### Privacy Act Information
The information requested on the Uniform Residential Loan Application and this Addendum is authorized by the National Housing Act of 1934, 12 U.S.C. § 1701, et seq. The Debt Collection Act of 1982, Pub. L. 97-365, and HUD's Housing and Community Development Act of 1987, 42 U.S.C. § 3543, require persons applying for a federally insured loan to furnish their SSN. You must provide all the requested information, including your SSN. HUD may conduct a computer match to verify the information you provide. HUD may disclose certain information to Federal, State and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions. It will not otherwise be disclosed or released outside of HUD except as required and permitted by law. The information will be used to determine whether you qualify as a mortgagor. Failure to provide any of the requested information, including SSN, may result in disapproval of your loan application. This is notice to you as required by the Right to Financial Privacy Act of 1978 that HUD/FHA has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to HUD/FHA without further notice or authorization but will not be disclosed or released by the institution to another Government Agency or Department without your consent except as required or permitted by law.

---

**WARNING:** This warning applies to all certifications made in this document.
Anyone who knowingly submits a false claim, or makes false statements is subject to criminal and civil penalties, including confinement for up to 5 years, fines, and civil penalties. 18 U.S.C. §§ 287, 1001 and 31 U.S.C. § 3729

---

form HUD-92900-A (02/2020)
GAUL2JEM21_S  0821
GAUL1JEM (POD)
05/27/2022 11:28 AM PST



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Borrower Name:  Michele Lesha Xu                                          FHA Case No.:  512-4867978-703

**Caution: Delinquencies, Defaults, Foreclosures and Abuses**
Delinquencies, defaults, foreclosures and abuses of mortgage loans involving programs of the Federal Government can be costly and detrimental to your credit, now and in the future. The Mortgagee in this transaction, its agents and assigns, as well as the Federal Government, its agencies, agents and assigns are authorized to take any and all of the following actions in the event loan payments become delinquent on the mortgage loan described in the attached application: (1) Report your name and account information to a credit bureau; (2) Assess additional interest and penalty charges for the period of time that payment is not made; (3) Assess charges to cover additional administrative costs incurred by the Federal Government to service your account; (4) Offset amounts owed to you under other Federal programs; (5) Refer your account to a private attorney, collection agency or mortgage servicing agency to collect the amount due, foreclose the mortgage, sell the property, and seek judgment against you for any deficiency; (6) Refer your account to the Department of Justice (DOJ) for litigation in the courts; (7) If you are a current or retired Federal employee, take action to offset your salary, or civil service retirement benefits; (8) Refer your debt to the Internal Revenue Service for offset against any amount owed to you as an income tax refund; and (9) Report any resulting written off debt of yours to the Internal Revenue Service as your taxable income. All of these actions may be used to recover any debts owed when it is determined to be in the interest of the Mortgagee or Federal Government, or both.

As a mortgage loan borrower, you will be legally obligated to make the mortgage payments called for by your mortgage loan contract. The fact that you dispose of your property after the loan has been made will not relieve you of liability for making these payments. Payment of the loan in full is ordinarily the way liability on a mortgage note is ended. Some home buyers have the mistaken impression that if they sell their homes when they move to another locality, or dispose of it for any other reasons, they are no longer liable for the mortgage payments and that liability for these payments is solely that of the new owners. Even through the new owners may agree in writing to assume liability for your mortgage payments, this assumption agreement will not relieve you from liability to the holder of the note which you signed when you obtained the loan to buy the property. Unless you are able to sell the property to a buyer who is acceptable to HUD/FHA who will assume the payment of your obligation to the lender, you will not be relieved from liability to repay any claim which HUD/FHA may be required to pay your lender on account of default in your loan payments. The amount of any such claim payment may be a debt owed by you to the Federal Government and subject to established collection procedures.

**Fair Housing Act**
I and anyone acting on my behalf are, and will remain, in compliance with the Fair Housing Act, 42 U.S.C. § 3604, et seq., with respect to the dwelling or property covered by the loan and in the provision of services or facilities in connection therewith. I recognize that any restrictive covenant on this property related to race, color, religion, sex, disability, familial status, or national origin is unlawful under the Fair Housing Act and unenforceable. I further recognize that in addition to administrative action by HUD, a civil action may be brought by the DOJ in any appropriate U.S. court against any person responsible for a violation of the applicable law.

**Certification and Acknowledgment**
All information in this application is given for the purpose of obtaining a loan to be insured under the National Housing Act and the information in the Uniform Residential Loan Application and this Addendum is true and complete to the best of my knowledge and belief. Verification may be obtained from any source named herein. I have read and understand the foregoing concerning my liability on the loan and Part III, Borrower Notices, Information, and Acknowledgment.

**Signature(s) of Borrower(s)** – Do not sign unless this application is fully completed. Read the certification carefully and review accuracy of this application.

| Signature(s) of Borrower(s) | Date Signed | Signature(s) of Co-Borrower(s) | Date Signed |
|---|---|---|---|
|  MICHELE LESHA XU | 6/2/2022 DATE | | |

form HUD-92900-A (02/2020)
GAUL2JEM21_S  0821
GAUL1JEM (POD)
05/27/2022 11:28 AM PST

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Borrower Name:  Michele Lesha Xu                                    FHA Case No.:  512-4867978-703

## Part IV – Direct Endorsement Approval for a HUD FHA-Insured Mortgage

### A.  Underwriting the Borrower

Date Mortgage Approved: May 27, 2022                    Date Approval Expires:  August 13, 2022

For mortgages rated as an "accept" or "approve" by FHA's TOTAL Mortgage Scorecard:
- The information submitted to TOTAL was documented in accordance with Single Family Housing Policy Handbook 4000.1 (SF Handbook) and accurately represents the final information obtained by the mortgagee; and
- This mortgage complies with SF Handbook 4000.1 Section II.A.4.e Final Underwriting Decision (TOTAL) to the extent that no defect exists in connection with the underwriting of this mortgage such that it should not have been approved in accordance with FHA requirements.

I certify that the statements above are materially correct, with the understanding that, in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the data this mortgage is endorsed for insurance.

Mortgagee Representative Signature: _____

Printed Name:  Blanca Hernandez  ZFHA _____

Title: _____ underwriter _____

- - - - - - - - - - - - OR - - - - - - - - - - - -

For mortgages rated as a "refer" by FHA's TOTAL Mortgage Scorecard, or manually underwritten by a Direct Endorsement underwriter:
- I have personally reviewed and underwritten the borrower's credit application;
- The information used to underwrite the borrower was documented in accordance with Single Family Housing Policy Handbook 4000.1 (SF Handbook) and accurately represents the final information obtained by the mortgagee; and
- This mortgage complies with SF Handbook 4000.1 Section II.A.5.d Final Underwriting Decision (Manual) to the extent that no defect exists in connection with the underwriting of this mortgage such that it should not have been approved in accordance with FHA requirements.

I certify that the statements above are materially correct, with the understanding that in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the date this mortgage is endorsed for insurance.

Direct Endorsement Underwriter Signature: _____          DE's ID Number: _____

### B.  Underwriting the Property

For all mortgages where FHA requires an appraisal, I have personally reviewed and underwritten the appraisal according to FHA requirements. I certify that the statements above are materially correct, with the understanding that in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the date this mortgage is endorsed for insurance.

Direct Endorsement Underwriter Signature: _____          DE's ID Number:  GI19

                              BLANCA HERNANDEZ

form HUD-92900-A (02/2020)
GAUL2JEM21_S   0621
GAUL1JEM (POD)
05/27/2022 11:28 AM PST

Borrower Name: **Michele Lesha Xu**                    FHA Case No.: **512-4867978-703**

## Part V. – Mortgagee's Certification

- I have personally reviewed the mortgage documents and the application for insurance endorsement; and
- This mortgage complies with SF Handbook 4000.1 Section II.A.7 Post-Closing and Endorsement to the extent that no defect exists that would have changed the decision to endorse or submit the mortgage for insurance.

I certify that the statements above are materially correct, with the understanding that in the event HUD elects to pursue a claim arising out of or relating to any inaccuracy of this certification, HUD will interpret the severity of such inaccuracy in a manner that is consistent with the HUD Defect Taxonomy in effect as of the date this mortgage is endorsed for insurance.

| | |
|---|---|
| Mortgagee<br>**AmCap Mortgage, Ltd.** | |
| Name of Mortgagee's Representative<br>**BLANCA HERNANDEZ** | |
| Title of Mortgagee's Representative<br>**UNDERWRITER** | |
| Signature of the Mortgagee's Representative<br>*Blanca Hernandez* | Date<br>05/27/2022 |



form **HUD-92900-A** (02/2020)
GAUL2JEM2f_S   0821
GAUL1JEM (POD)
05/27/2022 11:28 AM PST

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley



LAND TITLE SURVEY
OF
38.918 ACRE TRACT
OUT OF
W. JOHNSON SURVEY
ABSTRACT NO. 340
HARDIN COUNTY, TEXAS
MAY 17, 2022



DISTRICT COURT OF HARDIN COUNTY

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# RESIDENTIAL CONSTRUCTION LOAN
# BORROWER'S AFFIDAVIT AND INDEMNITY AGREEMENT
## (TEXAS)

Words used in this Affidavit are defined below. Words in the singular mean and include the plural and vice versa.

"Agreement" means the Residential Construction Loan Agreement signed by Lender, Borrower, and Contractor, and dated as of closing.

"Borrower" is  MICHELE LESHA XU, XIAOFENG XU

"Contract" means the Mechanic's and Materialmen's Lien Contract (with Transfer of Lien to Lender) signed by the owners of the Property, the owners' spouse and Contractor, and dated as of closing.

"Contractor" is  CMH HOMES, INC.

"Improvements" mean the Improvements to or Construction of a single family residence.

"Lender" is  AMCAP MORTGAGE, LTD.
and its successors or assigns.

"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.

"Note" means the promissory note(s) dated          June 2, 2022          , signed by Borrower in favor of Lender.

"Property" means the property commonly known as  17500 GHOST ROAD, SARATOGA, TEXAS 77585

"Security Instrument" means the deed of trust/mortgage/security deed/security instrument signed by Borrower in favor of Lender, securing payment of the Note.

BEFORE ME, the undersigned authority on this day personally appeared Borrower, personally known to me to be the person whose name is subscribed hereto, and upon having been lawfully sworn upon oath deposed and stated in connection with a transaction involving the construction of certain Improvements on the Property:

Borrower hereby warrants and represents (which warranties, covenants, agreements and representations shall survive the making of any and all advances) as follows:

1.    Reliance. Borrower has been advised by Lender that Lender is relying upon the recitals herein contained in connection with, among other things, negotiating and establishing the interest charges to Borrower in connection with the Loan, and that this Affidavit has been executed by Borrower in connection with the Loan, and that this Affidavit has been executed by Borrower for the purpose of (i) inducing Lender's reliance on the recitals contained in this

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Affidavit, and (ii) inducing Lender to advance funds under the Agreement which funds will finance the construction of certain Improvements.

2.  **Title.** Borrower is, or will be at the time of closing, the fee simple owner of the Property. The Property is the same as the property described in the Security Instrument securing the Note executed by Borrower to Lender, both dated the same date as this Affidavit. There are no liens, claims or charges against the Property, other than those that are allowed in the Loan documents, or that have been previously approved and agreed to by Lender.

3.  **No Work Performed.** No work of any kind (including the destruction or removal of any existing improvements, site work, clearing, grubbing, draining or fencing of the land) has been commenced or performed on the Property, no equipment, materials or supplies have been delivered to the Property, and no specially manufactured or prefabricated items have been ordered that are to be used in the construction of the Improvements by or for Borrower.

4.  **Selection of Contractor.** Borrower acknowledges that Borrower has selected and investigated the background, experience and reputation of all architects, engineers and contractors who will furnish labor, material or other services for the construction of the Improvements and that Lender has, and shall have, no responsibility or liability whatsoever for such persons or for the quality of their materials or workmanship.

5.  **No Previous Written or Oral Contracts.** Prior to the signing and acknowledging of the Contract and the Security Instrument renewing and extending the Contract, no written contract or oral agreement regarding the construction of all or any portion of the Improvements to be constructed by or for Borrower on the Property or any memorandum or affidavit thereof has been recorded or filed for record in the Office of the County Clerk of the county where the Property is located. No contract or any memorandum or affidavit thereof, for the construction of any improvements, performance of labor, furnishing of materials or providing a specially fabricated materials in connection with the contemplated construction has, to the best of Borrower's knowledge, been filed in the county where the property is located and no person has taken or permitted any action that would cause the inception or priority of any mechanic's or materialman's lien, or any other lien, charge, or encumbrance upon the Property to be prior to or superior to the liens and security interest of the Security Instrument executed by Borrower in connection with this transaction.

6.  **Contract is Entire Agreement.** The Contract incorporates any work agreement between Borrower and Contractor, and the Agreement, which includes the plans and specifications as an exhibit, constitutes the entire agreement between Borrower and Contractor in connection with the construction of the Improvements. The funds to be advanced to Borrower, together with Borrower's equity, down payment and other funds to be placed in an account as provided in the Agreement, are sufficient to fully construct the Improvements and pay all expenses necessary for such construction.

7.  **Commencement of Construction.** Five (5) days after execution of the Contract, Borrower will commence construction of the Improvements. The Improvements will be completed substantially in accordance with the provisions of the plans and specifications and Contract, and the Improvements will be completed on or before the completion date stated in the Contract. All material delivered to and upon the Property for the purpose of being incorporated in the Improvements shall be considered annexed to the Property and become a part thereof, and shall be subject, as against Borrower, to the rights of Lender under the Contract and Security Instrument. Each advance made under the Agreement will be used solely for the payment of and for material, labor, services, costs, and expenses, provided for or incurred in connection with the construction of the Improvements, as such materials are incorporated into and/or services, costs and expenses are provided thereto, or for such other costs and expenses agreed to by Lender in writing.

TEXAS RESIDENTIAL CONSTRUCTION LOAN BORROWER'S AFFIDAVIT
AND INDEMNITY AGREEMENT
Texas Property Code Chapter 53
TXRCLBAIA.MSC  08/29/13                                    Page 2 of 5

✦DocMagic

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

8. **Alterations and Extras.** Borrower will not change the plans and specifications or request Contractor to perform any changes without first securing Lender's written consent to such change order

9. **Hazardous Waste.** The Property has not been and is not now being used in violation of any federal, state or local environmental law, ordinance or regulation. Borrower has not filed nor been required to file any federal, state or local reports of hazardous substances found or disposed on any real property now or previously owned by Borrower. No proceedings have been commenced, or notices received concerning any alleged violation of any environmental laws, ordinances or regulations. The Property is free of underground storage tanks, out-of-use transformers, hazardous, radioactive or toxic wastes, contaminants, oil or other material. The Property will not be used in conjunction with, or for any activity involving, directly or indirectly, the generation, treatment, storage, transportation, manufacture, use or disposition of hazardous or toxic chemicals, materials, substances or hazardous waste of any kind. Neither the Property, the soil making up any portion thereof, nor the ground water thereunder making up any portion thereof shall be contaminated so as to be subject to any "clean-up", or similar requirement, regulation, ordinance, or law of governmental authority, which would in any way inhibit, impair, delay or increase the cost of the improvement, operation, or use of the improvement, operation, or use of the Property. Borrower will not install, or allow to remain upon the Property, any chemical, material or substance, exposure to which is prohibited, limited or regulated by any federal, state, county, regional or local authority, or which, even if not so regulated, may or could pose a hazard to the health and safety of the occupants of the Property or to the owners of the Property.

10. **Information/Other Documentation.** Borrower agrees to disclose to Lender in writing, on demand, the names of all persons with whom Borrower or Contractor have contracted, or intended to contract, for the furnishing of labor and materials for the construction of the Improvements. Borrower agrees to obtain and furnish all such bonds, lien waivers, surveys, releases and other documents as Lender may deem necessary or may request from time to time.

11. **Borrowers Financial Status.** There are no pending lawsuits, judgments or garnishments against Borrower which may in any way impair the ability of Borrower to fully perform all obligations provided in the Contract or Agreement, or which may affect the Property, Contract, or Security Instrument. All warranties, representations and certifications made, and all information and material submitted or caused to be submitted to Lender in connection with the Loan are true and correct, and there have been no material changes in the conditions affecting any of such warranties, representations, certifications, information or material prior to the date of this Affidavit.

12. **Covenants of Borrower.** The execution and delivery of all documents executed or delivered by or on behalf of Borrower and pertaining to the Loan have been duly authorized and approved by the party executing such documents and constitute the valid and binding obligations of Borrower enforceable in accordance with their respective terms, and the payment or performance thereof will be subject to no offsets, claims or defenses of which Borrower is aware. Borrower shall perform all obligations under the Contract, Note and Security Instrument, and promptly pay when due, from the proceeds of the Loan, all costs, charges and expenses, incurred in connection with the construction of the Improvements. Borrower shall keep the Property free and clear of any and all liens other than the Contract as renewed and extended by the Security Instrument, and protect the Property and improvements from events and circumstances which would cause said Property or improvements to decrease in value.

13. **Reimbursement.** To reimburse Lender for all expenses of any kind which may be incurred by Lender in connection with or arising out of the Loan, Lender may deduct from any advance to be made, any amount necessary for the payment of any unpaid interest owing to Lender or any fees, expenses, charges, liens, encumbrances or any other amounts relating to the construction of the Improvements and all sums so deducted or applied will be deemed advances under the Agreement.

14. **Final Disbursement.** Final funds will be released upon receipt by Lender of the following:

---

TEXAS RESIDENTIAL CONSTRUCTION LOAN BORROWER'S AFFIDAVIT
AND INDEMNITY AGREEMENT
Texas Property Code Chapter 53
TXRCLBAIA.MSC  08/29/13                              Page 3 of 6

☆DocMagic



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

a.  Affidavit of Bills Paid, executed by Contractor;
b.  Re-certification of Appraisal;
c.  Re-certification of Survey;
d.  Final Inspection, showing all Improvements complete; and

e.  Endorsement of the existing Mortgagee's Title Insurance policy deleting the "Completion of Improvements" and "Pending Disbursements" clauses, deleting verbiage in the area and boundaries exceptions so as to read "shortages in area" and insuring Lender's lien as modified by Modification Agreement (if so modified).

**15.  Indemnification.** Borrower indemnifies and holds Lender harmless from and against any and all actions, claims, demands, damages, costs, expenses, and other liabilities, including but not limited to, attorneys' fees, which Lender may incur or that in any way relate to or arise out of the construction of the Improvements.

**16.  Performance Agreement Upon Completion.** Borrower agrees to provide Lender, within ten (10) days of Lender's request, with the following:

a.  **Insurance.** An original fire and extended coverage hazard insurance policy insuring the Property in an amount at least equal to the loan amount with the first year's premium paid receipt. Binders are not acceptable. The Property legal description, street address, city, county, state, zip code, and Borrower's name indicated on the policy must be identical to that contained within the Loan documents. The mortgagee clause of the policy should exactly match the name and address of Lender indicated in the Security Instrument. Additionally, the Loan number must be included on the policy. The insurance obtained must be through a company which has at least a Class "A" or better rating through Best's Key Rating Guide for Property-Casualty. The policy inception date must be on or before the date of completion of construction. In addition to the first year's hazard insurance premium, an amount equal to one-sixth of the first year's premium must be provided to Lender. If the Property is located within a Flood Hazard Area, flood insurance will be required and either the original policy or a copy of the application, along with the paid receipt for the first year's premium must be provided. The insured amount should be at least the loan amount. In addition to the first year's flood insurance premium, an amount equal to one-sixth of the first year's premium must be provided to Lender.

b.  **Taxes.** An amount sufficient to pay all unpaid property taxes when due plus one-sixth of the annual amount assessed must be paid to Lender. This amount should be based on an improved value, if applicable. If the tax impounds are calculated on an estimated basis, because the Improvements have not yet been assessed by the taxing authority, Borrower understands and agrees that adjustments may be required at the time Lender has received the tax statements reflecting the amount assessed and due on the improved Property. This could result in one or more of the following: an impound account shortage, which Borrower will be required to pay; an impound account overage, which will be refunded to Borrower or applied against the next years escrows; and an adjustment to Borrower's monthly tax impound payments. In addition to collected tax escrows, if Borrower acquired title to the Property in the previous year (i.e., closing occurred in the previous year), Borrower must provide evidence that the previous year's taxes have been paid.

c.  **Mortgage Insurance.** If the Loan is conventional and the loan-to-value ratio exceeds 80%, Borrower agrees to pay the mortgage insurance premium as required by Lender, if applicable.

d.  Borrower must execute, acknowledge, and deliver to Lender or the appropriate authority, as necessary, an Affidavit of Completion which shall be filed of record, a Loan Modification Agreement should Lender so require, and any other documents required by Lender. Borrower understands that this Affidavit is made for the purpose of inducing Lender to advance the money pursuant to the terms of the Loan, and Lender is



Filed: 7/13/2023 11:33 AM
Dena Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

relying upon the truth and accuracy of the statements made in this Affidavit in advancing such loan proceeds. Further, Borrower agrees to indemnify and save Lender harmless from and against costs, damages, attorneys' fees (if applicable law permits), expenses and liabilities which it may incur or sustain in connection with the incorrectness of any of these representations or any court action arising therefrom and will pay the same upon demand.

Borrower further agrees to indemnify and save Lender harmless from and against any claims by or against Contractor or any subcontractors or material suppliers.

This Affidavit may not be modified orally or in any manner other than by an agreement in writing signed by the Lender and Borrower.

Borrower MICHELE LESHA XU                /Date 6/2/2022

Borrower XIAOFENG XU                /Date 6/2/2022

Borrower _____    Date _____

Borrower _____    Date _____

Borrower _____    Date _____

Borrower _____    Date _____



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## ACKNOWLEDGMENT

State of Texas

County of HARDIN

Sworn to and subscribed before me on the 2ND day of _____ June _____ 2022 _____ , by

MICHELE LESHA XU AND XIAOFENG XU _____ (name of principal signer).

_____
Notary Public Signature

NOEL CASARES
NOTARY PUBLIC
STATE OF TEXAS
ID 3533786
EXP. 05-11-2024

(SEAL)

TEXAS RESIDENTIAL CONSTRUCTION LOAN BORROWER'S AFFIDAVIT
AND INDEMNITY AGREEMENT
Texas Property Code Chapter 53
TXRCLBAIAMSC  08/28/13                    Page 6 of 6

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# CONSTRUCTION CLOSING
## AGREEMENT FOR FINAL PAYMENT

Date:  June 2, 2022

Lender:  AMCAP MORTGAGE, LTD.

Borrower(s):  MICHELE LESHA XU

Property Address:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

Builder:  CMH HOMES, INC.

Legal Description:  SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 000340-000100

Whereas borrower this day is obtaining from  AMCAP MORTGAGE, LTD.

the above described construction loan, the ("Loan") in the amount above stated as evidenced by a promissory note of even date herewith (herein the "Note"), amount of 333,841.00         and secured by aDeed of Trust with all Riders thereto (herein the "Property"); all of the loan documents evidencing, securing or governing the Loan are herein collectively called the "Loan Documents", which loan is being made for the construction of a residence and related amenities on the Property by Builder in accordance with the plans and specifications and contract between Borrower and Builder.

NOTWITHSTANDING anything to the contrary contained in the Loan Documents, parties hereby mutually agree as follows:

1.  Borrower will not move into or occupy the Property and improvements until permanent financing has been completed. Furthermore borrower will not move into or occupy the Property and improvements within six months from the date of this agreement. Failure to adhere to this agreement will jeopardize Borrower's ability to obtain such permanent financing thus paying off the construction Loan.

2.  Builder agrees that the Builder and/or Contractor will not be paid its final payment that is equivalent to the 10% of the contract price of work, unless otherwise agreed upon in writing pursuant to the Construction Holdback Agreement until the day of closing the Borrower's permanent loan and that payment of such sum shall be by check from LENDER payable to Builder and delivered at the closing of the permanent loan.



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

3. Builder will sign all lien waivers and acknowledgement of payment as may be required the title company and/or lender closing the permanent loan in order to accommodate the above referenced.

4. It is hereby agreed between Borrowers, Builder, and AMCAP MORTGAGE, LTD.

    that if the above agreements are breached, AMCAP MORTGAGE, LTD.

    shall have the right and option (after complying with all notices if any, required by applicable law, if any) withhold final payment to Builder and to immediately accelerate the maturity date of the Note and demand full payment all sums then advanced and outstanding under the Note and if not paid by Borrower as and when so demanded, AMCAP MORTGAGE, LTD.

    shall have the right to foreclose under the Deed of Trust, in accordance with its terms.

Executed effective the ___2ND___ day of ___June 2022___

MICHELE LESHA XU



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

[Space Below This Line For Acknowledgments]

THE STATE OF __TEXAS__

COUNTY OF __HARDIN__

The above and foregoing Post Closing Obligations and Agreement was acknowledged before me on this the _2nd_ day of _Hare 2022_ by MICHELE LESHA XU

_____

_____

_____
Notary Public, State of _Texas_

_____
Name of Notary and Date

Commission Expires: _3-11-2024_

Notary Stamp

Name: CMH HOMES, INC.

By: _Chip May_

Title: _General Manager_

THE STATE OF __TEXAS__

COUNTY OF __HARDIN__

The above and foregoing Post Closing Obligations and Agreement was acknowledged before me on this the _3rd_ day of _June 2022_ by _Chip May_ the _General Manager_ of CMH HOMES, INC. _____, as an act and deed of said Builder.

_____
Notary Public, State of _Texas_

_____
Name of Notary and Date

Commission Expires: _3-11-2024_

Notary Stamp



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Name: <u>AMCAP MORTGAGE, LTD.</u>

By: _____

Title: _____

THE STATE OF <u>TEXAS</u>

COUNTY OF <u>HARDIN</u>

    The above and foregoing Post Closing Obligations and Agreement was acknowledged before me on this the _____ day of _____ by _____ , the _____ of AMCAP MORTGAGE, LTD. ,

as an act and deed of same.

_____
Notary Public, State of _____

_____
Name of Notary and Date

Notary Stamp

Commission Expires: _____

✯DocMagic



Filed: 8/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

*To be completed by the Lender:*
Lender Loan No./Universal Loan Identifier 5493000NBM4MGXXBTA4420454698359          Agency Case No. 512-4867978-703

# Uniform Residential Loan Application

Verify and complete the information on this application. If you are applying for this loan with others, each additional Borrower must provide information as directed by your Lender.

## Section 1: Borrower Information. This section asks about your personal information and your income from employment and other sources, such as retirement, that you want considered to qualify for this loan.

### 1a. Personal Information

**Name** *(First, Middle, Last, Suffix)*
Michele Lesha Xu

**Alternate Names** – *List any names by which you are known or any names under which credit was previously received (First, Middle, Last, Suffix)*

**Social Security Number** 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
*(or Individual Taxpayer Identification Number)*

| **Date of Birth** *(mm/dd/yyyy)* 07/05/1981 | **Citizenship** ⊙ U.S. Citizen<br>○ Permanent Resident Alien<br>○ Non-Permanent Resident Alien |
|---|---|

**Type of Credit**
⊙ I am applying for **individual** credit.
○ I am applying for **joint** credit. Total Number of Borrowers: _____

Each Borrower intends to apply for joint credit. Your Initials: _MMU_

**List Name(s) of Other Borrower(s) Applying for this Loan**
*(First, Middle, Last, Suffix) – Use a separator between names*

| **Marital Status** | **Dependents** *(not listed by another Borrower)* |
|---|---|
| ⊙ Married | Number 0 |
| ○ Separated | Ages |
| ○ Unmarried | |
| *(Single, Divorced, Widowed, Civil Union, Domestic Partnership, Registered Reciprocal Beneficiary Relationship)* | |

**Contact Information**
Home Phone 281-409-4469
Cell Phone 281-409-4469
Work Phone _____ Ext. _____
Email mspillman2001@gmail.com

**Current Address**
Street 4855 Lazy Timbers Dr                                   Unit # _____
City Humble          State TX      ZIP 77346          Country US
How Long at Current Address? 3 Years 0 Months   Housing ○ No primary housing expense  ○ Own  ⊙ Rent ($ _____ /month)

**If at Current Address for LESS than 2 years, list Former Address**  ☒ Does not apply
Street _____                                              Unit # _____
City _____  State ____  ZIP ____  Country ____
How Long at Former Address? ___ Years ___ Months  Housing ○ No primary housing expense  ○ Own  ○ Rent ($ _____ /month)

**Mailing Address** – *if different from Current Address*  ☒ Does not apply
Street _____                                              Unit # _____
City _____  State ____  ZIP ____  Country ____

### 1b. Current Employment/Self Employment and Income  ☐ Does not apply

| Employer or Business Name Wormy Worms LLC | Phone 281-409-4469 | **Gross Monthly Income** | |
|---|---|---|---|
| Street 4855 LAZY TIMBERS DR | Unit # | Base | $6,565.25 /month |
| City Humble   State TX   ZIP 77346   Country US | | Overtime | /month |

| | | Bonus | /month |
|---|---|---|---|
| **Position or Title** Owner | **Check if this statement applies:** | Commission | /month |
| Start Date 09 / 01 / 2017 (mm/dd/yyyy) | ☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction. | Military Entitlements | /month |
| How long in this line of work? 6 Years 0 Months | | Other | /month |
| ☒ Check if you are the Business Owner or Self-Employed  ○ I have an ownership share of less than 25%. ⊙ I have an ownership share of 25% or more. | Monthly Income (or Loss) $6,565.25 | TOTAL | $6,565.00 /month |

Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

1 of 10

GURLA20_S 0718
GURLA20S (POD)
05/27/2022 11:28 AM PST



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**1c. IF APPLICABLE, Complete Information for Additional Employment/Self Employment and Income** ☐ *Does not apply*

Employer or Business Name _____  Phone _____

Street _____  Unit # _____

City _____  State ____  ZIP ____  Country _____

**Position or Title**

Start Date ___ / ___ / _____ (mm/dd/yyyy)

How long in this line of work? ____ Years ____ Months

Check if this statement applies:
☐ I am employed by a family member, property seller, real estate agent, or other party to the transaction.

☐ Check if you are the Business Owner or Self-Employed
  ○ I have an ownership share of less than 25%.
  ○ I have an ownership share of 25% or more.

**Gross Monthly Income**

| | | |
|---|---|---|
| Base | _____ | /month |
| Overtime | _____ | /month |
| Bonus | _____ | /month |
| Commission | _____ | /month |
| Military Entitlements | _____ | /month |
| Other | _____ | /month |
| **TOTAL** | _____ | /month |

Monthly Income (or Loss) _____

---

**1d. IF APPLICABLE, Complete Information for Previous Employment/Self Employment and Income** ☐ *Does not apply*

Provide at least 2 years of current and previous employment and income.

Employer or Business Name _____

Street _____  Unit # _____

City _____  State ____  ZIP ____  Country _____

**Position or Title**

Start Date ___ / ___ / _____ (mm/dd/yyyy)

End Date ___ / ___ / _____ (mm/dd/yyyy)

☐ Check if you were the Business Owner or Self-Employed

Previous Gross Monthly Income _____ /month

---

**1e. Income from Other Sources** ☐ *Does not apply*

Include income from other sources below. Under Income Source, choose from the sources listed here:

- Alimony
- Automobile Allowance
- Boarder Income
- Capital Gains
- Child Support
- Disability
- Foster Care
- Housing or Parsonage
- Interest and Dividends
- Mortgage Credit Certificate
- Mortgage Differential Payments
- Notes Receivable
- Public Assistance
- Retirement *(e.g., Pension, IRA)*
- Royalty Payments
- Separate Maintenance
- Social Security
- Trust
- Unemployment Benefits
- VA Compensation
- Other

NOTE: Reveal alimony, child support, separate maintenance, or other income ONLY IF you want it considered in determining your qualification for this loan.

| Income Source - use list above | Monthly Income |
|---|---|
| | |
| | |
| | |
| | Provide TOTAL Amount Here |

---

# Section 2: Financial Information — Assets and Liabilities. This section asks about things you own that are worth money and that you want considered to qualify for this loan. It then asks about your liabilities (or debts) that you pay each month, such as credit cards, alimony, or other expenses.

**2a. Assets - Bank Accounts, Retirement, and Other Accounts You Have**

Include all accounts below. Under Account Type, choose from the types listed here:

- Checking
- Savings
- Money Market
- Certificate of Deposit
- Mutual Fund
- Stocks
- Stock Options
- Bonds
- Retirement (e.g., 401k, IRA)
- Bridge Loan Proceeds
- Individual Development Account
- Trust Account
- Cash Value of Life Insurance (used for the transaction)

| Account Type – use list above | Financial Institution | Account Number | Cash or Market Value |
|---|---|---|---|
| Checking Account | Capital One | 0513 | $76,760.72 |
| | | | |
| | | | |
| | | | |
| | | Provide TOTAL Amount Here | $76,760.72 |

---

Borrower Name: Michele Lasha Xu
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

2 of 10

GURLA20_S 0718
GURLA20S (POD)
05/27/2022 11:28 AM PST

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## 2b. Other Assets and Credits You Have    ☐ Does not apply

Include all other assets and credits below. Under Asset or Credit Type, choose from the types listed here:.

Assets
- Proceeds from Real Estate Property to be sold on or before closing
- Proceeds from Sale of Non-Real Estate Asset
- Secured Borrowed Funds
- Unsecured Borrowed Funds
- Other

Credits
- Earnest Money
- Employer Assistance
- Lot Equity
- Relocation Funds
- Rent Credit
- Sweat Equity
- Trade Equity

| Asset or Credit Type – use list above | Cash or Market Value |
|---|---|
| | |
| | |
| | |
| | |
| | **Provide TOTAL Amount Here** |

## 2c. Liabilities - Credit Cards, Other Debts, and Leases that You Owe    ☐ Does not apply

List all liabilities below (except real estate) and include deferred payments. Under Account Type, choose from the types listed here:
- Revolving (e.g., credit cards)
- Installment (e.g., car, student, personal loans)
- Open 30-Day (balance paid monthly)
- Lease (not real estate)
- Other

| Account Type – use list above | Company Name | Account Number | Unpaid Balance | To be paid off at or before closing | Monthly Payment |
|---|---|---|---|---|---|
| Revolving | AMEX | -3499925336096873 | $229.00 | ☐ | $40.00 |
| Revolving | CAPITAL ONE NP SPOUSE | 414709965823 | $14,580.00 | ☒ | $391.00 |
| Revolving | CAPITAL ONE NP SPOUSE | 9379 | $11,343.00 | ☐ | $284.00 |
| Revolving | CAPITAL ONE NP SPOUSE | 8717 | $2,478.00 | ☐ | $25.00 |
| Revolving | CAPITAL ONE NP SPOUSE | 3710 | $449.00 | ☐ | $22.00 |
| Installment | IRS | | $36,260.00 | ☐ | $529.00 |

## 2d. Other Liabilities and Expenses    ☐ Does not apply

Include all other liabilities and expenses below. Choose from the types listed here:
- Alimony
- Child Support
- Separate Maintenance
- Job Related Expenses
- Other

| | Monthly Payment |
|---|---|
| | |
| | |

## Section 3: Financial Information — Real Estate. This section asks you to list all properties you currently own and what you owe on them. ☐ I do not own any real estate.

### 3a. Property You Own    If you are refinancing, list the property you are refinancing FIRST.

Address  Street _____ Unit # _____
City _____ State _____ ZIP _____ Country _____

| Property Value $ | Status: Sold, Pending Sale, or Retained | Intended Occupancy: Investment, Primary Residence, Second Home, Other | Monthly Insurance, Taxes, Association Dues, etc. If not included in Monthly Mortgage Payment | For 2-4 Unit Primary or Investment Property | |
|---|---|---|---|---|---|
| | | | | Monthly Rental Income $ | For LENDER to calculate: Net Monthly Rental Income $ |

Mortgage Loans on this Property    ☐ Does not apply

| Creditor Name | Account Number | Monthly Mortgage Payment | Unpaid Balance | To be paid off at or before closing | Type: FHA, VA, Conventional, USDA-RD, Other | Credit Limit (if applicable) |
|---|---|---|---|---|---|---|
| | | | | ☐ | | |
| | | | | ☐ | | |

### 3b. IF APPLICABLE, Complete Information for Additional Property    ☒ Does not apply

Borrower Name: Michele Lesha Xu
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

3 of 10

GURLA20_S 0718
GURLA20S (POD)
05/27/2022 11:28 AM PST



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**3c. IF APPLICABLE, Complete Information for Additional Property**    ☒ *Does not apply*

# Section 4: Loan and Property Information. This section asks about the loan's purpose and the property you want to purchase or refinance.

**4a. Loan and Property Information**

Loan Amount $ 333,841.00          Loan Purpose ⊙Purchase ○Refinance ○Other (specify) _____

Property Address Street 17500 Ghost Road                                        Unit # _____

City Saratoga                    State TX    ZIP 77585    County Hardin

Number of Units 1          Property Value $ 365,000.00

Occupancy  ⊙Primary Residence  ○Second Home  ○Investment Property    FHA Secondary Residence ☐

1. **Mixed-Use Property.** If you will occupy the property, will you set aside space within the property to operate your own business? (e.g., daycare facility, medical office, beauty/barber shop)          ⊙NO ○YES

2. **Manufactured Home.** Is the property a manufactured home? (e.g., a factory built dwelling built on a permanent chassis)    ○NO ⊙YES

**4b. Other New Mortgage Loans on the Property You are Buying or Refinancing**    ☐ Does not apply

| Creditor Name | Lien Type | Monthly Payment | Loan Amount/Amount to be Drawn | Credit Limit (if applicable) |
|---|---|---|---|---|
| | ○ First Lien  ○ Subordinate Lien | $ | $ | $ |
| | ⊙ First Lien  ○ Subordinate Lien | $ | $ | $ |

**4c. Rental Income on the Property You Want to Purchase**    For Purchase Only  ☐ Does not apply

| Complete if the property is a 2-4 Unit Primary Residence or an Investment Property | Amount |
|---|---|
| Expected Monthly Rental Income | $ |
| For LENDER to calculate: Expected Net Monthly Rental Income | $ |

**4d. Gifts or Grants You Have Been Given or Will Receive for this Loan**    ☐ Does not apply

Include all gifts and grants below. Under Source, choose from the sources listed here:

- Community Nonprofit
- Employer
- Federal Agency
- Local Agency
- Relative
- Religious Nonprofit
- State Agency
- Unmarried Partner
- Lender
- Other

| Asset Type: Cash Gift, Gift of Equity, Grant | Deposited/Not Deposited | Source – use list above | Cash or Market Value |
|---|---|---|---|
| | ○ Deposited  ○ Not Deposited | | $ |
| | ○ Deposited  ○ Not Deposited | | $ |

Borrower Name: Michele Lesha Xu
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

4 of 10

GURLA20_S 0718
GURLA20S  (POD)
05/27/2022 11:28 AM PST

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Section 5: Declarations. This section asks you specific questions about the property, your funding, and your past financial history.

## 5a. About this Property and Your Money for this Loan

| | |
|---|---|
| **A.** Will you occupy the property as your primary residence?<br>If YES, have you had an ownership interest in another property in the last three years?<br>If YES, complete (1) and (2) below:<br>(1) What type of property did you own: primary residence (PR), FHA secondary residence (SR), second home (SH), or investment property (IP)?<br>(2) How did you hold title to the property: by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | ○ NO  ◉ YES<br>◉ NO  ○ YES<br><br>_____<br><br>_____ |
| **B.** If this is a Purchase Transaction: Do you have a family relationship or business affiliation with the seller of the property? | ◉ NO  ○ YES |
| **C.** Are you borrowing any money for this real estate transaction *(e.g., money for your closing costs or down payment)* or obtaining any money from another party, such as the seller or realtor, that you have not disclosed on this loan application?<br>If YES, what is the amount of this money? | ◉ NO  ○ YES<br><br>$ |
| **D. 1.** Have you or will you be applying for a mortgage loan on another property (not the property securing this loan) on or before closing this transaction that is not disclosed on this loan application? | ◉ NO  ○ YES |
| **2.** Have you or will you be applying for any new credit *(e.g., installment loan, credit card, etc.)* on or before closing this transaction that is not disclosed on this application? | ◉ NO  ○ YES |
| **E.** Will this property be subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid through your property taxes *(e.g., the Property Assessed Clean Energy Program)?* | ◉ NO  ○ YES |

## 5b. About Your Finances

| | |
|---|---|
| **F.** Are you a co-signer or guarantor on any debt or loan that is not disclosed on this application? | ◉ NO  ○ YES |
| **G.** Are there any outstanding judgments against you? | ◉ NO  ○ YES |
| **H.** Are you currently delinquent or in default on a Federal debt? | ◉ NO  ○ YES |
| **I.** Are you a party to a lawsuit in which you potentially have any personal financial liability? | ◉ NO  ○ YES |
| **J.** Have you conveyed title to any property in lieu of foreclosure in the past 7 years? | ◉ NO  ○ YES |
| **K.** Within the past 7 years, have you completed a pre-foreclosure sale or short sale, whereby the property was sold to a third party and the Lender agreed to accept less than the outstanding mortgage balance due? | ◉ NO  ○ YES |
| **L.** Have you had property foreclosed upon in the last 7 years? | ◉ NO  ○ YES |
| **M.** Have you declared bankruptcy within the past 7 years?<br>If YES, identify the type(s) of bankruptcy: ☐ Chapter 7  ☐ Chapter 11  ☐ Chapter 12  ☐ Chapter 13 | ◉ NO  ○ YES |

Borrower Name: Michele Lesha Xu
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

6 of 10

GURLA20_S 071B
GURLA20S  (POD)
05/27/2022 11:28 AM PST




Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# Section 6: Acknowledgements and Agreements. This section tells you about your legal obligations when you sign this application.

## Acknowledgments and Agreements

**Definitions:**
- "Lender" includes the Lender's agents, service providers, and any of their successors and assigns.
- "Other Loan Participants" includes (i) any actual or potential owners of a loan resulting from this application (the "Loan"), (ii) acquirers of any beneficial or other interest in the Loan, (iii) any mortgage insurer, (iv) any guarantor, (v) any servicer of the Loan, and (vi) any of these parties' service providers, successors or assigns.

**I agree to, acknowledge, and represent the following:**

**(1) The Complete Information for this Application**
- The information I have provided in this application is true, accurate, and complete as of the date I signed this application.
- If the information I submitted changes or I have new information before closing of the Loan, I must change and supplement this application, including providing any updated/supplemented real estate sales contract.
- For purchase transactions: The terms and conditions of any real estate sales contract signed by me in connection with this application are true, accurate, and complete to the best of my knowledge and belief. I have not entered into any other agreement, written or oral, in connection with this real estate transaction.
- The Lender and Other Loan Participants may rely on the information contained in the application before and after closing of the Loan.
- Any intentional or negligent misrepresentation of information may result in the imposition of:
  - (a) civil liability on me, including monetary damages, if a person suffers any loss because the person relied on any misrepresentation that I have made on this application, and/or
  - (b) criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal law (18 U.S.C. §§ 1001 et seq.).

**(2) The Property's Security**
The Loan I have applied for in this application will be secured by a mortgage or deed of trust which provides the Lender a security interest in the property described in this application.

**(3) The Property's Appraisal, Value, and Condition**
- Any appraisal or value of the property obtained by the Lender is for use by the Lender and Other Loan Participants.
- The Lender and Other Loan Participants have not made any representation or warranty, express or implied, to me about the property, its condition, or its value.

**(4) Electronic Records and Signatures**
- The Lender and Other Loan Participants may keep any paper record and/or electronic record of this application, whether or not the Loan is approved.

- If this application is created as (or converted into) an "electronic application", I consent to the use of "electronic records" and "electronic signatures" as the terms are defined in and governed by applicable Federal and/or state electronic transactions laws.
- I intend to sign and have signed this application either using my:
  - (a) electronic signature; or
  - (b) a written signature and agree that if a paper version of this application is converted into an electronic application, the application will be an electronic record, and the representation of my written signature on this application will be my binding electronic signature.
- I agree that the application, if delivered or transmitted to the Lender or Other Loan Participants as an electronic record with my electronic signature, will be as effective and enforceable as a paper application signed by me in writing.

**(5) Delinquency**
- The Lender and Other Loan Participants may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report and will likely affect my credit score.
- If I have trouble making my payments I understand that I may contact a HUD-approved housing counseling organization for advice about actions I can take to meet my mortgage obligations.

**(6) Authorization for Use and Sharing of Information**
By signing below, in addition to the representations and agreements made above, I expressly authorize the Lender and Other Loan Participants to obtain, use, and share with each other (i) the loan application and related loan information and documentation, (ii) a consumer credit report on me, and (iii) my tax return information, as necessary to perform the actions listed below, for so long as they have an interest in my loan or its servicing:
  - (a) process and underwrite my loan;
  - (b) verify any data contained in my consumer credit report, my loan application and other information supporting my loan application;
  - (c) inform credit and investment decisions by the Lender and Other Loan Participants;
  - (d) perform audit, quality control, and legal compliance analysis and reviews;
  - (e) perform analysis and modeling for risk assessments;
  - (f) monitor the account for this loan for potential delinquencies and determine any assistance that may be available to me; and
  - (g) other actions permissible under applicable law.

Borrower Signature _____     Date (mm/dd/yyyy) _____

Michele Lesha Xu

GURLA20_S 0718
GURLA20G  (POD)
05/27/2022 11:28 AM PST



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Section 7: Military Service. This section asks questions about your (or your deceased spouse's) military service.

### Military Service of Borrower

**Military Service –** Did you (or your deceased spouse) ever serve, or are you currently serving, in the United States Armed Forces? ⦿ NO ◯ YES
*If YES, check all that apply:* ☐ Currently serving on active duty with projected expiration date of service/tour ___ / ___ / ___ *(mm/dd/yyyy)*
☐ Currently retired, discharged, or separated from service
☐ Only period of service was as a non-activated member of the Reserve or National Guard
☐ Surviving spouse

## Section 8: Demographic Information. This section asks about your ethnicity, sex, and race.

### Demographic Information of Borrower

The purpose of collecting this information is to help ensure that all applicants are treated fairly and that the housing needs of communities and neighborhoods are being fulfilled. For residential mortgage lending, Federal law requires that we ask applicants for their demographic information (ethnicity, sex, and race) in order to monitor our compliance with equal credit opportunity, fair housing, and home mortgage disclosure laws. You are not required to provide this information, but are encouraged to do so. You may select one or more designations for "Ethnicity" and one or more designations for "Race." **The law provides that we may not discriminate** on the basis of this information, or on whether you choose to provide it. However, if you choose not to provide the information and you have made this application in **person**, Federal regulations require us to note your ethnicity, sex, and **race** on the basis of visual observation or surname. The law also provides that we may not discriminate on the basis of age or marital status information you provide in this application. If you do not wish to provide some or all of this information, please check below.

**Ethnicity:** *Check one or more*
☐ Hispanic or Latino
    ☐ Mexican ☐ Puerto Rican ☐ Cuban
    ☐ Other Hispanic or Latino – *Print origin:* _____

    *For example: Argentinean, Colombian, Dominican, Nicaraguan, Salvadoran, Spaniard, and so on.*
☒ Not Hispanic or Latino
☐ I do not wish to provide this information

**Sex**
☒ Female
☐ Male
☐ I do not wish to provide this information

**Race:** *Check one or more*
☐ American Indian or Alaska Native – *Print name of enrolled or principal tribe:* _____
☐ Asian
    ☐ Asian Indian ☐ Chinese ☐ Filipino
    ☐ Japanese ☐ Korean ☐ Vietnamese
    ☐ Other Asian – *Print race:* _____
    *For example: Hmong, Laotian, Thai, Pakistani, Cambodian, and so on.*
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
    ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan
    ☐ Other Pacific Islander – *Print race:* _____
    *For example: Fijian, Tongan, and so on.*
☒ White
☐ I do not wish to provide this information

**To Be Completed by Financial Institution** *(for application taken in person):*

| | |
|---|---|
| Was the ethnicity of the Borrower collected on the basis of visual observation or surname? | ⦿ NO ◯ YES |
| Was the sex of the Borrower collected on the basis of visual observation or surname? | ⦿ NO ◯ YES |
| Was the race of the Borrower collected on the basis of visual observation or surname? | ⦿ NO ◯ YES |

**The Demographic Information was provided through:**
◯ Face-to-Face Interview *(includes Electronic Media w/ Video Component)*    ◯ Telephone Interview    ◯ Fax or Mail    ⦿ Email or Internet

Borrower Name: Michele Lesha Xu
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

7 of 10

GURLA20_S 0718
GURLA20S (POD)
05/27/2022 11:29 AM PST





Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Section 9: Loan Originator Information. To be completed by your Loan Originator.

**Loan Originator Information**

Loan Originator Organization Name AmCap Mortgage, Ltd.

Address 1130 Hillcrest Drive, New Braunfels, TX 78130

Loan Originator Organization NMLSR ID# 129122          State License ID#

Loan Originator Name Chad Stephan

Loan Originator NMLSR ID# 1670704          State License ID#

Email cstephan@myamcap.com          Phone 512-608-0205

Signature *Michele Leho*          Date (mm/dd/yyyy) 03/23/2022

Borrower Name: Michele Lesha Xu
Uniform Residential Loan Application
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

8 of 10

GURLA20_S 0718
GURLA20S  (POD)
05/27/2022 11:28 AM PST

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

*To be completed by the Lender:*
Lender Loan No./Universal Loan Identifier 5493000NBM4MGXXBTA4420454698359          Agency Case No. 512-4867978-703

# Uniform Residential Loan Application — Lender Loan Information
*This section is completed by your Lender.*

## L1. Property and Loan Information

**Community Property State**
☒ At least one borrower lives in a community property state.
☒ The property is in a community property state.

**Transaction Detail**
☐ Conversion of Contract for Deed or Land Contract
☐ Renovation
☐ Construction-Conversion/Construction-to-Permanent
  ○ Single-Closing  ○ Two-Closing
Construction/Improvement Costs $ _____
Lot Acquired Date ____ / ____ / _____ (mm/dd/yyyy)
Original Cost of Lot $ _____

**Refinance Type**
○ No Cash Out
○ Limited Cash Out
○ Cash Out

**Refinance Program**
○ Full Documentation
○ Interest Rate Reduction
○ Streamlined without Appraisal
○ Other _____

**Energy Improvement**
☐ Mortgage loan will finance energy-related improvements.
☐ Property is currently subject to a lien that could take priority over the first mortgage lien, such as a clean energy lien paid for through property taxes *(e.g., the Property Assessed Clean Energy program)*.

**Project Type**  ☐ Condominium    ☐ Cooperative    ☒ Planned Unit Development (PUD)    ☐ Property is not located in a project.

## L2. Title Information

**Title to the Property Will be Held in What Name(s):**
Michele Lesha Xu

**Estate Will be Held In**
⦿ Fee Simple
○ Leasehold Expiration Date ____ / ____ / _____ (mm/dd/yyyy)

**Manner in Which Title Will be Held**
⦿ Sole Ownership        ○ Joint Tenancy with Right of Survivorship
○ Life Estate             ○ Tenancy by the Entirety
○ Tenancy in Common    ○ Other

**For Refinance: Title to the Property is Currently Held in What Name(s):**

**Trust Information**
○ Title Will be Held by an *Inter Vivos (Living)* Trust
○ Title Will be Held by a Land Trust

**Indian Country Land Tenure**
○ Fee Simple On a Reservation
○ Individual Trust Land *(Allotted/Restricted)*
○ Tribal Trust Land On a Reservation
○ Tribal Trust Land Off Reservation
○ Alaska Native Corporation Land

## L3. Mortgage Loan Information

**Mortgage Type Applied For**
○ Conventional    ○ USDA-RD
⦿ FHA    ○ VA    ○ Other:

**Amortization Type**
⦿ Fixed Rate    ○ Other *(explain):* _____
○ Adjustable Rate
  **If Adjustable Rate:**
  Initial Period Prior to First Adjustment _____ *(months)*
  Subsequent Adjustment Period _____ *(months)*

**Loan Features**
☐ Balloon / Balloon Term _____ *(months)*
☐ Interest Only / Interest Only Term _____ *(months)*
☐ Negative Amortization
☐ Prepayment Penalty / Prepayment Penalty Term _____ *(months)*
☐ Temporary Interest Rate Buydown / Initial Buydown Rate _____ %
☐ Other *(explain):*

**Terms of Loan**
Note Rate 5.125 %
Loan Term 360 *(months)*

**Mortgage Lien Type**
⦿ First Lien
○ Subordinate Lien

**Proposed Monthly Payment for Property**

| | |
|---|---|
| First Mortgage *(P & I)* | $ 1,817.72 |
| Subordinate Lien(s) *(P & I)* | $ |
| Homeowner's Insurance | $ 90.00 |
| Supplemental Property Insurance | $ |
| Property Taxes | $ 453.49 |
| Mortgage Insurance | $ 230.88 |
| Association/Project Dues *(Condo, Co-Op, PUD)* $ | |
| Other | $ |
| **Total** | $ 2,592.09 |

---

Borrower Name(s): Michele Lesha Xu
Uniform Residential Loan Application — Lender Loan Information
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

9 of 10

GURLA20_S 0716
GURLA20S  (POD)
05/27/2022 11:28 AM PST





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## L4. Qualifying the Borrower – Minimum Required Funds or Cash Back

### DUE FROM BORROWER(S)

| | |
|---|---|
| A. Sales Contract Price | $ 340,000.00 |
| B. Improvements, Renovations, and Repairs | $ |
| C. Land (if acquired separately) | $ |
| D. For Refinance: Balance of Mortgage Loans on the Property to be paid off in the Transaction (See Table 3a. Property You Own) | $ |
| E. Credit Cards and Other Debts Paid Off (See Table 2c. Liabilities — Credit Cards, Other Debts, and Leases that You Owe) | $ 14,580.00 |
| F. Borrower Closing Costs (including Prepaid and Initial Escrow Payments) | $ 15,481.73 |
| G. Discount Points | $ 10,766.37 |
| H. TOTAL DUE FROM BORROWER(s) (Total of A thru G) | $ 380,828.10 |

### TOTAL MORTGAGE LOANS

| | |
|---|---|
| I. Loan Amount — Loan Amount Excluding Financed Mortgage Insurance (or Mortgage Insurance Equivalent) $ 328,100.00 — Financed Mortgage Insurance (or Mortgage Insurance Equivalent) Amount $ 5,741.00 | $ 333,841.00 |
| J. Other New Mortgage Loans on the Property the Borrower(s) is Buying or Refinancing (See Table 4b. Other New Mortgage Loans on the Property You are Buying or Refinancing) | $ |
| K. TOTAL MORTGAGE LOANS (Total of I and J) | $ 333,841.00 |

### TOTAL CREDITS

| | |
|---|---|
| L. Seller Credits (Enter the amount of Borrower(s) costs paid by the property seller) | $ |
| M. Other Credits (Enter the sum of all other credits — Borrower Paid Fees, Earnest Money, Employer Assisted Housing, Lease Purchase Fund, Lot Equity, Relocation Funds, Sweat Equity, Trade Equity, Other) | $ 21,115.64 |
| N. TOTAL CREDITS (Total of L and M) | $ 21,115.64 |

### CALCULATION

| | |
|---|---|
| TOTAL DUE FROM BORROWER(s) (Line H) | $ 380,828.10 |
| LESS TOTAL MORTGAGE LOANS (Line K) AND TOTAL CREDITS (Line N) | - $ 354,956.64 |
| Cash From/To the Borrower (Line H minus Line K and Line N) NOTE: This amount does not include reserves or other funds that may be required by the Lender to be verified. | $ 25,871.46 |

Borrower Name(s): Michele Lesha Xu
Uniform Residential Loan Application — Lender Loan Information
Freddie Mac Form 65 · Fannie Mae Form 1003
Effective 1/2021

10 of 10

GURLA20_S 0718
GURLA20S (POD)
05/27/2022 11:28 AM PST



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150                                    Phone:(877) 634-3282
Houston, TX 77079                                               Fax:(281) 710-0850

                                                                    05/23/2022
                                                    Report Number: BWEWJ-0121099

XIAOFENG XU
4855 LAZY TIMBERS DR
Humble, TX 77346

Dear Borrower

We have recently prepared a credit report for your loan. The following page(s) may include derogatory items such as past or present late payments, collections, public records, inquiries, AKAs (also known as) and/or previous addresses showing on your credit report. Lines have been provided below each item for your explanation.

Please keep in mind that although the inquiries, AKAs and/or previous addresses on your report may or may not have resulted in credit being granted or derogatory items may have occurred in the past, your lender may still require an explanation of why they occurred.

If you should need further explanation or assistance, please contact your LENDER. Your letter of explanation should be mailed or delivered to the address below.

Sincerely,


Credit Report Processor

In order to process your loan as quickly as possible, please sign and date (in the space below) and return this letter with your explanation as soon as possible to:

            Attn: Chad Stephan
            AMCAP MORTGAGE CORP
            9999 BELLAIRE BLVD STE 700
            HOUSTON, TX 77036
            Loan Number: 204546983


(Applicant) XIAOFENG XU                          Date   6/2/2022

Warning: Section 1010 of the Title 18, U.S.C. provides: "Whoever, for the purpose of influences such administration makes, passes, utters, or publishes any statement, knowing the same to be false shall be fined not more than $5000 of imprisoned not more than two years, or both."

Page 1 of 5

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX. 77079

Phone:(877) 634-3282
Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-0121099

XIAOFENG XU
4855 LAZY TIMBERS DR
Humble, TX 77346

| Creditor Name | Date Reported | Date Opened | High Credit | Balance Owing | Terms | Current Status | Historical Status | | | Past Due |
|---|---|---|---|---|---|---|---|---|---|---|
| Account Number | DLA | | | | Acct. Type | ECOA | #Mo | Times Past Due | | Last Pmt. |
| Most Recent and/or Highest Delinquency | | | | | | | | 30 | 60 | 90 | Due |

## COLLECTIONS:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IC SYSTEM | 05/22 | 03/21 | 517 | 517 | | COLLECTION | |
| 124902333 | | | | | | OPEN    B | |

Reason for Delinquency: _____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| PROCOLLECT INC | 05/22 | 11/18 | 380 | 380 | | UNRATED | 380 |
| 144000012310744 | 05/18 | | | | | B | |
| UNPAID | | | | | | | |

Reason for Delinquency: _____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IC SYSTEM | 05/22 | 04/21 | 222 | 222 | | COLLECTION | |
| 125429503 | | | | | | OPEN    B | |

Reason for Delinquency: _____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IC SYSTEM | 05/22 | 04/21 | 216 | 216 | | COLLECTION | |
| 125429548 | | | | | | OPEN    B | |

Reason for Delinquency: _____

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IC SYSTEM | 05/22 | 04/21 | 216 | 216 | | COLLECTION | |
| 125429552 | | | | | | OPEN    B | |

Reason for Delinquency: _____





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX. 77079

Phone:(877) 634-3282
Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-0121099

XIAOFENG XU
4855 LAZY TIMBERS DR
Humble, TX 77346

| Creditor Name / Account Number | Date Reported / DLA | Date Opened | High Credit | Balance Owing | Terms / Acct Type | Current Status / ECOA | Historical Status | | | Past Due |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Mo. | Times Past Due 30 / 60 / 90 | | Last Pay Due |
| Most Recent and/or Highest Delinquency: | | | | | | | | | | |

**COLLECTIONS:**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| I C SYSTEM | 05/22 | 04/21 | 150 | 150 | | COLLECTION | | | | |
| 125429498 | | | | | | OPEN       B | | | | |
| Reason for Delinquency: | | | | | | | | | | |

**ADDRESSES:**

| | | | |
|---|---|---|---|
| 4025 FEATHER LAKES WAY UNIT 6846, KINGWOOD, TX, 77325 | 05/01/2022 | Do you currently own this property? | ☐ Yes  ☑ No |
| Explanation:  PRIOR | | | |

| | | | |
|---|---|---|---|
| 4855 LAZY TIMBERS DR, HUMBLE, TX, 77346-4456 | 09/17/2018 | Do you currently own this property? | ☐ Yes  ☑ No |
| Explanation: | | | |

| | | | |
|---|---|---|---|
| 18002 KIRK FOREST CT, HUMBLE, TX, 77346 | 10/01/2020 | Do you currently own this property? | ☐ Yes  ☑ No |
| Explanation:  PRIOR. | | | |



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX 77079

Phone:(877) 634-3282
Fax:(281) 710-0650

05/23/2022
Report Number: BWEWJ-0121099

XIAOFENG XU
4855 LAZY TIMBERS DR
Humble, TX 77346

## ADDRESSES:

| 8102 AMELIA RD APT B310, HOUSTON, TX, 77055-2046 | 08/30/2010 | Do you currently own this property? |
| Explanation: | | ☐ Yes ☑ No |

| 10901 NORTHWEST FY APT 844, HOUSTON, TX, 77092-7305 | 08/31/2010 | Do you currently own this property? |
| Explanation: | | ☐ Yes ☑ No |

| 17500 Ghost Road, Saratoga, TX, 77585 | | Do you currently own this property? |
| Explanation: | | ☐ Yes ☑ No |

## INQUIRIES IN THE LAST 120 DAYS:

MFI CREDIT S                                        5/23/2022

New account opened?    ☐ Yes  ☑ No

| Creditor Name | Phone Number | Account Number | Balance | Payment |
|---|---|---|---|---|
| | | | | |

Other Explanation: _____

## AKAS:

FENG, XU XIAO  Nickname: XU XIAO FENG.

Explanation: _____



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150          Phone:(877) 634-3282
Houston, TX 77079                  Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-0121099

XIAOFENG XU
4855 LAZY TIMBERS DR
Humble, TX 77346

### AKAS:

FENGXU, XIAO

Explanation:

XU, XIAO FENG

Explanation:

XUX, XIAO FENG

Explanation:

\*\*\* END OF REPORT - 5/23/2022 9:31:52 AM \*\*\*



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX 77079

Phone:(877) 634-3282
Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-1321192

MICHELE LESHA XU
4855 Lazy Timbers Dr
Humble, TX 77346

Dear Borrower

We have recently prepared a credit report for your loan. The following page(s) may include derogatory items such as past or present late payments, collections, public records, inquiries, AKAs (also known as) and/or previous addresses showing on your credit report. Lines have been provided below each item for your explanation.

Please keep in mind that although the inquiries, AKAs and/or previous addresses on your report may or may not have resulted in credit being granted or derogatory items may have occurred in the past, your lender may still require an explanation of why they occurred.

If you should need further explanation or assistance, please contact your LENDER. Your letter of explanation should be mailed or delivered to the address below.

Sincerely,

Credit Report Processor

In order to process your loan as quickly as possible, please sign and date (in the space below) and return this letter with your explanation as soon as possible to:

Attn: Chad Stephan
AMCAP MORTGAGE CORP
9999 BELLAIRE BLVD STE 700
HOUSTON, TX 77036
Loan Number: 204546983

_____          _____
(Applicant): Michele Lesha Xu                                    Date

Warning: Section 1010 of the Title 18, U.S.C. provides: "Whoever, for the purpose of influences such administration makes, passes, utters, or publishes any statement, knowing the same to be false shall be fined not more than $5000 of imprisoned not more than two years, or both."

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX 77079

Phone:(877) 634-3282
Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-1321192

MICHELE LESHA XU
4855 Lazy Timbers Dr
Humble, TX 77346

| Creditor Name | Date Reported | Date Opened | High Credit | Balance Owing | Terms | Current Status | Historical Status | | | Past Due |
|---|---|---|---|---|---|---|---|---|---|---|
| Account Number | DLA | | | | Acct. Type | ECOA | #Mo | Times Past Due | | Last Past |
| | | | | | | | | 30 / 60 / 90 | | Due |
| Most Recent and/or Highest Delinquency | | | | | | | | | | |

### COLLECTIONS:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 05/22 | 02/19 | 448 | 448 | | UNRATED | | | | 448 |
| 1190647473 | 05/18 | | | | | B | | | | |
| MEDICAL | | | | | | | | | | |
| UNPAID | | | | | | | | | | |

Reason for Delinquency:

### ADDRESSES:

4855 LAZY TIMBERS DR, HUMBLE, TX, 77346-4456        03/20/2019

Do you currently own this property?    ☐ Yes  ☑ No

Explanation:

PO BOX 1714, ROGERS, AR, 72757-1714        07/26/2011

Do you currently own this property?    ☐ Yes  ☑ No

Explanation:

17443 WIGEON WAY DR, HUMBLE, TX, 77396-1697        07/06/2009

Do you currently own this property?    ☐ Yes  ☑ No

Explanation:



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX 77079

Phone:(877) 634-3282
Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-1321192

**MICHELE LESHA XU**
4855 Lazy Timbers Dr.
Humble, TX 77346

## ADDRESSES:

| 18002 KIRK FOREST CT, HUMBLE, TX, 77346-2474 | 09/10/2014 | Do you currently own this property? ☐ Yes ☑ No |
|---|---|---|

Explanation:

| 787 STEVENS CREEK RD APT B, AUGUSTA, GA, 30907 | 05/01/2017 | Do you currently own this property? ☐ Yes ☑ No |
|---|---|---|

Explanation:

| 12500 Ghost Road, Saratoga, TX, 77585 | | Do you currently own this property? ☐ Yes ☑ No |
|---|---|---|

Explanation:

## INQUIRIES IN THE LAST 120 DAYS:

MFI CREDIT S                                   5/23/2022

New account opened?  ☐ Yes  ☑ No

| Creditor Name | Phone Number | Account Number | Balance | Payment |
|---|---|---|---|---|
| | | | | |

Other Explanation:

## AKAS:

PATTERSON, MADASIA L

Explanation:

Page 3 of 5



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX 77079

Phone:(877) 634-3282
Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-1321192

MICHELE LESHA XU
4855 Lazy Timbers Dr
Humble, TX 77346

AKAS:

PATTERSON, MICHELE

Explanation:

PATTERSON, MICHELLE S

Explanation:

SPILLMAN, MICHELE

Explanation:

SPILLMAN, MICHELE L

Explanation:

SPILLMAN, MICHELE LESHA

Explanation:

SPILLMAN, MICHELLE L

Explanation:

Page 4 of 5



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MFI CREDIT SOLUTIONS

14701 ST.MARY'S LANE #150
Houston, TX 77079

Phone:(877) 634-3282
Fax:(281) 710-0850

05/23/2022
Report Number: BWEWJ-1321192

MICHELE LESHA XU
4855 Lazy Timbers Dr
Humble, TX 77346

## AKAS:

TURNER, MICHELLE

Explanation:

XU, MICHELE

Explanation:

*** END OF REPORT - 5/23/2022 9:33:19 AM ***



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FHA/VA NEW CONSTRUCTION CERTIFICATION

Loan No.: 204546983

Words used in this Certification are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is MICHELE LESHA XU

"Contractor" is

**BY INITIALING BELOW, BORROWER AND BUILDER AGREE AND CERTIFY THAT THE FOLLOWING CONDITIONS HAVE BEEN MET:**

MLX  1. A card giving the data on the insulation label, the location of each type of insulation, the date of installation and name of the applicator and Contractor has been secured to a framing member at the attic access opening.

MLX  2. Borrower has received a notice signed by Builder which identifies the carpet manufacturer's name, the identification of carpet from a certified products directory, the type of subflooring carpet that was installed, and a recommended home maintenance program for that style of carpet.

MLX  3. Borrower has been provided with the heating system manufacturer's warranty.

MLX  4. Borrower has been provided with the water heater manufacturer's warranty.

MLX  5. Borrower has been provided a performance guarantee on the cooling system by Contractor, which included adequate service facilities, together with the manufacturer's warranty, which warranty is transferable and provides for parts and service for one year without charge.

MLX  6. Borrower has been provided with the manufacturer's guarantee for insulating glass.

MLX  7. Borrower has been provided with all manufactured warranties on the new appliances.

_Michele Lesha xu_          6-2-2022
Borrower  MICHELE LESHA XU      Date

_(signature)_          6-2-2022
Borrower          Date

_____   _____
Borrower          Date

_____   _____
Borrower          Date

_____   _____
Borrower          Date

_____   _____
Borrower          Date



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FEDERAL EQUAL CREDIT OPPORTUNITY ACT NOTICE

Loan Number:   204546983

Date:   June 2, 2022

Provided By:  AMCAP MORTGAGE, LTD.

Borrower(s):  MICHELE LESHA XU

Property Address:  **17500 GHOST ROAD**
**SARATOGA, TEXAS 77585**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

The Federal Agency that administers compliance with this law concerning this creditor is:

The Federal Trade Commission
Consumer Response Center, 600 Pennsylvania Ave NW
Washington, DC 20580

By signing below, I/we acknowledge that I/we have read and received a copy of this document.

_Michele Xu_ _____  6/2/2022
Borrower MICHELE LESHA XU          Date



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# HUD APPRAISED VALUE DISCLOSURE

Loan Number: 204546983

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU

Property Address: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

I/We understand that my/our application for a FHA-insured mortgage is being processed under the Direct Endorsement (DE) program. The Lender has advised me/us that the appraiser has assigned a value of $365,000.00 to the property being purchased. I am/We are aware that the final determination of value for mortgage insurance purposes will be made by the DE underwriter after he/she reviews the report. It is understood that I/we may elect to cancel the application or renegotiate with the seller if the DE underwriter reduces the value below the amount set forth in the sales contract or requires additional repairs for which the seller will not be responsible.


Borrower MICHELE LESHA XU                     6-2-2022
                                                Date

HUD APPRAISED VALUE DISCLOSURE
HAVD.LSR  01/30/20                                          ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# HOME OWNERSHIP AND EQUITY PROTECTION ACT OF 1994
## FEDERAL TRUTH-IN-LENDING DISCLOSURE
### ACKNOWLEDGMENT OF RECEIPT OF NOTICE
#### (REQUIRED UNDER SECTION 32 OF REGULATION Z, 12 CFR 1026.32)

The undersigned hereby acknowledges that a completed copy of the document entitled Home Ownership and Equity Protection Act of 1994 - Federal Truth-in-Lending Disclosure, was received from AMCAP MORTGAGE, LTD.
on or before _____. The undersigned has not elected to cancel this
[at least three business days prior to consummation]
transaction pursuant to such Notice.


Borrower MICHELE LESHA XU          6/2/2022
                                   Date

Borrower XIAOFENG XU          6-2-2022
                              Date

HOME OWNERSHIP AND EQUITY PROTECTION ACT OF 1994
FEDERAL TRUTH-IN-LENDING DISCLOSURE                    ☆DocMagic
12 CFR 1026.32
HOEPAA.MSC 10/15/19



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# COVID-19 ATTESTATION

Loan Number:  204546983

Date:  June 2, 2022

Lender:  AMCAP MORTGAGE, LTD.

Borrower(s):  MICHELE LESHA XU

Property Address:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

The COVID-19 pandemic has had a significant economic and social impact and for some has led to unemployment and other financial hardships. In this time of uncertainty, it is important to ensure all borrowers' ability to repay a new mortgage loan and confirm the information used to approve your loan remains true and accurate. In addition, it is important you are aware that recent federal actions to provide payment relief to homeowners may be subject to conditions or not available for your mortgage loan.

By signing below, I affirm that (1) the income documentation submitted for qualifying purposes is unchanged and not affected by the COVID-19 resulting economic impact and (2) I am not aware of any future changes in my employment status and/or income that will affect my ability to repay my loan.

   6-2-3022

Borrower MICHELE LESHA XU                Date

COVID-19 ATTESTATION
COVID19.MSC  04/14/20

✮DocMagic

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# COMPLIANCE AGREEMENT

Loan Number: 204546983

Seller(s):  LINDSEY B. WHISENHANT, AS INDEPENDENT EXECUTOR OF THE ESTATE OF GENE A. WHISENHANT, DECEASED, JO ANN WHISENHANT

Lender:  AMCAP MORTGAGE, LTD.

Borrower(s):  MICHELE LESHA XU, XIAOFENG XU

Property Address:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

The undersigned borrower(s) for and in consideration of the above referenced Lender this date funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to, an investor, Fannie Mae, Freddie Mac, Federal Housing Administration, the Department of Veterans Affairs or any municipal bonding authority.

The undersigned borrower(s) agree(s) to comply with all above noted requests by Lender or Closing Agent for Lender within 30 days from the date of mailing said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses, for failing to comply with correction requests in such 30 day time period.

The undersigned borrower(s) do hereby so agree and covenant in order to assure that the loan documentation executed this date will conform and be acceptable in the market place in the instance of transfer, sale or conveyance by Lender or its interest in and to said loan documentation.

Dated effective June 2, 2022.

MICHELE LESHA XU

XIAOFENG XU



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

State of __TEXAS__

County of __HARDIN__

Sworn to and subscribed before me on the __2nd__ day of __June__ __2, 2022__, by

__MICHELE LESHA XU AND XIAOFENG XU__ (name of principal signer).

(SEAL)

_____
Notary Public Signature



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# BORROWER'S AUTHORIZATION FOR USE OF INFORMATION PROTECTED UNDER THE PRIVACY ACT

Loan Number: 204546983

Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU

Property Address:  17500 GHOST ROAD
SARATOGA, TEXAS 77585

I/We have applied for a mortgage loan from AMCAP MORTGAGE, LTD.

("Lender"). As part of the application process, Lender may use my/our information protected under the Privacy Act of 1974 for any purpose relating to the origination, servicing, loss mitigation, and disposition of the Mortgage or Property securing the Mortgage, and relating to any insurance claim and ultimate resolution of such claims by the Mortgagee and FHA.

By signing below, I/we acknowledge that I/we have read and received a copy of this document.



Borrower MICHELE LESHA XU                    Date

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## BORROWER'S CERTIFICATION, AUTHORIZATION AND CONSENT

Loan Number: 204546983

Date: June 2, 2022

Provided By: AMCAP MORTGAGE, LTD.

Borrower: MICHELE LESHA XU, XIAOFENG XU

Property Address: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

### CERTIFICATION

The undersigned certify the following:

I have applied for a mortgage loan. In applying for the loan, I completed a loan application containing information on the purpose of the loan, the amount and source of the downpayment, employment and income information, and assets and liabilities. I certify that all of the information is true and complete. I made no misrepresentations in the loan application or other documents, nor did I omit any pertinent information.

I understand and agree that Lender reserves the right to change the mortgage loan review process. This may include verifying the information provided on the application.

I fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

### AUTHORIZATION TO RELEASE INFORMATION

As part of our mortgage loan application process, Lender and Other Loan Participants, may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

I authorize third parties to provide to Lender and Other Loan Participants, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

I further authorize Lender to order a consumer credit report and verify other credit information.



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## BORROWER CONSENT TO THE USE OF TAX RETURN INFORMATION

I understand, acknowledge, and agree that the Lender and Other Loan Participants can obtain, use and share tax return information for purposes of:

(i)    providing an offer;
(ii)   originating, maintaining, managing, monitoring, servicing, selling, insuring, and securitizing a loan; or
(iii)  as otherwise permitted by applicable laws, including state and federal privacy and data security laws.; or
(iv)   marketing

The Lender includes the Lender's affiliates, agents, service providers and any of aforementioned parties' successors and assigns.

The Other Loan Participants includes any actual or potential owners of a loan resulting from your loan application, or acquirers of any beneficial or other interest in the loan, any mortgage insurer, guarantor, any servicers or service providers for these parties and any of aforementioned parties' successors and assigns.


_Michele Lesha Xu_  6-2-2022            _Xiaofeng Xu_  6-2-2022
Borrower  MICHELE LESHA XU    Date    Borrower  XIAOFENG XU    Date


BORROWER'S CERTIFICATION, AUTHORIZATION AND CONSENT
BCAC.MSC  11/03/21                    Page 2 of 2                    ☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# HAZARD INSURANCE AUTHORIZATION AND REQUIREMENTS

Loan Number: 204546983

Date: June 2, 2022

Escrow Number:  2213851-SHSA

Escrow Company:  INDEPENDENCE TITLE

Provided By:  AMCAP MORTGAGE, LTD.

Borrower's Name(s):  MICHELE LESHA XU

Property Address:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

Listed below are Lender's policies and procedures, and minimum requirements, for the Hazard Insurance which must be provided covering the subject property.

1.  Coverage must equal the lesser of the following:

    *  100% of the insurable value of the improvements, as established by the property insurer, or

    *  the unpaid principal balance of the mortgage, as long as it at least equals the minimum amount - 80% of the insurable value of the improvements - required to compensate for damage or loss on a replacement cost basis. If it does not, then coverage that does provide the minimum required amount must be obtained.

2.  The insurance company providing coverage must have an "A" rating or better in the latest edition of "Best's Insurance Guide," must be licensed to do business in the State in which the property is located, and must be licensed to transact the lines of insurance required in this transaction.

3.  Policy shall provide at least "Broad Form" coverage on properties of one to four units, and at least "Vandalism & Malicious Mischief" on properties with over four units, with no deviation. Homeowners policies must provide coverage equal to "HO2" form.

4.  Policies must contain deductibles on any peril. Deductibles may not exceed five percent of the face amount of the insurance policy.

5.  Policy must provide coverage for a term of at least one year. Premiums may be paid on an annual installment basis only if the policy provides that the lender will be notified in writing of cancellation 30 days prior to expiration of coverage, for any cause. Binders are not acceptable unless otherwise required by applicable law.

6.  If any existing policy is provided which will expire within 6 months from the date of the recording of this loan, said policy must be renewed for the required term as noted in paragraph 5 above.

7.  All forms and endorsements pertaining to the Lender's requirements must appear on the "Declaration Page" of policy.

8.  New policies must be accompanied by a signed "Broker of Record Authorization" if borrower(s) has/have changed Insurance Agents.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

9. Verification of renewal of insurance policies must be in Lender's office at least thirty days prior to the expiration date of the policy. If this requirement is not met, **LENDER AND ITS SUCCESSORS OR ASSIGNS MAY AT THEIR OPTION, BUT WITHOUT THE OBLIGATION TO DO SO, PROVIDE COVERAGE TO REPLACE ANY EXPIRING POLICIES WHICH HAVE NOT BEEN PROPERLY RENEWED.** The premium for such coverage will be remitted promptly by the undersigned, or Lender may charge borrower's account for the cost thereof.

10. Lender's loss Payable Endorsement 438 BFU to be affixed to policy in favor of:
    AMCAP MORTGAGE, LTD.
    9999 BELLAIRE BOULEVARD, SUITE 700
    HOUSTON, TEXAS 77036
    Loan Number: 204546983
    Loan Number: 204546983

11. The property address and the insured's names must be designated on the policy exactly as on the TLTA Title Policy, ATLA or CLTA Title Policy (whichever is issued).

12. The Lender's loan number must appear on the policy and on any subsequent endorsements.

13. The effective date of new policies, endorsements, and/or assignments shall be as of, or prior to, the date of recording of this loan.

14. Please notify your agent to forward future premium notices directly to you.

15. If the security property is a condominium, the Master Policy must contain a minimum of $1,000,000.00 coverage for "Directors & Officers" liability. A copy of the Master Policy, or a certificate showing proof of coverage for both the Homeowners Association and the condominium unit owner, must be submitted to Lender prior to funding.

AN ACCEPTABLE POLICY, WITH ENDORSEMENTS AND/OR ASSIGNMENTS, MUST BE FORWARDED TO AND RECEIVED BY LENDER BEFORE THIS LOAN CAN BE FUNDED; OTHERWISE, LENDER MAY BE FORCED TO PLACE INTERIM COVERAGE ON THE PROPERTY AT AN ADDITIONAL COST TO THE BORROWER(S).

Each of the undersigned acknowledges that he or she has read and understands the foregoing provisions and insurance requirements. This authorization will remain irrevocable for the undersigned as owner(s) of the subject property, and or any assignees, for as long as this loan remains on the subject property.


_____        _____
Borrower MICHELE LESHA XU              / Date



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Form SSA-89 (12-2020)
Discontinue Prior Editions
Social Security Administration

OMB No. 0960-0760

## Authorization for the Social Security Administration (SSA) To Release Social Security Number (SSN) Verification

| Printed Name:<br>MICHELE LESHA XU | Date of Birth:<br>July 5, 1981 | Social Security Number:<br>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 |
|---|---|---|

Reason for authorizing consent: (Please select one)

- ☐ To apply for a mortgage
- ☐ To open a bank account
- ☐ To apply for a credit card
- ☐ To apply for a loan
- ☐ To open a retirement account
- ☐ To apply for a job
- ☐ To meet a licensing requirement
- ☐ Other

With the following company ("the Company"):

Company Name: AMCAP MORTGAGE, LTD.

Company Address: 9999 BELLAIRE BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036

The name and address of the Company's Agent (if applicable):

Agent's Name:

Agent's Address:

I authorize the Social Security Administration to verify my name and SSN to the Company and/or the Company's Agent, if applicable, for the purpose I identified. I am the individual to whom the Social Security number was issued or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare and affirm under the penalty of perjury that the information contained herein is true and correct. I acknowledge that if I make any representation that I know is false to obtain information from Social Security records, I could be found guilty of a misdemeanor and fined up to $5,000.

This consent is valid only for one-time use. This consent is valid only **for** 90 days from the date signed, unless indicated otherwise by the individual named above. If you wish to change this timeframe, fill in the following:

This consent is valid for _____ days from the date signed._____ (Please initial.)

| Signature: *Michele Lesha Xu* | Date Signed: 6-2-2022 |
|---|---|

Relationship: (if not the individual to whom the SSN was issued):

### Privacy Act Statement Collection and Use of Personal Information

Sections 205(a) and 1106 of the Social Security Act, as amended, allow us to collect this information. Furnishing us this information is voluntary. However, failing to provide all or part of the information may prevent us from releasing information to a designated company or company's agent. We will use the information to verify your name and Social Security number (SSN). In addition, we may share this information in accordance with the Privacy Act and other Federal laws. For example, where authorized, we may use and disclose this information in computer matching programs, in which our records are compared with other records to establish or verify a person's eligibility for Federal benefit programs and for repayment of incorrect or delinquent debts under these programs. A list of routine uses is available in our Privacy Act System of Records Notice (SORN) 60-0058, entitled Master Files of SSN Holders and SSN Applications. Additional information and a full listing of all our SORNs are available on our website at www.socialsecurity.gov/foia/bluebook.

Paperwork Reduction Act Statement – This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to complete the form. You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. *Send to this address only comments relating to our time estimate, not the completed form.*

---------------------------------------------- TEAR OFF ----------------------------------------------

## NOTICE TO NUMBER HOLDER

The Company and/or its Agent have entered into an agreement with SSA that, among other things, includes restrictions on the further use and disclosure of SSA's verification of your SSN. To view a copy of the entire model agreement, visit http://www.ssa.gov/cbsv/docs/SampleUserAgreement.pdf.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Form SSA-89 (12-2020)
Discontinue Prior Editions
Social Security Administration

OMB No. 0960-0760

## Authorization for the Social Security Administration (SSA) To Release Social Security Number (SSN) Verification

| Printed Name: XIAOFENG XU | Date of Birth: | Social Security Number: |
|---|---|---|

Reason for authorizing consent: (Please select one)
- [ ] To apply for a mortgage
- [ ] To open a bank account
- [ ] To apply for a credit card
- [ ] To apply for a loan
- [ ] To open a retirement account
- [ ] To apply for a job
- [ ] To meet a licensing requirement
- [ ] Other

With the following company ("the Company"):

Company Name: AMCAP MORTGAGE, LTD.

Company Address: 9999 BELLAIRE BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036

The name and address of the Company's Agent (if applicable):

Agent's Name:

Agent's Address:

I authorize the Social Security Administration to verify my name and SSN to the Company and/or the Company's Agent, if applicable, for the purpose I identified. I am the individual to whom the Social Security number was issued or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult. I declare and affirm under the penalty of perjury that the information contained herein is true and correct. I acknowledge that if I make any representation that I know is false to obtain information from Social Security records, I could be found guilty of a misdemeanor and fined up to $5,000.

This consent is valid only for one-time use. This consent is valid only for 90 days from the date signed, unless indicated otherwise by the individual named above. If you wish to change this timeframe, fill in the following:

This consent is valid for _2 mo_ days from the date signed. _Xiao xu_ (Please initial.)  _n c_

| Signature: | Date Signed: 6 - 2 - 2022 |
|---|---|

Relationship (if not the individual to whom the SSN was issued):

### Privacy Act Statement Collection and Use of Personal Information

Sections 205(a) and 1106 of the Social Security Act, as amended, allow us to collect this information. Furnishing us this information is voluntary. However, failing to provide all or part of the information may prevent us from releasing information to a designated company or company's agent. We will use the information to verify your name and Social Security number (SSN). In addition, we may share this information in accordance with the Privacy Act and other Federal laws. For example, where authorized, we may use and disclose this information in computer matching programs, in which our records are compared with other records to establish or verify a person's eligibility for Federal benefit programs and for repayment of incorrect or delinquent debts under these programs. A list of routine uses is available in our Privacy Act System of Records Notice (SORN) 60-0058, entitled Master Files of SSN Holders and SSN Applications. Additional information and a full listing of all our SORNs are available on our website at www.socialsecurity.gov/foia/bluebook.

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to complete the form. You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. Send to this address only comments relating to our time estimate, not the completed form.

----------------------------------------- TEAR OFF -------------------------------------

## NOTICE TO NUMBER HOLDER

The Company and/or its Agent have entered into an agreement with SSA that, among other things, includes restrictions on the further use and disclosure of SSA's verification of your SSN. To view a copy of the entire model agreement, visit http://www.ssa.gov/cbsv/docs/SampleUserAgreement.pdf.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# ACKNOWLEDGMENT OF ENCROACHMENT
# AND HOLD HARMLESS AGREEMENT

Loan Number:  204546983

Date:  June 2, 2022

The undersigned is/are purchasing the real property described as follows, to-wit:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 000340-000100

I/We acknowledge that I/we have received a Blue Line Survey of the above property and am/are aware of the following conditions and/or exceptions:
ANY AND ALL ENCROACHMENTS OR ENCUMBRANCES AS SHOWN ON THE SURVEY, POND IS PROTRUDING OVER THE PROPERTY LINES

By my/our execution of this Agreement I/we state that I/we will hold    AMCAP MORTGAGE, LTD.

its successors and/or assigns harmless for any loss and/or damages that I/we may incur because of above said encroachments.

EXECUTED THIS    2nd    day of    June, 2022

_____
MICHELE LESHA XU

ACKNOWLEDGEMENT OF ENCROACHMENT/HOLD HARMLESS
AOEAHHA.LSR  10/30/18
☆DocMagic

Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

[Space Below This Line For Acknowledgment]

The State of __TEXAS__ ,

County of __HARDIN__ ,

Before me, __Noel CASARES__ ,
(here insert the name and character of the notarizing officer)

on this day personally appeared __MICHELE LESHA XU__

known to me (or proved to me on the oath of _____

or through __TX DRiving License # 28294330__ )
(description of identity card or other document)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __2nd__ day of __June__ 2022.



(SEAL)

_____
(Notary Public Signature)

Loan Originator: CHAD STEPHAN, NMLSR ID 1670704
Loan Originator Organization: AMCAP MORTGAGE, LTD., NMLSR ID 129122

ACKNOWLEDGEMENT OF ENCROACHMENT/HOLD HARMLESS
ACEAHHA.LSR 10/30/18          Page 2 of 2          ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# NO HUD WARRANTY

### THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) DOES NOT WARRANTY EXISTING PROPERTIES TO BE FREE OF DEFECTS

The Department of Housing and Urban Development (HUD) makes no warranties as to the condition of the home you are buying.  It is your responsibility, as the buyer, to make certain the home is in acceptable condition to you before closing on the transaction.

You should inspect the property carefully.  If you need help, a private inspection can be obtained.  Private inspection companies are listed in your local telephone directory.  HUD can make it easier for homebuyers to pay for the cost of a private inspection on an existing property.  This cost, up to a maximum of $200, can be included as part of the closing costs, subject to the regulatory limitations that govern the percentage of allowable closings costs that can be included in the mortgage.

The HUD/FHA appraisal, for which you will be asked to pay, is for the purpose of establishing the market value of the property and to determine if it meets minimum property standards.  This relates not so much to condition, but to questions of space, layout and type of construction.  While obvious defects are often noticed and listed as required repairs by the appraiser, it is still your responsibility for accepting the condition of the property and correcting any defects.

HUD provides FHA mortgage insurance to protect lenders in the event that homebuyers default on their loans.  As a result of this protection, homebuyers have an opportunity to obtain decent housing which may not be available to them through the private sector.  HUD is not an insurer of the quality of the workmanship or structure of the home.

Property Address:  17500 GHOST ROAD
                   SARATOGA, TEXAS 77585

Homebuyer MICHELE LESHA XU            6/2/2022
                                      Date

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# HOLD HARMLESS

Date  June 2, 2022                                    Loan # 204546983

TO:    Lender  AMCAP MORTGAGE, LTD.

        Address  9999 BELLAIRE BOULEVARD, SUITE 700, HOUSTON, TEXAS 77036

RE:    Property Address    17500 GHOST ROAD, SARATOGA, TEXAS 77585

Check the Applicable Box:

☐    **WAIVER OF WELL AND/OR SEPTIC INSPECTION:**
     We the undersigned are aware the above captioned property has a well and/or septic system and we are satisfied with
     the conditions of these items and therefore waive the need for an inspection.

     We hold your institution, or any assign of the mortgage, or any other assign, and any of your individual personnel
     harmless without further liability which might arise resulting from the condition of the septic system, well or quality
     of water.  This statement is made free of any duress.

☐    **APPROVAL OF WELL AND/OR SEPTIC INSPECTION REPORT:**
     We the undersigned have reviewed, understand, and accept the attached inspection reports for the water supply and
     sewage disposal system for the above captioned property.

     We understand that your interest in the reports is only a condition of granting the loan on the property and that you
     assume no responsibility for the reports, water supply, or sewage systems and that you have made no promises or
     representations about them.

     We acknowledge that determination of the acceptability of the water supply and sewage systems is our responsibility
     and that we do not rely on you.

☐    **HOLD HARMLESS AGAINST STATUS OF INSULATION:**
     We the undersigned are aware of the fact that the appraiser was unable to determine the type or condition of the
     insulation on the above captioned property.  It is further understood that

     has no knowledge of the status of the insulation.  We hold your institution, or any assigned of the mortgage, or any
     other assign, and any of your individual personnel harmless and without further liability which might arise resulting
     from the condition or type of the insulation.  This statement is made free of any duress.

Signature  MICHELE LESHA XU          6/2/2022     Signature                          Date
                                     Date

Signature                          Date          Signature                          Date

Signature                          Date          Signature                          Date

HOLD HARMLESS
HH.MSC  09/08/17                                                    ☆ DocMagic



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# ACKNOWLEDGMENT OF RECEIPT OF APPRAISAL REPORT

Loan Number: 204546983

Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower: MICHELE LESHA XU

Property Address: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

Under federal law, the creditor is required to provide you a copy of all appraisals or other written valuations developed in connection with your application for credit that is to be secured by a first lien on a dwelling. The creditor is required to provide a copy of each such appraisal or written valuation, at no additional cost to you, promptly upon completion, or three business days prior to consummation, whichever is earlier.

By signing below, your signature will acknowledge either:

- Your receipt of the appraisals or other written valuations developed in connection with your loan, no later than three days prior to consummation, or
- You previously waived your right to review the appraisal or other written valuation three days prior to consummation



Borrower MICHELE LESHA XU                    6/2/2022  Date

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**AMCAP MORTGAGE, LTD.**
**9999 BELLAIRE BOULEVARD, SUITE 700**
**HOUSTON, TX 77036**
**713-586-0500**

# ACKNOWLEDGMENT OF RECEIPT OF DISCLOSURES

Loan Number: 204546983                    Date: June 1, 2022

Borrower(s): MICHELE LESHA XU


Property Address: 17500 GHOST ROAD

City, State and Zip: SARATOGA, TEXAS 77585


Please review this list of required loan disclosures, and once you have done so, please sign this document. You should have received these disclosures, as applicable, either prior to today's date or in your closing package. If you have questions about a particular disclosure, ask your loan originator for more information and a copy of the disclosure. Please note that you are under no obligation to close your loan at this time and can delay doing so until you are satisfied that you have been provided with all of the applicable disclosures for your loan.

## DISCLOSURES REQUIRED FOR ALL LOANS

LOAN ESTIMATE
This disclosure provides a good faith estimate of the fees that you will be charged to obtain your loan.

PRIVACY DISCLOSURE
This disclosure provides information on your lender's privacy policy, including information on how your lender keeps your personal information private.

NOTICE TO HOME LOAN APPLICANT/CREDIT SCORE NOTICE AND DISCLOSURE
These disclosures explain your right to receive your credit score and provide you with the credit bureau contact information and your credit score.

INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT (IF APPLICABLE)
This disclosure shows a projected escrow analysis for the first year of escrow activity on your loan.

RESPA HOMEOWNERSHIP COUNSELING ORGANIZATION LIST
This disclosure provides a listing of Homeownership counseling agencies.

CLOSING DISCLOSURE



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**LOAN #:** 204546983

## DISCLOSURES THAT MAY BE REQUIRED FOR YOUR LOAN

PREPAYMENT PENALTY DISCLOSURE
This disclosure provides details, regarding any monetary penalties that you may be assessed if you prepay your loan.

LOW DOCUMENTATION/NO DOCUMENTATION DISCLOSURE
This disclosure provides information, explaining that you may have paid a pricing premium in order to obtain a reduced documentation or no documentation loan.

ARM DISCLOSURE
This disclosure provides information, which illustrates the ramifications of obtaining an adjustable rate loan, and the potential for increased mortgage payments that such an option carries with it.

PRIVATE MORTGAGE INSURANCE DISCLOSURE
This disclosure provides the details of the mortgage insurance program associated with your loan.

GOVERNMENT DISCLOSURES (VA/FHA)
These documents include the disclosures required for government insured loans, including loans insured by VA and FHA.

INTEREST-ONLY DISCLOSURE (FIXED-RATE LOANS)
This disclosure provides details on how interest only options may cause your payment to change and illustrates how your loan principal will not be reduced during the interest only period unless you make additional payments.

By signing this document you acknowledge that you have been provided with all of the necessary disclosures for your loan, including any disclosures that are specific to your loan type.

_Michele Lesha Xu_ 6/2/2022

MICHELE LESHA XU                    Date

ACKNOWLEDGMENT OF RECEIPT OF DISCLOSURES
ARD16.CST 05/08/20                    Page 2 of 2                    ★ DocMagic




Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# CREDIT SCORE DISCLOSURE ACKNOWLEDGMENT
## (Section 609 of the Fair Credit Reporting Act, 15 U.S.C. 1681g)

Loan #: 204546983

Lender: AMCAP MORTGAGE, LTD.

Property Address: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

BEFORE ME, the undersigned authority to take acknowledgments and administer oaths, personally appeared MICHELE LESHA XU

(the "Borrower"),

who upon being duly sworn on oath, certified as follows:

Prior to closing of the loan, Borrower received from the Lender the following disclosures required by the Fair Credit Reporting Act:

(A) the current credit score of the Borrower or the most recent credit score of the Borrower that was previously calculated by a credit reporting agency for a purpose related to the loan;

(B) the range of possible credit scores under the model used;

(C) all of the key factors that adversely affected the credit score of the Borrower in the model used, the total number of which did not exceed 4, subject to (F) below;

(D) the date on which the credit score was created;

(E) the name of the person or entity that provided the credit score or credit file upon which the credit score was created;

(F) if a key factor that adversely affected the credit score of the Borrower consists of the number of enquiries made with respect to the Borrower's consumer report, that factor was included in the disclosure pursuant to (C) above without regard to the numerical limitation in (C); and

(G) the Notice to the Home Loan Applicant (including the name, address, and telephone number of each consumer reporting agency providing a credit score that was used).

CAUTION: THIS IS A SWORN STATEMENT. DO NOT SIGN THIS AFFIDAVIT UNLESS YOU HAVE READ IT AND, ON OATH, YOU BELIEVE IT TO BE TRUE AND CORRECT.

Michele Lesha Xu        6/2/2022
MICHELE LESHA XU              Date



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

SWORN TO AND SUBSCRIBED BEFORE ME, this _2nd_ day of _June, 2022_____

Notary Public

Noel Casares

Notary's Typed or Printed Name

My Commission Expires: 3-11 2024





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## MINERAL RIGHTS ACKNOWLEDGMENT AND AGREEMENT

Loan Number: 204546983

Case Number: 512-4867978-703

Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU

Property: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

Borrower(s) is executing this Mineral Rights Acknowledgment and Agreement as a material inducement to Lender to make Borrower(s) the above-referenced Loan secured by liens on the above-referenced Property.

Borrower(s) understands that the Property may be subject to mineral development rights, the exercise of which could result in a taking or damage to any or all of the Property. Borrower(s) further understands that the party desiring to exercise its mineral development rights may give notice of its intention to exercise such rights and may be liable to Borrower(s) for reimbursement of any taking or any damage to the Property resulting from its exercise of such mineral development rights.

Borrower(s) hereby agrees to immediately give written notice to Lender, (1) at the Lender's address as set forth in the Security Instrument securing the above-referenced Loan, or (2) at such other place as any noteholder of the note may direct Borrower(s) in writing, from time to time, of any action or proposed action to be taken in connection with the development of mineral rights in, on or around the Property. Borrower(s) further agrees that if there is (1) any taking or damage to the Property and (2) if any reimbursement or compensation is paid for such taking or damage, then such reimbursement or compensation shall be paid directly to the Lender, or noteholder if different from Lender, to reduce the principal balance of the note evidencing this Loan, and any and all charges accruing thereon including the interest, so long as the above-referenced Loan remains outstanding and unsatisfied.

Further, Borrower(s) agrees that Borrower(s) will not consent to or execute any documents to transfer, convey, assign, sell, or lease any mineral development rights on said Property to any person or entity during the term of this Loan.

Borrower(s) agrees to defend, indemnify and hold Lender, its successors or its assigns from any and all loss, damage or expense arising from or related to the Borrower(s) not giving Lender, its successors or its assigns, proper and timely notice of any exercise or threatened exercise of mineral development rights by any person or entity.

Borrower(s) hereby acknowledges that Borrower(s) have read this Agreement and fully understands its terms and implications and Borrower(s) is executing it the same day as the herein described note and Security Instrument, as a material inducement to Lender and noteholder to make this Loan on this Property.

Nothing herein is intended to conflict with any provision of the note or Security Instrument, but is to be an amplification thereof.

_Michele Lesha Xu_  6/2/2022
Borrower MICHELE LESHA XU          Date

_____       _____
Borrower                    Date   Borrower                    Date

_____       _____
Borrower                    Date   Borrower                    Date

_____       _____
Borrower                    Date   Borrower                    Date

MINERAL RIGHTS ACKNOWLEDGMENT AND AGREEMENT
MRAA.MSC  12/11/08                                              ☆DocMagic



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## BORROWER EMPLOYMENT, INCOME AND DEBT
## ATTESTATION

Borrower(s) should carefully review the following statements. Before initialing and signing, please review the referenced document to verify your statement(s) is true and accurate. If we/you are unable to attest to any of the four (4) statements below, please immediately contact your loan officer.

I/we attest the following statement to be true and accurate as of the date of the closing of loan and signing of this document:

1. I/We are not aware of anything that will affect my employment and my/our income is the same as what was disclosed on the Uniform Residential Loan Application.

Initial here: _MLX_____

2. My current financial obligations have not changed from what was disclosed on the Uniform Residential Loan Application.

Initial here: _MLX_____

3. I/We have not applied for and/or opened any new credit including additional installment debts, home equity lines, or mortgages from what is disclosed on the Uniform Residential Loan Application.

Initial here: _MLX_____

4. I/We have not missed, asked for forbearance, or been past due on any obligations or mortgages disclosed on the Uniform Residential Loan Application.

Initial here: _MLX_____

I/We attest the above statements to be true and accurate as of the date of this signing. I/we understand and agree any omission, intentional falsification or misrepresentation of the requested information may result in civil liability, including monetary damages, due to a party's reliance on the above four (4) statements.

_Michele Fisher_____          _____
Borrower Signature / Date                         Co-Borrower Signature / Date (if applicable)


_____          _____
Borrower Signature / Date                         Co-Borrower Signature / Date (if applicable)


This instrument was acknowledged before me on this ___3rd____ day of _June 2022____, 2020, by _Michelle Lesua Xu_____ (Borrower Name).

_Noel Casares_____
NOTARY PUBLIC



YOUR TRUE PARTNER
AmCap Mortgage, LTD (NMLS# 129122)
9999 Bellaire Boulevard, Suite 700, Houston, TX 77036
myamcap.com





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# NOTICE TO HOMEOWNER
## ASSUMPTION OF HUD/FHA INSURED MORTGAGES
### RELEASE OF PERSONAL LIABILITY

**FHA Case Number:** 512-4867978-703

**Loan Number:** 204546983

You are legally obligated to make the monthly payments required by your mortgage (deed of trust) and promissory note.

The Department of Housing and Urban Development (HUD) has acted to keep investors and non-creditworthy purchasers from acquiring one-to-four family residential properties covered by certain FHA-insured mortgages. There are minor exceptions to the restriction on investors: loans to public agencies and some non-profit organizations, Indian tribes or servicepersons; and loans under special mortgage insurance programs for property sold by HUD, rehabilitation loans or refinancing of insured mortgages. Your lender can advise you if you are included in one of these exceptions.

HUD will therefore direct the lender to accelerate this FHA-insured mortgage loan if all or part of the property is sold or transferred to a purchaser or recipient (1) who will not occupy the property as his or her principal residence, or (2) who does occupy the property but whose credit has not been approved in accordance with HUD requirements. This policy will apply except for certain sales or transfers where acceleration is prohibited by law.

When a loan is accelerated, the entire balance is declared "immediately due and payable." Since HUD will not approve the sale of the property covered by this mortgage to an investor or to a person whose credit has not been approved, you, the original homeowner, would remain liable for the mortgage debt even though the title to the property might have been transferred to the new buyer.

Even if you sell your home by letting an approved purchaser (that is, a creditworthy owner-occupant) assume your mortgage, you are still liable for the mortgage debt unless you obtain a release from liability from your mortgage lender. FHA-approved lenders have been instructed by HUD to prepare such a release when an original homeowner sells his or her property to a creditworthy purchaser who executes an agreement to assume and pay the mortgage debt and thereby agrees to become the substitute mortgagor. The release is contained in Form HUD-92210-1, ("Approval of Purchaser and Release of Seller"). You should ask for it if the mortgage lender does not provide it to you automatically when you sell your home to a creditworthy owner-occupant purchaser who executes an agreement to assume personal liability for the debt. When this form is executed, you are no longer liable for the mortgage debt.

You must sign and date this Notice as indicated, return one copy to your lender as proof of notification and keep one copy for your records.

_Michele Lesha Xu_    6/2/2022
Borrower MICHELE LESHA XU    /Date

**Instruction to Lender:** A Copy of this Notice must be given to the mortgagor(s) on or before the date of settlement. You should retain a signed copy in the origination file.

NOTICE TO HOMEOWNER
HUDASBLSR 02/13/20

✿DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# OCCUPANCY AFFIDAVIT AND FINANCIAL STATUS

Loan Number: 204546983

FHA/VA Case Number: 512-4867978-703

Date: June 2, 2022

Provided By: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU, XIAOFENG XU

Property Address: **17500 GHOST ROAD**
**SARATOGA, TEXAS 77585**

We the undersigned Borrower(s) of the above captioned property understand that one of the conditions of our loan is that we occupy the subject property and we do hereby certify as follows:

[X]    We will occupy the subject property upon close of Loan Modification.

        We now occupy the subject property, and do not intend to move in the near future.

[ ]

We the undersigned Borrower(s) also hereby certify that there have been no significant changes in our financial status; i.e., employer, income, available cash, etc., and that our loan application to FHA/V.A. or conventional lender reflects our current financial position.

We are aware of and understand that if we fail to move into the property by the specified time that we are subject to prosecution under Section 1010, Title 18, United States Code, Federal Housing Administration Transactions, and that we are liable to be fined not more than $5,000, or imprisoned not more than two years, or both. We are aware of and understand that other Federal Statutes provide severe penalties for any fraud or misrepresentation made for the purpose of influencing the issuance of any guaranty or insurance or the making of any loan by the Secretary of Veterans Affairs.

By signing below, I/we acknowledge that I/we have read and received a copy of this document.


_Michele Lesha Xu_  6/2/2022
Borrower MICHELE LESHA XU        Date

_(signature)_   6-2-2022
Borrower XIAOFENG XU             Date



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

State of _TEXAS_____

County of _HARDIN_____

Sworn to and subscribed before me on the _2ND_ day of ___June   2023_____ , by

_MICHELE LESHA XU AND XIAOFENG XU_____ (name of principal signer).

_____
Notary Public Signature

(SEAL)

☆ DocMagic



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

**INFORMED CONSUMER CHOICE DISCLOSURE NOTICE**

U.S. Department of
Housing and Urban Development
Office of Housing Federal Housing Commissioner

OMB Approval No. 2502-0059
(exp. 12/31/2023)

Lenders are not required to use this specific form when making this disclosure. This form is provided as an example of what should be included in this disclosure. Section 203(b)(2) of the National Housing Act requires a disclosure to assist borrowers in comparing the costs of a FHA-insured mortgage versus similar conventional mortgages. This disclosure must be given to prospective borrowers that may qualify for both FHA-insured financing and a conventional mortgage product. Public reporting burden for this disclosure is estimated to average 5 minutes per response including time for reviewing instructions, searching existing data sources, gathering and maintaining data needed and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless that collection displays a valid OMB control number.

In addition to an FHA-insured mortgage, you may also qualify for other mortgage products offered by your lender. To ensure that you are aware of available financing options, your lender has prepared a comparison of the typical costs of alternative conventional mortgage product(s), using representative loan amounts and costs. The loan amounts and associated costs shown below will vary from your own mortgage loan transaction. You should study the comparison carefully, ask questions, and determine which product is best for you. The information provided below was prepared as of June, 2022

Neither your lender nor FHA warrants that you actually qualify for any mortgage loan offered by your lender. This notice is provided to you to identify the key differences between these mortgage products. This disclosure is not a contract and does not constitute loan approval. Actual mortgage approval can only be made following a full underwriting analysis by your lender.

| Mortgage Parameters | FHA Financing 203( b) Fixed Rate | Conventional Financing 95% with Mortgage Insurance |
|---|---|---|
| 1. Sales Price | $100,000 | $100,000 |
| 2. Mortgage Amount | $96,500 - $98,188 w/ Upfront Mortgage Insurance Premium (UFMIP). | $95,000 |
| 3. Closing Costs | $2,000 | $2,000 |
| 4. Down payment Needed | $3,500 | $5,000 |
| 5. Interest Rate and Term of Loan in Years | 3.25%/30 Year Loan | 3.25%/30 Year Loan |
| 6. Monthly Payment (principal and interest only) | $427.32 | $413.25 |
| 7. Loan-to-Value (LTV) | 96.5% | 95% |
| 8. Monthly Mortgage Insurance Premium (MIP) | $67.73 | $75.20 |
| 9. Maximum Number of Years of Monthly MIP Payments | 30 years | Approximately 11 Years |
| 10. UFMIP | $1,688.00 (typically included in mortgage amount, line 2) | |

1. The monthly MIP is calculated on the average annual principal balance, i.e., as the amount you owe on the loan decreases each year, so does the amount of the monthly premium.
2. Based on an UFMIP rate of 1.75%, the total mortgage amount is $98,188.
3. Streamline refinances of FHA loans endorsed/insured by FHA prior to June 1, 2009 are subject to a reduced UFMIP of .01% and a reduced annual MIP of .55% ($44.22 monthly for a loan amount of $96,500).



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

## FHA MORTGAGE INSURANCE PREMIUM INFORMATION

In addition to an UFMIP, you may also be charged a monthly MIP. You will pay the monthly premium for either:

- the first 30 years of the mortgage term, or the end of the mortgage term, whichever occurs first, for any mortgage involving an original principal obligation (excluding financed UFMIP) with a LTV greater than 90 percent; or
- the first 11 years of the mortgage term, or the end of the mortgage term, whichever occurs first, if your mortgage had an original principal obligation (excluding financed UFMIP) with a LTV ratio of less than or equal to 90 percent.

Please acknowledge receipt of a copy of this disclosure by signing below.

_Michele Lesha Xu_     6-2-2022
Applicant   **MICHELE LESHA XU**        Date

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

| Form **4506-C** (September 2020) | Department of the Treasury - Internal Revenue Service<br>**IVES Request for Transcript of Tax Return** | OMB Number 1545-1872 |
|---|---|---|

➤ Do not sign this form unless all applicable lines have been completed.
➤ Request may be rejected if the form is incomplete or illegible.
➤ For more information about Form 4506-C, visit *www.irs.gov* and search IVES.

| 1a. | Name shown on tax return (if a joint return, enter the name shown first) **MICHELE LESHA XU** | 1b. | First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions)<br>**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** |
|---|---|---|---|
| 2a. | If a joint return, enter spouse's name shown on tax return | 2b. | Second social security number or individual taxpayer identification number if joint tax return |

| 3. | Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)<br>**MICHELE LESHA XU<br>4855 Lazy Timbers Dr, Humble, TX 77346** |
|---|---|
| 4. | Previous address shown on the last return filed if different from line 3 (see instructions) |

| 5a. | IVES participant name, address, and SOR mailbox ID<br>**AmCap Mortgage, Ltd C/O DataVerify, 250 E. Broad St, Suite 2100, Columbus, Ohio 43215, Phone: (866) 985-3282** |
|---|---|
| 5b. | Customer file number (if applicable) (see instructions)<br>**204546983** |

**Caution:** This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. (see instructions)

| 6. | Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request **1040** | |
|---|---|---|
| | a. | **Return Transcript**, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years | ☐ |
| | b. | **Account Transcript**, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns | ☐ |
| | c. | **Record of Account**, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years | ☒ |

| 7. | **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 | ☐ |
|---|---|---|

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

| 8. | Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions)<br>**12/31/2021      12/31/2020      12/31/2019      12/31/2018** |
|---|---|

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. In the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. **Note:** This form must be received by IRS within 120 days of the signature date.

☑ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| **Sign Here** | Signature (see instructions)<br>*Michele Lesha Xu* | Date<br>6-2-2022 | Phone number of taxpayer on line 1a or 2a<br>**(281) 409-4469** |
|---|---|---|---|
| | Print/Type name<br>**MICHELE LESHA XU** | | |
| | Title (if line 1a above is a corporation, partnership, estate, or trust) | | |
| | Spouse's signature | Date | |
| | Print/Type name | | |

Catalog Number 72627P
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

*www.irs.gov*
Page 1 of 2

Form **4506-C** (9-2020)

☆ DocMagic

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

## Future Developments

For the latest information about Form 4506-C and its instructions, go to *www.irs.gov* and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

**What's New.** Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

## General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

**Note:** If you are unsure of which type of transcript you need, check with the party requesting your tax information.

**Where to file.** The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

### Chart for ordering transcripts

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
|---|---|
| Austin Submission Processing Center | Austin IVES Team<br>844-249-6238 |
| Fresno Submission Processing Center | Fresno IVES Team<br>844-249-6239 |
| Kansas City Submission Processing Center | Kansas City IVES Team<br>844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team<br>844-249-8129 |

## Specific Instructions

**Line 1b.** Enter the social security number (SSN) or individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B, Change of Address or Responsible Party - Business, with Form 4506-C.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line is not required.

**Note.** If you use an SSN, name or combination of both, we will not input the information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

**Line 8.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

**Signature and date.** Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all *applicable lines, including lines 5a through 8*, are completed before signing.

CAUTION *You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.*

**Individuals.** Transcripts listed on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-C can be signed by:
(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

| | |
|---|---|
| Learning about the law or the form | 10 min. |
| Preparing the form | 12 min. |
| Copying, assembling, and sending the form to the IRS | 20 min. |

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see *Where to file* on this page.

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

| Form **4506-C** (September 2020) | Department of the Treasury - Internal Revenue Service **IVES Request for Transcript of Tax Return** | OMB Number 1545-1872 |
|---|---|---|

> ➤ Do not sign this form unless all applicable lines have been completed.
> ➤ Request may be rejected if the form is incomplete or illegible.
> ➤ For more information about Form 4506-C, visit *www.irs.gov* and search IVES.

| 1a. | Name shown on tax return *(if a joint return, enter the name shown first)* MICHELE LESHA XU | 1b. | First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) 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 |
|---|---|---|---|
| 2a. | If a joint return, enter spouse's name shown on tax return | 2b. | Second social security number or individual taxpayer identification number if joint tax return |

3. Current name, address (including apt, room, or suite no.), city, state, and ZIP code (see instructions)
**MICHELE LESHA XU**
**4855 Lazy Timbers Dr, Humble, TX 77346**

4. Previous address shown on the last return filed if different from line 3 (see instructions)

5a. IVES participant name, address, and SOR mailbox ID
**AmCap Mortgage, Ltd C/O DataVerify, 250 E. Broad St, Suite 2100, Columbus, Ohio 43215, Phone: (866) 985-3282**

5b. Customer file number (if applicable) (see instructions)
**204546983**

Caution: This tax transcript is being sent to the third party entered on Line 5a. Ensure that lines 5 through 8 are completed before signing. (see instructions)

6. Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and ☐ check the appropriate box below. Enter only one tax form number per request **1040**

| | | |
|---|---|---|
| a. | Return Transcript, which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120-A, Form 1120-H, Form 1120-L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years | ☐ |
| b. | Account Transcript, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns | ☐ |
| c. | Record of Account, which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years | ☐ |

7. Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript. The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2016, filed in 2017, will likely not be available from the IRS until 2018. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213 ☒

Caution: If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

8. Year or period requested. Enter the ending date of the tax year or period using the mm/dd/yyyy format (see instructions)
**12/31/2021    12/31/2020    12/31/2019    12/31/2018**

Caution: Do not sign this form unless all applicable lines have been completed.

Signature of taxpayer(s). I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, at least one spouse must sign. If signed by a corporate officer, 1 percent or more shareholder, partner, managing member, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-C on behalf of the taxpayer. Note: This form must be received by IRS within 120 days of the signature date.

☒ Signatory attests that he/she has read the attestation clause and upon so reading declares that he/she has the authority to sign the Form 4506-C. See instructions.

| Signature (see instructions) *Michele Lesha Xu* | Date 5/2/2022 | Phone number of taxpayer on line 1a or 2a **(281) 409-4469** |
|---|---|---|
| Print/Type name **MICHELE LESHA XU** | | |
| Title (if line 1a above is a corporation, partnership, estate, or trust) | | |

Sign Here

| Spouse's signature | | Date |
|---|---|---|
| Print/Type name | | |

Catalog Number 72627P
For Privacy Act and Paperwork Reduction Act Notice, see page 2.

*www.irs.gov*
Page 1 of 2

Form 4506-C (9-2020)
☆DocMagic





Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

## Instructions for Form 4506-C, IVES Request for Transcript of Tax Return

Section references are to the Internal Revenue Code unless otherwise noted.

### Future Developments

For the latest information about Form 4506-C and its instructions, go to www.irs.gov and search IVES. Information about any recent developments affecting Form 4506-C (such as legislation enacted after we released it) will be posted on that page.

**What's New.** Form 4506-C was created to be utilized by authorized IVES participants to order tax transcripts with the consent of the taxpayer.

### General Instructions

**Caution:** Do not sign this form unless all applicable lines have been completed.

**Designated Recipient Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information received pursuant to the taxpayer's consent and holds the recipient subject to penalties for any unauthorized access, other use, or redisclosure without the taxpayer's express permission or request.

**Taxpayer Notification.** Internal Revenue Code, Section 6103(c), limits disclosure and use of return information provided pursuant to your consent and holds the recipient subject to penalties, brought by private right of action, for any unauthorized access, other use, or redisclosure without your express permission or request.

**Purpose of form.** Use Form 4506-C to request tax return information through an authorized IVES participant. You will designate an IVES participant to receive the information on line 5a.

**Note:** If you are unsure of which type of transcript you need, check with the party requesting your tax information.

**Where to file.** The IVES participant will fax Form 4506-C with the approved IVES cover sheet to their assigned Service Center.

**Chart for ordering transcripts**

| If your assigned Service Center is: | Fax the requests with the approved coversheet to: |
|---|---|
| Austin Submission Processing Center | Austin IVES Team<br>844-249-8238 |
| Fresno Submission Processing Center | Fresno IVES Team<br>844-249-8239 |
| Kansas City Submission Processing Center | Kansas City IVES Team<br>844-249-8128 |
| Ogden Submission Processing Center | Ogden IVES Team<br>844-249-8129 |

### Specific Instructions

**Line 1b.** Enter the social security number (SSN) or Individual taxpayer identification number (ITIN) for the individual listed on line 1a, or enter the employer identification number (EIN) for the business listed on line 1a.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line.

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note:** If the addresses on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address, or Form 8822-B, Change of Address or Responsible Party - Business, with Form 4506-C.

**Line 5b.** Enter up to 10 numeric characters to create a unique customer file number that will appear on the transcript. The customer file number cannot contain an SSN, ITIN or EIN. Completion of this line 5b not required.

**Note.** If you use an SSN, name or combination of both, we will not input this information and the customer file number will reflect a generic entry of "9999999999" on the transcript.

**Line 8.** Enter the end date of the tax year or period requested in mm/dd/yyyy format. This may be a calendar year, fiscal year or quarter. Enter each quarter requested for quarterly returns. Example: Enter 12/31/2018 for a calendar year 2018 Form 1040 transcript.

**Signature and date.** Form 4506-C must be signed and dated by the taxpayer listed on line 1a or 2a. The IRS must receive Form 4506-C within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines, including lines 5a through 8, are completed before signing.

 **You must check the box in the signature area to acknowledge you have the authority to sign and request the information. The form will not be processed if unchecked.**

**Individuals.** Transcripts listed on line 6 may be furnished to either spouse if jointly filed. Only one signature is required. Sign Form 4506-C exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-C can be signed by:
(1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer. A bona fide shareholder of record owning 1 percent or more of the outstanding stock of the corporation may submit a Form 4506-C but must provide documentation to support the requester's right to receive the information.

**Partnerships.** Generally, Form 4506-C can be signed by any person who was a member of the partnership during any part of the tax period requested on line 8.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Note:** If you are Heir at law, Next of kin, or Beneficiary you must be able to establish a material interest in the estate or trust.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Signature by a representative.** A representative can sign Form 4506-C for a taxpayer only if the taxpayer has specifically delegated this authority to the representative on Form 2848, line 5. The representative must attach Form 2848 showing the delegation to sign Form 4506-C.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-C will vary depending on individual circumstances. The estimated average time is:

**Learning about the law or the form** . . . . . 10 min.
**Preparing the form** . . . . . . . . . . . . . . . . 12 min.
**Copying, assembling, and sending the form to the IRS** . . . . . . . . . . . . . . . 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-C simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Forms and Publications Division
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, see Where to file on this page.



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
## Identification Number and Certification

➤ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send it to the IRS.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
MICHELE LESHA XU

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☒ Individual/sole proprietor or single-member LLC    ☐ C Corporation    ☐ S Corporation    ☐ Partnership    ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C= C corporation, S= S corporation, P= Partnership) ➤

Note: Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ➤

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.) See instructions.
17500 GHOST ROAD

**6** City, state, and ZIP code
SARATOGA, TEXAS 77585

Requester's name and address (optional)
AMCAP MORTGAGE, LTD.
9999 BELLAIRE BOULEVARD, SUITE 700
HOUSTON, TX 77036

**7** List account number(s) here (optional)
204546983

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN*, later.

Note: If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number
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

or

Employer identification number

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

Sign Here    Signature of U.S. person ➤  Michelle Lesha X    Date ➤ 6/2/2022

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer

identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

• Form 1099-INT (interest earned or paid)
• Form 1099-DIV (dividends, including those from stocks or mutual funds)

Form W-9 (Rev. 10-2018)                Cat. No. 10231X                ☆DocMagic



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Form W-9 (Rev. 10-2018)                                                                                                                   Page 2

- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding, later.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting, later, for further information.

**Note:** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien;
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;
- An estate (other than a foreign estate); or
- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States.

- In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;
- In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and
- In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items.

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

**Backup Withholding**

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 24% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the instructions for Part II for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See Exempt payee code, later, and the separate Instructions for the Requester of Form W-9 for more information.

Also see Special rules for partnerships, earlier.

**What is FATCA Reporting?**

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA

Form W-9  (Rev. 10-2018)                                        Cat. No. 10231X                                        ✿DocMagic



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Form W-9 (Rev. 10-2018)

Page 3

reporting. See *Exemption from FATCA reporting code*, later, and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account (other than an account maintained by a foreign financial institution (FFI)), list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9. If you are providing Form W-9 to an FFI to document a joint account, each holder of the account that is a U.S. person must provide a Form W-9.

**a. Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note: ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

**b. Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

**c. Partnership, LLC that is not a single-member LLC, C corporation, or S corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

**d. Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

**e. Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a

foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

### Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

### Line 3

Check the appropriate box on line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box on line 3.

| IF the entity/person on line 1 is a(n) . . . | THEN check the box for . . . |
|---|---|
| • Corporation | Corporation |
| • Individual<br>• Sole proprietor, or<br>• Single-member limited liability company (LLC) owned by an individual and disregarded for U.S. federal tax purposes. | Individual/sole proprietor or single-member LLC |
| • LLC treated as a partnership for U.S. federal tax purposes,<br>• LLC that has filed Form 8832 or 2553 to be taxed as a corporation, or<br>• LLC that is disregarded as an entity separate from its owner but the owner is another LLC that is not disregarded for U.S. federal tax purposes. | Limited liability company and enter the appropriate tax classification. (P= Partnership; C= C corporation; or S= S corporation) |
| • Partnership | Partnership |
| • Trust/estate | Trust/estate |

### Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space on line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1 — An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2 — The United States or any of its agencies or instrumentalities

3 — A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4 — A foreign government or any of its political subdivisions, agencies, or instrumentalities

5 — A corporation

6 — A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7 — A futures commission merchant registered with the Commodity Futures Trading Commission

8 — A real estate investment trust

9 — An entity registered at all times during the tax year under the Investment Company Act of 1940

---

Form W-9  (Rev. 10-2018)

Cat. No. 10231X

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Form W-9 (Rev. 10-2018)                                                                                                     Page 4

10 - A common trust fund operated by a bank under section 584(a)

11 - A financial institution

12 - A middleman known in the investment community as a nominee or custodian

13 - A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for. . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt payees 1 through 5 [2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A – An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B – The United States or any of its agencies or instrumentalities

C – A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D – A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E – A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F – A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G – A real estate investment trust

H – A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I – A common trust fund as defined in section 584(a)

J – A bank as defined in section 581

K – A broker

L – A trust exempt from tax under section 664 or described in section 4947(a)(1)

M – A tax exempt trust under a section 403(b) plan or section 457(g) plan

Note: You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns. If this address differs from the one the requester already has on file, write NEW at the top. If a new address is provided, there is still a chance the old address will be used until the payor changes your address in their records.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS Individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN.

If you are a single-member LLC that is disregarded as an entity separate from its owner, enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

Note:  See What Name and Number To Give the Requester, later, for further clarification of name and TIN combinations.

How to get a TIN.  If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at www.SSA.gov.  You may also get this form by calling 1-800-772-1213.  Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN.  You can apply for an EIN online by accessing the IRS website at www.irs.gov/Businesses and clicking on Employer Identification Number (EIN) under Starting a Business. Go to www.irs.gov/Forms to view, download, or print Form W-7 and/or Form SS-4. Or, you can go to www.irs.gov/OrderForms to place an order and have Form W-7 and/or SS-4 mailed to you within 10 business days.

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note:  Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

Caution:  A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if item 1, 4, or 5 below indicates otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see Exempt payee code, earlier.

Signature requirements.  Complete the certification as indicated in items 1 through 5 below.

Form W-9 (Rev. 10-2018)                              Cat. No. 10231X                              ✩ DocMagic



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Form W-9 (Rev. 10-2018)

Page 5

1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983. You must give your correct TIN, but you do not have to sign the certification.

2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983. You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. Real estate transactions. You must sign the certification. You may cross out item 2 of the certification.

4. Other payments. You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), ABLE accounts (under section 529A), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions. You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) other than an account maintained by an FFI | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Two or more U.S. persons (joint account maintained by an FFI) | Each holder of the account |
| 4. Custodial account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 5. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 6. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 7. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i)(A)) | The grantor[4] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 8. Disregarded entity not owned by an individual | The owner |
| 9. A valid trust, estate, or pension trust | Legal entity[4] |
| 10. Corporate or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 11. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 12. Partnership or multi-member LLC | The partnership |
| 13. A broker or registered nominee | The broker or nominee |
| 14. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

| For this type of account: | Give name and EIN of: |
|---|---|
| 15. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i)(B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see Special rules for partnerships, earlier.

[5] Note: The grantor also must provide a Form W-9 to trustee of trust.

Note: If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records From Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,
• Ensure your employer is protecting your SSN, and
• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Pub. 5027, Identity Theft Information for Taxpayers.

Victims of identity theft who are experiencing economic harm or a systemic problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

Protect yourself from suspicious emails or phishing schemes. Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Form W-9 (Rev. 10-2018)                                                                                           Page 6

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at *spam@uce.gov* or report them at *www.ftc.gov/complaint*. You can contact the FTC at *www.ftc.gov/idtheft* or 877-IDTHEFT (877-438-4338). If you have been the victim of identity theft, see *www.IdentityTheft.gov* and Pub. 5027.

Visit *www.irs.gov/IdentityTheft* to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

Form W-9  (Rev. 10-2018)                              Cat. No. 10231X                              ☆ DocMagic






Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# LOAN AGREEMENT ADDENDUM

THIS LOAN AGREEMENT ADDENDUM is made this    2nd    day of            June 2022                , and
is incorporated by and into and shall be deemed to amend and supplement any and all documents constituting the "Loan
Agreement" as defined by Section 26.02 of the Texas Business & Commerce Code by and between
MICHELE LESHA XU

("Borrower") and

AMCAP MORTGAGE, LTD., A TEXAS LIMITED PARTNERSHIP

("Lender")
of the same date and covering the property located at:  17500 GHOST ROAD, SARATOGA, TEXAS 77585

In addition to the covenants made in the Loan Agreement, Borrower and Lender further covenant and agree as follows:

1.  The rights and obligations of Borrower and Lender shall be determined solely from the written Loan Agreement and
    any prior oral agreements between Lender and Borrower are superseded by and merged into the Loan Agreement.

2.  The Loan Agreement may not be varied by any oral agreements or discussions that occur before, contemporaneously
    with, or subsequent to the execution of the Loan Agreement.

3.  A Loan Agreement in which the amount involved in the Loan Agreement exceeds $50,000 in value is not enforceable
    unless the agreement is in writing and signed by the Borrower of the agreement or the Borrower's authorized agent.

4.  The following Notice is provided pursuant to Section 26.02 of the Texas Business & Commerce Code:

    THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES
    AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT
    ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN
    THE PARTIES.

LENDER:   AMCAP MORTGAGE, LTD.

By: _____

Its: _____

_Michile Lesha Xu_ _____    6/2/2022
Borrower MICHELE LESHA XU            Date

TEXAS LOAN AGREEMENT ADDENDUM                                                    ☆DocMagic
TEX. BUS. & COM. CODE § 26.02
TXLAAMSC  07/14/20



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# MORTGAGE BANKER DISCLOSURE
# REGARDING LOAN SERVICING

**Mortgage Banker:** AMCAP MORTGAGE, LTD.

**NMLS ID:**

**COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.**

_Applicant_ MICHELE LESHA XU          6/2/2022  _Date_

_____     _____
Mortgage Banker Signature          Date

CHAD STEPHAN
Print Name

TEXAS MORTGAGE BANKER DISCLOSURE REGARDING LOAN SERVICING
Tex. Fin. Code Ann. § 157.0021(b)
TXMBDRLS.MSC  09/12/19

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MORTGAGOR'S AFFIDAVIT

STATE OF TEXAS        )    **DATE:** June 2, 2022
                    ) SS:
COUNTY OF   HARDIN      )    LOAN NUMBER: 204546983

MORTGAGORS: MICHELE LESHA XU

**17500 GHOST ROAD, SARATOGA, TEXAS 77585**

(Property Address)

The following certification is made by the undersigned Mortgagors as an inducement to:
AMCAP MORTGAGE, LTD.
to make a mortgage loan, and as an inducement to the Federal Housing Administration to insure said loan; or the Department of Veterans Affairs to guarantee said loan; or a Private Mortgage Insurance Company to insure said loan; as the case may pertain.

I/WE HEREBY CERTIFY:

1. That the total purchase price for the subject property is $340,000.00 .

2. The required downpayment, settlement costs, and prepaid expenses as required to legally settle this purchase transaction were paid by me/us.

3. That no portion of the downpayment, closing costs, and prepaid expenses were borrowed from any source; and that I/we did not incur any debts in this transaction except the subject mortgage and no additional agreements or kickbacks with the seller or agent have been made that have not been disclosed.

4. That I/we ☐ presently occupy, ☒ intend to occupy, ☐ do not intend to occupy the subject property.

5. That I/we represent that I/we have inspected the property and accept same.

6. That I/we are not now considering any proposals to sell the subject property to third persons.

7. That I/we are currently employed as reported on my/our application; have not received any notice of a layoff or have knowledge of a pending layoff; my/our outstanding obligations are substantially the same as reported on application; and do not foresee any circumstances in the immediate future that would impair my/our ability to make the monthly mortgage payments on this loan.

8. That I/we have been accorded the opportunity to choose the carrier and the agent of the required mortgage title insurance, hazard insurance and private mortgage insurance subject to approval by the Mortgagee, which approval has not been unreasonably withheld.

9. That I/we have been advised of our rights under the Equal Credit Opportunity Act, and the Real Estate Settlement Procedures Act.

10. That, as of this date, my/our marital status as reported on my/our application has not changed.

11. I/We fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly make false statements concerning any facts stated in the loan application under the provisions of Title 18, United States Code, Section 1014.

**SEE "SIGNATURE ADDENDUM" ATTACHED HERETO, AND MADE A PART HEREOF.**



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## SIGNATURE ADDENDUM

_Michele Lesha Xu_  6/2/2022
MICHELE LESHA XU          Date

State of TEXAS

County of **HARDIN**

Before me, _Noel Casares_ _____, on this day personally appeared

MICHELE LESHA XU

_____

_____,

known to me (or proved to me on the oath of _____

or through _____)
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __2ND__ day of __June 2022__.

_Noel Casares_
(Notary Public Signature)

*(Notary seal:)*
NOEL CASARES
NOTARY PUBLIC
STATE OF TEXAS
ID: 3633786
EXP. 03-11-2024

TEXAS MORTGAGOR'S AFFIDAVIT
TXMACST  05/08/20                         Page 2 of 2                    ☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# NOTICE OF PENALTIES FOR MAKING FALSE OR MISLEADING STATEMENT

Date:     June 2, 2022

Provided By:   AMCAP MORTGAGE, LTD.

Borrower(s):   MICHELE LESHA XU

Property Address:     17500 GHOST ROAD
                      SARATOGA, TEXAS 77585

**WARNING:** Intentionally or knowingly making a materially false  or misleading written statement to obtain property or credit, including a mortgage loan, is a violation of Section 32.32, of the Texas Penal Code, and, depending on the amount of the loan or value of the property, is punishable by imprisonment for a term  of 2 years to 99 years and a fine not to exceed $10,000.

I/We, the undersigned home loan applicant(s), represent that I/we have received, read, and understand this notice of penalties for making a materially false or misleading written statement to obtain a home loan.

I/We represent that all statements and representations contained in my/our written home loan application, including statements or representations regarding **my/our identity, employment, annual income, and intent to occupy the residential real property** secured by the home loan, are true and correct as of the date of loan closing.



Applicant   MICHELE LESHA XU                     Date

☆ DocMagic



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

[Space Below This Line For Acknowledgment]

The State of __TEXAS__ ,

County of __HARDIN__ ,

Before me, ___Noel Casares___ ,
(here insert the name and character of the notarizing officer)

on this day personally appeared __MICHELE LESHA XU__

known to me (or proved to me on the oath of ___Notary Public___

or through ___Texas Drivers License #25294330___ )
(description of identity card or other document)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __2nd__ day of ___June    2022___ .

(SEAL)

___Noel Casares___
(Notary Public Signature)

Loan Originator: CHAD STEPHAN, NMLSR ID 1670704
Loan Originator Organization: AMCAP MORTGAGE, LTD., NMLSR ID 129122

TEXAS NOTICE OF PENALTIES FOR MAKING FALSE OR MISLEADING STATEMENT          ☆DocMagic
TX Finance Code 343.105
TX FINANCE CODE S 343.105                    Page 2 of 2
TXNOP.MSC  10/30/18



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

## DESIGNATION OF HOMESTEAD AFFIDAVIT

**AFFIANT, AFTER BEING DULY SWORN, HEREBY DEPOSES AND SAYS:**

1. Affiant has personal, first-hand knowledge of the facts stated herein and is competent to provide testimony thereto.

2. Affiant makes the following declarations under Section 41.005 of the Texas Property Code and Article 16, Section 50 of the Texas Constitution. Affiant executes this document to set apart and designate Property as a Homestead. The Property described in this Affidavit is the Homestead of Affiant's family or is the Homestead of a single adult person not otherwise entitled to claim a Homestead. The Property is entitled to exemption from forced sale under the Texas Constitution and other laws of the State of Texas.

3. Affiant is familiar with the following provisions of Texas Law:
   (a) If a rural Homestead of a family is part of one or more parcels containing a total of more than 200 acres, the head of the family and, if married, that person's spouse may voluntarily designate not more than 200 acres of the Property as the Homestead. If a rural Homestead of a single adult person, not otherwise entitled to a Homestead, is part of one or more parcels containing a total of more than 100 acres, the person may voluntarily designate not more than 100 acres of the Property as the Homestead.
   (b) If an urban Homestead of a family, or an urban Homestead of a single adult person not otherwise entitled to a Homestead, is part of one or more contiguous lots containing a total of more than 10 acres, the head of the family and, if married, that person's spouse or the single adult person, as applicable, may voluntarily designate not more than 10 acres of the Property as the Homestead.

4. The Affiant states that he/she owns the Homestead Property, which is more particularly described as:
   SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
   A.P.N.: 000340-000100

5. The Property is improved with a dwelling house, is amply sufficient as a residence Homestead, and the fee simple title to such Property is vested in the Affiant. The Affiant intends to continually reside upon, use and claim such Property as the only Homestead of the hereafter, and the undersigned does not intend to abandon the Property as a Homestead.

6. Affiant is also the current record titleholder of the Property. The full and complete name of Affiant, the current record titleholder, is as follows:
   MICHELE LESHA XU, XIAOFENG XU
   17500 GHOST ROAD, SARATOGA, TEXAS 77585

---

☆ DocMagic





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

7.  **CHECK IF APPLICABLE:**

☐  Affiant asserts that the Property is listed as his/her residence Homestead on the most recent appraisal roll for the appraisal district established for the County in which the Property is located. Property on which a person receives an exemption from taxation under the Tax Code is considered to have been designated as the person's Homestead if the Property is listed as the person's residence Homestead on the most recent appraisal roll for the appraisal District established for the County in which the Property is located.

8.  **CHECK IF APPLICABLE:**

☐  The Homestead is a rural Homestead. Affiant designates            acres of the rural Homestead as Homestead Property. If there is more than one survey in the rural Homestead, Affiant designates below the number of acres in each survey as Homestead Property:

9.  **CHECK IF APPLICABLE:**

☐  The Homestead is an urban Homestead. The Homestead is part of one or more contiguous lots containing a total of more than 10 acres. It is the urban Homestead of a family, or an urban Homestead of a single adult person not otherwise entitled to a Homestead. Affiant designates            acres of the Property as Homestead.

Further Affiant sayeth not.

_____
Owner   MICHELE LESHA XU

_____
Owner   XIAOFENG XU

_____
Owner

_____
Owner



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

State of __TEXAS__

County of __HARDIN__

Sworn to and subscribed before me on the ___2ND___ day of ___June 2023___ , by

__MICHELE LESHA XU AND XIAOFENG XU__ (name of principal signer).

_____
Notary Public Signature

(SEAL)



TEXAS DESIGNATION OF HOMESTEAD AFFIDAVIT
TX CONSTITUTION, ARTICLE XVI, 50
TX PROPERTY CODE 41.005
TX CONSTITUTION, ARTICLE XVI, 50 TX PROPERTY CODE 41.005
TXDOHA2.MSC  10/29/18
Page 3 of 3

✱ DocMagic



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# TEXAS COLLATERAL PROTECTION INSURANCE NOTICE

Loan Number: 204546983

Date:   June 2, 2022

Lender:  AMCAP MORTGAGE, LTD.

Borrower(s):  MICHELE LESHA XU

Property Address: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

You, the above-named Borrower(s), have entered into a credit transaction with the above-named Lender ("we", "us" and "our") for which a credit agreement exists; the credit agreement requires you to maintain insurance on the collateral securing repayment of your obligation.

You are required to:

(i)     keep the collateral insured against damage in the amount we specify;
(ii)    purchase the insurance from an insurer that is authorized to do business in this state or an eligible surplus lines insurer; and
(iii)   name us as the person to be paid under the policy in the event of a loss.

If you fail to meet any requirement listed above, or if we require you to deliver to us a copy of the policy and proof of payment of premiums and you fail to do so, we may, but are not required to, obtain collateral protection insurance on your behalf and at your expense.

"Collateral protection insurance" is insurance coverage that: (1) is purchased by a creditor after the date of a credit agreement; (2) provides monetary protection against loss of or damage to the collateral or against liability arising out of the ownership or use of the collateral; and (3) is purchased according to the terms of a credit agreement as a result of a debtor's failure to provide evidence of insurance or failure to obtain or maintain insurance covering the collateral, with the costs of the collateral protection insurance, including interest and any other charges incurred by the creditor in connection with the placement of collateral protection insurance, payable by a debtor.  Collateral protection insurance includes insurance coverage that is purchased to protect only the interest of the creditor, or both the interest of the creditor and some or all of the interest of a debtor.

By signing below, you acknowledge that you have read and understand the contents of this notice.


Michele Xu                               6-2-2022
Borrower MICHELE LESHA XU          Date


TEXAS COLLATERAL PROTECTION INSURANCE NOTICE
TEX. FIN. CODE § 307.052
TXCPIN.MSC  01/15/20                                          ☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# SIGNATURE AFFIDAVIT AND AKA STATEMENT

## SIGNATURE AFFIDAVIT

I, MICHELE LESHA XU
certify that this is my true and correct signature:

MICHELE LESHA XU
Borrower

Signature

## AKA STATEMENT

I, MICHELE LESHA XU
further certify that I am also known as:

MICHELE SPILLMAN
Name Variation (Print)

MICHELE L SPILLMAN
Name Variation (Print)

MICHELE LESHA SPILLMAN
Name Variation (Print)

MICHELLE L SPILLMAN
Name Variation (Print)

MICHELLE TURNER
Name Variation (Print)

Name Variation (Print)

Name Variation (Print)

SIGNATURE AFFIDAVIT AND AKA STATEMENT
SAAKAS.MSC  03/24/20

Page 2 of 3

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# SIGNATURE AFFIDAVIT AND AKA STATEMENT

## SIGNATURE AFFIDAVIT

I, MICHELE LESHA XU
certify that this is my true and correct signature:

MICHELE LESHA XU
Borrower


Signature

## AKA STATEMENT

I, MICHELE LESHA XU
further certify that I am also known as:

MICHELE L XU
Name Variation (Print)

MICHELE XU
Name Variation (Print)

M L XU
Name Variation (Print)

M XU
Name Variation (Print)

MADASIA L PATTERSON
Name Variation (Print)

MICHELE PATTERSON
Name Variation (Print)

MICHELLE S PATTERSON
Name Variation (Print)

SIGNATURE AFFIDAVIT AND AKA STATEMENT
SAAKAS.MSC  03/24/20

Page 1 of 3

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

State of ___TEXAS_____

County of ___HARDIN_____

Sworn to and subscribed before me on the __2 nd___ day of ____Jun 2022_____ , by

MICHELE LESHA XU _____ (name of principal signer).

(SEAL)

_____
Notary Public Signature

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# SIGNATURE AFFIDAVIT AND AKA STATEMENT

## SIGNATURE AFFIDAVIT

I, XIAOFENG XU
certify that this is my true and correct signature:

XIAOFENG XU
Borrower

Signature

## AKA STATEMENT

I, XIAOFENG XU
further certify that I am also known as:

XU XIAO FENG
Name Variation (Print)

XIAO FENGXU
Name Variation (Print)

X XU
Name Variation (Print)

SIAO FENG XUX
Name Variation (Print)

XIAO FENG XU
Name Variation (Print)

Name Variation (Print)

Name Variation (Print)

SIGNATURE AFFIDAVIT AND AKA STATEMENT
SAAKAS.MSC  03/24/20
☆DocMagic

Page 1 of 2



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

State of __TEXAS__

County of __HARDIN__

Sworn to and subscribed before me on the __2ᵒᵈ__ day of __June 2022__ , by

__XIAOFENG XU__ _____ (name of principal signer).

(SEAL)

_____
Notary Public Signature



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

## PROGRAM INTEGRITY BULLETIN
# AVOID LOAN FRAUD

The Department of Housing and Urban Development (HUD) insures mortgage loans made by mortgage companies and other lenders. If the homebuyer defaults on the mortgage, HUD pays the mortgage holder the amount that is still due on the loan and takes possession of the property.

Many defaults occur because homebuyers provide, either on their own or with the assistance of others, false information to HUD regarding their ability to make the monthly payment. Providing false application data can lead to loss of your home, an adverse credit rating, and even criminal prosecution by the government.

## REPORTING ABUSE

If you are aware of any fraud in HUD programs or if an individual tries to persuade you to make false statements on a loan application, Do:

- report the matter by calling your nearest HUD office or the HUD Regional Inspector General, or call the HUD Hotline on (202) 472-4200. The following are some of the situations you should avoid or report when applying for a mortgage loan.

## CREDIT INFORMATION

You are required to provide complete and accurate information when applying for a mortgage loan. The information you provide is relied on by the lender and HUD in judging whether you are an acceptable credit risk. Do Not:

- overstate your income;
- fail to list all debts and the amounts you owe;
- make up or inflate assets.

## DOWN PAYMENT

In order to qualify for a loan, you must have enough cash to pay the down payment and other expenses at the time of closing. You are not allowed to borrow funds for the down payment and closing expenses using the property as collateral. If you borrow these funds, this debt must be revealed when applying for the loan. Do Not:

- borrow the down payment funds without disclosing the loan;
- provide false letters-of-credit, cash-on-hand statements, gift letters or sweat equity letters;
- accept down payment funds from a real estate agent or broker, seller, mortgagee, or other party involved with the sale of the property.

## OCCUPANCY

A common scheme used by some applicants to obtain investment property is to falsify their intent to occupy the property. Do Not:

- falsely certify that a property will be used for your residence, when you actually are going to use it as an investment or rental property.

## "STRAWBUYERS"

Under this scheme, you could be approached by someone who offers you money to "act" as a homebuyer and apply for a loan on a certain property. This individual or another then obtains title to the property after closing. Not only is this illegal, because it is a conspiracy to defraud the government, but it is also risky for you because if that person does not make the mortgage payments, you will be responsible for any HUD loss and your credit record will be affected. Do Not:

- act as a strawbuyer for another individual or company;
- give such individuals personal or credit information for them to use in any such scheme;
- apply for a loan by assuming the identity of another person.

## PENALTIES

Federal statutes provide severe penalties for fraud, intentional misrepresentation, or conspiracy to influence the issuance of mortgage insurance by HUD. Providing false information on the loan application regarding your income, assets, liabilities or intent to occupy the property, or conspiring with others, can subject you to a possible prison term and/or a fine of up to $10,000. Additionally, you could be prohibited from obtaining HUD-insured loan for an indefinite period.

☆ DocMagic



Page 1 of 2



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## ADDITIONAL INFORMATION

    Buying and maintaining a home can be a complicated process. There are, however, several good publications available at your local HUD office that provide free but valuable information to the homebuyer.

    A publication on equity skimming contains advice of caution which is particularly appropriate for homeowners who get into financial difficulty. This publication warns homeowners about various methods which unscrupulous investors have used to take advantage of homeowners under the pretense of offering to help them out of their financial difficulty.


Michele Lesha X _____ 6/2/2022

Borrower **MICHELE LESHA XU**               /Date



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# QUALITY CONTROL RELEASE
# AND AUTHORIZATION TO RE-VERIFY

Loan Number: 204546983

Case Number: 512-4867978-703

Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU

Property Address: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

We, the undersigned borrowers, understand that our mortgage application may be selected by the Lender and/or its assigns or its agents for a quality control review. This review is designed to produce and maintain quality service for our borrowers and to comply with agency and investor guidelines. The quality control review will involve verification of all credit information (including employment history, income, bank accounts, and credit references) as well as the property valuation.

We agree to cooperate with the Lender and/or its assigns or its agents to the extent necessary to accomplish this review. It is understood that the information may be verified with third parties such as our employers, depository institutions or a credit reporting agency.

We therefore have signed below authorizing the release of employment and/or financial information to assist in the quality control review process.



Borrower MICHELE LESHA XU                           / Date

QUALITY CONTROL RELEASE AND AUTHORIZATION TO RE-VERIFY
HUD Handbook 4000.1 V.A3.c.ii.
QCRLSR 04/16/21                                                                    ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# LIMITED POWER OF ATTORNEY FOR CORRECTING TYPOGRAPHICAL ERRORS

The undersigned Purchaser/Borrower and/or Seller, for and in consideration of closing the loan/transaction on property described as    17500 GHOST ROAD, SARATOGA, TEXAS 77585

*(property address)*

appoint    AMCAP MORTGAGE, LTD.
as their attorney-in-fact to correct any TYPOGRAPHICAL ERRORS, place our initials on documents where changes are made and/or sign our names to and acknowledge any modification or other documents correcting the typographical error.  In the event this procedure is utilized, the party(ies) involved shall receive a corrected copy of the changed document.

This power of attorney shall be irrevocable until the loan is satisfied and shall survive the disability of the undersigned.

AS WITNESS our execution hereof this    2nd    day of    June, 2022

PURCHASER/BORROWER:

_Michele Leshe Xu_ 6/2/2022
Borrower MICHELE LESHA XU        Date

_Xiaofeng Xu_ 6/2/2022
Borrower XIAOFENG XU        Date

Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

State of TEXAS

County of HARDIN

Sworn to and subscribed before me on the ___2nd___ day of ___June___ 2022 , by

MICHELE LESHA XU AND XIAOFENG XU _____ (name of principal signer).

_____
Notary Public Signature

(SEAL)

LIMITED POWER OF ATTORNEY FOR CORRECTING TYPOGRAPHICAL ERRORS
LPOA3.MSC  10/26/18                    Page 2 of 2                    ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# MAILING ADDRESS CERTIFICATION

**RE: Loan Number:** 204546983

**Property Address:** 17500 GHOST ROAD, SARATOGA, TEXAS 77585

Please be advised that you are hereby instructed in accordance with the terms of the Note, to address all correspondence to me/us regarding my/our loan with you to the following address.

**(PLEASE CHECK AND COMPLETE ONE ONLY!!)**

☐ The property address shown above. If the property shown above consists of more than one unit, the specific address is:

_____

_____

_____

☐ OTHER THAN PROPERTY ADDRESS

_____

_____

_____

I/We will notify the Lender in writing should the above mailing address be changed at any time in the future.

_____ 6/2/2022
Borrower MICHELE LESHA XU    Date

Borrower _____ Date    Borrower _____ Date

Borrower _____ Date    Borrower _____ Date

MAILING ADDRESS CERTIFICATION
MAC.LSR  08/19/13                      ☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# LIMITED POWER OF ATTORNEY

THE UNDERSIGNED hereby appoints  AMCAP MORTGAGE, LTD.

and its successor and/or assigns, as my/our true and lawful Attorney-in-Fact, with power of substitution and revocations, to apply for a certificate of title or duplicate certificate of title to or record a lien and register and/or to transfer or assign the title to any person the below ("Collateral") along with the following actions as though executed by me/us:

(1)  To execute in my/our behalf as my/our Attorney-in-Fact whatever documents are necessary to effectuate the sale of the Collateral in the event of a default by me/us under my/our Manufactured Home Installment Note, Security Agreement and Disclosure Statement, as applicable (the "Contract") which results in a repossession and sale of the Collateral securing the Contract, subject to the terms of the Contract and applicable state law governing disposition of the Collateral; or

(2)  For said purpose(s) to sign my/our name(s) and to do all things necessary to appoint, and to transfer or assign title to any property taken in trade or consideration for the purchase of the below described Collateral.

(3)  Re-title the Collateral to correct any errors or to ensure the proper perfection of a security interest in the Collateral.

This limited power of Attorney ("POA") shall be durable and not be affected by subsequent disability or incapacity of the principal, or by the lapse of time.  This POA shall not be construed as a waiver of my/our rights under the Contract or applicable state law governing the Contract and the sale of Collateral.

Description of Collateral:

Manufacturer:  CMH MANUFACTURING INC
Model:  98TU28765AH22
Year:    2022
Length/Width:  '76' FT X '28' FT (L X W)
Serial Number:  BL2007797TXAB


Borrower MICHELE LESHA XU          Date

Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

——————————————— [Space Below This Line For Acknowledgment] ———————————————

The State of __TEXAS_____ ,

County of __HARDIN_____ ,

Before me, _____ ,
                              (here insert the name and character of the notarizing officer)

on this day personally appeared __MICHELE LESHA XU_____

_____

_____

known to me (or proved to me on the oath of _____

or through ___T X   D r i v e r s   l i c e n s e   # 2 8 2 9 4 3 3 0_____ )
                              (description of identity card or other document)

to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __2nd__ day of __June    2022_____

(Notary seal: NOEL CASARES, NOTARY PUBLIC, STATE OF TEXAS, ID 3833786, EXP. 03-11-2024)

_____
(Notary Public Signature)

(SEAL)

Loan Originator: CHAD STEPHAN, NMLSR ID 1670704
Loan Originator Organization: AMCAP MORTGAGE, LTD., NMLSR ID 129122

MANUFACTURED HOUSING LIMITED POWER OF ATTORNEY                              ☆DocMagic
MFHLPOA.MSC 04/20/21
                              Page 2 of 2



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# NON-APPLICANT AFFIDAVIT

Loan Number:   204546983

Lender:   AMCAP MORTGAGE, LTD.

Property:   17500 GHOST ROAD
SARATOGA, TEXAS 77585

The undersigned hereby acknowledges, understands and affirms that with regard to any loan (and loan-related) documentation that Lender requires the undersigned to sign in connection with, or relating to, the above-referenced loan, the undersigned, as a non-applicant, will sign as "Borrower" solely for the purpose of pledging any and all interest of the undersigned in the collateral securing the loan, without personal obligation for payment of any sums secured by the Security Instrument.

Dated:   6-2- 2022

Borrower, as Non-Applicant
XIAOFENG XU

STATE OF  TEXAS                              )
                                             ) ss:
COUNTY OF  HARDIN                            )

On  June 2, 2022 before me, _____

personally appeared  XIAOFENG XU  _____

_____

_____

known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



Notary Public

(Seal)

NON-APPLICANT AFFIDAVIT
NASAFF.MSC  07/09/18                                                    ☆DocMagic





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# NOTICE CONCERNING THE FURNISHING OF NEGATIVE INFORMATION TO CONSUMER REPORTING AGENCY

Lender: AMCAP MORTGAGE, LTD.

Borrower: MICHELE LESHA XU

Property Address: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

---

**WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS.**

**LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.**

---

By signing below, the undersigned hereby acknowledge(s) receipt of a copy of this disclosure.



Borrower MICHELE LESHA XU      6/2/2022   Date

NOTICE CONCERNING THE FURNISHING OF
NEGATIVE INFORMATION TO CONSUMER REPORTING AGENCY
FCRA § 623(a)(7); 15 U.S.C. 1681s-2(a)(7); 12 CFR 1022 Appendix B Model Notice B-1
NCFNI.MSC 10/24/19

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# NOTICE OF SERVICING TRANSFER

Loan Number: 204546983

Date: **June 2, 2022**

Lender: **AMCAP MORTGAGE, LTD.**

Borrower(s): **MICHELE LESHA XU**

Property Address: **17500 GHOST ROAD
SARATOGA, TEXAS 77585**

The servicing of your mortgage loan is being transferred, effective **December 1, 2022**
This means that after this date, a new servicer will be collecting your mortgage loan payments from you. Nothing else about your mortgage loan will change.

**AMCAP MORTGAGE, LTD.**
is now collecting your payments. **AMCAP MORTGAGE, LTD.**
will stop accepting payments received from you after **December 1, 2022**

will collect your payments going forward. Your new servicer will start accepting payments received from you on **December 1, 2022**

SEND ALL PAYMENTS DUE ON OR AFTER **December 1, 2022**                                  **TO**

AT THIS ADDRESS:

If you have any questions for either your present servicer, **AMCAP MORTGAGE, LTD.**
                                                                                                              or your new servicer

about your mortgage loan or this transfer, please contact them using the information below:

Current Servicer:                                                   New Servicer:
**AMCAP MORTGAGE, LTD.
(844) 692-6227
9999 BELLAIRE BOULEVARD, SUITE 700
HOUSTON, TEXAS 77036**

Under federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

**AMCAP MORTGAGE, LTD.**
_____                _____
Name of Present Servicer                                                  Date


_____                _____
Name of New Servicer                                                        Date

NOTICE OF SERVICING TRANSFER                                                                                    ☆DocMagic
12 CFR 1024.33(b), Appendix MS-2
NOST.MSC  12/15/14



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# HOME OWNERSHIP AND EQUITY PROTECTION ACT OF 1994
## NOTICE TO ASSIGNEE
### (REQUIRED UNDER SECTION 32 OF REGULATION Z, 12 CFR 1026.32)

Loan Number: 204546983

Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU, XIAOFENG XU

Property Address: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

Loan Amount: 333,841.00

Assignee:

---

## NOTICE

THIS IS A MORTGAGE SUBJECT TO SPECIAL RULES UNDER THE FEDERAL TRUTH-IN-LENDING ACT. PURCHASERS OR ASSIGNEES OF THIS MORTGAGE COULD BE LIABLE FOR ALL CLAIMS AND DEFENSES WITH RESPECT TO THE MORTGAGE THAT THE BORROWER COULD ASSERT AGAINST THE CREDITOR.

---

NOTICE TO ASSIGNEE
12 CFR 1026.32; 12 CFR 1026.34(a)(2)
NTA.MSC 12/30/11

☆ DocMagic





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# IMPOUND AUTHORIZATION
# AND FIRST PAYMENT NOTIFICATION

Loan Number: 204546983                    Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU

Property Address: 17500 GHOST ROAD
SARATOGA, TEXAS 77585

Loan Amount: $333,841.00

We are fully aware of our obligation to the above lender as evidenced by a Note, secured by a Security Instrument on real property commonly known by the above address, and executed on the above date.

We understand that:

CHECK BOX IF APPLICABLE

[X]  Regulations require the lender to establish an impound account for taxes, insurance premiums, assessments, or other items relating to the property.

[X]  The lender requires, as a condition of the loan being made to us, an impound account for taxes, insurance premiums, assessments, or other items relating to the property.

[ ]  An impound account is not required by the lender as a condition of the loan being made to us. We want the lender to establish an impound account for taxes, insurance premiums, assessments, or other items relating to the property.

[ ]  An impound account is not required by the lender. We do not want the lender to establish an impound account. We agree to make timely payments to the appropriate agents when bills for taxes, insurance premiums, or other items relating to the property become due.

We authorize the lender to collect monthly impounds, if applicable, in the manner detailed below to pay for taxes, insurance premiums, assessments, or other items relating to the property on our behalf. We understand that funds so impounded are subject to all provisions of the Note and Security Instrument securing this loan. Our failure to pay these monthly impounds constitutes a default under the obligation to the lender as evidenced by said Note and Security Instrument. We understand this authorization is being executed under the provisions of the Laws within the State of   TEXAS                    , as amended.

We are fully aware that the First Monthly Payment on the Note is due and payable on   December 1, 2022 and must be paid within the grace period as set forth in the note to avoid a late charge.

We understand the monthly payment consists of the following:

| | |
|---|---|
| PRINCIPAL AND INTEREST | 1,817.72 |
| MORTGAGE INSURANCE | 230.86 |
| HAZARD INSURANCE | 90.00 |
| COUNTY PROPERTY TAX | 12.96 |

| | |
|---|---|
| TOTAL PAYMENT | 2,151.58 |

The amount of each monthly impound to be collected is determined by the lender. The amounts are subject to adjustment from time to time. We agree to pay these modified impounded amounts along with each monthly payment of principal and interest.

_Michele Lesha Xu_        6-2-2022
MICHELE LESHA XU                Date

☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT

Disclosure Date:  06/02/2022

Borrower Name(s) and Address:
MICHELE LESHA XU
17500 GHOST ROAD
SARATOGA, TX 77585

Servicer's Name, Address, and Toll-Free Number:
AMCAP MORTGAGE, LTD.
9999 BELLAIRE BOULEVARD, SUITE 700
HOUSTON, TEXAS 77036
(844) 692-6227

THIS IS AN ESTIMATE OF ACTIVITY IN YOUR ESCROW ACCOUNT DURING THE COMING YEAR BASED ON PAYMENTS ANTICIPATED TO BE MADE FROM YOUR ACCOUNT.

YOUR [X] MONTHLY     [ ] BIWEEKLY MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE $ 2,151.58     OF WHICH $ 1,817.72     WILL BE FOR [X] PRINCIPAL AND INTEREST [ ] INTEREST ONLY, AND $ 333.86     WILL GO INTO YOUR ESCROW ACCOUNT.

| Period | Payments to Escrow Account | Payments from Escrow Account | Description | Escrow Account Balance |
|---|---|---|---|---|
| | | | **Initial Deposit:** | $      308.94 |
| 12/01/22 | 333.86 | | | |
| 12/01/22 | | 155.76 | County Property Tax | |
| 12/01/22 | | 230.88 | Mortgage Insurance | 256.16 |
| 01/01/23 | 333.86 | | | |
| 01/01/23 | | 230.88 | Mortgage Insurance | 359.14 |
| 02/01/23 | 333.86 | | | |
| 02/01/23 | | 230.88 | Mortgage Insurance | 462.12 |
| 03/01/23 | 333.86 | | | |
| 03/01/23 | | 230.88 | Mortgage Insurance | 565.10 |
| 04/01/23 | 333.86 | | | |
| 04/01/23 | | 230.88 | Mortgage Insurance | 668.08 |
| 05/01/23 | 333.86 | | | |
| 05/01/23 | | 230.88 | Mortgage Insurance | 771.06 |
| 06/01/23 | 333.86 | | | |
| 06/01/23 | | 230.88 | Mortgage Insurance | 874.04 |
| 07/01/23 | 333.86 | | | |
| 07/01/23 | | 230.88 | Mortgage Insurance | 977.02 |
| 08/01/23 | 333.86 | | | |
| 08/01/23 | | 230.88 | Mortgage Insurance | 1,080.00 |
| 09/01/23 | 333.86 | | | |
| 09/01/23 | | 230.88 | Mortgage Insurance | 1,182.98 |
| 10/01/23 | 333.86 | | | |
| 10/01/23 | | 1,080.00 | Hazard Insurance | |
| 10/01/23 | | 230.88 | Mortgage Insurance | 205.96 |
| 11/01/23 | 333.86 | | | |
| 11/01/23 | | 230.88 | Mortgage Insurance | 308.94 |

Cushion Selected By Servicer $_____205.96_____          Total Disbursements $_____4,006.32_____

INITIAL ESCROW ACCOUNT DISCLOSURE STATEMENT
12 CFR 1024.17(h)(1)
IEADS.MSC   03/28/19                              Page 1                              ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

PLEASE KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR ACCOUNT AT THE END OF THE ESCROW ACCOUNTING COMPUTATION YEAR.

Borrower MICHELE LESHA XU          6 2-2022
                                   Date



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# VOLUNTARY PAYMENT OF ADDITIONAL ESCROWS
## UNIMPROVED VALUATION NOTICE

Loan Number: 204546983

MIN: 100110900010451744

Case Number: 512-4867978-703

Borrower(s): MICHELE LESHA XU

I understand that the taxing authorities have assessed my Property on an unimproved basis. I understand that Lender will re-analyze my account when the improved tax figures become available. When my account is re-analyzed, my monthly escrow for taxes will increase. I will also have to pay additional funds to eliminate any shortage or deficiency in my account due to the increased valuation. To avoid and/or reduce any shortage or deficiency, I may voluntarily pay additional escrow in anticipation of this increase. Voluntary prepayment may be at settlement or periodically thereafter along with the required minimum payment and escrow.

_Michele Lesha Xu_ ___ 6-2-7822 ___
MICHELE LESHA XU                      Date

Note to Title Company Closer: If Borrower elects not to pay the voluntary additional sum for tax escrows, you must contact the Lender's closing department immediately.

VOLUNTARY PAYMENT OF ADDITIONAL ESCROWS
UNIMPROVED VALUATION NOTICE
VPAEUVN.CST 06/26/20

☆DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# CONSTRUCTION LOAN AGREEMENT

Loan Number: 204546983

**THIS CONSTRUCTION LOAN AGREEMENT** ("Loan Agreement") dated   June 2, 2022                    ,
is made by and between:   MICHELE LESHA XU

("Borrower", "I", "me" or "my"), and   AMCAP MORTGAGE, LTD.
                                                                                        , a limited partnership
having a principal place of business at 9999 BELLAIRE BOULEVARD, SUITE 700
HOUSTON, TEXAS 77036                                                                        ("Lender").

## RECITALS

WHEREAS, Borrower now owns or will purchase contemporaneously with the execution of this Loan Agreement the
real property described in Exhibit "A" attached hereto and made a part of this Loan Agreement ("Property");

WHEREAS, Borrower will construct a residence and may also construct other improvements on the Property (the
"Improvements"); and

WHEREAS, Lender has agreed to make a loan to the Borrower in connection with the construction of the
Improvements.

## 1.   ABOUT THIS LOAN AGREEMENT

1.1.   **Lender's Loan to Me.** I have signed a Promissory Note payable to Lender ("Note"). The Note is for
the loan by Lender to me in the principal amount of $   333,841.00                    ("Loan"). The
purpose of the Loan is:

☐  to purchase the Property;
☐  to pay in full any outstanding liens on the Property;

and to pay for labor and materials to complete certain Improvements on the Property ("Work").

"Property" includes the Improvements. I also have executed a Mortgage or Deed of Trust ("Security
Instrument") granting Lender a first priority lien on the Property. In this Loan Agreement, "Loan
Documents" means the Note, the Security Instrument, and this Loan Agreement. All terms defined in
the Note and the Security Instrument have the same meaning in this Loan Agreement.

## 2.   MY AGREEMENTS

2.1.   **The Work.**

2.1.1.   **My Contractor.** I have entered into a written agreement ("Construction Contract") with
CMH HOMES, INC.
with offices at 23557 HWY 59 N, PORTER, TEXAS 77365

("Contractor") for all the Work. The Construction Contract states the total amount that I will
pay Contractor for the Work ("Contract Price"), and includes (i) the blueprints, shop drawings,



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

plans and specifications for the Work ("Plans"); and (ii) a written itemization of the Work and the Contract Price; and (iii) an itemized description of each segment of the Work that sets the timetable for completing the Work, and the corresponding payments for the Work ("Work and Payment Schedule"). I have provided to the Lender a copy of the Construction Contract. The Construction Contract comprises the entire agreement between the Contractor and me regarding the Work. The Contractor will give Lender the name, address and telephone number of each person that has a contract with Contractor to supply materials or labor for the Work (each, a "Supplier"). I acknowledge that I am authorized to provide the Contractor with a copy of this Loan Agreement.

2.1.2. **Permits.** I will get, and keep in force, all approvals of the Work (each, a "Permit") that are required by any federal, state, county, or local government agency (each, a "Government Authority"). I will comply with all applicable laws of any Government Authority ("Government Regulations"). Contractor will have any license required by any Government Authority. I will obtain from Contractor and provide to Lender copies of all licenses and Permits required by Government Authorities.

2.1.3. **Change Orders.** Any material changes in the Construction Contract or the agreed upon Work that causes an increase in price is not permitted without express written permission by the Lender. Any material change to the Payment Schedule must be in a written agreement signed by me, the Contractor and Lender prior to such change occurring ("Change Order"). Any agreements relating to the final cost of construction not approved by the Lender will not be binding.

2.1.4. **Care of the Property.** If Lender requests, I will provide Lender with a certified report that the Property is free of wood-boring insects. I will comply with all of the reasonable recommendations of any engineer making a report for the Property. I will notify Lender promptly of any fire or other casualty relating to the Property or the Work.

2.1.5. **Completing the Work.** I will cause the Contractor to begin the Work promptly after the loan closing and all permits are in place. I will use my best efforts to ensure the Contractor continues the Work diligently and in a commercially reasonable and workmanlike manner in strict accordance with the Construction Contract and all Government Regulations. The Work will not violate any of the conditions, covenants or restrictions on the Property.

I will notify Lender promptly in writing if (i) I think that the Work does not comply with the Construction Contract or this Loan Agreement; (ii) any notice of lien on the Property is served on me or Contractor; or (iii) any Government Authority issues any notice or claim relating to the Property.

I acknowledge that the Construction Contract represents that the Work will be completed on or before   December 1, 2022               ("Completion Date"), subject to modifications in Lender approved Change Orders, but no later than twelve (12) months after the loan closing. Lender will accept the Work as completed when I satisfy all of the conditions in Section 2.8.4.5 of this Loan Agreement. In the event that the Work is not completed by the Completion Date due to circumstances beyond my control, I understand and agree that I must request an extension of the Completion Date in writing to Lender. I understand that the Lender is under no obligation to extend the Loan. If the Lender approves an extension of the Completion Date, I may be required to and agree to pay an extension fee in an amount up to 1.00% of the Loan Commitment Amount for each 30-day extension.



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

2.1.6.    **Inspections.** Lender has the right to enter the Property to inspect the Work, without notice to me, during normal business hours, or any other times that Lender arranges with me, irrespective of whether a Request for Disbursement (defined below) has been requested. I will pay for all inspections performed at the request of Lender or any Government Authority, at the prevailing rate.

Lender inspections are for Lender's benefit only. Lender's inspections create no liability or responsibility to me, Contractor, any Suppliers, or any third parties. Lender is not obligated to inspect the Property or the Work.

2.1.7.    **I Am Responsible for the Work.** I have full and sole responsibility to make sure that the Work complies with the Plans and all Government Regulations. Lender has no liability, obligation or responsibility for the Work. Lender is not liable for any failure to construct, complete, protect, or insure the Work. Lender is not liable for any costs of the Work. Nothing Lender does (including inspecting the Work or disbursing any part of the Loan) will be a representation or warranty by Lender that the Work complies with the Construction Contract, this Loan Agreement, the Permits or any Government Regulations. If Lender asks, I will repair or replace at my expense any Work that does not comply with the Plans. I have no right to assert or claim any offset, counterclaim or defense against Lender because of any claim I may have against Contractor or any Suppliers.

2.2.    **Costs and Expenses.** I will pay all costs and expenses required to satisfy the conditions of this Loan Agreement, including any Lender approved Change Orders.

2.3.    **No Other Financing.** Until paid in full, the Loan will be my only financing for the Property and the Work.

2.4.    **Title Insurance.** I will get and keep in force a mortgagee's or lender's policy of title insurance ("Title Policy"). The Title Policy will insure: (i) that the total amount of the lien of Lender's Security Instrument is a valid first priority lien on my interest in the Property; and (ii) that the title to my interest in the Property is free and clear of all defects and encumbrances except those Lender approves in writing.

At or prior to the closing of the Loan, I will provide Lender with the commitment of the issuer of the Title Policy ("Title Company") to issue the Title Policy ("Title Commitment"). When the Work is completed, I will provide Lender with endorsements to the Title Policy insuring Lender to the full amount of the Loan disbursed.

2.5.    **Survey.** If Lender requests, I will provide and certify to Lender and to the Title Company a survey of the Property and the Improvements, including dimensions and locations of all completed Improvements and all easements or other rights or restrictions (each, a "Survey"). Each Survey must be satisfactory to Lender and to the Title Company.

2.6.    **Appraisal.** Lender will obtain at my expense an appraisal of the Property and the Improvements before Lender disburses any part of the Loan. The appraisal will show the value of the Property and the Improvements, using the property value estimate method. Lender will choose the appraiser. Each appraisal will reflect an appraised value and be in form and substance satisfactory to Lender.

 



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

2.7. **Hazard Insurance.**

    2.7.1. **The Contractor's Insurance.** The Contractor must get and keep in force the following insurance policies ("Contractor's Insurance"): (i) a builder's all risk insurance policy (with a mortgagee's loss payable clause in favor of Lender and with a physical loss form endorsement), without co-insurance, in an amount not less than one hundred percent (100%) of the replacement cost of the Improvements, with the standard conditions; (ii) public liability insurance with limits of liability equal to at least $500,000 per occurrence; (iii) workers' compensation insurance as required by applicable state law; (iv) automobile liability insurance with limits of liability equal to at least $300,000 per occurrence for each vehicle that will be used in providing the services hereunder; and (v) other insurance as is appropriate for the Work being performed. The Contractor's Insurance will be in force until I accept the Improvements.

    2.7.2. **My Insurance.** I will get and keep in force a standard hazard insurance policy as required by the Security Instrument. This insurance will be effective when the Contractor's Insurance terminates.

2.8. **The Loan.**

    2.8.1. **Administration.** Lender will disburse the Loan proceeds ("Loan Proceeds") in accordance with the terms of this Loan Agreement and in accordance with applicable law.

    2.8.2. **Use of the Loan Funds.**

        2.8.2.1. **Disbursements.** "Disbursement" means Lender's disbursement of any part of the Loan under this Loan Agreement, or my endorsement and delivery of any Loan Proceeds check to Contractor or a Supplier.

        2.8.2.2. **Loan Commitment Amount.** As of the date the Loan closes ("Closing Date"), Lender commits to disburse Loan principal in the total amount of the Loan ("Loan Commitment Amount"). After the Closing Date, the Loan Commitment Amount will equal the principal amount of the Loan less the total amount of Disbursements made to date. Any Loan Commitment Amount that remains after all Disbursements have been made will be credited as a partial prepayment of the principal amount of the Loan at the time of the final Disbursement.

        2.8.2.3. **No Changes.** Unless Lender agrees in writing first, I will not change the Plans or the Construction Contract, or permit any part of any Disbursement to be paid except as specified in a Request for Disbursement.

        2.8.2.4. **Application of Disbursements.** I will apply the Disbursements first to the payment of the cost of the Work before using any part for any other purpose.

    2.8.3. **The Escrow Account.** If the Loan will be disbursed from an Escrow Account, all interest on the Account will be paid to me. If Lender is a depository institution that offers Escrow Accounts, the Account must be with Lender.

    2.8.4. **Disbursements; Conditions to Disbursements.** Each of the promises I make in this Loan Agreement will be considered made again as of the time (i) Lender, or Lender's escrow agent, receives any request from me and Contractor for a Disbursement ("Request for Disbursement");

---



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

or (ii) I endorse any Loan Proceeds check to Contractor or a Supplier. Lender will hold ten (10%) percent of each Disbursement for the Work ("Holdback"). Lender will disburse Holdback only as part of the final Disbursement.

**2.8.4.1.    Plans Approved.** I have reviewed the Plans; the Plans are satisfactory and have been approved by all Government Authorities having jurisdiction over the Property and the Work.

**2.8.4.2.    Work Completed; Invoices and Lien Waivers.** The Work for which a Disbursement is requested has been completed in a good and workmanlike manner, and complies with the Construction Contract, the Plans, the Permits, and all Government Regulations.

**2.8.4.3.    My Financial Condition; No Defaults.** There is no material adverse change in my financial condition or employment status since the time I applied for the Loan. I am not in default under any of the Loan Documents or the Construction Contract. I have complied completely with all of my promises about the Work (including the promises in Section 2.1.5 of this Loan Agreement). I have paid all costs, fees, and expenses required to be paid by me that are due and payable as of the date of the Disbursement.

**2.8.4.4.    Request for Disbursement.** If the Loan will be disbursed from an Escrow Account, or directly by Lender, Contractor will deliver to Lender or Lender's escrow agent (i) a Request for Disbursement, properly completed, and signed by me and the Contractor; (ii) the invoices for the Work; (iii) conditional lien waivers from Contractor and from Suppliers for all Work covered by the Request for Disbursement; (iv) an endorsement to the Title Policy amending the effective date of the Title Policy to the date of the new Disbursement and insuring that the Security Instrument constitutes a valid first lien on the Property with respect to all sums due and owning under the Note, including the new Disbursement; and (v) all other required information described in the Request for Disbursement and all additional documents, information, certifications, permits, insurance policies, and other items of any type or kind that the Lender may in its sole discretion deem necessary or desirable to have obtained prior to making a Disbursement. Lender may rely on my statements and Contractor's statements in the Request for Disbursement and on the invoices and lien waivers submitted by Contractor. Lender does not have to verify any of that information. Lender is under no obligation to make a Disbursement for deposits to subcontractors or suppliers, but if the Lender does make such a Disbursement for deposits or startup expenses, then the Lender will deduct such advance from the Borrower's first Request for Disbursement after such work and materials are completed and in place. The funds obtained with the Request for Disbursement will be used to pay for the Work described in the Request for Disbursement. A draw fee of $125 will be charged for each draw made to the builder and/or contractor to be paid by the borrower.

**2.8.4.5.    Completion of Improvements.** The Work will be completed as required by this Loan Agreement. Anything in this Loan Agreement to the contrary notwithstanding, if Lender enters the Property to inspect the Work and Lender (or Lender's inspector) determines, in the Lender's (or Lender's inspector's) sole opinion, that any work is incomplete, was not completed in a good and workmanlike manner,



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

deviates from the requirements of the Plans, or is otherwise unsatisfactory in any way, or if the Lender (or Lender's inspector), in the Lender's (or Lender's inspector's) sole opinion, determines that any necessary materials were not furnished, deviate from the requirements of the Plans, are defective, or are otherwise unsatisfactory in any way, the Lender may still, at its option, make a Disbursement in connection with such work and materials. The Lender may, however, withhold from the Disbursement, the amount required to cause such work and materials to be completed or furnished as required by this Loan Agreement and the Plans to be satisfactory to the Lender and the Lender's inspector. The amount withheld from the Disbursement shall be advanced only when the work and materials are so completed and furnished and are satisfactory to the Lender and the Lender's inspector.

I acknowledge that before the Final Disbursement, Lender must obtain a certification of completion stating the Work was completed in accordance with the Plans, and the final, unconditional certificate of occupancy issued by the responsible Government Authority, if required by law.

**3. DEFAULT AND REMEDIES**

**3.1.** **Events of Default.** I will be in default under this Loan Agreement and the other Loan Documents if any of the following events ("Events of Default") occurs:

**3.1.1.** **Nonpayment.** I fail to make any payment due under any Loan Document.

**3.1.2.** **Other Broken Promises.** I fail to keep any promise in this Loan Agreement or any other Loan Document.

**3.1.3.** **False Statements.** Any statement of fact, representation or warranty I make to Lender in my loan application, this Loan Agreement or in any other Loan Document is false, inaccurate, or incomplete.

**3.1.4.** **Incomplete Work.** The Lender, in good faith, deems itself insecure or does not believe that the Work will be completed by the Completion Date;

**3.1.5.** **Improper Construction.** The Improvements are not constructed in accordance with the Plans or the Construction Contract;

**3.1.6.** **LTV.** The ratio of the amount of the Loan to the value of the Property ("LTV") exceeds 89.890 % as shown on an as-built appraisal or a recertification of value made after completion of the Work;

**3.1.7.** **Abandonment.** The Work is abandoned or ceases for more than twenty-five (25) days for any reason;

**3.1.8.** **Financial Condition.** I have a material change in my financial condition or credit history/credit scores from the original loan application date that may impair my ability to make the payments due, service the Loan, occupy the Property, or may affect my qualifications in any way;



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**3.1.9.** **Diversion of Funds.** I divert, or allow Contractor to divert, any construction loan funds that are disbursed by the Lender under this Loan Agreement and Exhibit B, Approved Final Construction Budget, for any other purpose other than the construction or Improvements of the Property; or

**3.1.10.** **Additional Financing.** I obtain additional financing outside and in addition to the Loan that causes a lien or security interest to be filed and recorded against the Property.

**3.2.** **Lender's Rights and Remedies.** Subject to my right to notice of default and right to cure the default(s), to the extent required by law, if an Event of Default occurs, Lender has the following rights and remedies ("Rights and Remedies"), subject to applicable law:

**3.2.1.** **Declare a Default.** Lender may declare the Note, the Security Instrument, or both, in default. Lender may remedy the Default.

**3.2.2.** **Finish the Construction and Protect the Property.** Subject to this Loan Agreement and applicable law, Lender may take possession of the Property. Lender may do every act and thing I or any subsequent owner of the Property might or could do for the protection, construction, repair, operation, maintenance and leasing of the Property.

I authorize Lender, as my attorney-in-fact, to exercise any right I may have in or under the Construction Contract or any Permit. I irrevocably authorize and direct each party to any Permits and Construction Contracts to provide Lender the benefits of the Permits and the Construction Contracts upon Lender's written notice. I agree that any such party will have the right to rely upon any written notice from Lender without any obligation or right to inquire as to whether an Event of Default actually exists and notwithstanding any notice from me or claim by me to the contrary. I will have no right or claim against any such party for any benefit provided to Lender by such party. If I cure the Event of Default, or if Lender reinstates the Loan in good standing, Lender will give written notice of reinstatement to each such party and authorize each such party to render such benefits to me.

**3.2.3.** **Take the Escrow Account.** Subject to this Loan Agreement and applicable law, Lender may take any funds in the Escrow Account, if any, to apply to any amounts I owe under the Loan Documents.

**3.2.4.** **Terminate Agreement.** Lender may terminate this Loan Agreement.

**3.2.5.** **Institute Proceedings.** Lender may institute proceedings to enforce this Loan Agreement.

**3.2.6.** **Withhold Disbursement.** Lender may withhold further Disbursements.

**3.2.7.** **Acceleration.** Lender may accelerate maturity of the Note and any addendum thereto.

**3.2.8.** **Fund to Escrow.** Lender may fund the remaining amount of the Loan into an escrow or other account from which funds may be disbursed to pay for the completion of the Work, all in accordance with such documents and agreements as the Lender in its sole discretion may require, which documents and agreements the Borrower hereby agrees to execute in such form and containing such terms, provisions, and conditions as the Lender may in its sole discretion seem desirable or necessary.



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

3.2.9.  **Modification of Loan Agreement.** Lender may amend, modify, or restructure the Loan Documents to provide for any changes in the Loan Documents that the Lender in its sole discretion deems necessary or desirable to remedy a Default, including, without limitation, changes resulting in an extended Completion Date, an extension of the First Payment Date, a change in interest rate on the Note to a then current market rate, an amended payment schedule, or a reamortization of the Loan.

3.2.10.  **Indemnity.** I will indemnify and hold Lender and Lender's affiliates, and the officers, directors, employees and agents of Lender and its affiliates ("Indemnified Parties"), harmless from any liability, claim, loss, cost, legal expenses (including suits, claims, proceedings, damages, and costs arising from or relating to any third-party claim), incurred by or alleged against any of the Indemnified Parties arising from or related to (i) the Property, (ii) the Work, or (iii) my default under this Loan Agreement.

3.2.11.  **Lender's Fees, Costs, and Expenses.** I will pay to Lender all attorney's fees, costs, and other expenses paid or incurred by Lender in enforcing or exercising Lender's Rights and Remedies under this Loan Agreement. Interest will accrue on these amounts at the Note rate from the date the expense is disbursed by Lender and shall be payable, with such interest, upon notice from Lender requesting payment. The expense plus interest will become additional debt secured by the Security Instrument.

3.2.12.  **Remedies Cumulative.** Lender may (but is not required to) exercise any or all of the rights under this Loan Agreement. All of Lender's Rights and Remedies contained in this Loan Agreement are cumulative and are in addition to any other Rights and Remedies created in any other Loan Document or existing at law or in equity.

# 4.  GENERAL

4.1.  **My Cooperation.** Lender may require that I sign other instruments or documents or supply additional information and data to Lender that it considers necessary to accomplish the purposes of this Loan Agreement. I will sign such documents or provide such information at my own cost and expense. All documents delivered to Lender by me will become Lender's property.

4.2.  **Credit Information.** I will provide Lender with updated financial or credit information upon Lender's reasonable request and notice. Subject to applicable law, Lender may obtain consumer reports from consumer reporting agencies as part of reviewing my Loan.

4.3.  **No Waivers.** Lender may choose to delay enforcing any of Lender's rights or waive any of Lender's rights under this Loan Agreement. Lender may delay enforcing or waive any of Lender's rights without affecting Lender's other rights. If Lender waives a right, Lender can still enforce the same right later.

4.4.  **Entire Agreement.** This Loan Agreement and the other Loan Documents are the entire understanding between Lender and me about the Loan, the Improvements, and the Work, and may not be modified, amended, or terminated except by written agreement signed by Lender and me.

4.5.  **Binding Agreement; Assignment.** This Loan Agreement is for the benefit of Lender and Lender's successors and assigns, and binds me, my heirs, executors, administrators, successors and assigns. I may not assign this Loan Agreement without Lender's prior written consent, which Lender may withhold in Lender's sole discretion.





Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

4.6.   **Survival of Representations.** Any promise I make will survive the termination of this Loan Agreement.

4.7.   **Joint and Several Liability.** Each person executing this Loan Agreement as a Borrower has joint and several liability.

4.8.   **Notices.** Any communication required by this Loan Agreement will be in writing and addressed to the addressee at the address indicated on the first page of this Loan Agreement.

4.9.   **No Third Party Beneficiary.** This Loan Agreement is for the sole benefit of Lender and me, and is not for the benefit of anyone else. All conditions to Lender's obligation to make any Disbursement are solely for Lender's benefit. No other person or entity will have standing to require satisfaction of those conditions or be deemed to be the beneficiary of those conditions.

4.10.   **Governing Law.** This Loan Agreement is entered into in the state where the Property is located (the "State") and will be controlled and interpreted by the laws of the United States and the State.

4.11.   **Exhibits.** The following exhibits are attached to and a part of this Loan Agreement, if applicable.

      Exhibit "A" - Description of the Property

      Exhibit "B" - Work and Payment Schedule

      Exhibit "C" - Request for Disbursement



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

IN WITNESS WHEREOF, Borrower and Lender have executed this Loan Agreement as of the date first set forth on page one.

LENDER: AMCAP MORTGAGE, LTD.

By: _____

Name: _____

Title: _____

_Michele Lesha Xu_ _____ (Seal)
MICHELE LESHA XU              -Borrower



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

STATE OF <u>TEXAS</u>

COUNTY OF <u>HARDIN</u>

This instrument was acknowledged before me this _<u>June 2, 2022</u>_ by <u>MICHELE LESHA XU</u>

_____

_____

_____



_____
(Signature of officer)

_____
(Title of officer)

My Commission Expires: _3-11-2024_

STATE OF <u>TEXAS</u>

COUNTY OF <u>HARDIN</u>

This instrument was acknowledged before me this _____ by_____

_____

of <u>AMCAP MORTGAGE, LTD.</u> _____,
a(n) ENTITY.

_____
(Signature of officer)

_____
(Title of officer)

My Commission Expires: _____

CONSTRUCTION LOAN AGREEMENT
CLA544306.CST 06/17/21                     Page 11 of 11                     ☆DocMagic





Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# TEXAS DISCLOSURE STATEMENT REQUIRED FOR RESIDENTIAL CONSTRUCTION CONTRACT UNDER SECTION 53.255(b) TEXAS PROPERTY CODE

Loan Number:  204546983

Date:  June 2, 2022

Lender:  AMCAP MORTGAGE, LTD.

Borrower(s):  MICHELE LESHA XU, XIAOFENG XU

Property Address:  17500 GHOST ROAD
SARATOGA, TEXAS 77585

**KNOW YOUR RIGHTS AND RESPONSIBILITIES UNDER THE LAW.** You are about to enter into a transaction to build a new home or remodel existing residential property. Texas law requires your contractor to provide you with this brief overview of some of your rights, responsibilities, and risks in this transaction.

**CONVEYANCE TO CONTRACTOR NOT REQUIRED.** Your contractor may not require you to convey your real property to your contractor as a condition to the agreement for the construction of improvements on your property.

**KNOW YOUR CONTRACTOR.** Before you enter into your agreement for the construction of improvements to your real property, make sure that you have investigated your contractor. Obtain and verify references from other people who have used the contractor for the type and size of construction project on your property.

**GET IT IN WRITING.** Make sure that you have a written agreement with your contractor that includes: (1) a description of the work the contractor is to perform; (2) the required or estimated time for completion of the work; (3) the cost of the work or how the cost will be determined; and (4) the procedure and method of payment, including provisions for statutory retainage and conditions for final payment. If your contractor made a promise, warranty, or representation to you concerning the work the contractor is to perform, make sure that promise, warranty, or representation is specified in the written agreement. An oral promise that is not included in the written agreement may not be enforceable under Texas law.

**READ BEFORE YOU SIGN.** Do not sign any document before you have read and understood it. **NEVER SIGN A DOCUMENT THAT INCLUDES AN UNTRUE STATEMENT.** Take your time in reviewing documents. If you borrow money from a lender to pay for the improvements, you are entitled to have the loan closing documents furnished to you for review at least one business day before closing. Do not waive this requirement unless a bona fide emergency or another good cause exists, and make sure you understand the documents before you sign them. If you fail to comply with the terms of the documents, you could lose your property. You are entitled to have your own attorney review any documents. If you have any question about the meaning of a document, consult an attorney.

TEXAS DISCLOSURE STATEMENT REQUIRED FOR RESIDENTIAL CONSTRUCTION CONTRACT
UNDER SECTION 53.255(b) TEXAS PROPERTY CODE
Texas Property Code Section 53.255
TXDSRRCC.MSC  08/27/13                          Page 1 of 5

✫DocMagic



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**GET A LIST OF SUBCONTRACTORS AND SUPPLIERS.** Before construction commences, your contractor is required to provide you with a list of the subcontractors and suppliers the contractor intends to use on your project. Your contractor is required to supply updated information on any subcontractors and suppliers added after the list is provided. Your contractor is not required to supply this information if you sign a written waiver of your rights to receive this information.

**MONITOR THE WORK.** Lenders and governmental authorities may inspect the work in progress from time to time for their own purposes. These inspections are not intended as quality control inspections. Quality control is a matter for you and your contractor. To ensure that your home is being constructed in accordance with your wishes and specifications, you should inspect the work yourself or have your own independent inspector review the work in progress.

**MONITOR PAYMENTS.** If you use a lender, your lender is required to provide you with a periodic statement showing the money disbursed by the lender from the proceeds of your loan. Each time your contractor requests payment from you or your lender for work performed, your contractor is also required to furnish you with a statement that lists the name and address of each subcontractor or supplier that the contractor intends to pay from the requested funds. Review these statements and make sure that the money is being properly disbursed.

**CLAIMS BY SUBCONTRACTORS AND SUPPLIERS.** Under Texas law, if a subcontractor or supplier who furnishes labor or materials for the construction of improvements on your property is not paid, you may become liable and your property may be subject to a lien for the unpaid amount, even if you have not contracted directly with the subcontractor or supplier. To avoid liability, you should take the following actions:

(1) If you receive a written notice from a subcontractor or supplier, you should withhold payment from your contractor for the amount of the claim stated in the notice until the dispute between your contractor and the subcontractor or supplier is resolved. If your lender is disbursing money directly to your contractor, you should immediately provide a copy of the notice to your lender and instruct the lender to withhold payment in the amount of the claim stated in the notice. If you continue to pay the contractor after receiving the written notice without withholding the amount of the claim, you may be liable and your property may be subject to a lien for the amount you failed to withhold.

(2) During construction and for 30 days after final completion, termination, or abandonment of the contract by the contractor, you should withhold or cause your lender to withhold 10 percent of the amount of payments made for the work performed by your contractor. This is sometimes referred to as a "statutory retainage." If you choose not to withhold the 10 percent for at least 30 days after final completion, termination, or abandonment of the contract by the contractor and if a valid claim is timely made by a claimant, and your contractor fails to pay the claim, you may be personally liable and your property may be subject to a lien up to the amount that you failed to withhold.

If a claim is not paid within a certain time period, the claimant is required to file a mechanic's lien affidavit in the real property records in the county where the property is located. A mechanic's lien affidavit is not a lien on our property, but the filing of the affidavit could result in a court imposing a lien on your property if the claimant is successful in litigation to enforce the lien claim.

**SOME CLAIMS MAY NOT BE VALID.** When you receive a written notice of a claim or when a mechanic's lien affidavit is filed on your property, you should know your legal rights and responsibilities regarding the claim. Not all claims are valid. A notice of a claim by a subcontractor or supplier is required to be sent, and the mechanic's lien affidavit is required to be filed, within strict time periods. The notice and the affidavit must contain certain information. All claimants may not fully comply with the legal requirements to collect on a claim. If you have paid the contractor in full before receiving a notice of a claim and have fully complied with the law regarding statutory retainage, you may not be liable for that claim. Accordingly, you should consult your attorney when you receive a written notice of a claim to determine the true extent of your liability or potential liability for that claim.

---



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

. **OBTAIN A LIEN RELEASE AND A BILLS-PAID AFFIDAVIT.** When you receive a notice of claim, do not release withheld funds without obtaining a signed and notarized release of lien and claim from the claimant. You can also reduce the risk of having a claim filed by a subcontractor or supplier by requiring as a condition of each payment made by you or your lender that your contractor furnish you with an affidavit stating that all bills have been paid. Under Texas law, on final completion of the work and before final payment, the contractor is required to furnish you with an affidavit stating that all bills have been paid. If the contractor discloses any unpaid bill in the affidavit, you should withhold payment in the amount of the unpaid bill until you receive a waiver of lien or release from that subcontractor or supplier.

**OBTAIN TITLE INSURANCE PROTECTION.** You may be able to obtain a title insurance policy to insure that the title to your property and the existing improvements on your property are free from liens claimed by subcontractors and suppliers. If your policy is issued before the improvements are completed and covers the value of the improvements to be completed, you should obtain, on the completion of the improvements and as a condition of your final payment, a "completion of improvements" policy endorsement. This endorsement will protect your property from liens claimed by subcontractors and suppliers that may arise from the date the original title policy is issued to the date of the endorsement.

### ACKNOWLEDGMENT

I hereby acknowledge receipt of this Texas Disclosure Statement Required for Residential Construction Contract Under Section 53.255(b) Texas Property Code and further acknowledge that I understand its provisions. Words used in this Texas Disclosure Statement Required for Residential Construction Contract Under Section 53.255(b) Texas Property Code mean and include the plural and vice versa. Owner acknowledges receiving this disclosure and all other documents relating to the closing of the loan no later than one business day before the date of the closing.

Borrower MICHELE LESHA XU    Date 6-2-2022

Borrower XIAOFENG XU    Date 6-2-2022

Borrower _____ Date    Borrower _____ Date

Borrower _____ Date    Borrower _____ Date

Attachment: Initial List of Subcontractors and Suppliers

TEXAS DISCLOSURE STATEMENT REQUIRED FOR RESIDENTIAL CONSTRUCTION CONTRACT
UNDER SECTION 53.255(b) TEXAS PROPERTY CODE
Texas Property Code Section 53.255
TXDSRRCC.MSC  08/27/13                  Page 3 of 5                  ☆DocMagic



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## LIST OF SUBCONTRACTORS AND SUPPLIERS PURSUANT TO SECTION 53.256 TEXAS PROPERTY CODE

NOTICE: THIS LIST OF SUBCONTRACTORS AND SUPPLIERS MAY NOT BE A FINAL LISTING. UNLESS YOU SIGN A WAIVER OF YOUR RIGHT TO RECEIVE UPDATED INFORMATION, THE CONTRACTOR IS REQUIRED BY LAW TO SUPPLY UPDATED INFORMATION, AS THE INFORMATION BECOMES AVAILABLE, FOR EACH SUBCONTRACTOR OR SUPPLIER USED IN THE WORK PERFORMED ON YOUR RESIDENCE.

| Service | Name | Address | Telephone Number |
|---------|------|---------|------------------|
|         |      |         |                  |

TEXAS DISCLOSURE STATEMENT REQUIRED FOR RESIDENTIAL CONSTRUCTION CONTRACT UNDER SECTION 53.255(b) TEXAS PROPERTY CODE
Texas Property Code Section 53.255
TXDSRRCC.MSC  08/27/13

Page 4 of 5

☆ DocMagic





Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Before construction commences, Contractor should provide Owner with a list of the subcontractors and suppliers the Contractor intends to use on the project.

Contractor shall provide Owner with an updated list of subcontractors and suppliers not later than the 15th day after the date a subcontractor or supplier is added or deleted.

Owner Acknowledges receipt:

_Michele Lesha Xu_     _6-2-2022_
Owner MICHELE LESHA XU     Date

_(signature)_     _6-2-2022_
Owner XIAOFENG XU     Date

_____  _____
Owner     Date

_____  _____
Owner     Date

_____  _____
Owner     Date

_____  _____
Owner     Date

Contractor:



_____  _____
Contractor     Date

TEXAS DISCLOSURE STATEMENT REQUIRED FOR RESIDENTIAL CONSTRUCTION CONTRACT UNDER SECTION 53.255(b) TEXAS PROPERTY CODE
Texas Property Code Section 53.255
TXDSRRCC.MSC  08/27/13     Page 5 of 5     ☆DocMagic



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FHA CONSTRUCTION DISCLOSURE

Loan No.: 204546983

Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU

Property: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

Borrower is closing a loan with Lender under the FHA Construction-Permanent Mortgage Program. Lender is required to advise Borrower that this loan is not eligible for FHA mortgage insurance until after either a final inspection or issuance of a certificate of occupancy by the local governmental jurisdiction (whichever is later) and FHA has no obligation until the mortgage is endorsed for insurance.

## ACKNOWLEDGMENT

Borrower hereby acknowledges receiving a copy of this FHA Construction Disclosure and further acknowledges to understanding its terms and provisions.

| | | |
|---|---|---|
| _Michele Xu_    6-2-2022 | | |
| Borrower  MICHELE LESHA XU    Date | Borrower | Date |
| | | |
| Borrower    Date | Borrower | Date |
| | | |
| Borrower    Date | Borrower | Date |

FHA CONSTRUCTION DISCLOSURE
FHACD.MSC  03/03/16

✷ DocMagic



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FHA CONSTRUCTION DISCLOSURE

Loan Number: 204546983

FHA Case Number: 512-4867978-703

Date: June 2, 2022

Lender: AMCAP MORTGAGE, LTD.

Borrower(s): MICHELE LESHA XU, XIAOFENG XU

Property Address: 17500 GHOST ROAD, SARATOGA, TEXAS 77585

Borrower is closing a loan with Lender under the FHA Construction-Permanent Mortgage Program. Lender is required to advise Borrower that this loan is not eligible for FHA mortgage insurance until after either a final inspection or issuance of a certificate of occupancy by the local governmental jurisdiction (whichever is later) and FHA has no obligation until the mortgage is endorsed for insurance.

## ACKNOWLEDGMENT

Borrower hereby acknowledges receiving a copy of this FHA Construction Disclosure and further acknowledges to understanding its terms and provisions.

_____  6-2-2022
Borrower MICHELE LESHA XU          Date

_____  6-2-2022
Borrower  XIAOFENG XU               Date

_____  _____
Borrower                           Date

_____  _____
Borrower                           Date

_____  _____
Borrower                           Date

_____  _____
Borrower                           Date

TEXAS FHA CONSTRUCTION DISCLOSURE
TXFHACD.MSC  08/27/13                          ☆DocMagic



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# BORROWER'S ACKNOWLEDGMENT OF CONSTRUCTION COMPLIANCE PROCEDURES
## (TEXAS)

Loan Number:  204546983

Date:  June 2, 2022

Lender:  AMCAP MORTGAGE, LTD.

Borrower(s)/Owner(s): MICHELE LESHA XU, XIAOFENG XU


Property Address:  17500 GHOST ROAD
                   SARATOGA, TEXAS 77585


Words used in this Acknowledgment are defined below. Words in the singular mean and include the plural and vice versa.

"Contractor" is   CMH HOMES, INC.

"Lender" is  AMCAP MORTGAGE, LTD.
and its successors or assigns.

"Owner" is  MICHELE LESHA XU, XIAOFENG XU


Owner acknowledges that:

1)  **Texas Disclosure Statement**
    Before a Residential Construction Contract (with transfer of lien to Lender) was executed, Contractor delivered to Owner the Texas Disclosure Statement Required for Texas Residential Construction Contracts under Section 53.255(b) of the Texas Property Code ("Disclosure").

2)  **List of Subcontractors and Materialman**
    Prior to the commencement of construction, Contractor shall provide a written list that identifies by name, address and telephone number, each subcontractor and supplier the Contractor intends to use in the work to be performed, and shall provide the Owner with an updated list of subcontractors and suppliers not later than the 15th day after the date a subcontractor or supplier is added or deleted. In the alternative, if Owner has waived the right to receive from the Contractor a list of the subcontractors and suppliers, or any updated information required to be given, it shall be evidenced by a separate written and signed waiver of rights.

---

TEXAS BORROWER'S ACKNOWLEDGMENT OF CONSTRUCTION COMPLIANCE PROCEDURES
Texas Property Code Chapter 53; Article 16 § 50(a)(5)
TXBAOCCP.MSC  08/27/13                    Page 1 of 2                    ☆ DocMagic



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**3)    Advance Delivery of Loan Documents and Construction Contract Disclosure**
Owner has received from Lender closing documentation relating to the loan (including the Disclosure) not later than one business day before the date of the closing or, in the alternative, Owner has waived said right to one business day advance delivery of the Disclosure from Lender and the other closing documents because of a bona fide emergency or other good cause.

_____    6-2-2022    _____    6-2-2022
Borrower/Owner                           Date          Borrower/Owner                           Date
MICHELE LESHA XU                                         XIAOFENG XU

_____    _____    _____    _____
Borrower/Owner                           Date          Borrower/Owner                           Date

_____    _____    _____    _____
Borrower/Owner                           Date          Borrower/Owner                           Date



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Loan Number: 204546983

# RESIDENTIAL CONSTRUCTION LOAN
## CONTRACTOR'S AFFIDAVIT

Words used in this Affidavit are defined below. Words in the singular mean and include the plural and vice versa.

"Agreement" means the Residential Construction Loan Agreement signed by Lender, Borrower, and Contractor, and dated as of closing.

"Borrower" is  MICHELE LESHA XU

"Contract" means the Mechanic's and Materialmen's Lien Contract (with Transfer of Lien to Lender) signed by the owners of the Property, the owners' spouse and Contractor, and dated as of closing.

"Contractor" is  CMH HOMES, INC.

"Improvements" mean the Improvements to or Construction of a single family residence.

"Lender" is  AMCAP MORTGAGE, LTD.
and its successors or assigns.

"Property" means the property commonly known as  17500 GHOST ROAD, SARATOGA, TEXAS 77585

"Security Instrument" means the deed of trust/mortgage/security deed/security instrument signed by Borrower in favor of Lender, securing payment of the Note.

BEFORE ME, the undersigned authority on this day personally appeared Contractor or the personal representative of Contractor, personally known to me to be the person whose name is subscribed hereto, or proved to me on the basis of satisfactory evidence and upon having been lawfully sworn upon oath deposed and stated in connection with a transaction involving the construction of certain Improvements on the Property:

Contractor for itself and for its respective successors and assigns hereby warrants and represents that the following statements are true and correct:

1. **Reliance.** Contractor has been advised by Lender that Lender is relying upon the recitals herein contained in connection with, among other things, negotiating and establishing the interest charges to Borrower in connection with the mortgage loan, and that this Affidavit has been executed by Contractor for the purpose of (i) inducing Lender's reliance on the recitals contained in this Affidavit, and (ii) inducing Lender to advance funds under the Agreement.

2. **No Work Performed.** No work of any kind (including the destruction or removal of any existing improvements, site work, clearing, grubbing, draining or fencing of the land) has been commenced or performed on the Property, no equipment, materials or supplies have been delivered to the Property, and no specially manufactured or prefabricated items have been ordered that are to be used in the construction of the Improvements.



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

3.  **No Previous Written or Oral Contracts.** Prior to the signing and acknowledging of the Contract and the Security Instrument renewing and extending the Contract, no written contract or oral agreement regarding the construction of all or any portion of the Improvements to be constructed by or for Borrower on the Property or any memorandum or affidavit thereof has been recorded or filed for record in the Office of the County Clerk of the county where the Property is located. No contract or any memorandum or affidavit thereof, for the construction of any improvements, performance of labor, furnishing of materials or providing specially fabricated materials in connection with the contemplated construction has, to the best of Contractor's knowledge, been filed by or for a subcontractor in the county where the property is located and no person has taken or permitted any action that would cause the inception or priority of any mechanic's or materialman's lien, or any other lien, charge, or encumbrance upon the Property to be prior to or superior to the liens and security interest of the Security Instrument executed by Borrower in connection with this transaction.

6.  **Contract is Entire Agreement.** The Contract incorporates any work agreement between Borrower and Contractor and the Agreement, which includes the plans and specifications as an exhibit, constitutes the entire agreement between Borrower and Contractor in connection with the construction of the Improvements. To the best of contractor's knowledge, the funds to be advanced to Borrower, together with Borrower's equity, down payment and other funds to be placed in an account as provided in the Agreement, are sufficient to fully construct the Improvements and pay all expenses necessary for such construction.

7.  **Change Orders.** Any material changes in the Construction Contract or the agreed upon Work that causes an increase in price is not permitted without express written permission by the Lender. Any material change to the Payment Schedule must be in a written agreement signed by me, the Contractor and Lender prior to such change occurring ("Change Order"). Any agreements relating to the final cost of construction not approved by the Lender will not be binding.

8.  **Notice of Default.** If Borrower defaults in making any payment or in performing any other obligation under the Agreement, Contractor shall promptly give Lender written notice thereof; and if Contractor learns of any default in payment due to any subcontractor or other person supplying labor or materials for the project, Contractor shall promptly give Lender written notice thereof.

9.  **Continued Performance.** Upon receipt of written notice from Lender that Borrower is in default under the Agreement and instruction to continue work on Lender's behalf, Contractor shall continue work on the Property provided that Contractor shall be paid in accordance with its agreement with Borrower for the following:

(a) All work, labor and materials rendered on Lender's behalf following such request; and

(b) The amount of retainage, if any, withheld by Lender from disbursement of loan proceeds for construction made by Contractor prior to such request.

10. **Lender Not Liable.** Nothing herein shall be construed to impose upon Lender any duty to advance the proceeds of the loan to Contractor or any other person or entity in accordance with Contractor's agreement with Borrower or the terms of the Agreement. Contractor acknowledges that Lender is obligated under the Agreement only to Borrower and no other person or entity.

11. **Building Permits.** Any and all approvals, permits or licenses (including, without limitation, a building permit) for the clearing and grading of the Property; the preparation of the surface and subsurface of the Property; and the placement, appearance and construction of the improvements contemplated by the Agreement, have been applied for and received by Contractor, in either the name of Contractor or Borrower.





Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**12. Licensing.** Contractor represents and warrants to Lender that Contractor (or if Contractor is a corporation, partnership or any business association, that the necessary principals and all applicable employees and agents of Contractor) is duly licensed to perform, conduct and engage in such activities and business as are contemplated under the Agreement or reasonably related thereto in the jurisdiction or jurisdictions where such activities, business or work is to be performed and in which the Property and the Improvements are to be located or constructed. And if a corporation, partnership or any business association, Contractor further represents and warrants that entering into the Agreement and this Affidavit are duly authorized acts, and shall not, nor with notice or otherwise would violate any contract, judgment, decree or understanding to which it is a party or by which it is bound.

**13. Alterations and Extras.** Contractor shall not perform work under any change order without first securing Lender's written consent to such change order. Lender's written consent shall not constitute an assumption by Lender of any obligations, unless such obligations are expressly set forth in such consent.

**14. Independent Contractor.** Contractor hereby covenants and warrants that all work performed by Contractor shall be as an independent contractor under the sole supervision, management, direction and control of Contractor and not as an employee, partner, agent or joint venturer of Lender. Contractor also hereby holds harmless and unconditionally indemnifies Lender against all liability, costs, expenses, claims and damages sustained by reason of any accidents, damages or injuries to persons or property arising from the work performed. Contractor further agrees at all times to maintain in full force and effect Workmen's Compensation, Public Liability and Property Damage and Builder's Risk Insurance. Contractor agrees that it will comply with any and all applicable state and federal laws now in force and which may hereafter become effective and applicable, including but not limited to laws and regulations regarding unemployment insurance, social security, old age pension, wage and hour, the Federal Labor Standards Act, OSHA and EEOC requirements and that Contractor will at all times protect, hold harmless, and unconditionally indemnify Lender from and against any loss, cost, damage, change or expense which Lender might sustain by reason of any failure on the part of Contractor to so comply.

**15. Hazardous Waste.** To Contractor's knowledge and belief, there are no hazardous wastes or toxic substances on or beneath the surface of the Property, excepting as applicable, such utilities as normally serve a residential property. Contractor will cause all chemicals, compounds and building materials to be used, applied, stored and disposed of in strict accordance with manufacturer's directions and government regulations.

**16. Subordination.** Contractor hereby expressly subordinates all contractual, statutory and constitutional mechanics', artisans' and materialmans' liens to which Contractor may be or become entitled to any liens and security interests securing the loan contemplated by the Agreement. Such subordination includes any and all increases, renewals, modification s, extensions, substitutions, replacements and/or consolidation of the Security Instrument securing such loan. This Agreement may not be modified orally or in any manner other than by an agreement in writing signed by Lender and Contractor. This Affidavit shall inure to the benefit of and be binding upon Lender and Contractor, and any purchasers at foreclosure of the Property, and their respective heirs, personal representatives, successors and assigns.



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**Loan Number: 204546983**

OMB Approval No. 2502-0059

(Expires 01/31/2024)

## Warranty of Completion of Construction

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

This information is required to obtain a HUD-insured single family mortgage. Public reporting burden for this collection of information is estimated to average 3 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and you are not required to respond to, a collection of information unless that collection displays a valid OMB control number. HUD collects this information to determine the insurability of a mortgage on the captioned property and may use it to make a final determination as to whether a defect exists and whether the builder must remedy the defect.
**Privacy Act Notice:** The United States Department of Housing and Urban Development, Federal Housing Administration, is authorized to solicit the information requested in the form by virtue of Title 12, United States Code, Section 1701 et seq., and regulations promulgated thereunder Title 12, Code of Federal Regulations. While no assurance of confidentiality is pledged to respondents, HUD generally discloses this data only in response to a Freedom of Information Act request.

| Lender's Name, Address and Phone Number (Include Area Code) | Name(s) of Purchaser/Owner |
|---|---|
| AMCAP MORTGAGE, LTD.<br>9999 BELLAIRE BOULEVARD, SUITE 700<br>HOUSTON, TEXAS 77036<br>(844) 692-6227 | MICHELE LESHA XU |

| FHA/VA Case Number | Property Address |
|---|---|
| 512-4867978-703 | 17500 GHOST ROAD, SARATOGA, TEXAS 77585 |

For good and valuable consideration, and in accordance with Section 801 of the Housing Act of 1954, and Public Law 85-857 (38 U.S.C. §3705), the undersigned Warrantor hereby warrants to the Purchaser(s) or Owner(s) identified in the caption hereof, and to his/her successors or transferees, that:

The dwelling located on the property identified in the caption hereof is constructed in substantial conformity with the plans and specifications (including any amendments thereof, or changes and variations therein). Provided however, that this warranty shall apply only to such instances of substantial nonconformity as to which the Purchaser(s)/Owner(s) or his/her (their) successors or transferees shall have given written notice to the Warrantor at any time or times within one year from the date of original conveyance of title to such Purchaser(s)/Owner(s) or the date of initial occupancy, whichever first occurs. Provided further, that in the event (1) the Purchaser(s)/Owner(s) acquired title to the captioned property  prior to the completion of construction of the dwelling thereon, such notice of nonconformity to the Warrantor may be given any time or times within one year from the date of completion or initial occupancy of such dwelling, whichever first occurs, or (2) where it has been necessary to postpone improvements, such notice of nonconformity to the Warrantor as to such incomplete items may be given at any time or times within one year from the date of full completion of each of such items.

The term "dwelling" as used herein shall be deemed to include all improvements or appurtenances set forth in the plans and specifications upon which the Federal Housing Commissioner or the Secretary of Veterans Affairs has based the valuation of the property, excepting those constructed by a municipality or other government authority.

The undersigned Warrantor further warrants to the Purchaser(s)/Owner(s)  or his/her (their) successors or transferees, the property against defects in equipment, material, or workmanship and materials supplied or performed by the Warrantor or any subcontractor or supplier at any tier resulting in noncompliance with standards of quality as measured by acceptable trade practices. This warranty shall continue for a period of one year from the date of original conveyance of title to such Purchaser(s) or from the date of full completion of each of any items completed after conveyance of title. The Warrantor shall remedy, at the Warrantor's expense, any defect(s) of equipment, material, or workmanship furnished by the Warrantor. The Warrantor shall restore any work damaged in fulfilling the terms and conditions of this warranty.

| If a manufactured (mobile) home was erected on this property, the Warrantor further warrants that (1) the property (other than the manufactured unit itself) complies with the submitted construction exhibits; (2) the manufactured home sustained no hidden damage during transportation and erection; and (3) if the home was manufactured in separate sections, the sections were properly joined and sealed. | Manufacturer's Name, Address & Phone Number (Include Area Code) |
|---|---|

This warranty shall be in addition to, and not in derogation of, all other rights and privileges which such Purchaser(s)/Owner(s) or his/her (their) successors or transferees may have under any other law or instrument, and shall survive the conveyance of title, delivery of possession of the property, or other final settlement made by the Purchaser(s)/Owner(s), and shall be binding on the Warrantor notwithstanding any provision to the contrary contained in the contract of purchase or other writing executed by the Purchaser(s)/Owner(s) or his/her (their)  successors or transferees heretofore or contemporaneously with the execution of this agreement or prior to final settlement.

This warranty is executed for the purpose of inducing the Federal Housing Commissioner or the Secretary of Veterans Affairs to make, to guarantee or to insure a mortgage on the captioned property, and the person signing for the Warrantor represents and certifies that he/she is authorized to execute the same by the warrantor and by his/her signature the Warrantor is duly bound under the terms and conditions of said warranty. The FHA Commissioner or the Secretary of Veterans Affairs reserves the right to make a final determination as to whether a defect exists and whether the builder must remedy the defect.

The undersigned Warrantor certifies under penalty of perjury that the property was constructed in compliance with HUD's Minimum Property Requirement and Minimum Property Standard or VA's New Construction or Proposed or Under Construction requirements.

| Warrantor<br>Warrantor's Title GM | Purchaser(s)' Acknowledgement<br>Signature of Purchaser | Date (mm/dd/yyyy) |
|---|---|---|
| Signature | Date (mm/dd/yyyy)<br>6/2/22 | Signature of Purchaser | Date (mm/dd/yyyy)<br>12/2/22 |

| Builder's Name and Address | Builder's Phone Number (Include Area Code) |
|---|---|
| CMH HOMES, INC.<br>23557 HWY 59 N<br>PORTER, TEXAS 77365 | (281) 354-9104 |

**Purchaser Note:** Any notice of nonconformity must be delivered to the warrantor within the period or periods set forth above.
**Warning:** Anyone who knowingly submits a false claim, or makes false statements is subject to criminal and civil penalties, including confinement for up to 5 years, fines and civil penalties. (18 U.S.C. 287 1001 and 31, U.S.C. 3729)
Provide completed copies of this warranty to both the homebuyer and the builder, at closing. Include a copy of this warranty  in the case binder when sent to HUD.

Previous editions are obsolete. Combines previous HUD-92544-A. form HUD-92544  (2/2020) ref. HUD Handbook 4000.1

VA form 26-1859

☆ DocMagic

Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

11-19-19



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

# THIRD PARTY FINANCING ADDENDUM

## TO CONTRACT CONCERNING THE PROPERTY AT

17500 GHOST ROAD  SARATOGA
(Street Address and City)

**1. TYPE OF FINANCING AND DUTY TO APPLY AND OBTAIN APPROVAL:** Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing, including but not limited to furnishing all information and documents required by Buyer's lender. (Check applicable boxes):

☐ **A. CONVENTIONAL FINANCING:**

    ☐ **(1)** A first mortgage loan in the principal amount of $_____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

    ☐ **(2)** A second mortgage loan in the principal amount of $_____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ **B. TEXAS VETERANS LOAN:** A loan(s) from the Texas Veterans Land Board of $_____ for a period in the total amount of _____ years at the interest rate established by the Texas Veterans Land Board.

☑ **C. FHA INSURED FINANCING:** A Section 203B _____ FHA insured loan of not less than $_____ 337,750.00 (excluding any financed MIP), amortizable monthly for not less than ____ 30 ____ years, with interest not to exceed __5.25__% per annum for the first __30__ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed ___1___ % of the loan.

☐ **D. VA GUARANTEED FINANCING:** A VA guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ **E. USDA GUARANTEED FINANCING:** A USDA-guaranteed loan of not less than $_____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan.

☐ **F. REVERSE MORTGAGE FINANCING:** A reverse mortgage loan (also known as a Home Equity Conversion Mortgage loan) in the original principal amount of $ _____ (excluding any financed PMI premium or other costs), with interest not to exceed _____% per annum for the first _____ year(s) of the loan with Origination Charges as shown on Buyer's Loan Estimate for the loan not to exceed _____% of the loan. The reverse mortgage loan ☐will ☐ will not be an FHA insured loan.

**2. APPROVAL OF FINANCING:** Approval for the financing described above will be deemed to have been obtained when Buyer Approval and Property Approval are obtained. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**
A. BUYER APPROVAL *(Check one box only)*:

    ☑ This contract is subject to Buyer obtaining Buyer Approval. If Buyer cannot obtain Buyer Approval, Buyer may give written notice to Seller within __15__ days after the effective date of this contract and this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not terminate the contract under this provision, the

Initialed for identification by ▌▌▐▌▌▐▌▌▌▐▌▌▐▌▌▌▐▌▌▐▌▌▐▌▌▐▌▌▌▐▌▌▐▌▌▌▐▌▌ ▌▌▌▐▌▌

TREC NO. 40-9



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

Third Party Financing Addendum Concerning

11-19-19
Page 2 of 2

17500 GHOST RD  SARATOGA, TX 77585
(Address of Property)

contract shall no longer be subject to the Buyer obtaining Buyer Approval. Buyer Approval will be deemed to have been obtained when (i) the terms of the loan(s) described above are available and (ii) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history.
☐ This contract is not subject to Buyer obtaining Buyer Approval.

B. PROPERTY APPROVAL: If Buyer's lender determines that the Property does not satisfy lender's underwriting requirements for the loan (including but not limited to appraisal, insurability, and lender required repairs) Buyer, not later than 3 days before the Closing Date, may terminate this contract by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates under this paragraph, the earnest money will be refunded to Buyer. If Buyer does not terminate under this paragraph, Property Approval is deemed to have been obtained.

**3. SECURITY:** Each note for the financing described above must be secured by vendor's and deed of trust liens.

**4. FHA/VA REQUIRED PROVISION:** If the financing described above involves FHA insured or VA financing, it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise: (i) unless the Buyer has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting forth the appraised value of the Property of not less than $350,000.00 or (ii) if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The 3-day notice of termination requirements in 2.B. does not apply to this Paragraph 4.

A. The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation or the reasonable value established by the Department of Veterans Affairs.

B. If FHA financing is involved, the appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Buyer should satisfy himself/herself that the price and the condition of the Property are acceptable.

C. If VA financing is involved and if Buyer elects to complete the purchase at an amount in excess of the reasonable value established by the VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Prices, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

**5. AUTHORIZATION TO RELEASE INFORMATION:**
A. Buyer authorizes Buyer's lender to furnish to Seller or Buyer or their representatives information relating to the status of the approval for the financing.
B. Seller and Buyer authorize Buyer's lender, title company, and escrow agent to disclose and furnish a copy of the closing disclosures and settlement statements provided in relation to the closing of this sale to the parties' respective brokers and sales agents provided under Broker Information.

_____    _____
Buyer                                Seller

_____    _____
Buyer                                Seller



This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-9. This form replaces TREC No. 40-8.



TREC NO. 40-9



Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

11-19-19
Page 2 of 2

Third Party Financing Addendum Concerning

**17500 GHOST RD, SARATOGA, TX 77585**

(Address of Property)

contract shall no longer be subject to the Buyer obtaining Buyer Approval. Buyer Approval will be deemed to have been obtained when (i) the terms of the loan(s) described above are available and (ii) lender determines that Buyer has satisfied all of lender's requirements related to Buyer's assets, income and credit history.
☐ This contract is not subject to Buyer obtaining Buyer Approval.

**B. PROPERTY APPROVAL:** If Buyer's lender determines that the Property does not satisfy lender's underwriting requirements for the loan (including but not limited to appraisal, insurability, and lender required repairs) Buyer, not later than 3 days before the Closing Date, may terminate this contract by giving Seller: (i) notice of termination; and (ii) a copy of a written statement from the lender setting forth the reason(s) for lender's determination. If Buyer terminates under this paragraph, the earnest money will be refunded to Buyer. If Buyer does not terminate under this paragraph, Property Approval is deemed to have been obtained.

**3. SECURITY:** Each note for the financing described above must be secured by vendor's and deed of trust liens.

**4. FHA/VA REQUIRED PROVISION:** If the financing described above involves FHA insured or VA financing, it is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise: (i) unless the Buyer has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $ 350,000.00 or (ii) if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The 3-day notice of termination requirements in 2.B. does not apply to this Paragraph 4.

**A.** The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation or the reasonable value established by the Department of Veterans Affairs.

**B.** If FHA financing is involved, the appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The Buyer should satisfy himself/herself that the price and the condition of the Property are acceptable.

**C.** If VA financing is involved and if Buyer elects to complete the purchase at an amount in excess of the reasonable value established by the VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Prices, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

**5. AUTHORIZATION TO RELEASE INFORMATION:**

**A.** Buyer authorizes Buyer's lender to furnish to Seller or Buyer or their representatives information relating to the status of the approval for the financing.

**B.** Seller and Buyer authorize Buyer's lender, title company, and escrow agent to disclose and furnish a copy of the closing disclosures and settlement statements provided in relation to the closing of this sale to the parties' respective brokers and sales agents provided under Broker Information.

Michele Lesho (signature)
Buyer

Seller

Buyer

Seller



This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC No. 40-9. This form replaces TREC No. 40-8.



TREC NO. 40-9



Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-2-2015

**AMENDMENT**
TO CONTRACT CONCERNING THE PROPERTY AT



17500 GHOST ROAD  SARATOGA
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)
☐(1) The Sales Price in Paragraph 3 of the contract is:
A. Cash portion of Sales Price payable by Buyer at closing ........................ $_____
B. Sum of financing described in the contract ..................................... $_____
C. Sales Price (Sum of A and B) .................................................. $_____
☐(2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:


☑(3) The date in Paragraph 9 of the contract is changed to JUNE 3_____, 20 22__.
☐(4) The amount in Paragraph 12A(1)(b) of the contract is changed to $_____.
☐(5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $_____ by Seller; $_____ by Buyer.
☐(6) Buyer has paid Seller an additional Option Fee of $_____ for an extension of the unrestricted right to terminate the contract on or before 5:00 p.m. on _____, 20____. This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.
☐(7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.
☐(8) The date for Buyer to give written notice to Seller that Buyer cannot obtain Buyer Approval as set forth in the Third Party Financing Addendum is changed to _____, 20____.
☐(9) **Other Modifications:** (Insert only factual statements and business details applicable to this sale.)


EXECUTED the 2nd day of June_____, 20 22 . (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Michele Fisher_____
Buyer                              Seller

_____                        _____
Buyer                              Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 39-8. This form replaces TREC No. 39-7.

TREC NO. 39-8



Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-2-2015

# AMENDMENT
## TO CONTRACT CONCERNING THE PROPERTY AT



17500 GHOST ROAD SARATOGA
(Street Address and City)

Seller and Buyer amend the contract as follows: (check each applicable box)

☐ (1) The Sales Price in Paragraph 3 of the contract is:
    A. Cash portion of Sales Price payable by Buyer at closing ......................... $ _____
    B. Sum of financing described in the contract ........................................ $ _____
    C. Sales Price (Sum of A and B) ........................................................ $ _____

☐ (2) In addition to any repairs and treatments otherwise required by the contract, Seller, at Seller's expense, shall complete the following repairs and treatments:


☑ (3) The date in Paragraph 9 of the contract is changed to JUNE 3 _____, 20 22 _____.

☐ (4) The amount in Paragraph 12A(1)(b) of the contract is changed to $ _____.

☐ (5) The cost of lender required repairs and treatment, as itemized on the attached list, will be paid as follows: $ _____ by Seller; $ _____ by Buyer.

☐ (6) Buyer has paid Seller an additional Option Fee of $ _____ for an extension of the unrestricted right to terminate the contract on or before 5:00 p.m. on _____, 20_____. This additional Option Fee ☐ will ☐ will not be credited to the Sales Price.

☐ (7) Buyer waives the unrestricted right to terminate the contract for which the Option Fee was paid.

☐ (8) The date for Buyer to give written notice to Seller that Buyer cannot obtain Buyer Approval as set forth in the Third Party Financing Addendum is changed to _____, 20_____.

☐ (9) **Other Modifications:** (Insert only factual statements and business details applicable to this sale.)



EXECUTED the _2nd_ day of _June_, 20 _22_. (BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)


_____        _____
Buyer                               Seller

_____        _____
Buyer                               Seller



This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 512-936-3000 (http://www.trec.texas.gov) TREC No. 39-8. This form replaces TREC No. 39-7.



TREC NO. 39-8

Filed: 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# AFFIDAVIT OF NON-PRODUCTION

Loan Number: **204546983**

Property: **17500 GHOST ROAD
SARATOGA, TEXAS 77585**

Before me, the undersigned authority, on this day personally appeared the undersigned Owner(s) of the above-referenced Property, personally known to me to be the person(s) whose name(s) is/are subscribed hereto and upon his/her/their oath depose(s) and say(s) that I/we represent to the Lender and Settlement Agent in the above-referenced transaction that:

1. no drilling operations have ever begun during the term of any lease(s) affecting the above-referenced Property;
2. no oil, gas, or any other mineral has previously been produced from the above-referenced Property;
3. no oil, gas, or other mineral is now being produced from the above-referenced Property; AND
4. any and all leases affecting the above-referenced Property have expired prior to closing of the above-referenced transaction by their own terms and conditions.

I/We realize that these representations are made to induce the Lender to lend money thereon, and to induce the Settlement Agent to insure the title thereto, and that all parties are relying upon the truth of said statement.

Executed this **2nd**     day of     **June, 2022**

_____
**LINDSEY B. WHISENHANT, AS
INDEPENDENT EXECUTOR OF THE ESTATE
OF GENE A. WHISENHANT, DECEASED**

_____
JO ANN WHISENHANT

TEXAS AFFIDAVIT OF NON-PRODUCTION
AONP.MSC 10/29/18

☆DocMagic



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

State of ___Texas_____

County of ___HARDIN_____

Sworn to and subscribed before me on the __2nd__ day of ____June  2022_____ , by

LINDSEY B. WHISENHANT, AS INDEPENDENT EXECUTOR OF THE ESTATE (name of principal signer).

BRANDY ALLEY
My Notary ID # 131779994
Expires October 31, 2022

(SEAL)

_____
Notary Public Signature

TEXAS AFFIDAVIT OF NON-PRODUCTION
AONP.MSC  10/29/18

Page 2 of 2

DocMagic eForms



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# DISCLOSURE OF LENDER'S COUNSEL C&R DOCS

Loan Number: 204546983

Words used in this Disclosure are defined below. Words in the singular mean and include the plural and vice versa.

**"Parties"** are MICHELE LESHA XU

**"Lender"** is AMCAP MORTGAGE, LTD.                                         , and its successors and assigns.

**"Loan"** means the debt evidenced by the Note and all sums due under the Security Instrument.

**"Note"** means the promissory note in the original principal amount of  $333,841.00          , in favor of Lender.

**"Property"** means the property commonly known as  17500 GHOST ROAD, SARATOGA, TEXAS 77585

**"Security Instrument"** means the deed of trust/mortgage/security deed/security instrument in favor of Lender, securing payment of the Note.

**LOAN DOCUMENTATION.** The legal instruments involved in the Loan have been prepared for Lender by C&R Docs, using information supplied by Lender and other third parties. Parties acknowledge that C&R Docs has acted only on behalf of Lender. Lender and C&R Docs have not assisted or rendered legal advice to Parties with respect to the Loan or the Property securing it or the documents executed in connection with it. Parties further acknowledge and understand that the Parties may retain  independent counsel to represent the Parties' individual interests in the referenced transaction.

**DESCRIPTION OF LEGAL SERVICES PERFORMED.** Services performed by C&R Docs for the benefit of Lender include the review of certain information, such as title commitments and surveys, in some cases deed restrictions, and easements and other documents affecting title, and the preparation of all or part of the following legal instruments affecting title to the Property as part of the standard closing documents: a Deed (if required), Note, Security Instrument, and Assignment or Release of Lien (if required). In addition, C&R Docs may have been requested to prepare other documents affecting title to the Property such as, for example, Private Road Maintenance Agreements, Heirship Affidavits, or Subordination Agreements to facilitate the transaction.

**DISCLAIMER OF REPRESENTATION OR WARRANTY.** Parties understand that C&R Docs has not conducted a title search on the Property and makes no representation or warranty about the condition of the title, access to the Property, or any other matters that might be revealed from an examination by Parties of a survey or the Property itself. Parties are cautioned to make sure the Deed conveys the Parties' intentions in the transaction.

**DATA SUPPLIED BY LENDER** The disclosure calculations and fee data have been supplied by Lender. No representation is made by C&R Docs regarding the value of the Property, conformance with any limitations on fees, waiting periods, or any other matters outside the control of C&R Docs

**RESPONSIBILITY FOR PAYMENT OF FEES.** The undersigned acknowledge that they are obligated to pay certain legal fees for the preparation of legal documentation by C&R Docs as determined by the provisions of the contract, loan application, or other documents previously signed and as required by Lender.

---





Filed: 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**BASIS FOR FEE.** The document preparation fee for standard closing documents charged by C&R Docs is based on a per transaction charge rather than an hourly fee. The document preparation fees charged for any additional documents prepared by C&R Docs are based on a fee schedule rather than an hourly fee. These fees are intended to provide fair compensation for the above-described services by taking into consideration the time and labor required, the complexities of the questions involved, and the skill required to perform the services. Other considerations include the expertise of C&R Docs in the complexities of the real estate practice, the necessary overhead associated with the rendering of the services, and the assumption of risk by C&R Docs in the rendering of the services. Except in instances where a borrower may be charged lawfully for the preparation or distribution of a particular disclosure, there has been no charge made for the preparation or distribution of any federal disclosures or information required by the Real Estate Settlement and Procedures Act, the Truth-in-Lending Act, the Homeowner's Protection Act, or any other disclosure required by state and/or federal law. Lender has prepared or caused to be prepared all such federal and state disclosures at its own cost and without charge to borrower.

**NOTICE TO PARTIES REGARDING DEED PREPARATION.** If C&R Docs has prepared a Deed for this transaction, it has been at the request of Lender and payment must be made for the preparation of the Deed or the review by C&R Docs of a Deed prepared by another if the Deed prepared by C&R Docs is not used. C&R Docs represents Lender and only Lender in this transaction. Parties are advised to consult their own legal counsel and advise C&R Docs to send the draft Deed to that attorney. C&R Docs has provided the Deed as a convenience to the Parties. If this Deed is not used, any other Deed must be reviewed and approved by C&R Docs prior to its execution in order to verify certain items, including, without limitation, the date of the Deed, borrower's name, the legal description of the Property, and the creation and transfer of a vendor's lien to Lender.

Parties hereby acknowledge receiving and reading a copy of this Disclosure and affirm the accuracy of the statements contained herein.

_Michele Lesha Xu_
MICHELE LESHA XU


_____
LINDSEY B. WHISENHANT, AS INDEPENDENT
EXECUTOR OF THE ESTATE OF GENE A.
WHISENHANT, DECEASED

_____
JO ANN WHISENHANT

_____


Return to Lender with Package-

DISCLOSURE OF LENDER'S COUNSEL C&R DOCS
DLCCRD.CST  04/30/20                    Page 2 of 2                    ☆ DocMagic



Filed: 9/15/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**BASIS FOR FEE.** The document preparation fee for standard closing documents charged by C&R Docs is based on a per transaction charge rather than an hourly fee. The document preparation fees charged for any additional documents prepared by C&R Docs are based on a fee schedule rather than an hourly fee. These fees are intended to provide fair compensation for the above-described services by taking into consideration the time and labor required, the complexities of the questions involved, and the skill required to perform the services. Other considerations include the expertise of C&R Docs in the complexities of the real estate practice, the necessary overhead associated with the rendering of the services, and the assumption of risk by C&R Docs in the rendering of the services. Except in instances where a borrower may be charged lawfully for the preparation or distribution of a particular disclosure, there has been no charge made for the preparation or distribution of any federal disclosures or information required by the Real Estate Settlement and Procedures Act, the Truth-in-Lending Act, the Homeowner's Protection Act, or any other disclosure required by state and/or federal law. Lender has prepared or caused to be prepared all such federal and state disclosures at its own cost and without charge to borrower.

**NOTICE TO PARTIES REGARDING DEED PREPARATION.** If C&R Docs has prepared a Deed for this transaction, it has been at the request of Lender and payment must be made for the preparation of the Deed or the review by C&R Docs of a Deed prepared by another if the Deed prepared by C&R Docs is not used. C&R Docs represents Lender and only Lender in this transaction. Parties are advised to consult their own legal counsel and advise C&R Docs to send the draft Deed to that attorney. C&R Docs has provided the Deed as a convenience to the Parties. If this Deed is not used, any other Deed must be reviewed and approved by C&R Docs prior to its execution in order to verify certain items, including, without limitation, the date of the Deed, borrower's name, the legal description of the Property, and the creation and transfer of a vendor's lien to Lender.

Parties hereby acknowledge receiving and reading a copy of this Disclosure and affirm the accuracy of the statements contained herein.

MICHELE LESHA XU



LINDSEY B. WHISENHANT, AS INDEPENDENT
EXECUTOR OF THE ESTATE OF GENE A.
WHISENHANT, DECEASED



JO ANN WHISENHANT

Return to Lender with Package

DISCLOSURE OF LENDER'S COUNSEL C&R DOCS
DLCCRD.CST 04/30/20                                  Page 2 of 2                              ☆ DocMagic



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FHA AMENDATORY CLAUSE AND REAL ESTATE CERTIFICATION

Borrower(s): **Michele Lesha Xu**

Loan Number: 204546983

FHA Case Number: 512-4867978-703

Property Address: **17500 Ghost Road**
**Saratoga, TX 77585**

Lender: **AmCap Mortgage, Ltd.**

Loan Originator: **Chad Stephan**

NMLS #: 129122

NMLS #: 1670704

**FHA AMENDATORY CLAUSE:**

It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise, unless the purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the property of not less than **$350,000.00.** The purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

_Michele Lesha Xu_                                                      6/2/2022
MICHELE LESHA XU                                                        DATE


THE ESTATE OF GENE WHISENHANT                                          DATE


_✓_                                                                    6/2/2022
CLAYTON HOMES                                                          DATE

GFH8J  0620
GFH8J (POD)
04/20/2022 11:49 AM PST





Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

# FHA AMENDATORY CLAUSE AND REAL ESTATE CERTIFICATION

Borrower(s): **Michele Lesha Xu**

Loan Number: **204546983**

FHA Case Number: **512-4867978-703**

Property Address: **17500 Ghost Road
Saratoga, TX 77585**

Lender: **AmCap Mortgage, Ltd.**

Loan Originator: **Chad Stephan**

NMLS #: **129122**

NMLS #: **1670704**

**FHA AMENDATORY CLAUSE:**

It is expressly agreed that notwithstanding any other provisions of this contract, the purchaser shall not be obligated to complete the purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise, unless the purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the property of not less than **$350,000.00.** The purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

MICHELE LESHA XU                                       DATE

THE ESTATE OF GENE WHISENHANT          6-2-22   DATE

CLAYTON HOMES                                           DATE

ICE Mortgage Technology, Inc.          Page 1 of 2          GFH8J  0820
GFH8J (POD)
04/20/2022 11:49 AM PST




Filed 7/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**LOAN #: 204546983**

**REAL ESTATE CERTIFICATION:**

The borrower, seller, and the real estate agent or broker involved in the sales transaction certify, to the best of our knowledge and belief, that (1) the terms and conditions of the sales contract are true and (2) any other agreement entered into by any parties in connection with the real estate transaction is part of, or attached to, the sales agreement.

Michele Lesha Xu                                          6/2/2022
MICHELE LESHA XU                                          DATE

THE ESTATE OF GENE WHISENHANT                            DATE

                                                          6/2/2022
CLAYTON HOMES                                            DATE

REAL ESTATE-BROKER (SELLING AGENT)                       DATE

REAL ESTATE-BROKER (BUYING AGENT)                        DATE

**WARNING:** Section 1010 of title 18, U.S.C. provides: "Whoever for purpose of... influencing such Administration... makes, passes, utters, or publishes any statement, knowing the same to be false... shall be fined not more than $5,000.00 or imprisoned not more than two years or both."

ICE Mortgage Technology, Inc.                    Page 2 of 2              GFH8J  0820
                                                                         GFH8J (POD)
                                                                         04/20/2022 11:49 AM PST



Filed 9/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

**LOAN #: 204546983**

**REAL ESTATE CERTIFICATION:**

The borrower, seller, and the real estate agent or broker involved in the sales transaction certify, to the best of our knowledge and belief, that (1) the terms and conditions of the sales contract are true and (2) any other agreement entered into by any parties in connection with the real estate transaction is part of, or attached to, the sales agreement.

MICHELE LESHA XU _____ DATE _____

THE ESTATE OF GENE WHISENHANT _____ *Jo Ann Whisenhant* _____ DATE _6-2-22_

CLAYTON HOMES _____ DATE _____

REAL ESTATE-BROKER (SELLING AGENT) _____ DATE _____

REAL ESTATE-BROKER (BUYING AGENT) _____ DATE _____

**WARNING:** Section 1010 of title 18, U.S.C. provides: "Whoever for purpose of... influencing such Administration... makes, passes, utters, or publishes any statement, knowing the same to be false... shall be fined not more than $5,000.00 or imprisoned not more than two years or both."

ICE Mortgage Technology, Inc.                    Page 2 of 2                    GFH8J  0820
                                                                               GFH8J (POD)
                                                                               04/20/2022 11:49 AM PST



# EXHIBIT "B"

Filed 8/13/2023 11:33 AM
Dana Hogg, District Clerk
Hardin County, Texas
By: Kim Langley

## Compliance Inspection Report

**Note:** Reports of Final and Repair Compliance Inspections left at site always require reviewer's signature to be Official. Consult mortgagee for official reports.

**U.S. Department of Housing and Urban Development**
Office of Housing
Federal Housing Commissioner

OMB No. 2502-0189
(exp. 01/31/2024)

| Builder's Name and Address | | | |
|---|---|---|---|
| CMH 795 23557 HWY 59 N Porter, TX 77365 | a. ☑ Report not left at site. | **FHA Case Number** 512-4867978 | |
| | b. ☐ Report not official without reviewer's signature. | **Date of Inspection (mm/dd/yyyy)** 04/14/2023 | |

| Mortgagee's Name and Address | Property Address |
|---|---|
| AmCap Mortgage LTD 9999 Bellaire Blvd Ste 700 Houston, TX 77036 | Michele Lesha Xu 17500 Ghost Road Saratoga, TX 77585 |

### I. Inspection of On-Site Improvements Reveals

1. Construction ☐ was, ☐ was not begun prior to the date of mortgage insurance approval shown on the commitment, statement of appraised value or "Early Start" letter. (Applies to the initial report on new construction)

2. ☐ Builder other than named in application

3. ☐ Unable to make inspection.(Explain below)

4. ☐ Accepted construction exhibits not available at site

5. ☐ Individual Sewage disposal system; ☐ Individual Water supply system
   - ☐ No noncompliance. ☐ Correction essential as explained below.
   - ☐ Submit Health Department letter

6. ☐ Correction req'd by rprt. dated _____ not acceptably completed

7. ☐ Repairs required by form HUD-92800.5B not acceptably completed

8. ☐ Correction essential as explained below
   - ☐ a. Will examine at next inspection
   - ☐ b. Do not conceal until reinspected

9. ☑ No noncompliance observed

10. ☐ Acceptable variations as described below (Request for Change, form HUD-92577, may be submitted).

11. ☐ Extensive noncompliance as explained below (see IV.A below)

12. ☐ On-site improvements acceptably completed subject to receipt of certification that mortgagee's inspection reveals satisfactory completion of all items listed below.

13. ☐ On-site improvements acceptably completed except items listed below, completion of which is delayed by conditions beyond control of the builder (see IV.B below).

14. ☑ On-site improvements acceptably completed

15. ☑ Off-site improvements
   - ☐ a. Correction/Completion essential as explained below
   - ☐ b. Completion assured by escrow agreement or governing authority
   - ☑ c. Acceptably completed

### II. Explanation of statements checked in Parts I and III

☐ Initial Inspection    ☐ Framing Inspection    ☑ Final inspection    ☐ Other (explain)    ☐ Repair Inspection

**Inspection Number** RCSJMM2

| No. | | No. | |
|---|---|---|---|
| | - The manufactured home has been completed per Plans & Specifications in the engineer's drawing and Guidelines as listed in HUD Handbook 4000.1. <br> - Drainage and Grading OK <br> - Utilities are installed and functional. | | HUD Tags: NTA2063876 & NTA2063877 <br><br> F-2071 RCS Enterprises, LP |

*(Engineer's seal: STATE OF TEXAS, J. MARTIN MONTGOMERY, 90427, LICENSED PROFESSIONAL ENGINEER)*

**Certification:** I certify that the information provided on this form and in any accompanying documentation is true and accurate. I have carefully inspected this property on this date. I have no personal interest, present or prospective, in the property, applicant, or proceeds of the mortgage. To the best of my knowledge I have reported all noncompliance, work requiring correction, and unacceptable work. **Warning:** Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil penalties (18 U.S.C. §§ 287, 1001, 1010, 1012; 31 U.S.C. §3729, 3802)

| Signature *(signed)* | Date (mm/dd/yyyy) 04/14/2023 | ☐ Fee Inspector ☐ DE Staff Inspector | ☐ Appraiser ☐ HUD Inspector | **ID Number** PE # 90427 |
|---|---|---|---|---|

### III. Specific Conditions Required by the HUD-92800.5B, Not Requiring Field Inspection

16. ☐ Submit items or resubmit incomplete items as noted above.    17. ☐ Acceptable Compliance with all specific conditions not requiring field inspection.    18. ☐ Submit Termite Soil Treatment Guarantee.    ☐ **None**

| Approved | Signature | Date (mm/dd/yyyy) | ☐ Direct Endorsement Underwriter | **ID Number** |
|---|---|---|---|---|
| ☐ as modified by me | | | ☐ Chief Architect    ☐ Deputy | |

### IV. To Mortgagee: When signed below, refer to the statement on the back corresponding to the designation checked.

| ☐ A. Noncompliance | ☐ B. Compliance -- Incomplete Items. "Mortgagee's Assurance of Completion", HUD-92300, may be submitted. | ☐ C. Final Acceptance. Closing papers may be submitted provided mortgage credit analysis is acceptable |
|---|---|---|
| ☐ (b) Unacceptable construction. <br> ☐ (c) Premature construction. | $ _____ for completion not later than:(mm/dd/yyyy) | |

| Signature | Date (mm/dd/yyyy) | ☐ Direct Endorsement Underwriter ☐ Director of Housing Development    ☐ Deputy | **ID Number** |
|---|---|---|---|
| **For HUD Use Only for concurrence of Direct Endorsement Processing of this Compliance Inspection Report.** If signed, this final report is considered processed by HUD and, thereby, convertible to the Veterans Administration. | | Signature of HUD Authorized Agent | Date (mm/dd/yyyy) |

Previous editions are obsolete.    Retain this record for 30 years or the life of the file    Submit an Original and four copies    ref. Handbooks 4000.1, 4145.1, 4165, & 4910.1

form HUD-92051 (7/87)

## CERTIFIED

I, DANA HOGG, District Clerk in and for HARDIN COUNTY, TEXAS, do hereby certify that the foregoing is a true and correct copy as same appears on record in my office.

Witness my Hand, and Seal of Office, this the 14th day of August, 2023.

DANA HOGG, DISTRICT CLERK
HARDIN COUNTY, TEXAS

By Deputy: _____