IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| MICHELE LESHA XU, XIAO FENG XU,<br><br>        Plaintiffs,<br>vs.<br><br>CMH HOMES, INC., AMCAP MORTGAGE LTD.,<br><br>        Defendants. | NO. 1:23-CV-00319-MAC-ZJH |

### REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management. Doc. No. 18. Pending before the court is Defendant CMH Homes, Inc. ("CMH")'s *Motion to Compel Arbitration*. Doc. No. 5. After careful review of the filings, evidence presented at the hearing before the undersigned on April 18, 2024, and applicable law, the undersigned recommends granting CMH's motion. The undersigned finds that the arbitration agreement is valid and enforceable. Plaintiffs Michele Lesha Xu and Xiao Feng Xu ("the Xus") have failed to establish any defenses to enforcement of the agreement. Accordingly, the Xus should be ordered to arbitrate their claims against CMH in accordance with the provisions of the Binding Dispute Resolution Agreement ("BDRA"). Doc. No. 5-2.

### I.   Background

According to the facts alleged in the Xus' *Original Petition*, the Xus purchased a mobile home from CMH in Saratoga, Texas in June 2022. Doc. No. 3 at 2. The Xus allege that the home suffered from numerous construction defects despite CMH's assurances that they had completed construction on the home. *Id.* at 4–6, ¶¶ 22–44. The Xus assert claims against CMH arising out

of construction defects with the home and CMH's handling of the real estate transaction: various fraud claims, breach of contract, negligence, breach of warranties, Texas Deceptive Trade Practices Act ("DTPA") violations, false representations, and a violation of the Residential Construction Liability Act ("RCLA"). *Id.* at 7–20.

During the closing on the house, the Xus were provided with various documents to sign, including the BDRA. Doc. No. 5 at 1. Three individuals were present for the signing of these documents: Michele Xu, Xiao Xu, and Noel Casares ("Casares"), a notary public. Doc. No. 42 at 94, 111. The BDRA includes an arbitration provision. Doc. No. 5-2 at 1–2, ¶¶ D–E. The BDRA was ultimately signed by Michele Xu and a CMH representative during the closing. Doc. No. 5-2 at 4.

The BDRA has a broad scope. It provides, in relevant part, that it governs:

> [A]ll pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against [CMH], including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or related to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with [the Xus] . . . (ii) the documents related to the purchase and sale of the Home . . . (iv) any events leading up to the contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home.

Doc. No. 5-2 at 1, ¶ A.

The BDRA provides that all claims that cannot be settled through discussions and negotiations shall be submitted to mediation, and that "Mediation of Claims is a mandatory condition precedent to arbitration or a court proceeding." Doc. No. 5-2 at 1, ¶ C. It further provides that any claims that cannot be resolved in mediation are subject to mandatory and binding arbitration. *Id.*, ¶ D. The arbitration provision of the BDRA provides that "[a]ny Party to this Agreement may commence arbitration at any time following Mediation." *Id.*, ¶ E. Additionally,

2

the arbitration agreement is governed by "(a) the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and to the extent not otherwise preempted by the FAA, by applicable state laws, including common law; (b) this Agreement; and (c) the Rules." *Id.*

Importantly, immediately preceding the signature line, the BDRA states in capitalized, bolded letters, that:

> **BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT . . . THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE.**

*Id.* at 4, ¶ R.

Despite the mandatory mediation and arbitration provisions in the BDRA, the Xus filed their *Original Petition* in the 88th Judicial District Court of Hardin County, Texas on July 13, 2023. Doc. No. 3. On August 24, 2023, CMH removed the case to this court. Doc. No. 1. On October 10, 2023, CMH filed the instant motion seeking to compel the Xus' claims to arbitration pursuant to the arbitration provision of the BDRA. Doc. No. 5 at 4.

The Xus filed two responses to CMH's motion: (1) an *Opposition to Defendant's Motion to Compel* (Doc. No. 15) and (2) *Defenses to the Applicability of the Arbitration Provision* (Doc. No. 29). The Xus also raised various defenses to the applicability of the arbitration provision in the BDRA during a hearing on CMH's instant motion before the undersigned on April 18, 2024. The hearing involved testimony from Chip May, the general manager of the CMH store where the Xus purchased their home, and Michele Xu. Though the Xus alleged a variety of defenses to the validity of the arbitration provision between their filings and the evidence presented at the

3

hearing,[1] only two are legally cognizable: (1) procedural unconscionability and (2) fraudulent misrepresentation.

Both the Xus' procedural unconscionability and fraudulent misrepresentation defenses arise from Casares' alleged misconduct during the closing. In support of these defenses, the Xus alleged during the hearing that Casares made several misrepresentations about the nature of the BDRA and its arbitration provision. Specifically, the Xus stated that Casares never provided them with the BDRA to examine and sign during the closing. Doc. No. 42 at 56. However, Michele Xu did not dispute that she signed the BDRA. *Id.* at 12–13, 51. Additionally, Michele Xu testified that during the closing, Casares represented that if a problem with the transaction occurred, the Xus would have the option of pursuing claims against CMH in court or arbitration. *Id.* at 83. This testimony was contradicted by Casares' deposition testimony, where he testified that he told the Xus that if a dispute arose between them and CMH, they would have a right to go to arbitration. Doc. No. 37-1 at 52–53. Casares only stated that the Xus would have the right to pursue claims against CMH in arbitration—he did not tell the Xus that they would have the option of pursuing claims against CMH in either arbitration or a court of law. *Id.*

II.     **Legal Standards**

District courts engage in a two-step inquiry in deciding a motion to compel arbitration. "First, the court must determine whether the parties agreed to arbitrate the dispute." *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 302 (5th Cir. 2021). This question involves two

---

[1] Counsel for the Xus alleged that Casares made affirmative misrepresentations to the Xus during the closing (Doc. No. 42 at 83–86), the agreement was procedurally unconscionable (*Id.* at 105–06), Casares displayed a lack of neutrality (*Id.* at 10), Casares engaged in the provision of unlicensed legal services to the Xus (*Id.* at 10, 100, 105), Casares violated his duty as a notary public (*Id.* at 100), and Casares had a conflict of interest because he was previously employed by CMH (*Id.* at 107–08). The only legally cognizable defenses to the enforceability of the arbitration agreement that the undersigned can discern based on the evidence presented at the hearing are fraudulent misrepresentation and procedural unconscionability. None of the Xus' other allegations support any defenses to enforceability of the arbitration agreement.

considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* Second, "[i]f the court finds that the parties agreed to arbitrate, the court typically must consider whether any federal statute or policy renders the claims nonarbitrable." *Id.* (internal quotations omitted). "The party seeking arbitration has the burden of establishing the existence of an agreement to arbitrate," and the "party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Signal Ridge Owners Ass'n, Inc. v. Landmark Am. Ins. Co.*, 657 F. Supp. 3d 866, 873 (N.D. Tex. 2023) (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

The Federal Arbitration Act ("FAA") governs the BDRA. *See* Doc. No. 5-2 at 2, ¶ E. Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)). "[A]n agreement to arbitrate is valid under the FAA if it meets the requirements of the general contract law of the applicable state." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 347 (Tex. 2008). Here, Texas law governs whether a valid arbitration agreement exists.

### III. <u>Discussion</u>

#### A. Mandatory Mediation Provision in the BDRA

The BDRA states that "Mediation of Claims is a mandatory condition precedent to arbitration or a court proceeding." Doc. No. 5-2 at 1, ¶ C. The Xus have not shown that they attempted to mediate their claims before filing this lawsuit. Doc. No. 5 at 4. However, under

5

Texas law, even when a dispute resolution agreement "requires the parties to mediate before arbitration, a party who proceeds first to litigation waives the right to mediation and cannot assert the mediation provision as a condition precedent to arbitration." *Nii-Moi v. McAllen Hospitalist Grp., PLLC*, No. 6:21-CV-00001-JDK, 2021 WL 2139402, at *3 (E.D. Tex. May 26, 2021) (citing *Rodriguez v. Tex. Leaguer Brewing Co.*, 586 S.W.3d 423, 429–30 (Tex. App.—Houston [14th Dist.] 2019, pet. denied)). Accordingly, the undersigned finds that the Xus have waived the mediation condition precedent in the BDRA by filing suit without first attempting to mediate their claims.

### B. Validity of the Arbitration Provision in the BDRA

The parties dispute only the validity of the arbitration provision in the BDRA. It is undisputed that the Xus' claims fall within the scope of the arbitration provision. *See* Doc. No. 5-2 at 1, ¶ A. The Xus raise two defenses to the enforcement of the arbitration provision: (1) procedural unconscionability and (2) fraudulent misrepresentation.

On April 18, 2024, the undersigned held an evidentiary hearing on the validity of the arbitration provision in the BDRA. The Xus alleged their procedural unconscionability and fraudulent misrepresentation defenses for the first time during that hearing and presented evidence in support of each defense.[2] The undersigned will consider each defense in turn based on the testimony and documentary evidence presented at the hearing and all other relevant evidence in the record.

#### 1. Procedural Unconscionability

The Xus have the burden of showing that the BDRA was procedurally unconscionable. *See Signal Ridge*, 657 F. Supp. 3d at 873. Procedural unconscionability refers to the circumstances

---

[2] The Xus' two responses to the instant motion (Doc. Nos. 15, 29) do not mention either defense.

surrounding the adoption of the arbitration provision. *Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 1001 (S.D. Tex. 2011). "Texas law requires unfair surprise or oppression for a court to find procedural unconscionability." *Xome Holdings LLC v. Derbonne*, No. 4:16-CV-00550-ALM, 2017 WL 2402578, at *3 (E.D. Tex. June 2, 2017). This is a high bar, which requires that the circumstances surrounding the contract negotiations were "shocking." *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet.). The Texas Supreme Court has cautioned that "courts should be wary of setting the bar for holding arbitration clauses unconscionable too low as that would undermine the liberal federal policy favoring arbitration agreements." *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014) (internal quotations omitted). Indeed, "[t]he only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002).[3]

The Xus' first argument in support of their procedural unconscionability defense is that Casares never provided the Xus with the BDRA during the closing. During the April 18 hearing, Michele Xu testified repeatedly that she did not remember signing the BDRA during the closing. Doc. No. 42 at 52–53, 56, 57, 61–64. She also testified that she did not see the BDRA until she received a copy from her attorney in the course of this litigation. *Id.* at 56. However, the Xus do not dispute that Michele Xu did, in fact, sign page four of the BDRA. *Id.* at 12–13, 51. This fact

---

[3] *See*, *e.g.*, *In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370, 377 (Tex. App.—Texarkana 1999, no pet.) (finding an arbitration agreement procedurally unconscionable where one of the parties was functionally illiterate and had a reading disorder, nobody explained the document to him, and the employees who presented him with the arbitration agreement did not understand it themselves); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 940–41 (S.D. Tex. 2001) (finding an arbitration agreement procedurally unconscionable where the plaintiffs did not speak English and the agreement was not translated or explained to them); *Delfingen*, 407 S.W.3d at 803 (finding an arbitration agreement procedurally unconscionable where employee was unable to read English and employer failed to provide a Spanish translation or explanation of the agreement and misrepresented the contents of the agreement).

is corroborated by Casares' deposition testimony that Michele Xu signed the BDRA in his presence. Doc. No. 37-1 at 13–14. Michele Xu admitted during the hearing that she had no evidence to refute Casares' testimony that he saw her sign the document. Doc. No. 42 at 52. While the Xus previously alleged that Michele Xu's signature was the product of forgery, they represented to the court at the hearing that they are no longer pursuing any allegations of forgery or mechanical manipulation of Michele Xu's signature. *Id.* at 12–13, 51.

Considering the testimony presented during the hearing, Casares' deposition testimony, the BDRA, and other evidence in the record, the undersigned finds that Michele Xu's testimony that she never saw the BDRA before her attorney provided it to her is simply not credible. It is impossible that Michele Xu could have not seen the BDRA until her attorney sent it to her, yet somehow still signed it during the closing. Her testimony on this point has no merit and the undersigned finds that Michele Xu signed the BDRA during the closing.

Under Texas law, "[a]bsent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005). "The fact that a party has signed an arbitration agreement creates a strong presumption that the party has consented to its terms." *Mountain View Health & Rehab. Ctr., Inc. v. Keele*, No. 08-23-00033-CV, 2023 WL 6539937, at *4 (Tex. App.—El Paso 2023, no pet.). The Xus fail to overcome the presumption that they consented to the BDRA's terms because Michele Xu signed the BDRA during the closing.

Additionally, Casares testified in his deposition that he provided the Xus an opportunity to inquire about any of the documents involved in the closing and that he did not remember the Xus asking any questions about the BDRA. Doc. No. 37-1 at 14. The Xus presented no evidence to refute Casares' testimony on this point. In fact, in her testimony at the hearing, Michele Xu

8

admitted that Casares did not rush the Xus to sign anything during the closing process and put no time pressure on them at all. Doc. No. 42 at 68. The undersigned finds that the unrefuted evidence presented at the hearing establishes that the Xus had sufficient time and opportunity to read the BDRA and ask any relevant questions about it prior to signing.

Finally, directly above the signature line that bears Michele Xu's signature, the BDRA provides in capitalized, bolded, and unquestionably conspicuous letters, that "BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT." Doc. No. 5-2 at 4, ¶ R. Michele Xu's testimony at the hearing that she "never saw" page 3 of the BDRA and only saw page 4, the signature page, does not overcome the presumption that she consented to the BDRA's terms, especially considering this clear, conspicuous language directly above her signature on the BDRA. *See* Doc. No. 42 at 84. The undersigned finds that Michele Xu was properly put on notice of the BDRA's significance before she signed it. Accordingly, the Xus are bound by the BDRA's terms, which include the arbitration provision. Doc. No. 5-2 at 1–2.

The evidence presented establishes that Michele Xu saw the BDRA during the closing, signed it, had sufficient opportunity and time to read it and inquire about it before signing, and was properly put on notice of its significance. Accordingly, the Xus' first allegation of procedural unconscionability fails to demonstrate unfair surprise, oppression, or shocking circumstances that would render the BDRA unconscionable.

9

The Xus' second argument regarding procedural unconscionability is that Casares misrepresented the nature of the BDRA to them during the closing. Doc. No. 42 at 71, 83, 85–86. Specifically, Michele Xu testified that during the closing, Casares represented that if a problem with the transaction occurred, the Xus would have the option of pursuing claims against CMH in court or arbitration. *Id.* at 83. Her testimony is controverted by the deposition testimony of Casares, who testified that he told the Xus during the closing that if a problem arose that could not be resolved between them and CMH, they would have a right to go to arbitration. Doc. No. 37-1 at 52–53. Weighing the parties' opposing evidence presented regarding Casares' alleged misrepresentation, the undersigned finds that Michele Xu's testimony that Casares misrepresented the nature of the BDRA is not corroborated by any evidence in the record. The evidence establishes that Casares told the Xus that they would be able to pursue claims against CMH in arbitration—Casares did not state that the Xus would have the option of pursuing claims against CMH in *either* arbitration or a court of law. Accordingly, the undersigned concludes that Michele Xu's testimony about this alleged misrepresentation by Casares is not credible.

Moreover, a misrepresentation, without more, does not constitute "unfair surprise or oppression" or "shocking" circumstances sufficient to constitute procedural unconscionability. *See Fleetwood*, 280 F.3d at 1077 (finding that plaintiffs' allegations that home seller's misrepresentation of agreement's significance, failure to explain agreement, and failure to provide opportunity to read or negotiate the agreement were insufficient to establish procedural unconscionability).

In sum, based on the evidence presented at the April 18 hearing, the undersigned concludes that the Xus failed to present any credible evidence establishing that the arbitration agreement was procedurally unconscionable. Accordingly, the Xus' procedural unconscionability defense fails.

### 2. Fraudulent Misrepresentation

The Xus also have the burden of showing that CMH made a fraudulent misrepresentation that induced them to sign the BDRA. *See Signal Ridge*, 657 F. Supp. 3d at 873. Michele Xu testified at the April 18 hearing that Casares said that the Xus would have the option of either going to court or to arbitration if there is any problem with the transaction. Doc. No. 37-1 at 52–53. As stated above, the undersigned finds that Michele Xu's testimony on this point is not credible. Because this is the only allegation supporting the Xus' fraudulent misrepresentation defense, the defense fails on this basis alone.

Regardless, the Xus' fraudulent misrepresentation defense also fails because they have not alleged any facts establishing intent. Under Texas law, "[a] plaintiff asserting a claim for fraudulent misrepresentation must prove the following elements: (1) a false material representation, (2) made with knowledge of its falsity or made recklessly without knowledge of its truth, and (3) intending that the misrepresentation would be acted on by the other party, where (4) the other party acts in justifiable reliance on the misrepresentation, and (5) thereby suffers injury." *Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 413 (Tex. App.—Houston [14th Dist.] 2021, pet. granted), *aff'd sub nom. McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907 (Tex. 2023). The Xus have introduced no evidence establishing that CMH intended that the Xus would act upon the alleged misrepresentation by Casares. Accordingly, the undersigned concludes that the Xus' fraudulent misrepresentation defense fails.

### IV. Conclusion

Defendant CMH Homes, Inc. has met its burden of establishing a valid and enforceable agreement to arbitrate. Plaintiffs Michele Lesha Xu and Xiao Feng Xu have failed to meet their burden of establishing that the arbitration agreement was invalid.

Accordingly, the undersigned recommends that Defendant CMH Homes, Inc.'s *Motion to Compel Arbitration* (Doc. No. 5) should be **GRANTED** and that the parties be **ORDERED** to resolve Plaintiffs' claims in an arbitration conducted in accordance with the terms of the arbitration provision within the Binding Dispute Resolution Agreement.

## V.    Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within 14 days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within 14 days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 1st day of July, 2024.

_____
Zack Hawthorn
United States Magistrate Judge